IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS, BEAUMONT DIVISION

| | |
|---|---|
| COALITION FOR WORKFORCE INNOVATION, ASSOCIATED BUILDERS AND CONTRACTORS OF SOUTHEAST TEXAS; and ASSOCIATED BUILDERS AND CONTRACTORS, INC., <br><br>Plaintiffs <br><br>vs. <br><br>MARTY WALSH, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR, in his official capacity, JESSICA LOOMAN, PRINCIPAL DEPUTY ADMINISTRATOR, DIVISION OF WAGE AND HOUR, U.S. DEPARTMENT OF LABOR, in her official capacity, and UNITED STATES DEPARTMENT OF LABOR, <br><br>Defendants. | CASE NO. _____ |

**PLAINTIFFS' COMPLAINT FOR DECLARATORY RELIEF**

1. Plaintiffs COALITION FOR WORKFORCE INNOVATION ("CWI") ASSOCIATED BUILDERS AND CONTRACTORS OF SOUTHEAST TEXAS ("ABCSETX"), and ASSOCIATED BUILDERS AND CONTRACTORS, INC. ("ABC") (collectively "Plaintiffs"), by and through their undersigned counsel, for their Complaint against the Defendants, herein state as follows:

**NATURE OF THE ACTION**

2. Plaintiffs bring this action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 500 *et seq.*, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the

1

Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, challenging a final rule promulgated by the United States Department of Labor ("Department") on March 4, 2021 entitled, "Independent Contractor Status Under the Fair Labor Standards Act (FLSA): Delay of Effective Date," (hereafter the "Delay Rule"), 86 Fed. Reg. 12,535 (Mar. 4, 2021). The Delay Rule purported to postpone the effective date of a final rule titled "Independent Contractor Status Under the Fair Labor Standards Act" ("Independent Contractor Rule"). The Delay Rule is arbitrary, capricious, and contrary to procedures required by law, as the Department failed to (1) provide a meaningful comment period before enacting the Delay Rule; or (2) offer substantive justification for enacting the Delay Rule.

3. The Department enacted the Delay Rule following a comment period of only nineteen days, during which the Department considered only comments discussing postponing the Independent Contractor Rule's effective date. *See* 86 Fed. Reg. 12,535. Courts have determined that agencies act arbitrarily and capriciously when enacting rules following similarly short and restrictive comment periods in the absence of good cause.

4. The minimal justification that the Department provided for enacting the Delay Rule mischaracterized the Independent Contractor Rule and the effect of the Delay Rule on regulated parties. For example, the Delay Rule mischaracterized the Independent Contractor Rule as adopting a "new legal standard" (*see* 86 Fed. Reg. 12,535), when in reality, the Independent Contractor Rule retains the long-standing "economic reality" test for determining employee or contractor status. 86 Fed. Reg. 1,168. The Delay Rule, moreover, ignored completely the reality of the costs of compliance preparation innumerable businesses have already undertaken in anticipation of the rule becoming effective as scheduled, as well as the cost that the prior lack of

clarity continues to wreak on the business community, when claiming that the Delay Rule "would not be disruptive." 86 Fed. Reg. 12,536.

5. Because the Delay Rule was arbitrary, capricious, and invalid, this Court should hold that the Independent Contractor Rule went into effect on March 8, 2021. 86 Fed. Reg. 1,168. As a result, the Department's subsequent proposal to withdraw the Independent Contractor Rule before its effective date was also arbitrary and capricious and therefore invalid. *See* 86 Fed. Reg. 14,027.

6. In sum, the Department's actions at issue in this Complaint are arbitrary and capricious and must be set aside.

## PARTIES

7. Plaintiff CWI is a coalition that supports choice, flexibility, and opportunity in the modern workforce. CWI represents a diverse array of stakeholders, including those who represent and advocate on behalf of workers, small businesses, start-ups, entrepreneurs, and technology companies. CWI also represents and advocates on behalf of traditional businesses and associations in industries such as media, transportation, distribution, retail, and service. CWI supports modernized guidance on how to define the scope of the independent contractor relationship. Indeed, CWI supports such guidance as CWI advocates on behalf of students, parents, entrepreneurs, retirees, and other independent workers who prioritize the flexibility and freedom of non-traditional work arrangements. CWI also supports work opportunities for groups such as immigrants, caregivers, veterans, first time small business owners and entrepreneurs, and individuals with criminal backgrounds, who may struggle to find employment in the traditional job market. CWI supports the Independent Contractor Rule because the Independent Contractor Rule provides clarity for both workers and businesses. Accordingly, CWI has a substantial interest in the Independent Contractor Rule going into effect without delay.

8. Plaintiff ABCSETX is a non-profit trade association of two hundred construction industry contractors and related firms operating in Southeast Texas and around the country. Headquartered in this judicial district at 2700 N. Twin City Highway in Nederland, Texas, ABCSETX is a separately incorporated affiliate of the national construction industry trade association Plaintiff ABC. Plaintiff ABC represents more than 21,000 member contractors and related firms both in Texas and throughout the country, who share the philosophy that work in their industry should be awarded and performed based on merit, without regard to labor affiliation. ABC and its sixty-nine chapters help members develop people, win work and deliver that work safely, ethically and profitably for the betterment of the communities in which they work. ABC's membership represents all specialties within the U.S. construction industry and is comprised primarily of firms that perform work in the industrial and commercial sectors.

9. Independent contractors are essential to many of the businesses who ABCSETX and ABC represent, providing specialized skills to many such businesses. Moreover, by utilizing independent contractors, the businesses ABCSETX and ABC represent can allow for entrepreneurial opportunities and maintain stability during fluctuations of work common to construction. Conflicting court rulings have confused and frustrated efforts of the businesses who ABCSETX and ABC represent to perform services on a cost-efficient basis. These member businesses will be significantly harmed if the Rule is arbitrarily delayed or rescinded. ABCSETX and ABC supported the Independent Contractor Rule's effort to clarify the independent contractor standard and facilitate a consistent application among courts.

10. As trade associations and organizations representing businesses in Texas and around the country who utilize the skills of independent contractors, Plaintiffs each have standing to bring this action on behalf of their members under the three-part test of *Hunt v. Washington*

*State Apple Advertising Commission*, 432 U.S. 333, 343 (1977), because (1) Plaintiffs' members would otherwise have standing to sue in their own right; (2) the interests at stake in this case are germane to Plaintiffs' organizational purposes; and (3) neither the claims asserted nor the relief requested requires the participation of Plaintiffs' individual members.

11. Defendant Marty Walsh is the Secretary of the Department (the "Secretary"). Defendant Jessica Looman is the Principal Deputy Administrator (the "Principal Deputy Administrator") of the Division of Wage and Hour. The Department, and the Wage and Hour Division specifically, published the Independent Contractor Final Rule in the Federal Register, and subsequently published the Delay Rule and the proposal to rescind the Independent Contractor Rule in the Federal Register. Secretary Walsh and Principal Deputy Administrator Looman are sued in their official capacities and the relief sought extends to all of their successors, employees, officers, and agents.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question) because the Plaintiffs' causes of action arise under and allege violations of federal law, including the APA, 5 U.S.C. §§ 701-706 (APA jurisdiction to review agency actions), the FLSA, 29 U.S.C. § 201, et seq., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202 (declaratory relief).

13. This Court has authority to grant declaratory relief pursuant to 28 U.S.C. §§ 2201-02 and the provisions of the APA, 5 U.S.C. §§ 701-06.

14. Venue is properly vested in this Court pursuant to 28 U.S.C. § 1391(e) because one or more of the Plaintiffs are based within the judicial district of this Court.

**FACTUAL BACKGROUND**

A.   **The Independent Contractor Rule Under the Fair Labor Standards Act**

15.   On September 25, 2020, the Department published a Notice of Proposed Rulemaking ("NPRM") through which it proposed to amend title 29 of the Code of Federal Regulations by adding a new part 795 setting forth and clarifying the standards by which the Department will deem workers to be statutory "employees" or independent contractors under the FLSA. *See generally* 85 Fed. Reg. 60,600. During the 30-day comment period on the NPRM, the Department received more than 1,800 comments from interested stakeholders. 86 Fed. Reg. 1,171.

16.   On January 7, 2021, the Department issued the final Independent Contractor Rule. The Rule included an extensive review of the comments received during the rulemaking process and offered the Department's reasoned opinion for adopting some changes suggested by commenters, while declining to adopt others. The Administrative Record included many comments from employers and independent contractors, including comments from the Plaintiffs and many of their member companies, describing great uncertainty as to how to classify individuals under the existing morass of federal and state court decisions and conflicting standards. Plaintiffs and other businesses reported significant increases in litigation costs and the adverse impact of the status quo on business growth and innovation, as well as the adverse impact on freelance contractor business opportunities. Many comments applauded the Rule as "balanced and reasonable," and promoting certainty and predictability for both workers and businesses, thus promoting work choice and innovation in the economy.

17.   The Independent Contractor Rule thoroughly analyzed the chaotic state of the FLSA's application to independent contractor classifications, focusing on the longstanding economic reality test under the Act, while sharpening the factors used to apply that test. The Department properly found that "control" over work performance and the opportunity for profit or

loss are the most probative of whether workers are economically dependent on another business or are in business for themselves. 86 Fed. Reg. 1,168.

19. 18. The Independent Contractor Rule also included a robust economic analysis of the costs and benefits of the Independent Contractor Rule's standard. *See generally* 86 Fed. Reg. 1,168. As previously proposed, the final Rule amended the Code of Federal Regulations by adding a new part 795, with the expressed intent that regulated parties could rely on this new part "in accordance to section 10 of the Portal-to-Portal Act, 29 U.S.C. 251-262." Section 10 allows parties to establish a good faith defense in FLSA litigation. *See* 86 Fed. Reg. 1,246. The Rule directly impacted Plaintiffs' member companies (and many others) by thus creating a "safe harbor" from some aspects of the confused and conflicting litigation arising under the FLSA in recent years. *Id.*

19. The Independent Contractor Rule reflects consideration of relevant facts and statutory and other legal considerations as well as the Department's reasoned judgment regarding applicable policy considerations. The Rule also reflects consideration of contrary facts and arguments and includes an exhaustive description and citations to the hundreds of authorities, facts, data and other analyses on which the Department relied. The Department cited numerous commentators with whom it agreed and those with whom it disagreed, and the Department explained its reasoning throughout the Final Rule. *See* 86 Fed. Reg. at 1168-1175, 1178-1196, 1209-1234.

B. **The Delay Rule**

20. On January 20, 2021, the Assistant to the President and Chief of Staff, on behalf of President Biden, published a "Memorandum for the Heads of Executive Departments and Agencies" titled "Regulatory Freeze Pending Review" ("Regulatory Freeze Memorandum"). 86 Fed. Reg. 7,424.

21.     The Regulatory Freeze Memorandum directed heads of executive departments and agencies to "consider postponing the rules' effective dates for 60 days from the date of this memorandum…for the purpose of reviewing any questions of fact, law, and policy the rules may raise." 86 Fed. Reg. 7,424. The Memorandum cited no statutory authority for such a directive, and there is none. *See, e.g.*, *Natural Resources Defense Council v. Abraham*, 355 F.3d 179, 189 (2d Cir. 2004) (holding that "a new administration's simple desire to have time to review, and possibly revise or repeal, its predecessor's regulations falls short" of the APA's requirements.). Nevertheless, the Regulatory Freeze Memorandum further directed heads of executive departments and agencies to "consider opening a 30-day comment period to allow interested parties to provide comments about issues of fact, law, and policy raised by those rules, and consider pending petitions for reconsideration involving such rules." 86 Fed. Reg. 7,424.

22.     Also, on January 20, 2021, the Office of Management and Budget ("OMB") published OMB Memorandum M-21-14, Implementation of Memorandum Concerning Regulatory Freeze Pending Review ("OMB Memorandum").[1] The OMB Memorandum provided guidance to heads of executive departments and agencies, explaining that the decision of whether to postpone the effective date of published rules not yet in effect "should include consideration" of eight specific factors:

> (1) the rulemaking process was procedurally adequate; (2) the rule reflected proper consideration of all relevant facts; (3) the rule reflected due consideration of the agency's statutory or other legal obligations; (4) the rule is based on a reasonable judgment about the legally relevant policy considerations; (5) the rulemaking process was open and transparent; (6) objections to the rule were adequately considered, including whether interested parties had fair opportunities to present contrary facts and arguments; (7) interested parties had the benefit of access to the

---

[1] *See* OMB Memorandum M-21-14, Implementation of Memorandum Concerning Regulatory Freeze Pending Review, https://www.whitehouse.gov/wp-content/uploads/2021/01/M-21-14-Regulatory-Review.pdf (last visited Mar. 16, 2021).

      facts, data, or other analyses on which the agency relied; and (8) the final rule found adequate support in the rulemaking record.

*See id.*

23. On February 5, 2021, the Department proposed to delay the effective date of the Independent Contractor Rule until May 7, 2021. 86 Fed. Reg. 8,326. The proposal indicated that the sole purpose of the delay was for the Department to "review and consider the rule as the Regulatory Freeze Memorandum and Office of Management and Budget Memorandum M-21-14 contemplate," specifically the "legal, policy, and/or enforcement implications of adopting that standard." 86 Fed. Reg. 8,327.

24. According to the Department, the Independent Contractor Rule "would adopt a new legal standard for determining employee and independent contractor status under the FLSA." 86 Fed. Reg. 8,327. The Department further asserted that the proposed delay was reasonable and would not be disruptive since the "independent contractor final rule is not yet effective, and [the Department] has not implemented the rule." 86 Fed. Reg. 8,327.

25. The NPRM required comments to be submitted by February 24, 2021, *i.e.*, only 19 days from the date of the notice, and stated that the Department "[would] consider only comments about its proposal to delay the rule's effective date." 86 Fed. Reg. 8,327.

26. On February 22, 2021, Plaintiff ABC filed a request for extension of time to file comments and further protested the Department's restriction on the nature of comments which could be filed. The Department denied the extension request on February 24, 2021.

27. On March 4, 2021, the Department published the final Delay Rule that Plaintiffs challenge in this Complaint; the Delay Rule stated that "[a]s of March 4, 2021, the effective date of the Independent Contractor Rule...is delayed until May 7, 2021." 86 Fed. Reg. 12,535.

28.     As justification for the Delay Rule, the Department stated that "allowing more time for consideration of the January 2021 [Independent Contractor] Rule is reasonable given the significant and complex issues the Rule raises, including whether the Rule is consistent with the statutory intent to broadly cover workers as employees as well as the costs and benefits of the rule, including its effect on workers." *Id*. The Department did not address the fact that each of the aforementioned issues had already been considered by the Department prior to adoption of the Independent Contractor Rule. Nor did the Department base its reasons for delaying the effective date of the Rule on the reasons enumerated in OMB Memorandum M-21-14, as set forth above.

29.     As further justification for the Delay Rule, the Department tautologically asserted that "allowing the Independent Contractor Rule to go into effect while the Department undertakes a further review of the Independent Contractor Rule could lead to confusion and uncertainty among workers and businesses in the event that the Department proposes changes to the Independent Contractor Rule following its review." *Id*. As further explained below, this is not a permissible justification for delaying the effective date of a final Rule under the APA.

30.     Within eight days after publication of the Delay Rule purporting to extend the effective date of the Independent Contractor Rule, on March 12, 2021, the Department published a NPRM proposing to "withdraw" the Independent Contractor Rule. 86 Fed. Reg. 14,027. In explaining its decision to withdraw the Independent Contractor Rule, the Department highlighted that the Independent Contractor Rule "ha[d] not yet taken effect" (86 Fed. Reg. 14,031), and that accordingly, the Department "[did] not believe that withdrawing it would be disruptive" (86 Fed. Reg. 14,035).

## COUNT ONE

### (Violation of the APA's Notice and Comment Requirements)

31. Paragraphs 1 through 30 are incorporated by reference as if set forth fully herein.

32. The Administrative Procedure Act, 5 U.S.C. § 706(2)(A), directs reviewing courts to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." The APA generally requires agencies to provide adequate notice, time, and opportunity to interested parties for comment when engaging in rulemaking. 5 U.S.C. § 553. The Department arbitrarily failed to comply with the APA's notice and comment requirements prior to issuing the Delay Rule.

33. Where an agency enacts a regulation without first complying with the APA's procedural requirements, vacatur is appropriate. Such vacatur applies equally to final agency action unlawfully purporting to pause, delay or rescind a final rule, as has occurred in the present case. *Texas v. United States*, 2021 U.S. Dist. LEXIS 33890, **107-117 (S.D. Tex. Feb. 23, 2021); *see also N.C. Growers' Ass'n*, 702 F.3d at 765 (4th Cir. 2012); *Puget Soundkeeper All. v. Wheeler*, 2018 U.S. Dist. LEXIS 199358, at *19-20 (W.D. Wash. 2018). Here, the Department failed to provide a meaningful opportunity for comment by unreasonably shortening the time for comments and by restricting the substance of the comments to be submitted.

34. Specifically, when an agency issues a final rule after engaging in notice and comment procedures, it must "use...the same procedures when [it] amend[s] or repeal[s] a rule." *United States v. Colliot*, 2018 U.S. Dist. LEXIS 83159, at *6-7 (W.D. Tex. May 15, 2018) (quoting *Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92, 101 (2015)). Indeed, an agency's efforts to comply with the APA's notice and comment requirements "suggest that the agency believed [those notice and comment procedures] to be applicable" and "support[s] the conclusion that 'those procedures

[are] applicable." *N.C. Growers' Ass'n v. UFW*, 702 F.3d 755, 765 (4th Cir. 2012) (quoting *Manufactured Housing Inst. v. EPA*, 467 F.3d 391, 399 (4th Cir. 2006)).

35.  The Independent Contractor Rule was issued after extensive notice and comment proceedings. Though the rule contains references to the Department's "interpretation" of the FLSA, the Rule contains numerous hallmarks of "legislative" and "substantive" rulemaking, starting with the use of notice and comment rulemaking itself. *Perez*, 575 U.S. at 96 ("Rules issued through the notice-and-comment process are often referred to as 'legislative rules'…."). The Rule's stated purpose was to add a new part to the Code of Federal Regulations, with the expressed intent that regulated parties could rely on this new part "in accordance to section 10 of the Portal-to-Portal Act, 29 U.S.C. 251-262," which allows parties to establish a good faith defense in FLSA litigation. *See* 86 Fed. Reg. 1,246. The Rule directly impacted Plaintiffs' member companies (and many others) by thus creating a "safe harbor" from some aspects of the confused and conflicting litigation arising under the FLSA in recent years. *Id*.

36.  Where notice and comment procedures are otherwise required, an agency does not have inherent authority to stay a rule as it reconsiders it. *Clean Air Council v. Pruitt*, 862 F.3d 1, 9 (D.C. Cir. 2017). Rather, an agency's action in delaying a rule's effective date is "tantamount to amending or revoking a rule," and accordingly, is not "merely an interim procedural step." *Nat'l Res. Def. Council v. Nat'l Highway Traffic Safety Admin.*, 894 F.3d 95 (2d Cir. 2018); *Clean Air Council*, 862 F.3d at 9.

37.  A delay of a legislative rule's effective date, accordingly, is subject to the APA's notice and comment requirements. *See Open Cmtys. All. v. Carson*, 286 F. Supp. 3d 148, 163 (D.D.C. 2017); *see also Pineros Y Campesinos Unidos v. Pruitt*, 293 F. Supp. 3d 1062, 1067 (N.D. Cal. 2018).

38. The APA, moreover, specifically provides for agencies to provide at least 30-day notice in promulgating a rule, unless the agency can demonstrate good cause for a shorter period. *See* 5 U.S.C. § 553(d)(3).

39. Comment periods of less than thirty days may violate the APA. *See Prometheus*, 652 F.3d at 453 (noting 28-day comment period did not provide "sufficient time" for commenters); *see also Nat'l Lifeline Ass'n v. FCC*, 921 F.3d 1102, 1117 (D.C. Cir. 2019) (noting that "[w]hen substantial rule changes are proposed, a 30-day comment period is generally the shortest time period sufficient for interested persons to meaningfully review a proposed rule and provide informed comment"). Even the "freeze" memorandum on which the Department purported to rely in this case called for agencies to allow a "30-day" comment period prior to delaying final rules. 86 Fed. Reg. 7,424.

40. Courts have held that reducing the number of days for comments below thirty days requires good cause and substantial exigent circumstances to justify what is otherwise an unreasonably short period of time for public comments. *See, e.g.*, *Omnipoint Corp v. FCC*, 78 F.3d 620, 629 (D.C. Cir. 1996) (finding 15-day comment period permissible only "given the 'urgent necessity for rapid administrative action under the circumstances'"); *Florida Power & Light Co. v. United States*, 846 F.2d 765, 772 (D.C. Cir. 1984) (finding 15-day comment period sufficient where Congress imposed a deadline for agency action).

41. An agency does not automatically demonstrate good cause for dispensing with the APA's 30-day notice requirement by stating that a rule's effects are limited or that the rule only provides interim relief. *See Tennessee Gas Pipeline Co. v. FERC*, 969 F.2d 1141, 1145 (D.C. Cir. 1992). Indeed, "[w]ere the opposite true, agencies could issue interim rules of limited effect for

any plausible reason, irrespective of the degree of urgency. Should this be allowed, the good cause exception would soon swallow the notice and comment rule." *See id*.

42. Similarly, an agency typically does not show good cause by merely asserting that notice and comment is impractical, unless the agency can point to an "emergency situation[] in which a rule would respond to an immediate threat to safety, such as to air travel, or when immediate implementation of a rule might directly impact public safety." *Nat'l Resources Def. Council*, 894 F.3d at 114. Moreover, "[a] new administration's simple desire to have time to review, and possibly revise or repeal, its predecessor's regulations falls short" of the good cause standard of the APA. *Id., see also Pineros Y Campesinos Unidos*, 293 F. Supp. 3d at 1067.

43. Additionally, under the APA, the "opportunity for comment must be a meaningful opportunity." *Rural Cellular Association v. F.C.C.*, 588 F.3d 1095 (D.C. Cir. 2009). Courts have concluded that the express exclusion of substantive commentary with respect to the underlying subject matter of a proposed suspension violate the APA's notice and comment requirements. *North Carolina Growers' Ass'n, Inc.*, 702 F.3d at 770; *Puget Soundkeeper All.*, 2018 U.S. Dist. LEXIS 199358, at *13-14.

44. The Department's notice and comment period preceding the Delay Rule did not comport with the APA. As noted above, the Department set the time period for submission of comments on the Delay Rule at nineteen days. The Department failed to demonstrate good cause to justify such a truncated comment period. Although the Department claimed that "[i]t would not have been practicable to issue an NPRM proposing to delay the Independent Contractor Rule and allow for ample time for public comment on that proposal in time to publish a final rule not less than 30 days before March 8," the failure to propose the Delay Rule more than 30 days before the Rule's effective date was entirely attributable to the Department's own failure to issue the notice

more promptly. *See* 86 Fed. Reg. 12,537. The Department failed to point to any emergency situation that justified a finding of impracticality under the APA. *Nat'l Resources Def. Council*, 894 F.3d at 114.

45. The Department also failed to demonstrate good cause by asserting that "this rulemaking merely implements a 60-day delay of the Independent Contractor Rule," as a rule's "limited nature" does not alone justify an agency's decision to invoke the good cause exception. *Compare* 86 Fed. Reg. 12,537, *with Tennessee Gas Pipeline Co.*, 969 F.2d at 1145 (internal citations omitted).

46. Moreover, because the Department only considered comments concerning a delay of the Independent Contractor Rule, the scope of the comment period was too restrictive to comport with the APA's requirements to provide a meaningful comment period. *Compare* 86 Fed. Reg. 8327, *with North Carolina Growers' Ass'n, Inc.*, 702 F.3d at 770; *Puget Soundkeeper All.*, 2018 U.S. Dist. LEXIS 199358, at *13-14.

47. Indeed, the scope of the Delay Rule's comment period should have matched the scope of the Independent Contractor Rule's comment period; yet, the scope of the Delay Rule's comment period was more restrictive. *See Colliot*, 2018 U.S. Dist. LEXIS 83159, at *6-7 (quoting *Perez*, 575 U.S. at 101) (noting that an agency must use the same procedures when enacting and repealing a rule); *compare, e.g.*, 85 Fed. Reg. 60,605, 60,610, 60,615 (seeking comments on various aspects of the Independent Contractor Rule), *with*, 86 Fed. Reg. 8,327 ("[The Department] will consider only comments about its proposal to delay the rule's effective date.").

48. Accordingly, due to the short length of the comment period, the Department's failure to show good cause for truncating the comment period, and the comment period's limited

scope, the Department's promulgation of the Delay Rule was arbitrary and capricious and the Delay Rule should be vacated.

## COUNT II

**(APA and FLSA – Arbitrary and Capricious Delay of the Independent Contractor Rule)**

49. Under the APA, an agency "must...provide good reasons" for suspending a rule. *California v. BLM*, 286 F. Supp. 3d 1054, 1064-65 (N.D. Cal. 2018). Indeed, the agency "must provide … a 'detailed justification' to explain why it is changing course" and an agency may not "casually ignor[e]" its previous findings and "arbitrarily chang[e] course." *Id.* at 1064, 1068; *see also Connecticut Light & Power Co. v. Nuclear Regulatory Comm.*, 673 F.2d 525, 528 (D.C. Cir. 1982).

50. An agency's reliance on a presidential chief of staff "freeze" memo does not cure an agency's failure to otherwise comply with the APA's requirements. *Nat'l Res. Def. Council v. Abraham*, 355 F.3d 179, 206 (2d Cir. 2004). Moreover, an agency's action is arbitrary and capricious where it fails to consider important aspects of the problem and offers explanations for its new rule that run counter to the evidence. *See Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 41-43 (1983).

51. Here, in promulgating the Delay Rule, the Department failed to provide a "detailed justification" for its change in course, relying instead on the vague assertion that the Delay Rule is justified because "questions involving law, fact, or policy have been raised." *Compare* 86 Fed. Reg. 12,535, *with*, *California v. BLM*, 286 F. Supp. 3d at 1064-65. Indeed, while the Department cited comments with which it agreed in promulgating the Delay Rule, the Department still failed to explain its reasoning in promulgating the Delay Rule in the first place. *See Connecticut Light & Power Co.*, 673 F.2d at 528.

52. The Department relied on comments of those who opposed the Independent Contractor Rule as justification for delaying the effective date in order to allow more consideration of "significant and complex" issues, the Department Delay Rule, the Department did not address the fact that each of the aforementioned issues had *already been considered* and decided by the Department prior to adoption of the Independent Contractor Rule. The Department therefore acted arbitrarily in asserting as justification for delay the need to consider (again) "whether the Rule is consistent with the statutory intent to broadly cover workers as employees as well as the costs and benefits of the rule, including its effect on workers." *Id*.

53. The Department's citations to the Regulatory Freeze Memorandum and OMB Memorandum certainly do not justify the Department's decision to change course; indeed, the Department did not analyze the Independent Contractor rule according to the eight factors in the OMB Memorandum before promulgating the Delay Rule. *See Motor Vehicle Mfrs. Ass'n of the U.S., Inc.*, 463 U.S. 29, 41-43 (1983) (noting that an agency rule may be arbitrary and capricious where the agency relies on factors it was not supposed to consider); *Nat'l Res. Def. Council*, 355 F.3d at 206 (noting that an agency's reliance on a freeze memorandum from the White House does not free the agency from compliance with the APA).

54. The Department's justifications for promulgating the Delay Rule, moreover, improperly rely on mischaracterizations of the Independent Contractor Rule. As noted above, the Delay Rule mischaracterizes the Independent Contractor Rule as adopting a wholly "new legal standard" for determining employee and independent contractor status under the FLSA. 86 Fed. Reg. 12,535. This description is inapt, and falsely suggests that the Independent Contractor Rule so radically altered the regulatory landscape as to justify its delay and reassessment. To the contrary, the Independent Contractor Rule retains the long-standing "economic reality" test for

determining employee or contractor status, while clarifying and harmonizing the confusing and oft-conflicting methods of analysis used to applied this test across different circuits. 86 Fed. Reg. 1168. To suggest that the codification and clarification of a test applied for decades (albeit inconsistently by courts) is an entirely "new legal standard" is simply incorrect as a matter of fact and law. This mischaracterization of the impact of the Independent Contractor Rule, accordingly, failed to justify the Delay Rule, and instead, made clear that the Delay Rule is arbitrary and capricious. *See Motor Vehicle Mfrs. Ass'n of the U.S., Inc.*, 463 U.S. at 41-43 (noting that an agency rule may be arbitrary and capricious where the agency has "offered an explanation for its decision that runs counter to the evidence before the agency").

55. As another example, the Department incorrectly justified the Delay Rule on the ground that the delay of the Independent Contractor Rule's effective date would not be "disruptive" because the Independent Contractor Rule never went into effect. The Department's reasoning ignores completely the reality of the costs of compliance preparation many businesses have already undertaken in anticipation of the rule becoming effective as scheduled, as well as the continuing cost that the prior lack of clarity continues to wreak on businesses. *See Clean Air Council*, 862 F.3d at 7 ("[T]his one-sided view of final agency action ignores that, by staying the rule's effective date and its compliance duties, [the agency] has determined 'rights or obligations . . . from which legal consequences will flow.'").

56. Thus, in asserting that the Delay Rule will not be disruptive, the Department improperly failed to consider important aspects of the problem and offered unsupported explanations for the Delay Rule. *See Motor Vehicle Mfrs. Ass'n of the U.S., Inc.*, 463 U.S. at 41-43; *Clean Air Council*, 862 F.3d at 7.

57. Due to the Department's failure to justify the Delay Rule in meaningful detail, and because the Delay Rule failed to consider how delaying the Independent Contractor Rule will harm employers and independent contractors, the Department's promulgation of the Delay Rule was arbitrary and capricious, and the Delay Rule should be vacated. Because the promulgation of the Delay Rule was arbitrary and capricious and the Delay Rule is therefore invalid, the Independent Contractor Rule should be declared by this Court to have gone into effect as of March 8, 2021.

## REQUESTS FOR RELIEF

58. Plaintiffs ask that the Court enter a declaratory judgment declaring that the challenged Delay Rule is invalid; and permanently enjoining Defendants from implementing the unlawfully promulgated Delay Rule; and declaring that the Independent Contractor Rule has gone into effect as of March 8, 2021.

59. In addition, because the Department's subsequent NPRM proposing to withdraw the Independent Contractor Rule relied on the unlawfully promulgated Delay Rule for the assertion that the Independent Contractor Rule has not already gone into effect, the NPRM itself must be ordered withdrawn.

60. Accordingly, the Department's promulgation of the Delay Rule and the subsequent NPRM seeking to withdraw the Independent Contractor Rule should be declared to be arbitrary and capricious and must be set aside.

61. The Court should also award Plaintiffs their costs and expenses, including reasonable attorneys' fees under the Equal Access to Justice Act or otherwise; and award such other further and additional relief as is just and proper.

|  |  |
|---|---|
| Dated March 26, 2021 | Respectfully submitted,<br><br>*/s/ Robert Friedman*<br>Robert Friedman<br><br>LITTLER MENDELSON, P.C.<br>A Professional Corporation<br>2001 Ross Avenue, Suite 1500<br>Dallas, TX 75201<br>(214) 880-8100<br>(214) 880-8101 (Fax)<br>rfriedman@littler.com<br><br>Maurice Baskin (*pro hac vice* pending)<br>LITTLER MENDELSON, P.C.<br>815 Connecticut Ave., N.W.<br>Washington, D.C. 20006<br>(202) 202-772-2526<br>mbaskin@littler.com<br><br>ATTORNEYS FOR PLAINTIFFS |