**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS, BEAUMONT DIVISION**

| | | |
|---|---|---|
| COALITION FOR WORKFORCE INNOVATION, ASSOCIATED BUILDERS AND CONTRACTORS OF SOUTHEAST TEXAS; ASSOCIATED BUILDERS AND CONTRACTORS, INC., AND FINANCIAL SERVICES INSTITUTE, INC. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |
| **Plaintiffs** | §<br>§ | **CASE NO. 21-CV- 00130** |
| **vs.** | §<br>§ | |
| MARTY WALSH, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR, in his official capacity, JESSICA LOOMAN, PRINCIPAL DEPUTY ADMINISTRATOR, DIVISION OF WAGE AND HOUR, U.S. DEPARTMENT OF LABOR, in her official capacity, and UNITED STATES DEPARTMENT OF LABOR, | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |
| **Defendants.** | | |

## PLAINTIFFS' AMENDED COMPLAINT FOR DECLARATORY RELIEF

1.      Plaintiffs COALITION FOR WORKFORCE INNOVATION ("CWI") ASSOCIATED BUILDERS AND CONTRACTORS OF SOUTHEAST TEXAS ("ABCSETX"), ASSOCIATED BUILDERS AND CONTRACTORS, INC. ("ABC"), and FINANCIAL SERVICES INSTITUTE, INC. ("FSI") (collectively "Plaintiffs"), by and through their undersigned counsel, for their Amended Complaint against the Defendants,[1] herein state as follows:

---

[1] This Amended Complaint is filed pursuant to F.R.Civ.P. 15(a), allowing a party to "amend its pleading once as a matter of course" prior to service of a responsive pleading. *See also Bibbs v. Early*, 541 F.3d

## NATURE OF THE ACTION

2.     Plaintiffs bring this action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 500 *et seq.*, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. Plaintiffs are challenging a final rule promulgated by the United States Department of Labor ("Department") on March 4, 2021 entitled, "Independent Contractor Status Under the Fair Labor Standards Act (FLSA): Delay of Effective Date," (hereafter the "Delay Rule"), 86 Fed. Reg. 12,535 (Mar. 4, 2021), which purported to postpone the effective date of a final rule titled "Independent Contractor Status Under the Fair Labor Standards Act" ("Independent Contractor Rule"), 86 Fed. Reg. 1,168 (Jan. 7, 2021). In addition, this amended complaint challenges a newly issued Final Rule purporting to withdraw the (improperly) delayed Independent Contractor Rule in its entirety prior to its new effective date, 86 Fed. Reg. 24,303 (May 6, 2021) (the "Withdrawal Rule").

3.     As further explained below, the Delay Rule was issued arbitrarily, capriciously, and contrary to procedures required by law, because the Department failed to (1) provide a meaningful comment period before enacting the Delay Rule; or (2) offer substantive justification for enacting the Delay Rule. The Department enacted the Delay Rule following a comment period of only nineteen days, during which the Department considered only comments discussing postponing the Independent Contractor Rule's effective date. *See* 86 Fed. Reg. 12,535. The minimal justification that the Department provided for enacting the Delay Rule mischaracterized the Independent Contractor Rule as adopting a "new legal standard"  (*see* 86 Fed. Reg. 12,535), when in reality, the Independent Contractor Rule only sought to provide clearer guidance to the regulated community as to the relative importance of the various factors comprising the long-standing

---

267, 275, n.39 (5th Cir. 2008) (allowing parties to be added by amendment pursuant to Rule 15 before a responsive pleading is served).

"economic reality" test for determining employee or contractor status. 86 Fed. Reg. 1,168. The Delay Rule, moreover, ignored completely the reality of the continuing costs of litigation and lack of adequate guidance for businesses attempting to classify workers properly, which the Independent Contractor Rule properly sought to mitigate; and further ignored the compliance preparation many businesses have already undertaken in anticipation of the rule becoming effective as scheduled, when claiming that the Delay Rule "would not be disruptive." 86 Fed. Reg. 12,536.

4.      Within eight days after publication of the Delay Rule purporting to extend the effective date of the Independent Contractor Rule, on March 12, 2021, the Department published its NPRM proposing to "withdraw" the Independent Contractor Rule. 86 Fed. Reg. 14,027. Following another truncated comment period, on May 6, 2021, the Department issued the Withdrawal Rule, improperly claiming authority to withdraw the Independent Contractor Rule because it had not yet gone into effect, with the withdrawal being declared "effective immediately" ("Withdrawal Rule"). 86 Fed. Reg. 24,303, 24,320.

5.      As a combined result of the Delay Rule and the Withdrawal Rule, the Department has arbitrarily and capriciously purported to overturn its previously published Independent Contractor Rule, which had provided much needed guidance and clarification of an issue that the Department itself acknowledged to have become fraught with litigation and inconsistent application of classification standards under the FLSA. In hastily reversing course in such an ill-conceived manner, further described below, the Department has failed to address the severe problems identified in and addressed by the Independent Contractor Rule, as evidenced by the Administrative Record of both rulemaking proceedings. The Delay and Withdrawal Rules have

failed to consider important aspects of the problems which the Independent Contractor Rule properly addressed, and made unexplained findings inconsistent with the Administrative Record.

6.    The Delay Rule and the Withdrawal Rule are both procedurally and substantively flawed. They are based on the improper exercise of political power by the Department in violation of the requirements of the APA, first by unlawfully purporting to  "freeze" a final rule enacted through public notice and comment procedures, and then by purporting to withdraw the Independent Contractor Rule altogether, compounding the violations of the APA. The Department first arbitrarily delayed the effective date of the Independent Contractor Rule without adequate notice and comment, and then arbitrarily claimed that the unlawfully postponed effective date permitted the Rule to be withdrawn in a similarly pre-ordained fashion.

7.    In addition to the numerous procedural flaws in the challenged actions of the Department, both the Delay and Withdrawal Rules suffer from fatal substantive defects under the APA standards. Specifically, the Department failed to give substantive consideration to the important interests of the regulated community in obtaining clear and long overdue guidance for industries and independent jobs that in many instances did not even exist when the Department's standards were last updated. The new Rules also fail to meaningfully address the chaotic litigation environment which the Independent Contractor Rule analyzed in exhaustive detail and sought to clarify.

8.    The new Rules further mischaracterize the Independent Contractor Rule's content and purpose in identifying the core factors at the heart of the economic realities test described by the Supreme Court and many court decisions. Contrary to the Delay and Withdrawal Rules, the Independent Contractors Rule did not create a "new" standard, but rather provided clear and

uniform guidance to businesses and independent workers that will better enable them to avoid misclassifications while providing entrepreneurial opportunities for millions of workers.

9.      The Delay and Withdrawal Rules also ignored or mischaracterized the substantial data supporting the Independent Contractor Rule contained in the Administrative Record, including but not limited to comments and studies submitted for the Record by the Plaintiffs and other business and public policy organizations. Contrary to the Withdrawal Rule, the data set forth in these comments strongly supports the Department's previous recognition of the important economic benefits of independent contracting. In arbitrarily dismissing its own previous findings in that regard, the Department's Withdrawal Rule improperly treats independent contractor status as harmful to workers, notwithstanding the Supreme Court's longstanding recognition that the FLSA was not intended to eliminate independent contractor classifications. *Walling v. Portland Terminal Co.*, 330 U.S. 148, 152 (1947). In addition, the Withdrawal Rule contradicts numerous studies showing that independent workers overwhelmingly prefer remaining independent and do not want to be treated as "employees" where the law does not require such treatment. At the same time, the Withdrawal Rule improperly credits and relies on studies previously found by the Department to be inadequate to justify withdrawing the Independent Contractor Rule.

10.      The Department has thus reversed course without any adequate explanation or identification of new factors which the Department previously failed to consider. Certainly, the Department has identified no factual or legal errors in the Department's thorough discussion of case law identifying the "core factors" applied by many courts within the rubric of the overall "economic realities" test. Instead, the Department now contends without support that its own previous analysis was an "oversimplifi[cation]," and "incomplete." 86 Fed. Reg. 24,309. The Withdrawal Rule fails to cite any authority refuting the Independent Contractor Rule's approach

recognizing the importance of the control and opportunity factors, within the scope of the extant case law applying a "multifactor, holistic analysis." *See, e.g.*, 86 Fed. Reg. 24,310.

11.     The Department's Withdrawal Rule also relies on an erroneous legal standard for interpreting the FLSA, seeking to achieve the broadest remedial purpose regardless of cost. 86 Fed. Reg. 24,309. To the contrary, the Supreme Court requires the FLSA to be interpreted "fairly," not to achieve the broadest remedial purpose, as the Department previously discussed in the Independent Contractor Rule. *Citing Encino Motor Cars v. Navarro,* 138 S. Ct. 1134, 1142 (2018); *see also Catskill Mts. Chptr. of Trout Unlimited, Inc.*, 846 F.3d 492 at 514 (observing that "the Supreme Court has noted, however, 'no law pursues its purpose at all costs'"); *U.S. Dep't of Labor v. Bristol Excavating, Inc*., 935 F.3d 122, 135 (3d Cir. 2019) ("[A] fair reading of the FLSA, neither narrow nor broad, is what is called for."). *See* Independent Contractor Rule, 86 Fed. Reg. 1,200, 1,207-08.

12.     In the Withdrawal Rule, the Department also arbitrarily concluded without adequate explanation that it was "inappropriate to conclude independent contractors generally earn a higher hourly wage than employees do," even though the Department continues to state in the Withdrawal Rule that "[a] simple comparison of mean hourly wages showed that independent contractors tend to earn more per hour than employees do." 86 Fed. Reg. 24,325. Regardless of that finding, the Department's subsequent conclusion that "no statistically significant difference" existed between the pay of independent contractors and employees after "controlling for observable differences" actually supports – and certainly does not refute – the Independent Contractor Rule. 86 Fed. Reg. 24,325.

13.     Equally arbitrary is the Department's conclusion that "[t]he Rule's withdrawal does not impose new compliance costs on the regulated community, because it imposes no new

requirements." This statement ignores the Independent Contractor Rule's intention to *reduce* the costs of compliance under the FLSA, which the Department continues to agree "may be higher under the current interpretation of the FLSA than under the interpretation contained in the Independent Contractor Rule." 86 Fed. Reg. 24,319. But the Department proceeded with the Withdrawal Rule without addressing this critically important factor motivating the Department's adoption of the Independent Contractor Rule in the first place.

14.     The Department further concluded that withdrawing the Independent Contractor Rule would not be disruptive, and that it would expect any costs that regulated parties incurred in preparing for the Independent Contractor Rule to be "minimal," noting that it "put[] businesses on notice" through the (unlawful) Delay Rule "that it was far from certain when the Rule would go into effect, or in what form." 86 Fed. Reg. 24,319.  This finding ignores the illegality of the Delay Rule itself, which businesses were entitled to believe would be vacated in court due to its multiple violations of the APA.

15.     By these and other fatal defects, the Delay and Withdrawal Rules violate the APA's well settled requirement that an agency "must...provide good reasons" for changing policy positions, prior to delaying or rescinding lawfully promulgated rules. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 44; *California v. BLM*, 286 F. Supp. at 1064-65.  Indeed, the agency "must provide … a 'detailed justification' to explain why it is changing course" and an agency may not "casually ignor[e]" its previous findings and "arbitrarily chang[e] course." *California v. BLM*, 286 F. Supp. at 1064, 1068; *see also Connecticut Light & Power Co. v. Nuclear Regulatory Comm.*, 673 F.2d 525, 528 (D.C. Cir. 1982).

16.     An agency's action is arbitrary and capricious where it fails to consider important aspects of the problem and offers explanations for its new rule that run counter to the evidence and

where it relies on factors that it should not have considered. *See Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 41-43 (1983). A change in presidential administration does not license an agency to ignore the requirements of the APA. *See, e.g.*, *Pineros Y Campesinos Unidos*, 293 F. Supp. 3d at 1067; *Nat'l Resources Def. Council*, 894 F.3d at 114.

17.     Because the Delay Rule was arbitrary, capricious, and invalid, this Court should hold that the Independent Contractor Rule went into effect on March 8, 2021. 86 Fed. Reg. 1,168. As a result, the Department's subsequent proposal to withdraw the Independent Contractor Rule before its effective date was also arbitrary and capricious and therefore invalid. *See* 86 Fed. Reg. 14,027. Moreover, in delaying the effective date and then withdrawing the Independent Contractor Rule, the Department has "casually ignor[ed]" its previous findings in the Independent Contractor Rule, failed to address significant aspects of the problems which that Rule sought to remedy, offered explanations for its actions that run counter to the evidence, and otherwise "arbitrarily chang[ed] course." *California v. BLM*, 286 F. Supp. at 1064. For all of these substantive reasons, combined with the procedural defects in the Delay and Withdrawal Rules, the Department's action purporting to delay the Independent Contractor Rule, and then purporting to withdraw it prior to its effective date, must be vacated and enjoined.

## PARTIES

18.     Plaintiff CWI is a coalition that supports choice, flexibility, and opportunity in the modern workforce. CWI represents a diverse array of stakeholders, including those who represent and advocate on behalf of workers, small businesses, start-ups, entrepreneurs, and technology companies. CWI also represents and advocates on behalf of traditional businesses and associations in industries such as media, transportation, distribution, retail, and service. CWI supports modernized guidance on how to define the scope of the independent contractor relationship.

Indeed, CWI supports such guidance as CWI advocates on behalf of students, parents, entrepreneurs, retirees, and other independent workers who prioritize the flexibility and freedom of non-traditional work arrangements. CWI also supports work opportunities for groups such as immigrants, caregivers, veterans, first time small business owners and entrepreneurs, and individuals with criminal backgrounds, who may struggle to find employment in the traditional job market. CWI supports the Independent Contractor Rule because the Independent Contractor Rule provides clarity for both workers and businesses. The delay and withdrawal of the Rule threatens CWI members and their constituents with irreparable harm. Accordingly, CWI has a substantial interest in the Independent Contractor Rule going into effect without delay.

19.     Plaintiff ABCSETX is a non-profit trade association of two hundred construction industry contractors and related firms operating in Southeast Texas and around the country. Headquartered in this judicial district at 2700 N. Twin City Highway in Nederland, Texas, ABCSETX is a separately incorporated affiliate of the national construction industry trade association Plaintiff ABC. Plaintiff ABC represents more than 21,000 member contractors and related firms both in Texas and throughout the country, who share the philosophy that work in their industry should be awarded and performed based on merit, without regard to labor affiliation. ABC and its sixty-nine chapters help members develop people, win work and deliver that work safely, ethically and profitably for the betterment of the communities in which they work. ABC's membership represents all specialties within the U.S. construction industry and is comprised primarily of firms that perform work in the industrial and commercial sectors.

20.     Independent contractors are essential to many of the businesses who ABCSETX and ABC represent, providing specialized skills to many such businesses. Moreover, by utilizing independent contractors, the businesses ABCSETX and ABC represent can allow for

entrepreneurial opportunities and maintain stability during fluctuations of work common to construction. Conflicting court rulings have confused and frustrated efforts of the businesses who ABCSETX and ABC represent to perform services on a cost-efficient basis. These member businesses will be significantly and in some instances irreparably harmed if the Rule is arbitrarily delayed or withdrawn. ABCSETX and ABC supported the Independent Contractor Rule's effort to clarify the independent contractor standard and facilitate a consistent application among courts.

21.     Plaintiff Financial Services Institute, Inc. ("FSI") is a trade association advocating on behalf of the independent financial services industry. More than 80 independent financial services firms and almost 30,000 independent financial advisors are members of FSI. Since 2004, through advocacy, education, and public awareness, FSI has been working to create a healthier regulatory environment for these members so they can provide affordable, objective financial advice to hard-working Americans. FSI's mission is to ensure that all Americans have access to competent and affordable financial advice, products, and services, delivered by a growing network of independent financial advisors, who serve as independent contractors to independent financial services firms.

22.     FSI members, both independent financial advisors and independent financial services firms, base their business model on independent financial advisors operating their own businesses, including obtaining and serving their own clients, developing their own reputations, and establishing their own goodwill. Independent financial advisors are licensed professionals, who are able to tailor their professional services and advice to the needs of their clients. These member businesses are significantly harmed by the arbitrary withdrawal of this Rule. The uncertainty caused by the Rule's withdrawal will damage FSI members' businesses, decreasing their value and causing irreparable harm. The uncertainty caused from the Rule's withdrawal will

also cause resources to be diverted from the core business competency of helping clients with financial planning and investing to defending against inaccurate claims from government agencies that independent financial advisors are misclassified. For these reasons, FSI supported the Independent Contractor Rule's effort to clarify the independent contractor standard and facilitate a consistent application among courts.

23.     As trade associations and organizations representing businesses in Texas and around the country who utilize the skills of independent contractors, and many independent contractors themselves, Plaintiffs each have standing to bring this action on behalf of their members under the three-part test of *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977), because (1) Plaintiffs' members are injured by the Delay and Withdrawal Rules and so would otherwise have standing to sue in their own right; (2) the interests at stake in this case are germane to Plaintiffs' organizational purposes; and (3) neither the claims asserted nor the relief requested requires the participation of Plaintiffs' individual members.

24.     Defendant Marty Walsh is the Secretary of the Department (the "Secretary"). Defendant Jessica Looman is the Principal Deputy Administrator (the "Principal Deputy Administrator") of the Division of Wage and Hour. The Department, and the Wage and Hour Division specifically, published the Independent Contractor Final Rule in the Federal Register, and subsequently published the Delay Rule and the proposal to rescind the Independent Contractor Rule in the Federal Register.  Secretary Walsh and Principal Deputy Administrator Looman are sued in their official capacities and the relief sought extends to all of their successors, employees, officers, and agents.

## JURISDICTION AND VENUE

25.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §

1331 (federal question) because the Plaintiffs' causes of action arise under and allege violations of

federal law, including the APA, 5 U.S.C. §§ 701-706 (APA jurisdiction to review agency actions),

the FLSA, 29 U.S.C. § 201, et seq., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202

(declaratory relief).

26.     This Court has authority to grant declaratory relief pursuant to 28 U.S.C. §§ 2201-

02 and the provisions of the APA, 5 U.S.C. §§ 701-06.

27.     Venue is properly vested in this Court pursuant to 28 U.S.C. § 1391(e) because one

or more of the Plaintiffs are based within the judicial district of this Court.

## FACTUAL BACKGROUND

### A.     The Independent Contractor Rule Under the Fair Labor Standards Act

28.      On September 25, 2020, the Department published a Notice of Proposed

Rulemaking ("NPRM") through which it proposed to amend title 29 of the Code of Federal

Regulations by adding a new part 795 setting forth and clarifying the standards by which the

Department will deem workers to be statutory "employees" or independent contractors under the

FLSA. *See generally* 85 Fed. Reg. 60,600. During the 30-day comment period on the NPRM, the

Department received more than 1,800 comments from interested stakeholders. 86 Fed. Reg. 1,171.

29.     On January 7, 2021, the Department issued the final Independent Contractor Rule.

The Rule included an extensive review of the comments received during the rulemaking process

and offered the Department's reasoned opinion for adopting some changes suggested by

commenters, while declining to adopt others. The Administrative Record included many

comments from employers and independent contractors, including comments from the Plaintiffs

and many of their member companies, describing great uncertainty as to how to classify individuals under the existing morass of federal and state court decisions and conflicting standards. Plaintiffs and other businesses reported significant increases in litigation costs and the adverse impact of the status quo on business growth, business valuation, and innovation, as well as the adverse impact on freelance contractor business opportunities. Many comments applauded the Rule as "balanced and reasonable," and promoting certainty and predictability for both workers and businesses, thus promoting work choice and innovation in the economy.

30.     The Independent Contractor Rule thoroughly analyzed the chaotic state of the FLSA's application to independent contractor classifications, focusing on the longstanding economic reality test under the Act, while sharpening the factors used to update and apply that test to the modern business environment. The Department properly found that "control" over work performance and the opportunity for profit or loss are the most probative of whether workers are economically dependent on another business or are in business for themselves, exhaustively citing cases to this effect. 86 Fed. Reg. 1,168.

31.     The Independent Contractor Rule also included a robust economic analysis of the costs and benefits of the Independent Contractor Rule's standard. *See generally* 86 Fed. Reg. 1,168. As previously proposed, the final Rule amended the Code of Federal Regulations by adding a new part 795, with the expressed intent that regulated parties could rely on this new part "in accordance to section 10 of the Portal-to-Portal Act, 29 U.S.C. 251-262." Section 10 allows parties to establish a good faith defense in FLSA litigation. *See* 86 Fed. Reg. 1,246. The Rule directly impacted Plaintiffs' member companies (and many others) by thus creating a "safe harbor" from some aspects of the confused and conflicting litigation arising under the FLSA in recent years. *Id.*

32.     The Independent Contractor Rule reflects consideration of relevant facts and statutory and other legal considerations as well as the Department's reasoned judgment regarding applicable policy considerations. The Rule also reflects consideration of contrary facts and arguments and includes an exhaustive description and citations to the hundreds of authorities, facts, data and other analyses on which the Department relied. The Department cited numerous commentators with whom it agreed and those with whom it disagreed, and the Department explained its reasoning throughout the Final Rule. *See* 86 Fed. Reg. at 1168-1175, 1178-1196, 1209-1234.

**B.     The Delay Rule**

33.     On January 20, 2021, the Assistant to the President and Chief of Staff, on behalf of President Biden, published a "Memorandum for the Heads of Executive Departments and Agencies" titled "Regulatory Freeze Pending Review" ("Regulatory Freeze Memorandum").  86 Fed. Reg. 7,424.

34.     The Regulatory Freeze Memorandum directed heads of executive departments and agencies to "consider postponing the rules' effective dates for 60 days from the date of this memorandum...for the purpose of reviewing any questions of fact, law, and policy the rules may raise." 86 Fed. Reg. 7,424. The Memorandum cited no statutory authority for such a directive, and there is none. *See, e.g*., *Natural Resources Defense Council v. Abraham*, 355 F.3d 179, 189 (2d Cir. 2004) (holding that "a new administration's simple desire to have time to review, and possibly revise or repeal, its predecessor's regulations falls short" of the APA's requirements.). Nevertheless, the Regulatory Freeze Memorandum further directed heads of executive departments and agencies to "consider opening a 30-day comment period to allow interested parties to provide comments about issues of fact, law, and policy raised by those rules, and consider pending petitions for reconsideration involving such rules." 86 Fed. Reg. 7,424.

35.     Also, on January 20, 2021, the Office of Management and Budget ("OMB") published OMB Memorandum M-21-14, Implementation of Memorandum Concerning Regulatory Freeze Pending Review ("OMB Memorandum").[2] The OMB Memorandum provided guidance to heads of executive departments and agencies, explaining that the decision of whether to postpone the effective date of published rules not yet in effect "should include consideration" of eight specific factors:

> (1) the rulemaking process was procedurally adequate; (2) the rule reflected proper consideration of all relevant facts; (3) the rule reflected due consideration of the agency's statutory or other legal obligations; (4) the rule is based on a reasonable judgment about the legally relevant policy considerations; (5) the rulemaking process was open and transparent; (6) objections to the rule were adequately considered, including whether interested parties had fair opportunities to present contrary facts and arguments; (7) interested parties had the benefit of access to the facts, data, or other analyses on which the agency relied; and (8) the final rule found adequate support in the rulemaking record.

*See id.* Neither the Executive Order nor the OMB Memorandum authorized a delay in a final rule's effective date beyond 60 days after Inauguration Day. *Id.*

36.     On February 5, 2021, the Department proposed to delay the effective date of the Independent Contractor Rule until May 7, 2021, well beyond the 60-day delay authorized by the White House. 86 Fed. Reg. 8,326. The proposal indicated that the sole purpose of the delay was for the Department to "review and consider the rule as the Regulatory Freeze Memorandum and Office of Management and Budget Memorandum M-21-14 contemplate," specifically the "legal, policy, and/or enforcement implications of adopting that standard." 86 Fed. Reg. 8,327.

37.     According to the Department, the Independent Contractor Rule "would adopt a new legal standard for determining employee and independent contractor status under the FLSA." 86

---

[2] *See* OMB Memorandum M-21-14, Implementation of Memorandum Concerning Regulatory Freeze Pending Review, https://www.whitehouse.gov/wp-content/uploads/2021/01/M-21-14-Regulatory-Review.pdf (last visited Mar. 16, 2021).

Fed. Reg. 8,327. The Department further asserted that the proposed delay was reasonable and would not be disruptive since the "independent contractor final rule is not yet effective, and [the Department] has not implemented the rule." 86 Fed. Reg. 8,327.

38.    The NPRM required comments to be submitted by February 24, 2021, *i.e.*, only 19 days from the date of the notice, and stated that the Department "[would] consider only comments about its proposal to delay the rule's effective date." 86 Fed. Reg. 8,327.

39.    On February 22, 2021, Plaintiff ABC filed a request for extension of time to file comments and further protested the Department's restriction on the nature of comments which could be filed. The Department denied the extension request on February 24, 2021. CWI and FSI also filed comments criticizing the Department's truncated comment period and the unauthorized delay of the March effective date.

40.    On March 4, 2021, the Department published the final Delay Rule that Plaintiffs challenge in this Complaint; the Delay Rule stated that "[a]s of March 4, 2021, the effective date of the Independent Contractor Rule...is delayed until May 7, 2021." 86 Fed. Reg. 12,535.

41.    As justification for the Delay Rule, the Department stated that "allowing more time for consideration of the January 2021 [Independent Contractor] Rule is reasonable given the significant and complex issues the Rule raises, including whether the Rule is consistent with the statutory intent to broadly cover workers as employees as well as the costs and benefits of the rule, including its effect on workers." *Id*.   The Department did not address the fact that each of the aforementioned issues had already been considered by the Department prior to adoption of the Independent Contractor Rule. Nor did the Department base its reasons for delaying the effective date of the Rule on the reasons enumerated in OMB Memorandum M-21-14, as set forth above.

42.     As further justification for the Delay Rule, the Department tautologically asserted that "allowing the Independent Contractor Rule to go into effect while the Department undertakes a further review of the Independent Contractor Rule could lead to confusion and uncertainty among workers and businesses in the event that the Department proposes changes to the Independent Contractor Rule following its review." *Id*. As further explained below, this is not a permissible justification for delaying the effective date of a final Rule under the APA.

C.     **The Withdrawal Rule**

43.     On March 12, 2021, within eight days after publication of the Delay Rule purporting to extend the effective date of the Independent Contractor Rule, the Department published a NPRM proposing to "withdraw" the Independent Contractor Rule. 86 Fed. Reg. 14,027. In explaining its decision to withdraw the Independent Contractor Rule, the Department highlighted that the Independent Contractor Rule "ha[d] not yet taken effect" (86 Fed. Reg. 14,031), and that accordingly, the Department "[did] not believe that withdrawing it would be disruptive" (86 Fed. Reg. 14,035).

44.     Though numerous parties asked for extensions of time to file comments, the Department again denied all such requests. As a result the comments received were less substantive than those preceding the Independent Contractor Rule itself and provided no adequate justification for withdrawing the Rule. Nevertheless, on May 6, 2021, the Department issued a final rule withdrawing the Independent Contractor Rule ("Withdrawal Rule") and concluded that it had "good cause to make this rule effectively immediately upon publication." 86 Fed. Reg. 24,303, 24,320.

45.     In the Withdrawal Rule, the Department contended that the Independent Contractor Rule "would have set forth a new articulation of the economic realities test, elevating two factors...as 'core' factors above other factors, and designating them as having greater probative

value." 86 Fed. Reg. 24,308. The Department concluded that "elevating two factors" would conflict with the FLSA, congressional intent, and precedent interpreting the FLSA, because of the FLSA's "breadth in defining the employment relationship." 86 Fed. Reg. 24,309.

46.     The Withdrawal Rule acknowledged comments supporting the Independent Contractor Rule's application of the economic realities test because the Independent Contractor Rule's "weighting of factors would be consistent with the outcomes of prior court decisions applying an economic realities analysis" and "was not intended to alter the economic realities analysis but rather reflected the Department's review of prior court decisions applying the test." 86 Fed. Reg. 24,308.

47.     Nevertheless, the Department rejected the Independent Contractor Rule's exhaustive discussion of case law supporting its analysis as an "oversimplifi[cation]" and as "incomplete" because it "did not provide full documentation or citations for its case law review." 86 Fed. Reg. 24,309. The Withdrawal Rule, however, failed to cite authority contrary to the Independent Contractor Rule's (correct) assessment of the importance of the control and opportunity factors, other than to  repeat generalized statements from case law indicating that courts apply a "multifactor, holistic analysis" and to allege that that the Independent Contractor Rule "replaced the courts' analyses based on the theory that they were actually setting forth an unstated, different analysis." *See, e.g.*, 86 Fed. Reg. 24,310.

48.     The Department's contention that "the Rule did not identify any court opinion that *states* that control and opportunity for profit or loss should be invariably prioritized over other factors," ignores the Independent Contractor Rule's explanation that "[f]ocusing on control and opportunity for profit or loss is further supported by the *results* of federal courts of appeals cases

weighing  the economic reality factors since 1975." *Compare* 86 Fed. Reg. 24,310 (emphasis added), *with* 85 Fed. Reg. 60.619 (emphasis added).

49.     In the Withdrawal Rule, the Department also concluded that it was "inappropriate to conclude independent contractors generally earn a higher hourly wage than employees do," even though the Department acknowledged that "[a] simple comparison of mean hourly wages showed that independent contractors tend to earn more per hour than employees do." 86 Fed. Reg. 24,325 (noting that 2017 data shows that independent contractors earn approximately $3 more per hour than employees).

50.     The Department concluded that "no statistically significant difference" existed between the pay of independent contractors and employees after "controlling for observable differences." 86 Fed. Reg. 24,325. The Department, however, did not explain its process for controlling for "observable differences" and did not explain what the average pay rates of independent contractors and employees were for different groups after it controlled for "observable differences." *See id.*

51.     In discussing the costs associated the Withdrawal Rule, the Department concluded that "[t]he Rule's withdrawal does not impose new compliance costs on the regulated community, because it imposes no new requirements," and further concluded that"[s]ome commenters confused the one-time costs of coming into compliance with the withdrawal of the Rule with the ongoing costs of complying with the FLSA" which the Department agrees "may be higher under the current interpretation of the FLSA than under the interpretation contained in the Independent Contractor Rule." 86 Fed. Reg. 24,319. The Withdrawal Rule entirely failed to address the main problem that the Independent Contractor Rule was enacted to resolve, i.e., the costly, conflicting

and confusing state of litigation over this issue under the morass of standards embraced by different courts.

52.     The Department further concluded that withdrawing the Independent Contractor Rule would not be disruptive, and that it would expect any costs that regulated parties incurred in preparing for the Independent Contractor Rule to be "minimal," noting that it "put[] businesses on notice" through the (unlawful) Delay Rule "that it was far from certain when the Rule would go into effect, or in what form." 86 Fed. Reg. 24,319.

53.     Despite comments raising concerns to the contrary, the Department also concluded that the "Independent Contractor Rule is not currently in effect" and explained that the Department "declines to comment on the ongoing litigation" challenging the Delay Rule. 86 Fed. Reg. 24,319. In response to comments arguing that the Department should await the outcome of this lawsuit challenging the Delay Rule, on which the Withdrawal Rule as proposed was premised, the Department for the first time asserted in contradiction to its own proposed rule that "the Department would withdraw the Independent Contractor Rule even if it were currently in effect." *Id*. at 24,320.

<u>**COUNT ONE**</u>

**(The Delay Rule's Violation of the APA's Notice and Comment Requirements)**

54.     Paragraphs 1 through 53 are incorporated by reference as if set forth fully herein.

55.     The Administrative Procedure Act, 5 U.S.C. § 706(2)(A), directs reviewing courts to "hold unlawful and set aside agency action, findings, and conclusions found to be . . .  arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." The APA generally requires agencies to provide adequate notice, time, and opportunity to interested parties for comment when engaging in rulemaking. 5 U.S.C. § 553. The Department arbitrarily failed to comply with the APA's notice and comment requirements prior to issuing the Delay Rule.

56.     Where an agency enacts a regulation without first complying with the APA's procedural requirements, vacatur is appropriate. Such vacatur applies equally to final agency action unlawfully purporting to pause, delay or rescind a final rule, as has occurred in the present case. *Texas v. United States*, 2021 U.S. Dist. LEXIS 33890, \*\*107-117 (S.D. Tex. Feb. 23, 2021); *see also N.C. Growers' Ass'n*, 702 F.3d at 765 (4th Cir. 2012); *Puget Soundkeeper All. v. Wheeler*, 2018 U.S. Dist. LEXIS 199358, at \*19-20 (W.D. Wash. 2018). Here, the Department failed to provide a meaningful opportunity for comment by unreasonably shortening the time for comments and by restricting the substance of the comments to be submitted.

57.     Specifically, when an agency issues a final rule after engaging in notice and comment procedures, it must "use...the same procedures when [it] amend[s] or repeal[s] a rule." *United States v. Colliot*, 2018 U.S. Dist. LEXIS 83159, at \*6-7 (W.D. Tex. May 15, 2018) (quoting *Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92, 101 (2015)). Indeed, an agency's efforts to comply with the APA's notice and comment requirements "suggest that the agency believed [those notice and comment procedures] to be applicable" and "support[s] the conclusion that 'those procedures [are] applicable." *N.C. Growers' Ass'n v. UFW*, 702 F.3d 755, 765 (4th Cir. 2012) (quoting *Manufactured Housing Inst. v. EPA*, 467 F.3d 391, 399 (4th Cir. 2006)).

58.     The Independent Contractor Rule was issued after extensive notice and comment proceedings. Though the rule contains references to the Department's "interpretation" of the FLSA, the Rule contains numerous hallmarks of "legislative" and "substantive" rulemaking, starting with the use of notice and comment rulemaking itself. *Perez*, 575 U.S. at 96 ("Rules issued through the notice-and-comment process are often referred to as 'legislative rules'...."). The Rule's stated purpose was to add a new part to the Code of Federal Regulations, with the expressed intent that regulated parties could rely on this new part "in accordance to section 10 of the Portal-

- 21-

to-Portal Act, 29 U.S.C. 251-262," which allows parties to establish a good faith defense in FLSA litigation. *See* 86 Fed. Reg. 1,246. The Rule directly impacted Plaintiffs' member companies (and many others) by thus creating a "safe harbor" from some aspects of the confused and conflicting litigation arising under the FLSA in recent years. *Id*.

59.     Where notice and comment procedures are otherwise required, an agency does not have inherent authority to stay a rule as it reconsiders it. *Clean Air Council v. Pruitt*, 862 F.3d 1, 9 (D.C. Cir. 2017). Rather, an agency's action in delaying a rule's effective date is "tantamount to amending or revoking a rule," and accordingly, is not "merely an interim procedural step." *Nat'l Res. Def. Council v. Nat'l Highway Traffic Safety Admin.*, 894 F.3d 95 (2d Cir. 2018); *Clean Air Council*, 862 F.3d at 9.

60.     A delay of a legislative rule's effective date, accordingly, is subject to the APA's notice and comment requirements. *See Open Cmtys. All. v. Carson*, 286 F. Supp. 3d 148, 163 (D.D.C. 2017); *see also Pineros Y Campesinos Unidos v. Pruitt*, 293 F. Supp. 3d 1062, 1067 (N.D. Cal. 2018).

61.     The APA, moreover, specifically provides for agencies to provide at least 30-day notice in promulgating a rule, unless the agency can demonstrate good cause for a shorter period. *See* 5 U.S.C. § 553(d)(3).

62.     Comment periods of less than thirty days may violate the APA. *See Prometheus*, 652 F.3d at 453 (noting 28-day comment period did not provide "sufficient time" for commenters); *see also Nat'l Lifeline Ass'n v. FCC*, 921 F.3d 1102, 1117 (D.C. Cir. 2019) (noting that "[w]hen substantial rule changes are proposed, a 30-day comment period is generally the shortest time period sufficient for interested persons to meaningfully review a proposed rule and provide informed comment"). Even the "freeze" memorandum on which the Department purported to rely

in this case called for agencies to allow a "30-day" comment period prior to delaying final rules. 86 Fed. Reg. 7,424.

63.    Courts have held that reducing the number of days for comments below thirty days requires good cause and substantial exigent circumstances to justify what is otherwise an unreasonably short period of time for public comments. *See, e.g.*, *Omnipoint Corp v. FCC*, 78 F.3d 620, 629 (D.C. Cir. 1996) (finding 15-day comment period permissible only "given the 'urgent necessity for rapid administrative action under the circumstances'"); *Florida Power & Light Co. v. United States*, 846 F.2d 765, 772 (D.C. Cir. 1984) (finding 15-day comment period sufficient where Congress imposed a deadline for agency action).

64.    An agency does not automatically demonstrate good cause for dispensing with the APA's 30-day notice requirement by stating that a rule's effects are limited or that the rule only provides interim relief. *See Tennessee Gas Pipeline Co. v. FERC*, 969 F.2d 1141, 1145 (D.C. Cir. 1992). Indeed, "[w]ere the opposite true, agencies could issue interim rules of limited effect for any plausible reason, irrespective of the degree of urgency. Should this be allowed, the good cause exception would soon swallow the notice and comment rule." *See id.*

65.    Similarly, an agency typically does not show good cause by merely asserting that notice and comment is impractical, unless the agency can point to an "emergency situation[] in which a rule would respond to an immediate threat to safety, such as to air travel, or when immediate implementation of a rule might directly impact public safety." *Nat'l Resources Def. Council*, 894 F.3d at 114. Moreover, "[a] new administration's simple desire to have time to review, and possibly revise or repeal, its predecessor's regulations falls short" of the good cause standard of the APA. *Id., see also Pineros Y Campesinos Unidos*, 293 F. Supp. 3d at 1067.

- 23-

66.     Additionally, under the APA, the "opportunity for comment must be a meaningful opportunity." *Rural Cellular Association v. F.C.C.*, 588 F.3d 1095 (D.C. Cir. 2009). Courts have concluded that the express exclusion of substantive commentary with respect to the underlying subject matter of a proposed suspension violate the APA's notice and comment requirements. *North Carolina Growers' Ass'n, Inc.*, 702 F.3d at 770; *Puget Soundkeeper All.*, 2018 U.S. Dist. LEXIS 199358, at *13-14.

67.     The Department's notice and comment period preceding the Delay Rule did not comport with the APA.  As noted above, the Department set the time period for submission of comments on the Delay Rule at nineteen days. The Department failed to demonstrate good cause to justify such a truncated comment period. Although the Department claimed that "[i]t would not have been practicable to issue an NPRM proposing to delay the Independent Contractor Rule and allow for ample time for public comment on that proposal in time to publish a final rule not less than 30 days before March 8," the failure to propose the Delay Rule more than 30 days before the Rule's effective date was entirely attributable to the Department's own failure to issue the notice more promptly. *See* 86 Fed. Reg. 12,537. The Department failed to point to any emergency situation that justified a finding of impracticality under the APA. *Nat'l Resources Def. Council*, 894 F.3d at 114.

68.     The Department also failed to demonstrate good cause by asserting that "this rulemaking merely implements a 60-day delay of the Independent Contractor Rule," as a rule's "limited nature" does not alone justify an agency's decision to invoke the good cause exception. *Compare* 86 Fed. Reg. 12,537, *with Tennessee Gas Pipeline Co.*, 969 F.2d at 1145 (internal citations omitted).

69.     Moreover, because the Department only considered comments concerning a delay of the Independent Contractor Rule, the scope of the comment period was too restrictive to comport with the APA's requirements to provide a meaningful comment period. *Compare* 86 Fed. Reg. 8327, *with North Carolina Growers' Ass'n, Inc.*, 702 F.3d at 770; *Puget Soundkeeper All.*, 2018 U.S. Dist. LEXIS 199358, at *13-14.

70.     Indeed, the scope of the Delay Rule's comment period should have matched the scope of the Independent Contractor Rule's comment period; yet, the scope of the Delay Rule's comment period was more restrictive. *See Colliot*, 2018 U.S. Dist. LEXIS 83159, at *6-7 (quoting *Perez*, 575 U.S. at 101) (noting that an agency must use the same procedures when enacting and repealing a rule); *compare, e.g.*, 85 Fed. Reg. 60,605, 60,610, 60,615 (seeking comments on various aspects of the Independent Contractor Rule), *with*, 86 Fed. Reg. 8,327 ("[The Department] will consider only comments about its proposal to delay the rule's effective date.") .

71.     Accordingly, due to the short length of the comment period, the Department's failure to show good cause for truncating the comment period, and the comment period's limited scope, the Department's promulgation of the Delay Rule was arbitrary and capricious and the Delay Rule should be vacated. As a further result of the illegality of the Delay Rule, the Withdrawal Rule must likewise be vacated, because it unlawfully purported to withdraw a rule in advance of its effective date, when that rule had already taken effect as a matter of law.

## COUNT II

### (APA and FLSA – Arbitrary and Capricious Delay of the Independent Contractor Rule)

72.     Under the APA, an agency "must...provide good reasons" for suspending a rule. *California v. BLM*, 286 F. Supp. 3d 1054, 1064-65 (N.D. Cal. 2018).  Indeed, the agency "must provide … a 'detailed justification' to explain why it is changing course" and an agency may not "casually ignor[e]" its previous findings and "arbitrarily chang[e] course." *Id.* at 1064, 1068; *see*

*also Connecticut Light & Power Co. v. Nuclear Regulatory Comm.*, 673 F.2d 525, 528 (D.C. Cir. 1982).

73.     An agency's reliance on a presidential chief of staff "freeze" memo does not cure an agency's failure to otherwise comply with the APA's requirements. *Nat'l Res. Def. Council v. Abraham*, 355 F.3d 179, 206 (2d Cir. 2004). Moreover, an agency's action is arbitrary and capricious where it fails to consider important aspects of the problem and offers explanations for its new rule that run counter to the evidence. *See Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 41-43 (1983).

74.     Here, in promulgating the Delay Rule, the Department failed to provide a "detailed justification" for its change in course, relying instead on the vague assertion that the Delay Rule is justified because "questions involving law, fact, or policy have been raised." *Compare* 86 Fed. Reg. 12,535, *with*, *California v. BLM*, 286 F. Supp. 3d at 1064-65. Indeed, while the Department cited comments with which it agreed in promulgating the Delay Rule, the Department still failed to explain its reasoning in promulgating the Delay Rule in the first place. *See Connecticut Light & Power Co.*, 673 F.2d at 528.

75.     The Department relied on comments of those who opposed the Independent Contractor Rule as justification for delaying the effective date in order to allow more consideration of "significant and complex" issues, the Department  Delay Rule, the Department did not address the fact that each of the aforementioned issues had *already been considered* and decided by the Department prior to adoption of the Independent Contractor Rule. The Department therefore acted arbitrarily in asserting as justification for delay the need to consider (again) "whether the Rule is consistent with the statutory intent to broadly cover workers as employees as well as the costs and benefits of the rule, including its effect on workers." *Id.*

76.     The Department's citations to the Regulatory Freeze Memorandum and OMB Memorandum certainly do not justify the Department's decision to change course; indeed, the Department did not analyze the Independent Contractor rule according to the eight factors in the OMB Memorandum before promulgating the Delay Rule. *See Motor Vehicle Mfrs. Ass'n of the U.S., Inc.*, 463 U.S. 29, 41-43 (1983) (noting that an agency rule may be arbitrary and capricious where the agency relies on factors it was not supposed to consider); *Nat'l Res. Def. Council*, 355 F.3d at 206 (noting that an agency's reliance on a freeze memorandum from the White House does not free the agency from compliance with the APA).

77.     The Department's justifications for promulgating the Delay Rule, moreover, improperly relied on mischaracterizations of the Independent Contractor Rule. As noted above, the Delay Rule mischaracterizes the Independent Contractor Rule as adopting a wholly "new legal standard" for determining employee and independent contractor status under the FLSA. 86 Fed. Reg. 12,535. This description is inapt, and falsely suggests that the Independent Contractor Rule so radically altered the regulatory landscape as to justify its delay and reassessment. To the contrary, the Independent Contractor Rule retains the long-standing "economic reality" test for determining employee or contractor status, while clarifying and harmonizing the confusing and oft-conflicting methods of analysis used to applied this test across different circuits. 86 Fed. Reg. 1168. To suggest that the codification and clarification of a test applied for decades (albeit inconsistently by courts) is an entirely "new legal standard" is simply incorrect as a matter of fact and law. This mischaracterization of the impact of the Independent Contractor Rule, accordingly, failed to justify the Delay Rule, and instead, made clear that the Delay Rule is arbitrary and capricious. *See Motor Vehicle Mfrs. Ass'n of the U.S., Inc.*, 463 U.S. at 41-43 (noting that an

agency rule may be arbitrary and capricious where the agency has "offered an explanation for its decision that runs counter to the evidence before the agency").

78.     As another example, the Department incorrectly justified the Delay Rule on the ground that the delay of the Independent Contractor Rule's effective date would not be "disruptive" because the Independent Contractor Rule never went into effect. The Department's reasoning ignores completely the reality of the costs of compliance preparation many businesses have already undertaken in anticipation of the rule becoming effective as scheduled, as well as the continuing cost that the prior lack of clarity continues to wreak on businesses. *See Clean Air Council*, 862 F.3d at 7 ("[T]his one-sided view of final agency action ignores that, by staying the rule's effective date and its compliance duties, [the agency] has determined 'rights or obligations . . . from which legal consequences will flow.'").

79.     Thus, in asserting that the Delay Rule will not be disruptive, the Department improperly failed to consider important aspects of the problem and offered unsupported explanations for the Delay Rule. *See Motor Vehicle Mfrs. Ass'n of the U.S., Inc.*, 463 U.S. at 41-43; *Clean Air Council*, 862 F.3d at 7.

80.     Due to the Department's failure to justify the Delay Rule in meaningful detail, and because the Delay Rule failed to consider how delaying the Independent Contractor Rule will harm employers and independent contractors, the Department's promulgation of the Delay Rule was arbitrary and capricious, and the Delay Rule should be vacated. Because the promulgation of the Delay Rule was arbitrary and capricious and the Delay Rule is therefore invalid, the Independent Contractor Rule should be declared by this Court to have gone into effect as of March 8, 2021. The Withdrawal Rule's purported effort to withdraw the Rule prior to its effective date failed,

because the Independent Contractor Rule was unlawfully delayed and should be declared to have

gone into effect on March 8 as a matter of law.

## COUNT III

### (APA and FLSA – Arbitrary and Capricious Withdrawal of the Independent Contractor Rule)

81.     As noted above, under the APA, an agency "must...provide good reasons" for

changing policy positions, including rescissions of rules. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at

44; *California v. BLM*, 286 F. Supp. at 1064-65.  Indeed, the agency "must provide … a 'detailed

justification' to explain why it is changing course" and an agency may not "casually ignor[e]" its

previous findings and "arbitrarily chang[e] course." *California v. BLM*, 286 F. Supp. at 1064,

1068; *see also Connecticut Light & Power Co. v. Nuclear Regulatory Comm.*, 673 F.2d 525, 528

(D.C. Cir. 1982).

82.     An agency's action is arbitrary and capricious where it fails to consider important

aspects of the problem and offers explanations for its new rule that run counter to the evidence and

where it relies on factors that it should not have considered. *See Motor Vehicle Mfrs. Ass'n of the*

*U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 41-43 (1983); *FCC v. Fox TV Stations,*

*Inc.*, 556 U.S. 502, 515 (2009). The agency must also consider the reliance interests of the

regulated parties. *Encino Motorcars v. Navarro*, 136 S. Ct. 2117 (2125-26 (2016).

83.     A change in presidential administration does not license an agency to ignore the

requirements of the APA. *See, e.g.*, *Pineros Y Campesinos Unidos*, 293 F. Supp. 3d at 1067; *Nat'l*

*Resources Def. Council*, 894 F.3d at 114.

84.     Here, in rejecting the Independent Contractor Rule, the Department has "casually

ignor[ed]" its previous findings in the Independent Contractor Rule and "arbitrarily chang[ed]

course." *California v. BLM*, 286 F. Supp. at 1064.

85.     At the outset, the Withdrawal Rule mischaracterizes the Independent Contractor Rule's content and purpose in identifying the core factors at the heart of the economic realities test described by the Supreme Court and many court decisions. Contrary to the Withdrawal Rule, the Independent Contractors Rule did not create a "new" standard, but rather provided clear and uniform guidance to businesses and independent workers that will better enable them to avoid misclassifications while providing entrepreneurial opportunities for millions of workers.

86.     In arbitrarily dismissing its own previous findings in that regard, the Department's Withdrawal Rule improperly treats independent contractor status as inherently harmful to workers, contrary to the Supreme Court's longstanding recognition of independent contractor status under the FLSA. *See Walling v. Portland Terminal Co*., 330 U.S. 148, 152 (1947). In addition, the Withdrawal Rule contradicts numerous studies showing that independent workers overwhelmingly prefer remaining independent and do not want to be treated as "employees" where the law does not require such treatment. At the same time, the Withdrawal Rule improperly credits and relies on studies previously found by the Department to be inadequate to justify withdrawing the Independent Contractor Rule.

87.     The Department has thus reversed course without any adequate explanation or identification of new factors which the Department previously failed to consider. Certainly, the Department has identified no factual or legal errors in the Department's thorough discussion of case law identifying the "core factors" applied by many courts within the rubric of the overall "economic realities" test. Instead, the Department now contends without support that its own previous analysis was an "oversimplifi[cation]," and "incomplete." 86 Fed. Reg. 24,309. To the contrary, the Withdrawal Rule fails to cite any authority refuting the Independent Contractor Rule's exhaustive approach. The Independent Contractor Rule properly recognized the importance

of the control and opportunity factors, within the scope of the extant case law applying a "multifactor test." *See, e.g.*, 86 Fed. Reg. 1,175.

88.     The Department's Withdrawal Rule also relies on an erroneous legal standard for interpreting the FLSA, seeking to achieve the broadest remedial purpose regardless of cost. 86 Fed. Reg. 24,309. To the contrary, the Supreme Court requires the FLSA to be interpreted "fairly," not to achieve the broadest remedial purpose, as the Department previously discussed in the Independent Contractor Rule. *Citing Encino Motor Cars v. Navarro,* 138 S. Ct. 1134, 1142 (2018); *see also Catskill Mts. Chptr. of Trout Unlimited, Inc.*, 846 F.3d 492 at 514 (observing that "the Supreme Court has noted, however, 'no law pursues its purpose at all costs'"); *U.S. Dep't of Labor v. Bristol Excavating, Inc*., 935 F.3d 122, 135 (3d Cir. 2019) ("[A] fair reading of the FLSA, neither narrow nor broad, is what is called for."). *See* Independent Contractor Rule, 86 Fed. Reg. 1,200, 1,207-08.

89.     In the Withdrawal Rule, the Department also offers explanations for withdrawing the Independent Contractor Rule that run counter to the evidence before it. The Withdrawal Rule specifically ignores or mischaracterizes the substantial data supporting the Independent Contractor Rule contained in the Administrative Record, including but not limited to comments and studies submitted for the Record by the Plaintiffs and other business and public policy organizations. Contrary to the Withdrawal Rule, the data set forth in these comments strongly supports the Department's previous recognition of the important economic benefits of independent contracting.

90.     In the Withdrawal Rule, the Department also arbitrarily concluded without adequate explanation that it was "inappropriate to conclude independent contractors generally earn a higher hourly wage than employees do," even though the Department continues to state in the Withdrawal Rule that "[a] simple comparison of mean hourly wages showed that independent

contractors tend to earn more per hour than employees do." 86 Fed. Reg. 24,325. Regardless of that finding, the Department's subsequent conclusion that "no statistically significant difference" existed between the pay of independent contractors and employees after "controlling for observable differences" actually supports – and certainly does not refute – the Independent Contractor Rule. 86 Fed. Reg. 24,325.

91.     Equally arbitrary is the Department's conclusion that "[t]he Rule's withdrawal does not impose new compliance costs on the regulated community, because it imposes no new requirements." This statement ignores the Independent Contractor Rule's intention to *reduce* the costs of compliance under the FLSA, which the Department continues to agree "may be higher under the current interpretation of the FLSA than under the interpretation contained in the Independent Contractor Rule." 86 Fed. Reg. 24,319. But the Department proceeded with the Withdrawal Rule without addressing this critically important factor motivating the Department's adoption of the Independent Contractor Rule in the first place.

92.     The Department further concluded that withdrawing the Independent Contractor Rule would not be disruptive, and that it would expect any costs that regulated parties incurred in preparing for the Independent Contractor Rule to be "minimal," noting that it "put[] businesses on notice" through the (unlawful) Delay Rule "that it was far from certain when the Rule would go into effect, or in what form." 86 Fed. Reg. 24,319.  This finding ignores the illegality of the Delay Rule itself, which businesses were entitled to believe would be vacated in court due to its multiple violations of the APA. The Department's unsupported statement that it would have withdrawn the Independent Contractor Rule even if it had taken effect, Id. at 24,320, contradicts the NPRM and further evidences the arbitrariness of the entire process by which the Department has withdrawn the Rule.

93.     Despite the Department's contentions to the contrary, it has also ignored the costs that regulated parties have incurred, both from the Withdrawal Rule itself and from the continuing costs that regulated parties will experience from the Department's current interpretation of the FLSA. *See Clean Air Council*, 862 F.3d at 7.  The Withdrawal Rule fails to meaningfully address the reliance interests of business and independent contractors who were depending on the Independent Contractor Rule to mitigate the chaotic litigation environment which the Rule analyzed in exhaustive detail. *See Encino Motorcars v. Navarro*, 136 S. Ct. 2117, 2125-26 (2016).

94.     The Withdrawal Rule also ignored the substantial data supporting the Independent Contractor Rule contained in the Administrative Record, including comments submitted for the Record by the Plaintiffs and other organizations. Contrary to the Withdrawal Rule, the data set forth in these comments and many other similar comments contained in the Administrative Record of each of the rulemaking proceedings, strongly supports the Department's previous recognition of the important economic benefits of independent contracting in favor of a new, mistaken view by the Department that independent contractor status is harmful to workers who studies have shown overwhelmingly prefer remaining independent and do not want to be treated as "employees."

95.     In concluding that regulated parties have suffered "minimal" costs due to the Withdrawal Rule because the Department put regulated parties on notice through the Delay Rule that "it was far from certain when the [Independent Contractor] Rule would go into effect, or in what form," the Department improperly ignores the fact that the Delay Rule itself violated the APA as set forth above and because of that violation cannot operate to delay the effective date of the Rule beyond March 8, 2021.

96.     Finally, in contending for the first time in the final Withdrawal Rule that it would have "withdrawn" the Independent Contractor even if it had been allowed to go into effect, the Department contradicted both the Delay Rule and its own stated basis for the Withdrawal Rule, and cited no authority for its claimed authority to withdraw a rule after it has taken effect.

## REQUESTS FOR RELIEF

97.     Plaintiffs ask that the Court enter a declaratory judgment declaring that the challenged Delay Rule and Withdrawal Rule are both invalid; and permanently enjoining Defendants from implementing the unlawfully promulgated Delay Rule and Withdrawal Rule; and declaring that the Independent Contractor Rule has gone into effect as of March 8, 2021.

98.     In addition, because the Department's subsequent NPRM proposing to withdraw the Independent Contractor Rule relied on the unlawfully promulgated Delay Rule for the assertion that the Independent Contractor Rule has not already gone into effect, the Withdrawal Rule itself must be ordered withdrawn.

99.     Further, independent of the Delay Rule, the Department's Withdrawal Rule should be declared to be violative of the APA and FLSA and accordingly vacated, and the Independent Contractor Rule should remain in effect.

100.     The Court should also award Plaintiffs their costs and expenses, including reasonable attorneys' fees under the Equal Access to Justice Act or otherwise; and award such other further and additional relief as is just and proper.

Dated May 13, 2021                Respectfully submitted,

*/s/ Robert F. Friedman*
Robert F. Friedman

LITTLER MENDELSON, P.C.
2001 Ross Avenue, Suite 1500
Dallas, TX 75201
(214) 880-8100
(214) 880-8101 (Fax)
rfriedman@littler.com

Maurice Baskin (*pro hac vice* pending)
LITTLER MENDELSON, P.C.
815 Connecticut Ave., N.W.
Washington, D.C. 20006
(202) 202-772-2526
mbaskin@littler.com

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

       I hereby certify that on May 13, 2021, the foregoing Amended Complaint was electronically filed in the above and foregoing with the Clerk of the Court, utilizing the ECF system, which sent notification of such filing to the following counsel for Defendants:

       Alexis J. Echols
       U.S. Department of Justice
       1100 L Street NW; Room 11304
       Washington, D.C. 20005
       alexis.j.echols@usdoj.gov

*/s/Robert F. Friedman*
Robert F. Friedman

4826-9491-0185.1 / 108796-1002