**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS, BEAUMONT DIVISION**

| | |
|---|---|
| COALITION FOR WORKFORCE INNOVATION, *et al.*, | |
| Plaintiffs, | Case No. 21-CV-00130 |
| v. | |
| WALSH, *et al.*, | |
| Defendants. | |

## DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT
## AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Defendants, Martin J. Walsh, sued in his official capacity as Secretary of Labor, Jessica Looman, sued in her official capacity as Principal Deputy Administrator of the Department of Labor's Wage and Hour Division, and the Department of Labor, hereby cross-move for summary judgment pursuant to Federal Rule of Civil Procedure 56 and respond to the motion for summary judgment filed by Plaintiffs, Coalition for Workforce Innovation, Associated Builders and Contractors of Southeast Texas, Associated Builders and Contractors, Inc., and Financial Services Institute, Inc. (ECF No. 18), as set forth in the incorporated brief.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

STATEMENT OF THE ISSUES........................................................................................... 3

RESPONSE TO PLAINTIFFS' STATEMENT OF THE ISSUES......................................... 3

COUNTER-STATEMENT OF UNDISPUTED MATERIAL FACTS .................................. 3

     I.     The Independent Contractor Rule ............................................................ 3

     II.     The Delay Rule ....................................................................................... 10

     III.    The Withdrawal Rule ............................................................................. 12

RESPONSE TO PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS ....... 13

STANDARD OF REVIEW ................................................................................................ 13

ARGUMENT ................................................................................................................... 15

     I.     The Department Did Not Violate the APA's Notice-and-Comment
               Requirements for the Delay Rule .......................................................... 15

               A.     The Delay Rule Is Exempt from Notice-and-Comment Procedures ........ 15

               B.     Even If the Delay Rule Were Subject to the APA's Rulemaking
                       Requirements, the Department Properly Promulgated It Under
                       the APA ............................................................................................. 19

     II.     The Delay Rule Was Reasonable.......................................................... 24

     III.    The Withdrawal Rule Was Also Reasonable.......................................... 28

CONCLUSION................................................................................................................ 36

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Acosta v. Off Duty Police Services, Inc.*,
  915 F.3d 1050 (6th Cir. 2019) ........................................................................ 29, 32

*Acosta v. Paragon Contractors Corp.*,
  884 F.3d 1225 (10th Cir. 2018) ............................................................................. 29

*Am. Bioscience, Inc. v. Thompson*,
  269 F.3d 1077 (D.C. Cir. 2001) ............................................................................. 13

*Am. Fed'n of Gov't Emps. v. Block*,
  655 F.2d 1153 (D.C. Cir. 1981) ............................................................................. 19

*Am. Hosp. Ass'n v. Bowen*,
  834 F.2d 1037 (D.C. Cir. 1987) ............................................................................. 15

*Batterton v. Marshall*,
  648 F.2d 694 (D.C. Cir. 1980) ............................................................................... 15

*Baystate Alternative Staffing, Inc. v. Herman*,
  163 F.3d 668 (1st Cir. 1998) ................................................................................. 29

*Brock v. Superior Care, Inc.*,
  840 F.2d 1054 (2d Cir. 1988) ............................................................................. 9, 29

*Cabais v. Egger*,
  690 F.2d 234 (D.C. Cir. 1982) ............................................................................... 15

*Catholic Health Initiatives v. Sebelius*,
  617 F.3d 490 (D.C. Cir. 2010) ............................................................................... 15

*Connecticut Light & Power Co.*,
  673 F.2d ................................................................................................................ 25

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
  140 S. Ct. 1891 (U.S. 2020) .................................................................................. 25

*Dole v. Snell*,
  875 F.2d 802 (10th Cir. 1989) ............................................................................. 9, 29

*Donovan v. Brandel*,
     736 F.2d 1114 (6th Cir. 1984)............................................................. 9, 33

*Donovan v. DialAmerica Mktg., Inc.*,
     757 F.2d 1376 (3d Cir. 1985)............................................................. 8, 29

*Dufrene v. Browning-Ferris, Inc.*,
     207 F.3d 264 (5th Cir. 2000)................................................................ 16

*Ellington v. City of East Clevela*nd,
     689 F.3d 549 (6th Cir. 2012)................................................................. 9

*Encino Motorcars, LLC v. Navarro*,
     138 S. Ct. 1134 (2018) .................................................................... 32, 33

*ExxonMobil Corp. v. Mnuchin*,
     430 F. Supp. 3d 220 (N.D. Tex. 2019)................................................... 13

*FCC v. Prometheus Radio Project*,
     141 S. Ct. 1150 (U.S. 2021) ................................................................. 25

*Florida Power & Light Co. v. United States*,
     846 F.2d 765 (D.C. Cir. 1984) ............................................................. 23

*Goldberg v. Whitaker House Co-op, Inc.*,
     366 U.S. 28 (1961) ............................................................................... 4

*Hickey v. Arkla Indus., Inc.*,
     699 F.2d 748 (5th Cir. 1983)........................................................ 5, 9, 30

*Hobbs v. Petroplex Pipe & Constr., Inc.*,
     946 F.3d 824 (5th Cir. 2020)............................................................. 6, 29

*Hoctor v. U.S. Dep't of Agric.*,
     82 F.3d 165 (7th Cir. 1996)................................................................. 17

*Karlson v. Action Process Service & Private Investigation, LLC*,
     860 F.3d 1089 (8th Cir. 2017)............................................................. 29

*Little Sisters of the Poor Saints Peter and Paul Home v. Pennsylvania*,
     140 S. Ct. 2367 (U.S. 2020) ................................................................ 25

iii

*Marshall Cnty. Health Care Auth. v. Shalala*,
    988 F.2d 1221 (D.C. Cir. 1993) ........................................................................... 13

*Martin v. Selker Bros.*,
    949 F.2d 1286 (3d Cir. 1991) ............................................................................. 29

*McFeeley v. Jackson Street Entertainment, LLC*,
    825 F.3d 235 (4th Cir. 2016) ........................................................................... 8, 29

*Morrison v. Int'l Programs Consortium, Inc.*,
    253 F.3d 5 (D.C. Cir. 2001) ............................................................................ 9, 29

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ........................................................................................ 14, 25

*N.C. Growers Ass'n, Inc. v. United Farm Workers*,
    702 F.3d 755 (4th Cir. 2012) ............................................................................. 24

*Nationwide Mut. Ins. Co. v. Darden*,
    503 U.S. 318 (1992) .................................................................................. 4, 10, 30

*Northwest Airlines, Inc. v. Goldschmidt*,
    645 F.2d 1309 (8th Cir. 1981) ........................................................................... 23

*Oceana, Inc. v. Locke*,
    831 F. Supp. 2d 95 (D.D.C. 2011) .................................................................... 14

*Omnipoint Corp v. FCC*,
    78 F.3d 620 (D.C. Cir. 1996) .................................................................. 19, 21, 22

*Parrish v. Premier Directional Drilling, L.P.*,
    917 F.3d 369 (5th Cir. 2019) ..................................................................... *passim*

*Perez v. Mortgage Bankers Ass'n*,
    575 U.S. 92 (2015) .................................................................................... *passim*

*Pub. Citizen, Inc. v. FAA*,
    988 F.2d 186 (D.C. Cir. 1993) ........................................................................... 18

*Puget Soundkeeper Alliance v. Wheeler*,
    No. C15-1342, 2018 WL 6169196 (W.D. Wash. Nov. 26, 2018) ........................ 24

*Razak v. Uber Techs., Inc.*,
   951 F.3d 137 (3rd Cir. 2020) ............................................................................. 8

*Real v. Driscoll Strawberry Associates, Inc.*,
   603 F.2d 748 (9th Cir. 1979) ........................................................................... 29

*Rutherford Food Corp. v. McComb*,
   331 U.S. 722 (1947) ........................................................................................... 4

*San Luis Obispo Mothers for Peace v. U.S. Nuclear Regulatory Com'n*,
   789 F.2d 26 (D.C. Cir. 1986) ........................................................................... 14

*Scantland v. Jeffry Knight, Inc.*,
   721 F.3d 1308 (11th Cir. 2013) ....................................................................... 29

*Sec'y of Labor v. Lauritzen*,
   835 F.2d 1529 (7th Cir. 1987) ..................................................................... 9, 29

*Shalala v. Guernsey Mem. Hosp.*,
   514 U.S. 87 (1955) ..................................................................................... 14, 15

*Sierra Club v. EPA*,
   939 F.3d 649 (5th Cir. 2019) ........................................................................... 14

*Texas Ass'n of Mfrs. v. United States Consumer Prod. Safety Comm'n*,
   989 F.3d 368 (5th Cir. 2021) ........................................................................... 25

*Tony & Susan Alamo Found. v. Sec'y of Labor*,
   471 U.S. 290 (1985) ........................................................................................... 4

*U.S. v. Gavrilovic*,
   551 F.2d 1099 (8th Cir. 1977) ......................................................................... 20

*U.S. v. Silk*,
   331 U.S. 704 (1947) ..................................................................................... 4, 29

*U.S. v. Rosenwasser*,
   323 U.S. 360 (1945) ......................................................................................... 32

*Usery v. Pilgrim Equip't Co., Inc.*,
   527 F.2d 1308 (5th Cir. 1976) ........................................................................... 9

*Walling v. Portland Terminal Co.*,
330 U.S. 148 (1947) ................................................................................. 10

**Statutes**

5 U.S.C. § 553 ............................................................................................ 2

5 U.S.C. § 553(b) ...................................................................................... 18

5 U.S.C. § 553(b)(A) ................................................................................ 14

5 U.S.C. § 553(b)(B) ................................................................................ 19

5 U.S.C. § 553(c) ...................................................................................... 18

5 U.S.C. 553(d)(3) .................................................................................... 19

5 U.S.C. § 706 ............................................................................................ 3

5 U.S.C. § 706(2)(A) ................................................................................ 24

29 U.S.C. § 203(d) ..................................................................................... 4

29 U.S.C. § 203(e)(1) ............................................................................. 3, 8

29 U.S.C. § 203(g) ..................................................................................... 4

29 U.S.C. § 211(c) ..................................................................................... 3

29 U.S.C. § 213(a)(1) ............................................................................... 16

29 U.S.C. § 202 ........................................................................................ 32

29 U.S.C. § 206(a) ..................................................................................... 3

29 U.S.C. § 207(a) ..................................................................................... 3

29 U.S.C. § 259 ........................................................................................ 17

**Other Authorities**

29 C.F.R. 780.330(a)-(b) ........................................................................... 5

29 C.F.R. 788.16(a) ................................................................................... 5

29 C.F.R. 795 ........................................................................................... 16

76 Fed. Reg. 48789 ...................................................................................................... 19

85 Fed. Reg. 60600 ........................................................................................................ 5

86 Fed. Reg. 1168 ................................................................................................. *passim*

86 Fed. Reg. 7424 ...................................................................................................... 10

86 Fed. Reg. 8326 ................................................................................................. *passim*

86 Fed. Reg. 12535 ...................................................................................... 12, 19, 26

86 Fed. Reg. 14027 ................................................................................................. 8, 12

86 Fed. Reg. 24303 ............................................................................................... *passim*

## INTRODUCTION

In this dispute, Plaintiffs take aim at the Department of Labor's decisions to postpone the effective date of a final rule entitled "Independent Contractor Status Under the Fair Labor Standards Act" ("Independent Contractor Rule") and to ultimately withdraw that rule. Specifically, Plaintiffs allege the Department violated the Administrative Procedure Act ("APA") because: (1) the comment period for the proposed delay of the effective date of the rule that was less than 30 days; (2) delaying the effective date of the rule was arbitrary, capricious, or otherwise contrary to law; and (3) withdrawal of the rule was arbitrary, capricious, or otherwise contrary to law.  All three claims fail because the Department was justified in taking each action and provided meaningful explanations demonstrating the reasonable basis for each action. Accordingly, the Court should deny Plaintiffs' motion for summary judgment and enter summary judgment in favor of Defendants.

On January 20, 2021, the Department received a Presidential directive to review and consider delaying the effective dates of all regulations that had been published in the Federal Register but had not yet taken effect in order to review any questions of fact, law, and policy the subject rule may raise.  The Independent Contractor Rule fell within the purview of this directive.  The Independent Contractor Rule required additional review by the Department because it would have provided a novel interpretation of which workers are independent contractors and thus not employees under the Fair Labor Standards Act ("FLSA") that would have significantly departed from the Department's longstanding interpretation.  Moreover, although purporting to provide more clarity for worker classification, the rule would have given rise to industry confusion and judicial skepticism because its standard for classification has never been used by the Department or any court, nor is it supported by the FLSA.

The Department's decision to delay the effective date of the Independent Contractor Rule was rational, as the Department required the time to provide an additional opportunity to review and consider the legal, policy, and enforcement implications of the novel standards adopted by the rule.  Further, the Department did not violate the APA by utilizing a condensed comment period for the proposed rule delaying the Independent Contractor Rule's effective date or by making the rule effective immediately upon publication.  As an initial matter, the agency was not required to invite comment on the rule because the rule was interpretive and thus not subject to the APA's notice-and-comment procedural requirements.  But even if the requirements applied, the APA does not required a 30-day comment period.  In any event, the condensed comment period and the immediate effective date were permissible under the APA's "good cause" exception.  The agency had good cause for a condensed comment period because it was necessary to permit sufficient time for meaningful review of comments and to make the final rule immediately effective upon publication so that it would be effective *before* the Independent Contractor Rule took effect.  Similarly, the decision to delay the Independent Contractor Rule itself was reasonable, as it allowed the Department an additional opportunity for review and consideration of the rule before the rule took effect.

Lastly, the Department's decision to ultimately withdraw the Independent Contractor Rule was also reasonable.  The Department clearly set forth its rationale for withdrawal in the Federal Register, explaining the agency's principal concerns that the rule's unprecedented legal standard was improper and undermined the overall purpose of the FLSA, which protects a broad scope of workers.  Plaintiffs' mere disagreement with the agency's conclusion is insufficient to sustain their claims.

## STATEMENT OF THE ISSUES

1.      Whether the Department of Labor violated the procedural requirements of the APA, 5 U.S.C. § 553, in promulgating the Delay Rule.

2.      Whether the Department's decision to delay the effective date of the Independent Contractor Rule was arbitrary, capricious, or otherwise contrary to law in violation of the APA, 5 U.S.C. § 706.

3.      Whether the Department's decision to withdraw the Independent Contractor Rule was arbitrary, capricious, or otherwise contrary to law in violation of the APA, 5 U.S.C. § 706.

## RESPONSE TO PLAINTIFFS' STATEMENT OF THE ISSUES

Pursuant to Local Rule CV-56(b), Defendants respond to Plaintiffs' statement of the issues, Plaintiffs' Motion for Summary Judgment and Brief in Support ("Pls.' Br.") (ECF No. 18) at 2, as follows:

1.      The Department's decision to delay the effective date of the Independent Contractor Rule did not violate the APA's notice-and-comment requirements, nor was it otherwise arbitrary, capricious, or contrary to law.

2.      The Department's decision to withdraw the Independent Contract Rule was not arbitrary, capricious, or otherwise contrary to law in violation of the APA.

## COUNTER-STATEMENT OF UNDISPUTED MATERIAL FACTS[1]

## I.      The Independent Contractor Rule

1.      The FLSA requires covered employers to pay non-exempt employees at least the federal minimum wage, and 1.5 times the employee's regular rate for hours worked in excess of

---

[1] All counter-statements of undisputed material facts are based upon the Administrative Record in this case, of which excerpts cited by the parties in their briefing on motions for summary judgment will be included in a joint appendix to be filed on October 25, 2021, pursuant to the Court's First Amended Scheduling Order (ECF No. 21).

40 hours in a workweek.  29 U.S.C. §§ 206(a) & 207(a).  The FLSA also mandates that employers keep certain records regarding employees.  29 U.S.C. § 211(c).  Employees are generally defined as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), and employers are defined to include "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d).  To "employ" is defined to include "to suffer or permit to work."  29 U.S.C. § 203(g).  The FLSA does not define independent contractors, who are outside the broad scope of workers covered as employees by the Act. *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729 (1947).

2.  In determining whether a worker is an employee or an independent contractor, the Supreme Court explained long ago that consideration of a set of factors is appropriate, but that no single proffered factor is dispositive, nor are the factors that it listed exhaustive.  *U.S. v. Silk*, 331 U.S. 704, 716 (1947) ("degrees of control, opportunities for profit or loss, investment in facilities, permanency of relation and skill required in the claimed independent operation" are important in the determination but "[n]o one is controlling nor is the list complete"); *Rutherford Food*, 331 U.S. at 729-730 (considering many of the same factors as well as the fact that the workers were "part of the integrated unit of production," and reiterating that "the determination of the relationship does not depend on such isolated factors but rather upon the circumstances of the whole activity").  In the years since the Court set forth these principles, it has steadfastly rejected common law control as the determining factor under the FLSA and has remained committed to determining employment under the FLSA holistically by analyzing the economic realities of the working relationship.  *Goldberg v. Whitaker House Co-op, Inc.*, 366 U.S. 28, 32-33 (1961) (the economic reality rather than technical concepts is the test of employment) (citing *Silk* and *Rutherford Food*); *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 301

4

(1985) (the test of employment under the FLSA is one of economic reality) (citing *Goldberg*);

*Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 325-26 (1992) (traditional agency law

principles do not apply to the FLSA) (citing *Rutherford Food*).

3.      Consistent with *Silk* and *Rutherford* and their progeny, all the federal courts of

appeals have followed the economic realities test; none has allowed a single factor or two to

predominate over others.[2]  The Department has likewise adhered to a multi-factor economic

realities test to determine if an employment relationship exists, deferring to legal precedent and

the guiding principles to not apply factors mechanically or assign any factor a predetermined

weight.  *See, e.g.*, U.S. Department of Labor, *Fact Sheet 13: Employment Relationship Under the*

*Fair Labor Standards Act (FLSA)*, July 2008, https://www.dol.gov/agencies/whd/fact-sheets/13-

flsa-employment-relationship.  The Department of Labor's Wage and Hour Division ("WHD")

has issued regulations providing very similar guidance to distinguish between employees and

independent contractors in specific industries.  *See* 29 C.F.R. 780.330(a)-(b); 29 C.F.R.

788.16(a).

4.      In Fall 2020, the Department issued a notice of proposed rulemaking ("NPRM")

and request for comments for the Independent Contractor Rule.  85 Fed. Reg. 60600 (Sept. 25,

2020).  The Department then published the final Independent Contractor Rule with an original

effective date of March 8, 2021.  86 Fed. Reg. 1168 (Jan. 7, 2021).  The rule would have made a

number of significant changes to the Department's longstanding analysis of who is an employee

under the FLSA or an independent contractor, including adding a new part to Title 29 of the

---

[2] *See* Independent Contractor Status Under the Fair Labor Standards Act; Withdrawal ("Withdrawal Rule"), 86 Fed. Reg. 24309 (May 6, 2021) (discussing "voluminous" case law supporting principle that no factor should be assigned a predetermined or invariable weight in the analysis, including the Fifth Circuit's statement that it "'is impossible to assign to each of these factors a specific and invariably applied weight'") (citing *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 380 (5th Cir. 2019) (quoting *Hickey v. Arkla Indus., Inc.*, 699 F.2d 748, 752 (5th Cir. 1983)).

Code of Federal Regulations (Part 795) and introducing a generally applicable analysis, *id.* at 1175, that neither the Department nor any court had ever applied.  Although the rule reiterated the longstanding principle that a worker is an employee if, as a matter of economic reality, the worker is economically dependent on the employer for work as opposed to an independent contractor who is "in business for him- or herself," *id.* at 1168, the rule would have made significant changes to how the economic reality test is applied.  *Id.* at 1179-1205.

5.      The Department and most courts apply the following six economic reality factors to determine whether a worker is an employee under the FLSA or an independent contractor: (1) the extent to which the services rendered are an integral part of the employer's business; (2) the permanency of the relationship; (3) the worker's investment in facilities and equipment; (4) the nature and degree of the employer's control; (5) the worker's opportunities for profit and loss; and (6) the amount of initiative or special skill exercised by the worker, judgment, or foresight in open market competition with others required for the success of the worker.  U.S. Department of Labor, *Fact Sheet 13: Employment Relationship Under the Fair Labor Standards Act (FLSA)*, July 2008, https://www.dol.gov/agencies/whd/fact-sheets/13-flsa-employment-relationship; *see also* Independent Contractor Status Under the Fair Labor Standards Act (FLSA): Withdrawal ("Withdrawal Rule"), 86 Fed. Reg. 24303, 24304-24305 (May 6, 2021) (discussing case law and Department guidance).[3]

6.      By contrast, the Independent Contractor Rule would have applied five economic reality factors in a novel fashion.  Despite claiming that "the inquiry into economic dependence

---

[3] Fact Sheet 13 identifies a seventh factor (the degree of independent business organization and operation), and the Fifth Circuit does not include the integral factor in its list of factors although it sometimes considers the factor nonetheless given that the factors are nonexhaustive.  *See Hobbs v. Petroplex Pipe & Constr., Inc.*, 946 F.3d 824, 836 (5th Cir. 2020).

is conducted by applying several factors, with no one factor being dispositive," 86 Fed. Reg. 1168, the rule would have designated two of the five factors as "core" factors and accorded them more weight than other factors, meaning that, if they both indicated the same classification, that was a "substantial likelihood" that the classification was the correct classification.  *Id.* at 1171. The two core factors would have been: (1) the nature and degree of control over the work and (2) the worker's opportunity for profit or loss.  The three remaining, secondary factors would have been: (1) the amount of skill required for the work, (2) the degree of permanence of the working relationship between the worker and the employer, and (3) whether the work is part of an integrated unit of production.  *Id*.

7.     The narrowing of the economic reality factors would have eliminated several facts, considerations, and concepts long-engrained in the analysis applied by the courts and the agency.  For example, the "integral" factor would have been supplanted by the "integrated unit of production" factor, which would have cast aside whether the work is central to the employer's business, and would have instead posited that "[w]hat matters is the extent of such integration rather than the importance or centrality of the functions performed."  *Id*. at 1195.  This is a markedly different assessment that would have excluded relevant facts that courts have considered for decades.

8.     In addition, the opportunity for profit or loss factor would have "weighed towards the individual being an independent contractor to the extent the individual has an opportunity to earn profits or incur losses based on his or her exercise of initiative (such as managerial skill or business acumen or judgment) *or* management of his or her investment in or capital expenditure on, for example, helpers or equipment or material to further his or her work.'"  *Id*. at 1179.  This change would have shifted the analysis towards independent contractor status if a worker either

7

exercised managerial skill or had a capital investment, "therefore eras[ing] from the analysis in certain situations the worker's lack of capital investment or lack of managerial skill—both of which are longstanding and well-settled indicators of employee status."  86 Fed. Reg. 14033 (Mar. 12, 2021).

9.      Even more glaringly, the Independent Contractor Rule would have been a significant departure from the longstanding existing analysis because it explicitly reneges on its own promise to adhere to Supreme Court instruction that the factors should not be exhaustive, and no single factor should be dispositive.  Indeed, immediately following such assurance, the rule explained, "[h]owever, the two core factors listed in paragraph (d)(1) of this section are the *most probative* as to whether or not an individual is an economically dependent "employee," 29 U.S.C. 203(e)(1), and each therefore typically carries greater weight in the analysis than any other factor."  86 Fed. Reg. 1246 (emphasis added).  The rule added that "other factors are less probative and, in some cases, may not be probative at all, and thus are highly unlikely, either individually or collectively, to outweigh the combined probative value of the two core factors." *Id*.

10.     This would have been the functional equivalent of elevating two factors because those two factors would have often been determinant, directly contradicting longstanding guidance and case law to consider the totality of circumstances and avoid universally predominating any given factor, including case law in this circuit.  *See* 86 Fed. Reg. 14032 n. 94 (citing *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 143 (3rd Cir. 2020) (citing *Donovan v. DialAmerica Mktg., Inc.*, 757 F.2d 1376, 1382 (3d Cir. 1985); *McFeeley v. Jackson Street Entertainment, LLC*, 825 F.3d 235, 241 (4th Cir. 2016) ("While a six-factor test may lack the virtue of providing definitive guidance to those affected, it allows for flexible application to the

myriad different working relationships that exist in the national economy. In other words, the court must adapt its analysis to the particular working relationship, the particular workplace, and the particular industry in each FLSA case."); *Ellington v. City of East Clevela*nd, 689 F.3d 549, 555 (6th Cir. 2012) ("This 'economic reality' standard, however, is not a precise test susceptible to formulaic application. . . . It prescribes a case-by-case approach, whereby the court considers the 'circumstances of the whole business activity.'") (quoting *Donovan v. Brandel*, 736 F.2d 1114, 1116 (6th Cir. 1984)); *Morrison v. Int'l Programs Consortium, Inc.*, 253 F.3d 5, 11 (D.C. Cir. 2001) ("No one factor standing alone is dispositive and courts are directed to look at the totality of the circumstances and consider any relevant evidence."); *Dole v. Snell*, 875 F.2d 802, 805 (10th Cir. 1989) ("It is well established that no one of these factors in isolation is dispositive; rather, the test is based upon a totality of the circumstances."); *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1059 (2d Cir. 1988) ("No one of these factors is dispositive; rather, the test is based on a totality of the circumstances. . . . Since the test concerns the totality of the circumstances, any relevant evidence may be considered, and mechanical application of the test is to be avoided."); *Sec'y of Labor v. Lauritzen*, 835 F.2d 1529, 1534 (7th Cir. 1987) ("Certain criteria have been developed to assist in determining the true nature of the relationship, but no criterion is by itself, or by its absence, dispositive or controlling."); *Hickey v. Arkla Indus., Inc.*, 699 F.2d 748, 752 (5th Cir. 1983) ("It is impossible to assign to each of these factors a specific and invariably applied weight."); *Usery v. Pilgrim Equip't Co., Inc.*, 527 F.2d 1308, 1311-12 (5th Cir. 1976) ("No one of these considerations can become the final determinant, nor can the collective answers to all of the inquiries produce a resolution which submerges consideration of the dominant factor—economic dependence.")).

11.     Given that the rule's control factor discussed "both the individual worker's control and the potential employer's control," 86 Fed. Reg. 1180, rather than only the employer's control, even greater weight would have been afforded to certain facts that may not have been relevant to whether the worker was in business for him/herself, and the analysis would likely have tilted in favor of classification as an independent contractor.

12.     Regardless how the Independent Contractor Rule's control factor would have weighed control by the worker over the work and control by the employer, elevating control as one of the two "core" factors that are predeterminedly more probative would have been contrary to the Supreme Court's rulings that the scope of employment under the FLSA is broader than under the common law control analysis. *Walling v. Portland Terminal Co*., 330 U.S. 148, 150 (1947) ("But in determining who are 'employees' under the Act, common law employee categories or employer-employee classifications under other statutes are not of controlling significance.").  The outsized importance of control in determining independent contractor status under the rule raised substantial concerns that the rule was incompatible with the Act's text and governing case law, particularly given the broad definitions of employment under the FLSA as compared to other federal statutes.  *See Darden*, 503 U.S. at 326 (noting the "striking breadth" of the FLSA's definition of "employ").

## II.     The Delay Rule

13.     On January 20, 2021, immediately following the change in administrations, the White House issued a memorandum directing federal agencies to consider delaying the effective date of rules that had been published in the Federal Register, but had not yet taken effect ("Regulatory Freeze Memorandum").  86 Fed. Reg. 7424 (Jan. 28, 2021).  The purpose of this "freeze" was to allow agencies to review any questions of fact, law, and policy that these rules

10

may have raised.  *Id.*  For rules delayed for this purpose, agencies were encouraged to open a

comment period to allow interested parties to provide comments about issues of fact, law, and

policy raised.  *Id.*

14.     The same day, the Office of Management and Budget ("OMB") published OMB

Memorandum M-21-14 to provide guidance on implementing the Regulatory Freeze

Memorandum.  OMB Memorandum M-21-14, Implementation of Memorandum Concerning

Regulatory Freeze Pending Review ("OMB Memorandum"), https://www.whitehouse.gov/wp-

content/uploads/2021/01/M-21-14-Regulatory-Review.pdf.  The OMB Memorandum explained

that pursuant to the Regulatory Freeze Memorandum, agencies "should consider postponing the

effective dates for 60 days and reopening the rulemaking process" for "rules that have not yet

taken effect and about which questions involving law, fact, or policy have been raised."  *Id.*

15.     On February 5, 2021, consistent with the Regulatory Freeze Memorandum and

the OMB Memorandum, the Department issued an NPRM proposing a 60-day delay of the

Independent Contractor Rule's effective date.  86 Fed. Reg. 8326 (Feb. 5, 2021).  The

Department explained that, as contemplated by the Regulatory Freeze Memorandum, delaying

the effective date of the Independent Contractor Rule would give the Department sufficient time

to review and consider questions of fact, law, and policy raised by the rule.  *Id.*  Such

consideration was particularly prudent given the Independent Contractor Rule would have been

the first generally applicable regulation distinguishing independent contractors from employees

under the FLSA and would have adopted novel legal standards for making that distinction.  *Id.*

The Department further explained that a 60-day delay would not be disruptive, given that the

Independent Contractor Rule had not yet taken effect.  *Id.*

16.     The Delay NPRM sought comments before February 24, 2021, a comment period

of nineteen days.  *Id.*  The Department elected to have a compressed comment period to allow

for comments and permit meaningful review of its proposed delay before the Independent

Contractor Rule was scheduled to go into effect on March 8, 2021.  As explained in the final

Delay Rule, "[h]ad the Department allowed for a longer comment period, the Independent

Contractor Rule would have taken effect before the delay could begin, which would have

defeated the purpose of this rule and caused additional confusion for regulated entities."

Independent Contractor Status Under the Fair Labor Standards Act (FLSA): Delay of Effective

Date (Delay Rule) 86 Fed. Reg. 12535, 12537 (Mar. 4, 2021).

17.     On March 4, 2021, after considering comments, the Department issued the final

rule delaying the Independent Contractor Rule's effective date for 60 days.  *Id.*

**III.     The Withdrawal Rule**

18.     After delaying the Independent Contractor Rule's effective date to reconsider its

potential legal and policy impact, the Department issued an NPRM proposing to withdraw the

rule.  Independent Contractor Status Under the Fair Labor Standards Act; Withdrawal

("Withdrawal NPRM") 86 Fed. Reg. 14027 (Mar. 12, 2021).  The deadline for comments was

April 12, 2021 – 31 days after publication of the proposal.  *Id.*  The Department received and

reviewed 1,010 comments in response to the proposal.

19.     Based upon its own analysis and its review of the comments submitted in

response to the Withdrawal NPRM, the Department determined that the Independent Contractor

Rule significantly departed from existing legal precedent and WHD guidance concerning who is

an employee under the FLSA.  86 Fed. Reg. 24303.  The Department expressed concerns both

with the rule's divergence from the totality-of-the-circumstances approach applied by courts that

12

balances numerous factors to distinguish between independent contractors and employees, as well as the negative policy implications of the rule's more limited and narrow analysis resulting in more workers being classified as independent contractors under the FLSA.  *Id.* at 24307-18. The Department also considered the fact that the Independent Contractor Rule ran contrary to the Act's purpose, as its text and legislative history make clear, to broadly cover workers as employees under the Act.  *Id.*

20.     In consideration of the substantial legal and policy ramifications of the Independent Contractor Rule, the Department finalized the Withdrawal Rule on May 6, 2021. 86 Fed. Reg. 24303.

**RESPONSE TO PLAINTIFFS'
STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Local Rule CV-56(b), Defendants respond to Plaintiffs' statement of undisputed material facts, Pls.' Br. at 4-14, as follows:

Defendants admit Plaintiffs' statements of material fact in paragraphs 1, 2, 7, 13, 14, 16, and 18.  Defendants deny Plaintiffs' statements of material fact in each remaining paragraph to the extent the exhibits cited do not support the statements' characterizations thereof; otherwise, Defendants admit.

**STANDARD OF REVIEW**

Typically, a court may grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When assessing a summary judgment motion in an APA case, the motion "stands in a somewhat unusual light, in that the administrative record provides the complete factual predicate for the court's review." *ExxonMobil Corp. v. Mnuchin*, 430 F. Supp.

13

3d 220, 228 (N.D. Tex. 2019).  "[T]he district judge sits as an appellate tribunal."  *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001).  "The entire case on review is a question of law, and only a question of law."  *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993).  "In such a case, summary judgment merely serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review."  *Oceana, Inc. v. Locke*, 831 F. Supp. 2d 95, 106 (D.D.C. 2011).

The APA permits courts to "set aside an agency action that is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'"  *Sierra Club v. EPA*, 939 F.3d 649, 663 (5th Cir. 2019) (quoting 5 U.S.C. § 706(2)(A)).  An action is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *Id.* at 663-64 (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).  The arbitrary and capricious standard is "narrow" and courts "ensure that the agency examined the relevant data and articulated a satisfactory explanation for its actions."  *Id.* at 664.  "Moreover, the party challenging an agency's action as arbitrary and capricious bears the burden of proof."  *San Luis Obispo Mothers for Peace v. U.S. Nuclear Regulatory Com'n*, 789 F.2d 26, 37 (D.C. Cir. 1986).

14

**ARGUMENT**

I.   **The Department Did Not Violate the APA's Notice-and-Comment Requirements for the Delay Rule**

A.   **The Delay Rule Is Exempt from Notice-and-Comment Procedures**

Among the APA's exceptions to notice-and-comment rulemaking is an exception for interpretive rules.  5 U.S.C. § 553(b)(A).  An "interpretive rule" "advise[s] the public of the agency's construction of the statutes and rules which it administers."  *Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92, 97 (2015) (quoting *Shalala v. Guernsey Mem. Hosp.*, 514 U.S. 87, 99 (1955) (internal quotation marks omitted)).  An interpretive rule must also be logically related to the statute it interprets.  *See Catholic Health Initiatives v. Sebelius*, 617 F.3d 490, 494-95 (D.C. Cir. 2010); *Cabais v. Egger*, 690 F.2d 234, 239 (D.C. Cir. 1982).  The APA's interpretive rule exception to notice-and-comment rulemaking allows agencies to advise the public of the agency's construction of the statutes and the rules which it administers without the time and expense of "cumbersome proceedings."  *Am. Hosp. Ass'n v. Bowen*, 834 F.2d 1037, 1045 (D.C. Cir. 1987); *Batterton v. Marshall*, 648 F.2d 694, 705 (D.C. Cir. 1980); *cf. Guernsey Mem'l Hosp.*, 514 U.S. at 99.

"This exemption of interpretive rules from the notice-and-comment process is categorical."  *Mortgage Bankers Ass'n*, 575 U.S. at 100.  Courts lack the authority to impose any greater obligation upon an agency than that which is set forth in the APA's minimum requirements.  *Id.* at 102.  Moreover, where an agency is not required to use notice-and-comment procedures to issue an initial interpretive rule, it is also not required to use those procedures when it amends or repeals that interpretive rule.  *Id.* at 101.

Plaintiffs cannot establish that the Department violated the APA's notice-and-comment requirements with respect to the Delay Rule because the rule was exempt from those requirements.  The Independent Contractor Rule was an interpretive rule and did not require the use of notice-and-comment procedures in the first instance.  Consequently, the agency's mere delay of the effective date of the Independent Contractor Rule via the Delay Rule similarly did not require the use of notice-and-comment procedures.

The Independent Contractor Rule is an interpretive rule because it purported to interpret the FLSA's definitions relevant to which workers have a covered employment relationship under the Act.  The Rule went no further than to provide the Department's interpretation of the relevant statute.  Indeed, the Department is not empowered to promulgate legislative rules, which would be subject to the APA's notice-and-comment requirements, concerning whether a worker is an employee under the FLSA or an independent contractor.  The FLSA does not delegate to the Department such rulemaking authority, although it expressly delegates legislative rulemaking authority to the Department in other areas.  *See, e.g.*, 29 U.S.C. § 213(a)(1).  Plaintiffs do not cite any provision of the FLSA whereby the Department would have had authority to issue the Independent Contractor Rule as a legislative rule, and Plaintiffs' failure to base their argument that the rule was legislative in the relevant statutory text is fatal.

Moreover, the fact that the Independent Contractor Rule was to be published at 29 C.F.R. 795 reveals the interpretive nature of the rule.  The Independent Contractor Rule would have been placed in 29 C.F.R. subchapter B, entitled "Statements of General Policy or Interpretation Not Directly Related to Regulations," among WHD's other interpretive rules.  Further, the introductory provision of the rule refers to itself as an "interpretation" of the FLSA no fewer than seven times.  86 Fed. Reg. 1246 (29 C.F.R. 795.100).  And the rule's preamble

16

acknowledged that the rule was interpretive on numerous occasions.  For example, on the very first page, the rule states that the Department "is revising its interpretation of independent contractor status under the Fair Labor Standards Act . . . ."  86 Fed. Reg. 1168.  In response to comments questioning the Department's authority to issue the rule, the Department did not claim that the rule was a legislative rule or cite any FLSA provision giving it legislative rulemaking authority; instead, the Department properly relied on its general authority to provide interpretations of statutes that it administers and enforces.  86 Fed. Reg. 1176.[4]

Moreover, Plaintiffs' argument that the Independent Contractor Rule was a legislative rule because it may have provided employers with a good faith defense (*i.e.* "safe harbor" defense) under the FLSA, *see* Pls.' Br. at 15, is unavailing.  The FLSA provides that employers may avoid liability under the FLSA if they show a good faith reliance on a written ruling or *interpretation* from WHD.  29 U.S.C. § 259 (emphasis added).  This provision expressly contemplates that WHD may "modif[y] or rescind[]" those interpretations.  *Id*.  Thus, there are no rights or entitlements to interpretations that satisfy the defense.  The fact that the Independent Contractor Rule references the defense does not make it a legislative rule.  WHD often issues subregulatory guidance, such as opinion letters, that satisfy the defense, and a typical opinion letter ends with a reference to the defense.[5]  This does not transform the opinion letters, which do not go through notice-and-comment, into legislative rules.

Finally, the mere use of notice-and-comment in promulgating a rule, even if not required, does not automatically convert an interpretive rule into a legislative one subject to the

---

[4] Among other cases, the Department cited *Dufrene v. Browning-Ferris, Inc.*, 207 F.3d 264, 267 (5th Cir. 2000) ("By granting the Secretary of Labor the power to administer the FLSA, Congress implicitly granted him the power to interpret.").  86 Fed. Reg. 1176.
[5] *See*, *e.g.*, https://www.dol.gov/sites/dolgov/files/WHD/opinion-letters/FLSA/2020_11_30_18_FLSA.pdf.

requirements of the APA's rulemaking procedures.  *See Hoctor v. U.S. Dep't of Agric.*, 82 F.3d 165, 171-72 (7th Cir. 1996) ("[T]here is nothing in the Act to forbid an agency to use the notice and comment procedure in cases in which it is not *required* to do so. . . . It is for the courts to say whether it is the kind of rule that is valid only if promulgated after notice and comment."). Though Plaintiffs suggest otherwise, Pls.' Br. at 15, they cite no authority for such a novel proposition.  Plaintiffs similarly suggest that when an agency promulgates an interpretive rule using notice and comment procedures even though it was not required to have done so, it is thereby forever required to use those same notice and comment procedures to modify or withdraw the interpretive rule.  *Id.* (citing *Mortgage Bankers*, 575 U.S. at 101).  Plaintiffs misread *Mortgage Bankers*.  In concluding that that an agency did not have to use notice and comment procedures to withdraw an interpretive rule, the Court explained that "[b]ecause an agency is not required to use notice-and-comment procedures to issue an initial interpretive rule, it is also not required to use those procedures when it amends or repeals that interpretive rule." *Mortgage Bankers*, 575 U.S. at 101.  Though the original interpretive rule that was being withdrawn had not been issued using notice and comment procedures, *id.* at 98-99, nothing in the Court's conclusion implies that the result would have been different had the original interpretive rule been issued with notice and comment.  Indeed, *Mortgage Bankers* states that the "exemption of interpretive rules from the notice-and-comment process is categorical."  575 U.S. at 100.

Because the Independent Contractor Rule is an interpretive rule, the Delay Rule that followed (which served the sole purpose of delaying the Independent Contractor Rule's effective date) is also an interpretive rule.  As such, it is also exempt from the APA's notice-and-comment requirements.  Plaintiffs' assertion that the Delay Rule violated these requirements by providing

18

a condensed comment period or by making the rule effective immediately is therefore beside the point.

>    **B.**    **Even If the Delay Rule Were Subject to the APA's Rulemaking Requirements, the Department Properly Promulgated It Under the APA**

If (unlike here) an agency intends to establish a binding legislative rule, it must follow the APA's notice-and-comment procedures.  5 U.S.C. § 553(b).  Notice-and-comment procedures were meant to be relatively straightforward and not especially onerous.  *See Pub. Citizen, Inc. v. FAA*, 988 F.2d 186, 197 (D.C. Cir. 1993).  The agency must provide notice of the proposed rule and give interested persons an opportunity to participate in the rulemaking.  5 U.S.C. § 553(c). The APA does not specify any minimum time period for such a comment period.  *Id.*  The Administrative Conference of the United States has recommended that agencies generally provide a 30-day comment period for regulations that are not "significant regulatory actions," but allows for the possibility of shorter comment periods, stating: "When agencies, in appropriate circumstances, set shorter comment periods, they are encouraged to provide an appropriate explanation for doing so."  Adoption of Recommendations, 76 Fed. Reg. 48789, 48791 (Aug. 1, 2011).

In addition, generally, the APA requires agencies to publish a substantive rule at least 30 days before the effective date of the rule.  5 U.S.C. 553(d)(3).  However, the Delay Rule did not make any substantive changes to the Independent Contractor Rule or otherwise itself impose any new compliance obligations on the regulated community; instead, the Delay Rule merely delayed the Independent Contractor Rule's effective date.  86 Fed. Reg. 12537.

Regardless, there are two "good cause" exceptions to these requirements—one enabling agencies to bypass the notice and comment requirement entirely, 5 U.S.C. § 553(b)(B), and the other (which applies in this case) to provide an effective date less than 30 days after the rule's

19

publication, 5 U.S.C. § 553(d)(3).  While these two provisions are often analyzed similarly,

"what may constitute good cause to forgo one notice requirement may not satisfy the other."

*Am. Fed'n of Gov't Emps. v. Block*, 655 F.2d 1153, 1156 (D.C. Cir. 1981).  And this makes

sense, as the two exceptions concern different degrees of deviation from the APA's procedural

requirements.

In determining whether the good cause exception is satisfied (in a case concerning the

exception to the requirement that there be a 30-day period between the rule's publication and its

effective date), "an agency should 'balance the necessity for immediate implementation against

principles of fundamental fairness which require that all affected persons be afforded a

reasonable amount of time to prepare for the effective date of its ruling.'"  *Omnipoint Corp v.*

*FCC*, 78 F.3d 620, 629 (D.C. Cir. 1996) (citing *U.S. v. Gavrilovic*, 551 F.2d 1099, 1105 (8th Cir.

1977)).  Legislative history indicates that § 553(d)(3) was not meant to "unduly hamper agencies

from making a rule effective immediately or at some time earlier than 30 days," but also was not

meant to propagate arbitrary exercise of the good cause exception.  *Gavrilovic,* 551 F.2d at 1104

(citing 92 Cong. Rec. 5650-51 (1946) (remarks of Cong. Walter)).  Legitimate grounds for

invoking the exception include "urgency of conditions coupled with demonstrated and

unavoidable limitations of time," with the primary consideration being "convenience or necessity

of the people affected."  *Id*.

As discussed in the Delay Rule NPRM, following the Regulatory Freeze Memorandum,

the Department needed an "additional opportunity to review and consider the rule as the

Regulatory Freeze Memorandum and OMB Memorandum M-21-14 contemplate."  86 Fed.

Reg. 8327.  The Independent Contractor Rule was set to significantly change the longstanding

standard for determining under the FLSA who is an employee or independent contractor—a

20

significant enough change to warrant the precise review and consideration advised by the aforementioned memoranda.  Further, that significant change was set to take effect imminently. Thus, the circumstances surrounding the Delay Rule gave rise to a need for a compressed timeline for the comment period and good cause for an immediate effective date for the Delay Rule—the unavoidable time limitation presented by the fast-approaching effective date of the Independent Contractor Rule and the significance of the prospective changes presented a clear urgency.

The Department did not have the option of a longer comment period or an effective date 30 days after publication.  The Department's primary purpose in issuing the Delay Rule NPRM was to ensure the new legal standard was consistent with the purpose of the FLSA, Supreme Court and appellate court precedent, and prior WHD guidance regarding who is an employee under the FLSA.  Absent the compressed timeline, the Independent Contractor Rule would have taken effect before the Delay Rule could be finalized and before the Department had sufficient opportunity to consider the validity of the Independent Contractor Rule—putting the proverbial cart before the horse.  Consequently, the regulated community may have unnecessarily expended resources to modify their operations in light of the Independent Contractor Rule, while the rule was still subject to further review which might (and in fact did) result in changes or ultimate withdrawal.

Rather than potentially creating confusion about worker protections and employer obligations, the Department determined that there was good cause to simply condense the comment period for the Delay Rule and make the rule effective immediately upon publication. By doing so, the Department undoubtedly shielded the labor market from the uncertainty and increased costs that would have certainly emerged during the review period.  On the other hand,

regulated parties were not denied "a reasonable amount of time to prepare," *Omnipoint*, 78 F.3d

at 629, because the delayed effective date of the Independent Contractor Rule merely kept the

status quo in place and did not require any adjustments to their business practices.

   Furthermore, the Department acted promptly in publishing the Delay Rule NPRM

following the Presidential directive and, given the date of publication, did not act unreasonably

in providing for a 19-day comment period.  On January 20, 2021, the Department received the

two memoranda prompting its review of the Independent Contractor Rule—the Regulatory

Freeze Memorandum and OMB Memorandum M-21-14.  Plaintiffs suggest that the Department

should have acted immediately following the change of Administration to issue the Delay NPRM

in order to provide a 30-day comment period, Pls.' Br. at 18, but ignore the practical limitations

confronting a new Administration taking stock of pending rules and new Departmental

leadership evaluating the Regulatory Freeze and OMB memoranda, as well as the time that it

takes to draft, review, and publish an NPRM.  Indeed, providing a full 30-day comment period

would have required the Department to have issued the Delay Rule NPRM no later than

January 25, 2021—a mere three business days after the issuance of the Regulatory Freeze and

OMB memoranda—assuming that the Department set aside the same 12 days to review

comments.

   As it was, the Department published the Delay Rule NPRM just sixteen days after receipt

of those memoranda.  In order to meaningfully review comments and make a decision before the

Independent Contractor Rule's March 8 effective date, the comment period could not run for 30

days.  Indeed, had the agency provided for a 30-day comment period, the deadline for

submissions would have ended on March 7, 2021—just one day before the Independent

Contractor Rule's effective date.  This would have left the agency with no time to review

comments and factor them into its decision-making in advance of the effective date the Delay

Rule sought to delay.  The shorter comment period therefore actually allowed interested persons

meaningful participation in the rulemaking process because it provided time for the Department

to consider their comments.  Because commenters were only commenting on the proposed 60-

day delay of the Independent Contractor Rule's effective date, and because many commenters

had commented on the Independent Contractor Rule's NPRM and were therefore already

familiar with the rule, a shorter comment period was adequate.

Despite their attempt to minimize the urgent nature and practical considerations of the

circumstances facing the Department, Plaintiffs concede that comment periods shy of 30 days are

justified by such circumstances.  *See* Pls.' Br. at 17 (citing *Omnipoint Corp*, 78 F.3d at 629

(finding 15-day comment period permissible only "given the 'urgent necessity for rapid

administrative action under the circumstances'"); *Florida Power & Light Co. v. United States*,

846 F.2d 765, 772 (D.C. Cir. 1984) (finding 15-day comment period sufficient where Congress

imposed a deadline for agency action)).  In fact, comment periods as short as seven days have

been accepted under the same exception.  *See Northwest Airlines, Inc. v. Goldschmidt*, 645 F.2d

1309, 1320 (8th Cir. 1981).  Moreover, the OMB Memorandum specifically provided that

agencies "should provide at least 30 days for comment *where the effective date of the rule is not

imminent*,"  allowing for shorter comment periods where a rule, as was the case here, was to go

into effect soon.  OMB Memorandum at 2 (emphasis added).

Plaintiffs also claim that the Delay Rule was procedurally deficient because the

Department did not permit or consider comments regarding the substance of the Independent

Contractor Rule or a prospective rule withdrawing it.  Pls.' Br. at 16.  However, the scope of the

comments requested regarding the proposed Delay Rule was consistent with the scope of the

proposed rule.  The Department solicited for consideration "comments about its proposal to delay the rule's effective date," 86 Fed. Reg. 8327, because all that the Department was proposing was a delay of the Independent Contractor Rule's effective date; the Withdrawal Rule NPRM was the proper vehicle for consideration of comments regarding the substance of the Independent Contractor Rule and whether to withdraw it.  The Department need not have "consider[ed] comments covering the same topics that the Department considered in enacting the Independent Contractor Rule," as Plaintiffs assert, Pls.' Br. at 16.  Considering comments regarding the substance of the Independent Contractor Rule or its possible withdrawal would have been premature and pretextual.

Plaintiffs argue that comments addressing withdrawal should have been considered, pointing to cases in which a delay was found to be tantamount to withdrawal.  Pl.'s Mot. at 16.  That is not the case here, where the Department issued just one 60-day delay, the Delay Rule suggested that future actions were coming, and the Department published the Withdrawal NPRM just eight days after the Delay Rule.  *Cf. Puget Soundkeeper Alliance v. Wheeler*, No. C15-1342, 2018 WL 6169196 at *1 (W.D. Wash. Nov. 26, 2018) (vacating five-year suspension of a rule); *N.C. Growers Ass'n, Inc. v. United Farm Workers*, 702 F.3d 755, 759-61 (4th Cir. 2012) (vacating nine-month suspension of agricultural rule).  Unlike cases in which an agency delays a regulation in order to effect a substantive regulatory change, here the Department acted expeditiously such that the delay was truly a delay and nothing more.

## II.   The Delay Rule Was Reasonable

Plaintiffs also challenge the Delay Rule on the grounds that the rule itself was arbitrary and capricious, in violation of the APA. This challenge fares no better than Plaintiffs' procedural claims.  The Department provided a detailed justification for its decision to delay the effective

date of the Independent Contractor Rule.  And, in doing so, the Department did not run afoul of the APA.

A court may set aside agency action where the agency's decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  The APA requires agencies to act "within a broad zone of reasonableness and, in particular, [have] reasonably considered the relevant issues and reasonably explained the decision." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1933 (U.S. 2020) (Kavanaugh, J., concurring).  Final rules must "articulate a satisfactory explanation for [the] action including a rational connection between the facts found and the choice made." *Little Sisters of the Poor Saints Peter and Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2383 (U.S. 2020) (quoting *Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 43 (1983).  The Department "need not justify the rules it selects in every detail," but should and in fact did "explain the general bases for the rules chosen." *Connecticut Light & Power Co.,* 673 F.2d at 528.

The arbitrary-and-capricious standard is deferential, and "[a] court simply ensures that the agency has acted within a zone of reasonableness." *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (U.S. 2021).  "Courts should 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" *Texas Ass'n of Mfrs. v. United States Consumer Prod. Safety Comm'n*, 989 F.3d 368, 389 (5th Cir. 2021) (internal citation omitted). Agency rules are considered arbitrary and capricious only if an agency "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the

agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *State Farm Mut. Automobile Ins. Co.*, 463 U.S. at 43.

Here, the Department expressly set forth its rationale for implementation of the Delay Rule, explaining that "delaying the effective date of the Independent Contractor Rule would give the Department additional opportunity to review and consider the Independent Contractor Rule, as the Regulatory Freeze Memorandum and OMB Memorandum M-21-14 contemplate." 86 Fed. Reg. 12535.  In light of the significance of the new legal standard adopted by the Independent Contractor Rule and the fast-approaching effective date of the rule, the Department rightfully identified the rule as one subject to further review pursuant to the Regulatory Freeze Memorandum and OMB Memorandum.  Furthermore, upon consideration of the 1,512 comments submitted concerning the Delay Rule, the Department found further support for its conclusion that the Independent Contractor Rule would constitute a major departure from existing legal standards for determining under the FLSA who is an employee or an independent contractor, warranting additional time to reassess whether the Independent Contractor Rule would diverge from Supreme Court precedent and the FLSA's text and purpose. *Id*. at 12536.

At the barest minimum, the Department's explanation demonstrates a rational connection between the facts found and the decision to implement the Delay Rule.  This is enough to satisfy the APA's arbitrary-and-capricious standard.  Contrary to Plaintiffs' assertion, justification for the Delay Rule need not have been—nor should have been—grounded in extensive substantive analysis of the new legal standard.  Rather, considering that the Delay Rule only extended the Independent Contractor Rule's effective date, the Department needed only to address whether more time was needed to assess the new rule and the novel legal standard adopted therein.

In addition to simply disagreeing with the agency's determination that additional time was needed to review the Independent Contractor Rule (which is insufficient to sustain their APA challenge), Plaintiffs assert that the Department's "failure to adhere to the factors identified in the OMB Memorandum" constitutes evidence of arbitrary and capricious decision making. Pls.' Br. at 19.  However, as the Delay Rule explained, the review that the delay made possible was grounded in the factors in the OMB Memorandum.  86 Fed. Reg. 12536 n.3.  Regardless, the OMB Memorandum did not provide a proscriptive or exhaustive list, but rather provided that an agency's decision for each rule should include consideration of eight factors.  OMB Memorandum.  There is no suggestion in the OMB Memorandum that agencies were limited to those eight factors, or were mandated to consider those eight factors, in determining whether postponing the effective date of an identified rule was appropriate; Plaintiffs point to no authority or record evidence to demonstrate otherwise.  Moreover, even apart from the OMB Memorandum, the Department had the authority to postpone the effective date of its own rule for any rational reason.

Further, Plaintiffs' concern with "the costs of compliance preparation many businesses had already undertaken *in anticipation* of the rule becoming effective as scheduled, as well as the continuing cost that the prior lack of clarity continues to wreak on businesses," Pls.' Br. at 20, fails to take account of the additional costs that the regulated community would likely have incurred had the Department allowed the rule to go into effect and later withdrew it following its review.  In any event, any costs expended in anticipation of the Independent Contractor Rule—and no commenters submitted evidence of any such costs actually expended—were not increased by the delay of the rule's effective date.

In sum, the Delay Rule was a straightforward solution to a rather straightforward problem.  As contemplated by the Regulatory Freeze Memorandum and OMB Memorandum, the Department needed sufficient time to conduct its review of the Independent Contractor Rule and provide sufficient opportunity for notice and comment.  The Delay Rule was tailored to accomplish just that by postponing the effective date of the rule to allow for such.  And the importance of completing review *before* the rule went into effect cannot be overstated.  The very aim of the Independent Contractor Rule was to fundamentally change the analysis under the FLSA for determining whether workers are employees or independent contractors.  And the consequences of those changes run deep, as they may affect worker protections and pay, including minimum wage and overtime pay entitlements.  To allow those changes to take effect while legitimate questions concerning the rule were under examination would have been imprudent.  Although Plaintiffs may not agree, the Department's stated desire to avoid these disruptions by delaying the effective date of the rule for 60 days was certainly rational.  The Delay Rule should therefore be upheld.

## III.    The Withdrawal Rule Was Also Reasonable

Finally, Plaintiffs challenge the Withdrawal Rule as arbitrary, capricious, or otherwise contrary to law in violation of the APA.  This challenge also fails.  The Department's explanation for its decision to promulgate the Withdrawal Rule was reasonable.

The Withdrawal Rule thoroughly explained the Department's decision, including the Independent Contractor Rule's unsupported departures from the longstanding legal standard applied by the Department and courts.  In particular, the newly established legal standard improperly elevated two core factors over other factors in the multi-factor economic reality test.  86 Fed. Reg. 24307-24311.  The rule also narrowed the factors for consideration, resulting in

28

more workers being categorized as independent contractors contrary to the FLSA's broad definition of employment.  86 Fed. Reg. 24311-24315.  The Department found that, consequently, the Independent Contractor Rule would act to increase confusion throughout courts and the country's labor market, despite the fact that the rule sought to provide clarity. 86 Fed. Reg. 24315-24317.  The Department also determined that there was an overall benefit to workers should it withdraw the rule as they would be afforded broader protection, in line with the general intent of the FLSA, and they would avoid the disruption contemplated by the Independent Contractor Rule.  86 Fed. Reg. 24317-24320.

The courts of appeals generally apply a non-exhaustive six-factor economic realities balancing test that focuses on whether the worker is in business for him/herself or dependent on the employer for work.[6]  To demonstrate the lack of support for the Independent Contractor Rule's elevation of two factors as "core" factors entitled to more weight than the other factors, the Department exhaustively catalogued in the Withdrawal Rule all of the contrary legal authority.  *See* 86 Fed. Reg. 24308 n. 98 (citing *Silk*, 331 U.S. at 716 (explaining that "[n]o one [factor] is controlling" in the economic realities test, including "degrees of control"); *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 380 (5th Cir. 2019) (stating that it "is impossible to assign to each of these factors a specific and invariably applied weight" (citation omitted)); *Martin v. Selker Bros.*, 949 F.2d 1286, 1293 (3d Cir. 1991) ("It is a well-established

---

[6] *See Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668, 675 (1st Cir. 1998); *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058–59 (2d Cir. 1988); *Donovan v. DialAmerica Mktg., Inc.*, 757 F.2d 1376, 1382–83 (3d Cir. 1985); *McFeeley v. Jackson Street Entm't, LLC*, 825 F.3d 235, 241 (4th Cir. 2016); *Acosta v. Off Duty Police Services, Inc.*, 915 F.3d 1050, 1055 (6th Cir. 2019); *Sec'y of Labor v. Lauritzen*, 835 F.2d 1529, 1534 (7th Cir. 1987); *Karlson v. Action Process Service & Private Investigation, LLC*, 860 F.3d 1089, 1092 (8th Cir. 2017); *Real v. Driscoll Strawberry Associates, Inc.*, 603 F.2d 748, 754 (9th Cir. 1979); *Acosta v. Paragon Contractors Corp.*, 884 F.3d 1225, 1235 (10th Cir. 2018); *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1311 (11th Cir. 2013); *Morrison v. Int'l Programs Consortium, Inc.*, 253 F.3d 5, 11 (D.C. Cir. 2001).  As mentioned above, the Fifth Circuit generally applies five factors because it does not include the integral factor in its list of factors; however, it sometimes considers the factor nonetheless given that the factors are nonexhaustive.  *See Hobbs*, 946 F.3d at 836.

29

principle that the determination of the employment relationship does not depend on isolated factors . . . neither the presence nor the absence of any particular factor is dispositive."); *Snell*, 875 F.2d at 805 ("It is well established that no one of these factors in isolation is dispositive; rather, the test is based upon a totality of the circumstances.")); *see also* 86 Fed. Reg. 24309 n. 105 & n. 106.

The Withdrawal Rule thus explains at great length how predeterminedly elevating two factors over the others in the multi-factor economic reality test in every case was contrary to well-settled case law and the FLSA.  86 Fed. Reg. 24307-24311.  The Department correctly described the legal impropriety of prioritizing two factors over others, recognizing "courts have refused to assign universal and predetermined weights to certain factors; rather, courts stress that the analysis must consider the totality of the circumstances and neither the presence nor absence of any particular factor is dispositive."  86 Fed. Reg. 24309.  As such, the Independent Contractor Rule's novel elevation of two factors lacked legal support.

The Department did not, therefore, "wrongly conclude that the Independent Contractor Rule create[d] a 'new legal standard' for determining independent contractor status under the FLSA," as Plaintiffs assert, Pls.' Br. at 25.  The Independent Contractor Rule's statement that its focus "on control and opportunity for profit or loss is further supported by the *results* of federal courts of appeals cases weighing the economic reality factors since 1975," (*id*. at 25-26), minimizes the significant changes that it would have made to the longstanding legal standard actually applied by the courts.  The Independent Contractor Rule's standard for applying the economic reality test has never been articulated by a court or by WHD.  No court nor WHD has ever applied the legal analysis set forth in the Independent Contractor Rule for determining independent contractor status under the FLSA.  Nor has any court or WHD ever weighed

30

particular factors more heavily in the multi-factor economic realities test as a matter of course.
*See Parrish,* 917 F.3d at 380 (It "'is impossible to assign to each of these factors a specific and invariably applied weight.'") (quoting *Hickey*, 699 F.2d at 752).  Plaintiffs' argument that previous results were consistent with the new standard does not mean that the standard is not new.

The Withdrawal Rule was also reasonably justified by concern for the impact on workers. In considering how the new legal standard would have run afoul of existing precedent and how the Act broadly defines who is a covered employee, *see, e.g., Darden*, 503 U.S. at 326, the Department adequately assessed the impact that the new rule would have had on workers.  It explained in detail how the narrowing of the economic realities factors would "have likely resulted in more workers being reclassified or misclassified as independent contractors not entitled to the FLSA's protections."  86 Fed. Reg. 24312.

The Withdrawal Rule explained that the various ways in which the Independent Contractor Rule would have narrowed how the factors are considered (such as by making the opportunity for profit or loss factor based on workers' initiative or investment, disregarding employers' investments, disregarding the centrality of a worker's work to an employer's business, and downplaying the employer's right to control the worker) would have likely resulted in fewer workers receiving FLSA protection.  *See generally id.*  In reaching its conclusion, the Department assessed the evidence before it in section II.C: "Whether the Rule Would Have Benefitted Workers as a Whole," and explained why it remained unconvinced that, under the Independent Contractor Rule, any benefit to workers would have outweighed the significant costs to them.  86 Fed. Reg. 24317-18.

Recognizing that the Independent Contractor Rule would have made it more difficult for a worker to be an employee under the FLSA, Plaintiffs attempt to highlight the benefits of being an unprotected independent contractor.  *See* Pls.' Br. at 28-29.  Plaintiffs assert that the Department ignored data demonstrating that independent contractors earn more than employees, *id.*; but that claim finds no support in the record.  Indeed, in sections D.3 and D.4 of the Withdrawal Rule, the Department discusses the very subject Plaintiffs allege was ignored. 86 Fed. Reg. 24324-25.  Specifically, the Department points to the 2017 Contingent Worker Supplement data indicating that contractors are more likely than employees to report earnings less than the FLSA minimum wage.  *Id.*  The Department also noted that contractors do not receive overtime pay premiums although they work more overtime hours.  *Id.*  The Department noted further that commenters' belief that independent contractors earn more is based in flawed methodology, as contractors are "often expected to earn a wage premium to compensate for reduced fringe benefits, increased tax liability and associated paperwork cost."  *Id.*  The Department explained that although the analysis that Plaintiffs rely on shows that independent contractors earn more than employees on average, that same analysis shows no difference in earnings when observable worker characteristics are controlled for.  Further, the Department explained that the Independent Contractor Rule did not account for the cost of losing FLSA rights to a minimum wage, overtime pay, and anti-retaliation protections.  86 Fed. Reg. 24317. The Department adequately explained its reasons for concluding that the Independent Contractor Rule would harm workers as a whole.

Plaintiffs relatedly argue that the Withdrawal Rule is flawed because the Department relied upon an erroneous legal standard "by seeking to achieve the broadest remedial purpose regardless of cost."  Pls.' Br. at 26-27 (citing *Encino Motorcars, LLC v. Navarro*, 138 S. Ct.

1134, 1142 (2018)).  Plaintiffs misstate the Department's aim.  The Department aims to give full

effect to the FLSA, which is remedial by its nature and includes in its text expansive definitions

of employment.   *See* 86 Fed. Reg. 24309 n. 102 (citing 29 U.S.C. §§ 202, 203(e)(1), (g); *U.S. v.

Rosenwasser*, 323 U.S. 360, 362, 363 n.3 (1945) (quoting statement of Senator Black from

81 Cong. Rec. 7657 that "the term 'employee' had been given 'the broadest definition that has

ever been included in any one act' "); *see also, e.g., Parrish*, 917 F.3d at 378 ("Given the

remedial purposes of the [FLSA], an expansive definition of 'employee' has been adopted by the

courts." (citation omitted)); *Acosta v. Off Duty Police Servs., Inc.*, 915 F.3d 1050, 1054-55 (6th

Cir. 2019) (noting, directly under the heading "Employment Relationship," that "[t]he FLSA is

'a broadly remedial and humanitarian statute . . . designed to correct labor conditions detrimental

to the maintenance of the minimum standard of living necessary for health, efficiency, and

general well-being of workers'" (quoting *Brandel*, 736 F.2d at 1116 (some internal quotation

marks omitted)).  Moreover, Plaintiffs' reliance on *Encino* is misplaced.  In *Encino*, the Supreme

Court examined whether one of the Act's exemptions from its minimum wage and overtime pay

requirements applied to certain employees and, as part of its analysis, stated that the "narrow-

construction principle [for interpreting such exemptions] relies on the flawed premise that the

FLSA pursues its remedial purpose at all costs," and noted that the exemptions are part of the

Act too and give no textual indication that they should be construed narrowly.  138 S. Ct. at 1142

(internal quotation marks omitted).  Significantly, *Encino* addressed exemptions from some of

the Act's requirements that apply to certain employees—not who is an employee under the Act

in the first place.  A worker must be an employee to satisfy these exemptions and remains an

employee under the Act even if an exemption applies.  Indeed, as discussed above, the breadth of

33

who is an employee under the FLSA comes from the text of the Act's definitions themselves, as the legislative history confirms, and not from any overlaying principle of statutory construction.

In sum, the Withdrawal Rule expressly considered the cost concerns raised by commenters, and to say that the rule was adopted without regard to cost is, therefore, a baseless conclusion.

Plaintiffs also complain that the Withdrawal Rule left unresolved an important issue concerning the regulated business community—that clearer guidance is needed under the FLSA for worker classification.  Pls.' Br. at 23.  Plaintiffs discount the fact that the Department thoroughly considered all aspects of the problem the Independent Contractor Rule purported to resolve and the 1,010 comments received in response the Withdrawal Rule NPRM.  For example, in considering the degree to which the Independent Contractor Rule changed the existing legal standard for FLSA worker classification, the Department *did* consider current jurisprudence on the matter.  In a section titled "Whether the Rule Would Provide the Intended Clarity," the Department provided a fulsome discussion on the topic and addressed relevant comments received.  86 Fed. Reg. 24315.  Undermining the assertion that the rule would have provided clarity, courts would have had to determine what the rule's new standard meant (including how it weighed certain factors differently than others and how it narrowed factors) and then decide whether to apply their own standards or this new standard (or some combination).  86 Fed. Reg. 24316-24317.  The Department recognized that some commenters welcomed the Independent Contractor Rule's new legal standard because, in the view of those commenters, it served as a "clarifying feature that would reduce uncertainty and inconsistency in application of the economic realities test."  *Id.*  However, the Department rationally rejected those views for the reasons described in the Withdrawal Rule.

Following consideration of these comments, and others to the contrary, the Department concluded that the departure from well-established legal authority and the FLSA's broad scope of employment warranted withdrawal of the rule.  86 Fed. Reg. 24308.  And such a conclusion is still rational, even in the face of comments raising objections.  Agencies are not obligated to adopt the opinions of commenters under the APA.  Rather, agencies must simply demonstrate that they "'clearly thought about the [commenters'] objections'" and offered "'reasoned replies.'"  *Huawei Tech. USA, Inc. v. FCC*, 2 F.4th 421, 450 (5th Cir. 2021) (internal citation omitted).  The agency may "weigh[] the evidence differently . . . and reach[] contrary but reasonable policy conclusions."  *Id.* at 451.  That is precisely what the Department did here.

Lastly, the Department concluded that withdrawing the Independent Contractor Rule would not cause significant disruption to the regulated community.  As courts and WHD had yet to apply the rule's novel legal standard, the regulated community was operating under the existing state of law, and therefore withdrawal was not disruptive.  86 Fed. Reg. 24318.  Contrary to Plaintiffs' assertion, Pls.' Br. at 30, the Department acknowledged potential costs businesses may incur, noting "the costs to come into compliance with the Department's decision to withdraw the Rule are minimal, because employers and businesses who engage independent contractors will only need to comply with the statutory interpretations that *already apply.*  They will not need to 'shift gears' or change anything about their business practices, so long as they are currently complying with the FLSA."  86 Fed. Reg. 24319.  Moreover, Plaintiffs fail to present evidence of actual costs incurred in reliance upon the Independent Contractor Rule going into effect.

## CONCLUSION

For the foregoing reasons, this Court should grant Defendants' cross-motion for summary judgment, enter judgment in favor of Defendants on all of Plaintiffs' claims, and deny Plaintiffs' motion for summary judgment in full.

Dated:  August 30, 2021                 Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

BRAD P. ROSENBERG
Assistant Director, Federal Programs Branch

/s/ Alexis J. Echols
ALEXIS J. ECHOLS
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L. Street, NW
Washington D.C. 20005
(202) 305-8613
alexis.j.echols@usdoj.gov

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 30, 2021, DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT was filed electronically with the Clerk of the Court and is available for viewing and downloading from the Electronic Case Filing (ECF) system.  I certify that all participants in this case are registered ECF users and that service will be accomplished by the ECF system.

<u>/s/ Alexis J. Echols</u>