**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS, BEAUMONT DIVISION**

COALITION FOR WORKFORCE
INNOVATION, *et al.*,

                    Plaintiffs,

     v.

WALSH, *et al.*,

                    Defendants.

Case No. 21-CV-00130

**<u>DEFENDANTS' REPLY IN SUPPORT OF
CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 2

I.      Plaintiffs' Procedural Challenges to the Delay Rule Fail. ................................... 2

         A.     The Delay Rule Was Exempt from the APA's Notice-and-Comment Procedures. ................................................................................... 3

         B.     The Delay Rule Nonetheless Complied with APA Rulemaking Requirements. ..................................................................................... 6

II.     The Delay Rule Was Reasonable ........................................................................ 8

III.    The Withdrawal Rule Was Reasonable. ............................................................ 11

CONCLUSION .................................................................................................................. 19

# TABLE OF AUTHORITIES

## CASES

*Am. Fed'n of Gov't Emps., AFL-CIO v. Block,*
    655 F.2d 1153 (D.C. Cir. 1981) ..................................................................... 6, 7, 8

*Am. Petroleum Inst. v. EPA,*
    906 F.2d 729 (D.C. Cir. 1990) .............................................................................. 9

*California v. Azar,*
    950 F.3d 1067 (9th Cir. 2020) ................................................................. 12, 13, 15

*California v. Bureau of Land Mgmt.,*
    286 F. Supp. 3d 1054 (N.D. Cal. 2018) .................................................................. 9

*Cargill v. Barr,*
    502 F. Supp. 3d 1163 (W.D. Tex. 2020) .............................................................. 4, 5

*Cash v. Conn Appliances, Inc.,*
    2 F. Supp. 2d 884 (E.D. Tex. 1997) ....................................................................... 5

*City of Abilene v. EPA,*
    325 F.3d 657 (5th Cir. 2003) ................................................................................ 11

*City of Phila. v. Sessions,*
    280 F. Supp. 3d 579 (E.D. Pa. 2017) ................................................................... 18

*Conf. of State Bank Supervisors v. Off. of Thrift Supervision,*
    792 F. Supp. 837 (D.D.C. 1992) ......................................................................... 6, 7

*Dep't of Commerce v. New York,*
    139 S. Ct. 2551 (2019) ......................................................................................... 15

*Encino Motorcars, LLC v. Navarro,*
    136 S. Ct. 2117 (2016) ................................................................................... 17, 18

*FBME Bank Ltd. v. Mnuchin,*
    249 F. Supp. 3d 215 (D.D.C. 2017) ..................................................................... 13

*FCC v. Fox Television Stations, Inc.,*
    556 U.S. 502 (2009) ............................................................................................. 14

*FCC v. Prometheus Radio Project,*
    141 S. Ct. 1150 (2021) ........................................................................................... 2

*Gulf Restoration Network v. McCarthy,*
    783 F.3d 227 (5th Cir. 2015) ................................................................................. 5

*Hoctor v. USDA*,
  82 F.3d 165 (7th Cir. 1996) ........................................................................... 4

*Huawei Techs. USA, Inc. v. FCC*,
  2 F.4th 421 (5th Cir. 2021) ........................................................................ 16

*Intercity Transp. Co. v. United States*,
  737 F.2d 103 (D.C. Cir. 1984) ..................................................................... 9

*Inv. Co. Inst. v. Commodity Futures Trading Comm'n*,
  720 F.3d 370 (D.C. Cir. 2013) ..................................................................... 9

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
  140 S. Ct. 2367 (2020) ............................................................................... 11

*Louisiana v. Biden*,
  ___F. Supp. 3d___, 2021 WL 2446010 (W.D. La. June 15, 2021), *appeal filed*,
  No. 21-30505 (5th Cir. Aug. 21, 2021) ......................................................... 9

*McChesney v. Petersen*,
  275 F. Supp. 3d 1123 (D. Neb. 2016) ........................................................... 7

*Monahan v. Cnty. of Chesterfield*,
  95 F.3d 1263 (4th Cir. 1996) ......................................................................... 5

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) ..................................................................................... 10

*N.C. Growers' Ass'n. v. United Farm Workers*,
  702 F.3d 755 (4th Cir. 2012) ....................................................................... 11

*N.S. v. Hughes*,
  Case No. 1:20-cv-101-RCL, 2020 WL 4260739 (D.D.C. July 24, 2020) ................ 4

*Perez v. Mortg. Bankers Ass'n*,
  575 U.S. 92 (2015) ............................................................................. 3, 4, 5

*Phillips Petroleum Co. v. EPA*,
  803 F.2d 545 (10th Cir. 1986) ....................................................................... 6

*POET Biorefining, LLC v. EPA*,
  970 F.3d 392 (D.C. Cir. 2020) ....................................................................... 6

*Puget Soundkeeper Alliance v. Wheeler*,
  No. C15-1342-JCC, 2018 WL 6169196 (W.D. Wash. Nov. 26, 2018) .................. 11

*Regents of the Univ. of Cal.*,
  140 S. Ct. 1891 (2020) ......................................................................... 17, 18

*Stilwell v. Off. of Thrift Supervision,*
  569 F.3d 514 (D.C. Cir. 2009) .................................................. 15

*Texas Association of Manufacturers v. United States Consumer Product Safety Commission,*
  989 F.3d 368 (5th Cir. 2021) ................................................... 18

*U.S. Steel Corp. v. EPA,*
  605 F.2d 283 (7th Cir. 1979) .................................................. 7

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.,*
  435 U.S. 519 (1978) ............................................................. 4

## STATUTES

5 U.S.C. § 553 ...................................................................... 3, 6, 7

29 U.S.C. § 259 ................................................................... 5

## REGULATIONS

29 C.F.R. subchapter B ........................................................ 4

86 Fed. Reg. 1168 (Jan. 7, 2021) ........................................ 1, 3, 4

86 Fed. Reg. 12,535 (Mar. 4, 2021) .................................... 1, 6, 8, 10

86 Fed. Reg. 24,303 (May 6, 2021) ..................................... *passim*

## INTRODUCTION

On January 7, 2021, the Department of Labor ("Department") issued a final rule, with an effective date of March 8, 2021, setting forth the Department's interpretation for classifying workers as employees or independent contractors under the Fair Labor Standards Act ("FLSA" or "Act").  86 Fed. Reg. 1168 (Jan. 7, 2021) ("Independent Contractor Rule").  The rule provided a novel interpretation of the FLSA that departed from the test that both courts and the Department have used for decades to determine employee or independent contractor status.  For this and other reasons, the Department determined, following the change in presidential administrations on January 20, 2021, that further consideration of the Independent Contractor Rule was warranted before it took effect.  Through two separate rulemaking proceedings, the Department first delayed the effective date of the Independent Contractor Rule for a brief period of time and then, shortly thereafter, withdrew the rule.  *See* 86 Fed. Reg. 12,535 (Mar. 4, 2021) ("Delay Rule"); 86 Fed. Reg. 24,303 (May 6, 2021) ("Withdrawal Rule").

These rules are both procedurally valid and the product of reasoned decision-making.  Plaintiffs' challenges to the Delay Rule assume that it was a legislative rule, subject to the notice-and-comment procedures of the Administrative Procedure Act ("APA").  But the underlying Independent Contractor Rule was an interpretive rule, both by its own terms and in its substantive effect, and was thus exempt from notice-and-comment procedures.  Accordingly, the Department was not required to use notice and comment to alter the Independent Contractor Rule's effective date via the Delay Rule, and the mere fact that it nonetheless chose to use some of the APA's procedural requirements does not, by itself, allow a court to impose even more procedures.  In any event, the Department provided a meaningful opportunity for comment on the Delay Rule and

showed good cause to make the rule immediately effective, given its limited scope and the exigencies involved.

In promulgating both the Delay Rule and the Withdrawal Rule, the Department thoroughly explained its reasoning, responded to significant comments, and articulated rational justifications for the choices made.  This is more than sufficient to withstand scrutiny under the APA's deferential arbitrary and capricious standard, pursuant to which review is narrow and a court is not to substitute its policy judgment for that of an agency's.  Plaintiffs' combined summary judgment opposition and reply brief, ECF No. 25 ("Pls.' Opp'n"), makes one thing clear:  Plaintiffs prefer the Independent Contractor Rule and disagree with the Department's policy decision to withdraw that rule.  So be it, but that is not a basis for invalidating agency action and Plaintiffs' brief does nothing to undermine the conclusion that the challenged rules are well within the APA's wide "zone of reasonableness."  *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021).

The Court should enter summary judgment for Defendants.

## ARGUMENT

### I.        Plaintiffs' Procedural Challenges to the Delay Rule Fail.

Plaintiffs contend that the Department committed "numerous violations" of the APA's procedural requirements in promulgating the Delay Rule.  Pls.' Opp'n at 5.  That is incorrect because the Delay Rule merely delayed an interpretive rule, which in turn was exempt from the procedural requirements that Plaintiffs reference.  *See* Defs.' Cross-Mot. for Summ. J & Opp'n to Pls.' Mot. for Summ. J. at 15-19, ECF No. 23 ("Defs.' MSJ").  And in any event, the Department provided a meaningful opportunity for comment on the Delay Rule and demonstrated good cause to make it immediately effective.  *See id*. at 19-24.

**A.  The Delay Rule Was Exempt from the APA's Notice-and-Comment Procedures.**

The APA requires agencies to provide the public general notice of any proposed rulemaking, 5 U.S.C. § 553(b), allow "interested persons an opportunity to participate" though the submission of comments, *id*. § 553(c), and publish any substantive rule not less than 30 days before its effective date, *id*. § 553(d).   By their terms, however, these requirements do not apply to interpretive rules.   *Id*. § 553(b), (d).   The Independent Contractor Rule was an interpretive rule because it provided "interpretive guidance" regarding the Department's "interpretation of whether workers are 'employees' or independent contractors under the Act," 86 Fed. Reg. at 1168, and was promulgated pursuant to the Department's general "authority to interpret the Act," rather than any specific grant of legislative rulemaking authority, *id*. at 1176.  *See Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96-97 (2015) ("[T]he critical feature of interpretive rules is that they are 'issued by an agency to advice the public of the agency's construction of the statutes and rules which it administers.'" (citation omitted)).   The APA's notice-and comment procedures were thus not applicable to either the Independent Contractor Rule or the Delay Rule:   "Because an agency is not required to use notice-and-comment procedures to issue an initial interpretive rule, it is also not required to use those procedures when it amends or repeals that interpretive rule."  *Id*. at 101.

According to Plaintiffs, however, the Department changed the legal status of these rules when it chose to utilize notice-and-comment procedures to promulgate them.  Having done so, the Department allegedly made all of the APA's procedural requirements—even ones not utilized, such as the 30-day delay period—mandatory and judicially enforceable against the Department.  Pls.' Opp'n at 5, 7.  This is not the silver bullet Plaintiffs imagine.  For starters, it is black letter law that while agencies are "free to grant additional procedural rights in the exercise of their discretion," reviewing courts are "generally not free to impose" any such procedures. *Vt. Yankee*

3

*Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 524 (1978); *see also Mortg. Bankers Ass'n*, 575 U.S. at 102 ("Beyond the APA's minimum requirements, courts lack authority 'to impose upon [an] agency its own notion of which procedures are best . . . .'" (citation omitted)). And as Plaintiffs recognize elsewhere in their brief, it is not "titles" or "labels" that are controlling on the question of whether a given agency pronouncement is legislative or interpretive. Pls.' Opp'n at 7. What matters is the actual substance of the rule at issue, not an agency's "past practices." *N.S. v. Hughes*, Case No. 1:20-cv-101-RCL, 2020 WL 4260739, at *5 (D.D.C. July 24, 2020). As explained both above and in Defendants' opening brief, *see* Defs.' MSJ at 15-19, the Independent Contractor Rule was interpretive.[1]

Plaintiffs' other arguments are similarly unpersuasive. The fact that the Independent Contractor Rule was to be published in the Code of Federal Regulations ("CFR") does not automatically convert it into a legislative rule. The Independent Contractor Rule would have been published in a section of the CFR entitled "Statements of General Policy or Interpretation Not Directly Related to Regulations." *See* 29 C.F.R. subchapter B; 86 Fed. Reg. at 1246. This designation, just like the rule's placement in the CFR, is not controlling, but it indicates the legal effect that the agency intended the rule to have. *See, e.g.*, *Cargill v. Barr*, 502 F. Supp. 3d 1163, 1184 (W.D. Tex. 2020) (courts "look to whether an agency 'intended' to speak with the force of law when classifying a rule as legislative or interpretive"). Indeed, courts have found a similar set

---

[1] Contrary to Plaintiffs' view, there is no hard and fast rule that an agency must always use the same procedures to amend or repeal a rule as it uses to enact that rule. *See* Pls.' Opp'n at 5. Unlike in the *Colliot* case that Plaintiffs cite (or the Supreme Court's decision in *Mortgage Bankers Association* upon which it relies), the instant case involves an agency's voluntary use of notice-and-comment procedures when it was not required to do so. "[T]here is nothing in the [APA] to forbid an agency to use the notice and comment procedure in cases in which it is not *required* to do so. . . . It is for the courts to say whether it is the kind of rule that is valid only if promulgated after notice and comment." *Hoctor v. USDA*, 82 F.3d 165, 171-72 (7th Cir. 1996).

of Department regulations codified in Part 778 of Title 29 to the CFR to be interpretive rather than legislative.  *See Cash v. Conn Appliances, Inc.*, 2 F. Supp. 2d 884, 890 n.2 (E.D. Tex. 1997) (citing *Monahan v. Cnty. of Chesterfield*, 95 F.3d 1263, 1273 n.10 (4th Cir. 1996)).

Nor is it relevant to this analysis that the Independent Contractor Rule may have satisfied the "safe harbor" defense for regulated parties available under the FLSA.  *See* Pls.' Opp'n at 7, 8. All manner of the Department's FLSA interpretations—whether legislative rules promulgated through notice and comment or other types of sub-regulatory guidance not promulgated through notice and comment—may satisfy that defense.  *See* Def.'s MSJ at 17.  The relevant FLSA provision expressly refers to, *inter alia*, "interpretation[s]" and agency "practice[s]," 29 U.S.C. § 259(a), and thus does not involve the kind of "significant effects on private interests" at issue in *Gulf Restoration Network v. McCarthy*, 783 F.3d 227, 236 (5th Cir. 2015).  *See* Pls.' Opp'n at 8. That case involved an agency's consideration of whether to adopt and implement certain water quality standards that would have required the agency to "publish[] proposed regulations" and "effect a change in existing law or policy."  *Gulf Restoration Network*, 783 F.3d at 236 (citation omitted); *see also Cargill*, 502 F. Supp. 3d at 1185 (finding that agency rule imposed significant effect on private interests where it would have voided $102.5 million worth of private sales).

No such regulation of private conduct is at issue here.  Like any agency guidance document, regulated entities could have relied on the Independent Contractor Rule to establish a good faith defense in an enforcement proceeding, but regulated entities have no entitlement to a preferred interpretation—which can in any event be withdrawn or modified at any time as the relevant FLSA provision recognizes—and the rule did not ultimately require regulated entities to take (or forbid them from taking) any action.  *See Mortg. Bankers Ass'n*, 575 U.S. at 106 (recognizing that FLSA "safe harbor" provision applies to the kind of interpretive rules at issue in that case, serving as a

"shelter" from liability where regulated entities "act in conformance with previous agency interpretations").   And in any event, "even a consequential, 'conduct-altering' rule remains interpretive so long as it can 'fairly be viewed as interpreting—even incorrectly—a statute or regulation,'" which the Independent Contractor Rule unquestionably can be.   *POET Biorefining, LLC v. EPA*, 970 F.3d 392, 408 (D.C. Cir. 2020) (citation omitted).

### B.  The Delay Rule Nonetheless Complied with APA Rulemaking Requirements.

Although not required by law to do so, the Department published a notice of the delay proposal in Federal Register on February 5, 2021, *see* 5 U.S.C. § 553(b), and provided an opportunity for public comment, *see id*. § 553(c).   Plaintiffs again conflate these provisions governing notice and comment with the separate requirement, *id*. § 553(d), generally imposing a 30-day delay between publication of a final rule and the rule's effective date.   But there are no "30-day notice and comment requirements."   Pls.' Opp'n at 8.   Rather, the "opportunity to participate is all that the APA requires," and there is "no requirement concerning how many days the [agency] must allow for comment."   *Phillips Petroleum Co. v. EPA*, 803 F.2d 545, 559 (10th Cir. 1986).   Courts have frequently sustained comment periods of less than 30 days, *see* Defs.' MSJ at 23, and given the limited scope of the Delay Rule and the practical need to prevent confusion and uncertainty by finalizing the delay before the Independent Contractor Rule took effect, the 19-day comment period here was more than sufficient to allow a meaningful opportunity for comment.   *Cf. Am. Fed'n of Gov't Emps., AFL-CIO v. Block*, 655 F.2d 1153, 1156 (D.C. Cir. 1981) ("The more expansive the regulatory reach of [a rule] . . ., the greater the necessity for public comment.").   Indeed, the Department received 1,512 comments, including comments from Plaintiffs, *see* 86 Fed. Reg. at 12,536, further undercutting Plaintiffs' contention that the comment period did not provide "sufficient time."   Pls.' Opp'n at 8; *see Conf. of State Bank Supervisors v.*

*Off. of Thrift Supervision*, 792 F. Supp. 837, 844 (D.D.C. 1992) (rejecting challenge to length of comment period where plaintiffs had "the opportunity to consider the rule and its supporting analysis and provide meaningful comment, especially in light of the comments that they and other interested parties submitted in the response to th[e] proposed rule").

 Given the Department's compliance with the APA's notice-and-comment requirements, what Plaintiffs are left challenging is the Department's decision to waive the 30-day waiting period set forth at 5 U.S.C. § 553(d).  When applicable, this period serves the "purpose of informing affected parties and affording them a reasonable time to adjust to the new regulation."  *Block*, 655 F.2d at 1156.  An agency can waive this 30-day waiting period upon a finding of good cause, and a "different standard[]" governs the § 553(d) good cause determination than that which governs the more frequently addressed good cause exception to the § 553(b) and (c) notice-and-comment procedures.  *Id*.  Indeed, "[g]ood cause is more easily shown under § 553(d)."  *McChesney v. Petersen*, 275 F. Supp. 3d 1123, 1137 (D. Neb. 2016); *see also U.S. Steel Corp. v. EPA*, 605 F.2d 283, 289-90 (7th Cir. 1979) (explaining why "there is sound reason to believe that 'good cause' should encompass more situations in" § 553(d) than in § 553(b)).

Defendants' opening brief thoroughly explains why the good cause standard is met here. *See* Defs.' MSJ at 20-24.  In response, Plaintiffs offer little more than the conclusory assertion that "Defendants could have started the rulemaking process more than 30 days before the effective date of the Independent Contractor Rule, but they failed to do so."  Pls.' Opp'n at 8.  This ignores the realities of the rulemaking process.  The Independent Contractor Rule was set to take effect on March 8, 2021, just 47 days after the change in presidential administrations, the issuance of the White House "Regulatory Freeze Memorandum," and the Office of Management and Budget ("OMB") memorandum providing further guidance on implementation.  *See* Defs.' MSJ at 10-11.

To provide for a 30-day delay prior to the effective date of the Independent Contractor Rule, the Department would have needed to publish a final rule by no later than February 5.  That would have left just over two weeks for the Department to draft a proposed rule, provide for public comment, review those comments, and issue a final rule.  As the Department made clear in the Delay Rule, that "would not have been practicable."  86 Fed. Reg. at 12,537.  Faced with an unavoidable tradeoff between offering a meaningful comment period and providing for a post-publication delay of the Delay Rule's effective date, the Department did the best it could in the time available, maximizing the "more significant" interest in public comment.  *Block*, 655 F.2d at 1156.  This is a sufficient showing of good cause.

## II.     The Delay Rule Was Reasonable.

The Delay Rule sets forth the Department's rationale for delaying the Independent Contractor Rule's effective date for a period of 60 days.  *See* Defs.' MSJ at 26-28.  In short, the Department determined that "allowing more time for consideration of the [Independent Contractor Rule] is reasonable given the significant and complex issues the [rule] raises, including whether the [rule] is consistent with the statutory intent to broadly cover workers as employees as well as the costs and benefits of the rule, including its effect on workers"; that "allowing the Independent Contractor Rule to go into effect while the Department undertakes a further review of the [rule] could lead to confusion and uncertainty among workers and businesses in the event that the Department proposes changes to the [rule] following its review"; and that the Department's interest in conducting a careful review of the Independent Contractor Rule before it took effect outweighed the interests of some members of the regulated community in having the rule take effect as scheduled, particularly given that the delay rule effectuated a "continuation of the longstanding status quo for 60 additional days."  86 Fed. Reg. at 12,536.  Plaintiffs disagree with the

Department's decision and challenge its substance, but their arguments ultimately go to the "wisdom, not the lawfulness," of the Delay Rule, *Intercity Transp. Co. v. United States*, 737 F.2d 103, 109 (D.C. Cir. 1984), and provide no basis to invalidate agency action under the APA.  *See, e.g.*, *Inv. Co. Inst. v. Commodity Futures Trading Comm'n*, 720 F.3d 370, 380 (D.C. Cir. 2013) (rejecting argument that "amounts to nothing more than [a] policy disagreement").

In light of the above, Plaintiffs are simply wrong to suggest that the Department relied on a "conclusory assertion," Pls.' Opp'n at 9, to justify the Delay Rule.  *Cf. Louisiana v. Biden*, ___F. Supp. 3d___, 2021 WL 2446010, at *18 (W.D. La. June 15, 2021) (determining that agency acted arbitrarily and capriciously where it provided "[n]o explanation" for the challenged actions), *appeal filed*, No. 21-30505 (5th Cir. Aug. 21, 2021).  Nor is the case analogous to *California v. Bureau of Land Mgmt.*, 286 F. Supp. 3d 1054, 1059 (N.D. Cal. 2018), where the agency not only delayed a not-yet-effective rule, but also altered the status quo by suspending, for one year, certain provisions that were already in effect.  The court also found that, unlike here, the concerns the agency articulated in suspending the rule appeared to rest on factual findings that contradicted those underlying the prior rule, requiring a "more detailed justification" than might otherwise be necessary.  *Id*. at 1065 (citation omitted).  Such is not the case here, where the Department merely effectuated a temporary delay to a rule that had not yet become effective—without making any factual findings—to allow for additional review and consideration.

Plaintiffs question this additional consideration because the Department had recently considered the same issues prior to adoption of the Independent Contractor Rule.  Pls.' Opp'n at 9.  This conflates the Delay Rule, which was limited solely to the question of timing, with the Withdrawal Rule that addressed the substance of the prior rule.  In any event, agencies are always "entitled to change course," *Am. Petroleum Inst. v. EPA*, 906 F.2d 729, 738 n.11 (D.C. Cir. 1990),

and there is nothing improper about an agency following applicable procedures to reconsider a rule that has not yet taken effect in line with the policy preferences of a new presidential administration—"[a] change in administration brought about by the people casting their votes is a perfectly reasonable basis for an executive agency's reappraisal of the costs and benefits of its programs and regulations," *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 59 (1983) (Rehnquist, J., concurring in part and dissenting in part).

Plaintiffs also criticize the Delay Rule for relying on factors "not authorized by the [OMB] Memorandum."  Pls.' Opp'n at 10.  But the Department was not bound by the factors set forth in the memorandum and was free to delay its rule for any rational reason, consistent with the APA. *See* Defs.' MSJ at 27.  This is not a situation where the agency "has relied on factors which Congress has not intended it to consider." *State Farm*, 463 U.S. at 43; *contra* Pls.' Opp'n at 10. And while Plaintiffs continue to argue that the Delay Rule was "disruptive" to the regulated community because of "the costs of compliance preparation many businesses had already undertaken in anticipation of the rule becoming effective as scheduled," Pls.' Opp'n at 11, Plaintiffs once again fail to point to any actual evidence of such costs being expended.  *See* Defs.' MSJ at 27.  The purely speculative compliance costs they reference here are the result of the Independent Contractor Rule and could not have been increased by delaying that rule.  Responding to the same arguments, the Department explained that the Delay Rule did not "itself impos[e] any new compliance obligations on the regulated community," 86 Fed. Reg. at 12,537.

Finally, Plaintiffs' novel contention that the Withdrawal Rule is arbitrary and capricious because it relied on the "procedurally defective" Delay Rule is flatly wrong.  *See* Pls.' Opp'n at 11-12.  As explained above, the Delay Rule was not procedurally defective.  Moreover, as explained below and in Defendants' opening brief, the fact that the Independent Contractor Rule

10

had not yet taken effect (as a result of the Delay Rule) was not the only justification the Department provided for the Withdrawal Rule.  Indeed, the Department clearly stated, in response to concerns that Plaintiffs raised in comments on the Withdrawal Rule, that "the Department would withdraw the Independent Contractor Rule even if it were currently in effect."  86 Fed. Reg. at 24,320.  That statement is not inconsistent with the Department's discussion of the disruptive effects of the Withdrawal Rule; it simply clarifies that, in the agency's assessment, the other strong bases for the Withdrawal Rule, which the Department spelled out at length, were sufficient to justify that rule even if it would have had more disruptive effects.  That is no basis to invalidate agency action under the APA's deferential standard of review, and Plaintiffs offer no authority to the contrary.[2]

### III.     The Withdrawal Rule Was Reasonable.

Plaintiffs' challenge to the Withdrawal Rule fares no better.  Agency action must be upheld in the face of an arbitrary and capricious challenge so long as the agency "articulate[s] a satisfactory explanation for [the] action including a rational connection between the facts found and the choice made."  *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2383 (2020) (citation omitted); *see also City of Abilene v. EPA*, 325 F.3d 657, 664 (5th Cir. 2003) ("If the agency's reasons and policy choices conform to minimal standards of

---

[2] Plaintiffs allege that courts have found agency action arbitrary and capricious in "similar circumstances," citing *N.C. Growers' Ass'n. v. United Farm Workers*, 702 F.3d 755, 763 (4th Cir. 2012) and *Puget Soundkeeper Alliance v. Wheeler*, No. C15-1342-JCC, 2018 WL 6169196 (W.D. Wash. Nov. 26, 2018), *see* Pls.' Opp'n at 12, but those cases are wholly inapposite.  In both, the agency attempted to suspend a rule that had already taken effect and, in the same rule, reinstate a prior rule.  In each case, the court found the reinstatement of the prior rule to be rulemaking, and found that the agency acted arbitrarily and capriciously when it failed to take that fact into account when taking comment on the suspension rules.  *See Puget Soundkeeper All.*, 2018 WL 6169196, at *5.  Neither case suggests that where an agency delays a not-yet-effective rule, and initiates a separate proceeding to repeal that rule and maintain the status quo, the validity of the withdrawal rule—issued after full notice and comment on the substance of withdrawal—could be undermined by reliance on the separate delay rule.

rationality, then its actions are reasonable and must be upheld." (citation omitted)).   The Department did precisely that, *see* Defs.' MSJ at 26-35, and Plaintiffs' opposition brief consists primarily of challenges to the policy judgments underlying the Withdrawal Rule.   But when reviewing agency action under the arbitrary and capricious standard, a court "cannot 'ask whether a regulatory decision is the best one possible or even whether it is better than the alternatives,'" and is "prohibited from 'second-guessing the [agency]'s weighing of risks and benefits and penalizing [it] for departing from the . . . inferences and assumptions' of others."   *California v. Azar*, 950 F.3d 1067, 1096 (9th Cir. 2020) (citations omitted).   Plaintiffs disagree with the policy judgments contained in the Withdrawal Rule, but those decisions were for the Department—not Plaintiffs—to make, and Plaintiffs cannot show that the Department acted unlawfully.

　　　　1.　　　Plaintiffs assert that the Withdrawal Rule "fails to deal with the main problem the Independent Contractor Rule addressed, namely, the chaotic state of litigation." Pls.' Opp'n at 13. But Plaintiffs confuse the Department's decision to adopt a policy with which Plaintiffs disagree with a failure to address relevant considerations.   Commenters raised the issue of litigation costs under the existing status quo, and the Department considered those comments but reached a different view about the clarity that the Independent Contractor Rule would have provided.   *See* 86 Fed. Reg. at 24,315.[3]   The Department addressed arguments that the Independent Contractor Rule would have eliminated confusion and various costs to the regulated community, but determined that these concerns were misguided (because that rule would have actually

---

[3] Specifically, in a subsection entitled "Whether the Rule Would Provide the Intended Clarity," the Department concluded that the Independent Contractor Rule would not have "achieved the added clarity it intended to provide to the regulated community," including because it "departed from courts' longstanding precedent," created the potential for "conflicts among courts and between courts and the Department" in matters of interpretation, and "would have introduced several ambiguous terms and concepts into the analysis." 86 Fed. Reg. 24,315-24,316.

"complicate[d] rather than simplif[ied] the analysis for determining whether a worker is an employee or independent contractor under the FLSA," *id*. at 24,317), and in any event were outweighed by the many benefits of withdrawing the rule (which the Department determined would have "improperly narrowed the scope of facts and considerations comprising the analysis of whether a worker is an employee for purposes of the FLSA or an independent contractor," contrary to the purposes of the statute, *id*. at 24,312). *See generally id*. at 24,307-24,325.

It is simply not the case that the Withdrawal Rule "ignores the overwhelming view of the regulated business community," or did not "meaningfully engage" with the question "of how to reduce . . .  costs while clarifying the undisputed right of businesses to utilize independent contractors under the FLSA." Pls.' Opp'n at 13-14.  As an initial matter, this argument ignores that the Withdrawal Rule reiterated business' rights to engage properly classified independent contractors.  86 Fed. Reg. at 24,318 ("The Department recognizes, and has always recognized, that there are bona fide independent contractors that do not fall under the FLSA.").  And as discussed above the Department considered the views of regulated entities and explained why it reached a different conclusion than Plaintiffs would prefer.  The APA requires nothing more. *See California*, 950 F.3d at 1100, 1100 n.31 (rejecting argument that an agency acted arbitrarily and capriciously by "rely[ing] on its own predictions" and "reject[ing] those submitted by commenters opposing the [rule]," and noting that an agency "may reasonably decide not to rely on the opinions of outside commenters, even where they claim expertise"); *FBME Bank Ltd. v. Mnuchin*, 249 F. Supp. 3d 215, 222 (D.D.C. 2017) ("There is no requirement . . . that an agency respond to significant comments in a manner that satisfies the commenter.").[4]

---

[4] There is similarly nothing to Plaintiffs' contention that the Department "ignore[d] the significance" of "eliminating the good faith defense" that would have existed based on reliance on

13

2.     Plaintiffs also continue to press their argument that the Withdrawal Rule mischaracterized the "content and purpose" of the Independent Contractor Rule.  *See* Pls.' Opp'n at 15-18.  This issue is addressed in Defendants' opening brief, Defs.' MSJ at 28-31, which, contrary to Plaintiffs' contention, did not mischaracterize the Withdrawal Rule in any relevant sense.  Rather, it noted, consistent with the Department's findings in the Withdrawal Rule, that the relevant case law imposes a flexible balancing test and has not in any pre-determined manner (as the Independent Contractor Rule would have) elevated any factors as "core factors entitled to more weight than the other factors." *See id.* at 29.  Plaintiffs' argument is nothing more than a difference in opinion about how to read the cases applying the economic realities test and the real-world impact of the Independent Contractor Rule's new interpretation.  While Plaintiffs clearly prefer the Independent Contractor Rule as a policy matter, the Department was entitled to apply its policy judgment and expertise to reach a different conclusion.  *See FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 514-515 (2009) (finding that the APA "makes no distinction . . . between initial agency action and subsequent agency action undoing or revising that action," and that a change in policy is lawful so long as it "is permissible under the statute," "there are good reasons for it," and "the agency *believes* it to be better, which the conscious change of course adequately indicates").

The Department was not required to identify "factual or legal errors" in the Independent Contractor Rule's analysis of case law (although it did explain that the rule's discussion is

---

the Independent Contractor Rule.  Pls.' Opp'n at 14.  As explained above, that good faith defense exists for many Department interpretations, and was not specific to the Independent Contractor Rule, so this argument just reduces to the contention that, in Plaintiffs' view, litigation costs were higher under the status quo than they would have been under the rule.  The Department reached a different conclusion, as it was entitled to do.  *See* 86 Fed. Reg. at 24,321 (noting that "numerous commenters agreed that the Rule would not have increased clarity, and that there would have instead been increased litigation following the Rule due to uncertainty over whether and to what extent courts would adopt the Rule's complicated guidance").

"incomplete, oversimplifies the analysis provided by the courts, and makes assumptions about the reasoning behind the court decisions that are not necessarily clear from the decisions themselves," 86 Fed. Reg. at 24,309), or come forward with "empirical evidence," Pls.' Opp'n at 17, in order to reach the conclusion that the rule should be withdrawn because it was "inconsistent with the FLSA's text and purpose, and would have a confusing and disruptive effect on workers and businesses alike due to its departure from longstanding judicial precedent." 86 Fed. Reg. at 24,307. *See California*, 950 F.3d at 1100 (an agency's predictive judgments about matters within its discretion and expertise are entitled to deference, and agency need not produce any "special justification for drawing [its] own inferences and adopting [its] own assumptions" (quoting *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2571 (2019))); *Stilwell v. Off. of Thrift Supervision*, 569 F.3d 514, 519 (D.C. Cir. 2009) ("The APA imposes no general obligation on agencies to produce empirical evidence").  Again, Plaintiffs' argument reflects a disagreement with the Department's ultimate policy choices, not any basis for invalidating agency action under the APA.

3.      Next, Plaintiffs allege that the Withdrawal Rule "relies on explanations for withdrawing the Independent Contractor Rule that run counter to the evidence before it." *See* Pls.' Opp'n at 18-20.  This is not the case.  For example, the Department did not "fail[] to deal with" the Bureau of Labor Statistics' 2017 Contingent Worker Supplement earnings data.  *Id*. at 19. Indeed, the Withdrawal Rule referred to and analyzed that survey data multiple times, *see* 86 Fed. Reg. at 24,324-24,325, and contrary to Plaintiffs' suggestion, there is nothing improper about the Department using its expertise, in certain circumstances, to perform its own additional calculations using data provided by the CWS.  *See id*. at 24,324 n.206.  More importantly, even if it were the case that independent contractors make median *wages* comparable to what employees earn, *but see id*. at 24,325 (concluding that earnings data was "inconclusive" on this point), the Department

15

also highlighted that a worker's independent contractor status could result in other harms, such as "reduced fringe benefits, increased tax liability and associated paperwork costs." *Id*.

The Department also considered studies that described benefits earned by independent contractors. *See id*. (addressing "many surveys, some with questionable survey sampling procedures, showing that independent contractors like the flexibility of their work," as well as arguments that "independent contractors are compensated better than employees"). The Department weighed these studies and arguments regarding the benefits that independent contractors can receive, and ultimately determined that withdrawing the rule would "benefit workers as a whole." *Id*. at 24,317; *see also id*. at 24,317-24,318 (noting that under the Withdrawal Rule, any worker "already properly classified as an independent contractor will retain that status" under the longstanding economic realities test, and that "flexible work schedules" can be made available to employees as well as independent contractors). The Department was under no obligation to adopt Plaintiffs' preferred analysis of the relevant issues, and its careful consideration of the perspective of independent contractors who "articulat[ed] general support for the concept of independent contractor status," *id*. at 24,317, and explanation of why it determined that withdrawing the Independent Contractor Rule would nonetheless benefit workers, satisfied the APA. *See Huawei Techs. USA, Inc. v. FCC*, 2 F.4th 421, 451 (5th Cir. 2021) (an agency may "weigh[] the evidence differently than [a commenter] and reach[] contrary but reasonable policy conclusions").

4. Finally, Plaintiffs repeat the argument from their opening brief that the Department "fail[ed] to consider costs" to regulated entities. Pls.' Opp'n at 20-21. Once again, however, the Department did not "ignore" this issue, but considered comments making the same argument and reached a different conclusion. *See* 86 Fed. Reg. at 24,319 (acknowledging that withdrawal would

impose some costs on employers, and noting that the Department only reached its conclusions after "measur[ing] the costs and benefits of retaining the current interpretation of the FLSA by withdrawing the Rule against the costs and benefits of enacting the Rule").  In particular, the Department predicted that the costs of coming into compliance with the Withdrawal Rule would be minimal because the Department merely withdrew an interpretation that had not yet taken effect, so regulated entities would not need to "'shift gears' or change anything about their business practices."  *Id*.  The Department further explained that the Withdrawal Rule would not be disruptive because:

> [A]ny business currently engaging workers properly classified as independent contractors or individuals who now correctly consider themselves to be independent contractors will be able to continue to operate without any effect brought about by the absence of new regulations.  Businesses that had taken steps in preparation for the Rule taking effect will not be precluded from adjusting their relationships with workers or paying for new services from workers, and can rely on past court decisions and WHD guidance to determine whether those workers are employees under the FLSA or independent contractors.

*Id*. at 24,320.  This is a sufficient explanation, particularly in light of the fact that no commenters presented any evidence of actual compliance costs incurred in reliance on the Independent Contractor Rule—and Plaintiffs still do not.  *Cf. DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1914 (2020) (even where agency action upsets serious reliance interests, the agency is free to conclude "that other interests and policy concerns outweigh any reliance interests").

A different result is not compelled by the cases Plaintiffs cite.  *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125 (2016), reaffirmed that "[a]gencies are free to change their existing policies as long as they provide a reasoned explanation for the change," and noted that in providing such an explanation, an agency "must also be cognizant that longstanding policies may have 'engendered serious reliance interests that must be taken into account.'" (citation omitted).  The

17

case implicated such "longstanding policies" and "serious reliance interests" because the agency reversed, without explanation, a policy regarding the application of a statutory exemption that had been in place for more than 30 years.  *Id*. at 2126; *see also Regents*, 140 S. Ct. at 1914 (agency was required to at least consider potential reliance interests where it reversed a five-year old policy on which recipients could have relied to "enroll[] in degree programs, embark[] on careers, start[] businesses, purchase[] homes, and even marr[y] and [have] children").  No such reliance interests are at issue here, where the Department has merely withdrawn an interpretive rule that had not yet taken effect and, in any event, explained its basis for doing so, including a consideration of the cost to regulated entities.  *See, e.g.*, *City of Phila. v. Sessions*, 280 F. Supp. 3d 579, 620 (E.D. Pa. 2017) (noting that *Encino Motorcars* precedent only applies where an agency "had an explicit rule in place, only to later issue the opposite rule with limited or no explanation").

*Texas Association of Manufacturers v. United States Consumer Product Safety Commission*, 989 F.3d 368, 387 (5th Cir. 2021) is also inapposite because the relevant agency disclaimed any obligation to consider costs and "did not prepare a regulatory analysis of the costs and benefits of the rule," despite a statutory command that it do so.  Even though the agency action maintained the status quo, the court found doing so to be arbitrary and capricious because "Congress required the Commission to consider whether the regulation is 'reasonably necessary,' and the Commission failed to undertake that analysis."  *Id*.  Here, the Department considered the relevant costs to the regulated industry and determined that they were outweighed by the benefits of the Withdrawal Rule.  The APA permits the Department to reach that conclusion, and the Court should reject Plaintiffs' arguments to the contrary.

18

## CONCLUSION

For the foregoing reasons, and those set forth in Defendants' summary judgment brief, this Court should grant Defendants' cross-motion for summary judgment, enter judgment in favor of Defendants on all of Plaintiffs' claims, and deny Plaintiffs' motion for summary judgment in full.

Dated:  October 21, 2021   Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

BRAD P. ROSENBERG
Assistant Director, Federal Programs Branch

*/s/ R. Charlie Merritt*
R. CHARLIE MERRITT
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington D.C. 20005
(202) 616-8098
robert.c.merritt@usdoj.gov

*Counsel for Defendants*

19

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 21, 2021, DEFENDANTS' REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT was filed electronically with the Clerk of the Court and is available for viewing and downloading from the Electronic Case Filing (ECF) system. I certify that all participants in this case are registered ECF users and that service will be accomplished by the ECF system.

/s/ R. Charlie Merritt