| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

COALITION FOR WORKFORCE §
INNOVATION, ASSOCIATED BUILDERS §
AND CONTRACTORS OF SOUTHEAST §
TEXAS, ASSOCIATED BUILDERS AND §
CONTRACTORS, INC., and FINANCIAL §
SERVICES INSTITUTE, INC., §
§
Plaintiffs, §
§
*versus* § CIVIL ACTION NO. 1:21-CV-130
§
MARTY WALSH, *in his official capacity as* §
*Secretary of Labor, United States Department* §
*of Labor*, JESSICA LOOMAN, *in her official* §
*capacity as Principal Deputy Administrator,* §
*Division of Wage and Hour*, and UNITED §
STATES DEPARTMENT OF LABOR, §
§
Defendants. §

## MEMORANDUM AND ORDER

Pending before the court is Plaintiffs Coalition for Workforce Innovation, Associated Builders and Contractors of Southeast Texas, Associated Builders and Contractors, Inc., and Financial Services Institute, Inc.'s (collectively, "Plaintiffs") Motion for Summary Judgment (#18).  In response, Defendants Marty Walsh, in his official capacity as Secretary of Labor for the United States Department of Labor ("DOL" or the "Department"), Jessica Looman, in her official capacity as Principal Deputy Administrator for the Division of Wage and Hour, and the DOL (collectively, "Defendants") filed their Cross-Motion for Summary Judgment (#23).  Plaintiffs filed a response to Defendants' cross-motion (#25), and Defendants filed their reply (#30).  Having considered the motions, the submissions of the parties, the record, and the

applicable law, the court is of the opinion that Plaintiffs' motion for summary judgment should be granted and Defendants' cross-motion for summary judgment should be denied.

I.    Background

This case arises from the Government's alleged violation of the Administrative Procedure Act ("APA").  5 U.S.C. § 551 *et seq*.  Plaintiffs challenge final rules promulgated by the DOL regarding the Fair Labor Standards Act ("FLSA").  During the Trump Administration, the DOL promulgated a rule—titled "Independent Contractor Status Under the [FLSA]" (the "Independent Contractor Rule")—which sought to clarify the definition of "independent contractor" under the FLSA.  *See* Independent Contractor Status Under the Fair Labor Standards Act, 86 Fed. Reg. 1,168 (Jan. 7, 2021).  The Independent Contractor Rule was initially scheduled to take effect on March 8, 2021.  *Id*.

On January 20, 2021, when the Biden Administration took office, the White House issued a memorandum directing federal agencies to postpone the effective dates of rules that had been published in the Federal Register but had not yet taken effect (the "Regulatory Freeze Memorandum").  Memorandum for the Heads of Executive Departments and Agencies, 86 Fed. Reg. 7,424 (Jan. 28, 2021).  The White House stated that it issued the Regulatory Freeze Memorandum to "ensure that the President's appointees or designees have the opportunity to review any new or pending rules," as well as to give agencies an opportunity to "review[] any questions of fact, law, and policy the rules may raise."  *Id*.

That same day, on January 20, 2021, the Office of Management and Budget ("OMB") issued Memorandum M-21-14, which provided guidance concerning the implementation of the Regulatory Freeze Memorandum ("OMB Memorandum").  OFF. OF MGMT. & BUDGET, OMB

Memorandum M-21-14, Implementation of Memorandum Concerning Regulatory Freeze Pending Review (2021).   In accordance with the Regulatory Freeze and OMB Memoranda, agencies were asked to consider postponing the effective date of rules that had not yet become effective for 60 days, "consider opening a 30-day comment period to allow interested parties to provide comments about issues of fact, law, and policy raised by those rules, and consider pending petitions for reconsideration involving such rules."  *Id.*; Regulatory Freeze Memorandum, 86 Fed. Reg. at 7,424.

On February 5, 2021, the DOL issued a notice of proposed rulemaking ("NPRM"), proposing a 60-day delay of the Independent Contractor Rule's effective date (the "Delay Rule NPRM").  Independent Contractor Status Under the Fair Labor Standards Act: Delay of Effective Date, 86 Fed. Reg. 8,326 (Feb. 5, 2021).  The Delay Rule NPRM sought comments regarding the delay until February 24, 2021, resulting in a 19-day comment period.  *Id*.  Then, on March 4, 2021, the DOL issued the final rule—"Independent Contractor Status Under the Fair Labor Standards Act (FLSA): Delay of Effective Date" (the "Delay Rule"), which was effective immediately and postponed the effective date of the Independent Contractor Rule from March 8, 2021, to May 7, 2021.  Independent Contractor Status Under the Fair Labor Standards Act (FLSA): Delay of Effective Date, 86 Fed. Reg. 12,535 (Mar. 4, 2021).

On March 12, 2021, the DOL issued a NPRM proposing to withdraw the Independent Contractor Rule (the "Withdrawal Rule NPRM").  Independent Contractor Status Under the Fair Labor Standards Act; Withdrawal, 86 Fed. Reg. 14,027 (Mar. 12, 2021).  The Withdrawal Rule NPRM required that comments be posted by April 12, 2021, providing a comment period of 31 days.  On May 6, 2021, the DOL issued the final rule, titled "Independent Contractor Status

3

Under the [FLSA]: Withdrawal." Independent Contractor Status Under the Fair Labor Standards Act (FLSA): Withdrawal, 86 Fed. Reg. 24,303 (May 6, 2021). Pursuant to this rule, the DOL withdrew the Independent Contractor Rule, and the withdrawal was effective immediately. *Id*.

In the present motion, Plaintiffs ask the court to grant summary judgment in their favor because the DOL allegedly violated the APA in promulgating the Delay and Withdrawal Rules. Thus, Plaintiffs seek a declaration that the DOL's actions are null and void. Defendants, however, deny that the DOL violated the APA in promulgating either the Delay or Withdrawal Rules.

II.   Analysis

Plaintiffs challenge both the Delay and Withdrawal Rules as being invalid under the APA. Specifically, Plaintiffs aver that the Delay Rule failed to engage in notice and comment as required by the APA. Plaintiffs also contend that the DOL's decision to implement both the Delay Rule and the Withdrawal Rule was arbitrary and capricious.

Defendants assert that the 19-day notice-and-comment period for the Delay Rule did not violate the APA. Defendants claim that the Delay Rule did not require notice and comment because the Delay Rule was merely interpretive. Even if notice and comment were required under the APA, Defendants contend that the truncated comment period and the immediate effective date were permissible under the APA's good cause exception. In any event, Defendants argue that both the Delay and Withdrawal Rules were reasonable and do not constitute arbitrary and capricious actions by the DOL.

For the reasons stated below, the court finds that the DOL violated the APA when promulgating both the Delay and Withdrawal Rules. Accordingly, Plaintiffs' motion for summary judgment must be granted, and both rules must be set aside.

A.    <u>Motion for Summary Judgment</u>

A party may move for summary judgment without regard to whether the movant is a claimant or a defending party. *See Dillon Gage, Inc. of Dall. v. Certain Underwriters at Lloyds*, 992 F.3d 401, 403 (5th Cir. 2021); *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 380 (5th Cir. 2019); *Apache Corp. v. W&T Offshore, Inc.*, 626 F.3d 789, 793 (5th Cir. 2010). Ordinarily, motions for summary judgment are reviewed under Rule 56(a) of the Federal Rules of Civil Procedure. Rule 56 provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *United Steel, Paper & Forestry, Rubber Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Anderson*, 9 F.4th 328, 331 (5th Cir. 2021); *Smith v. Harris County*, 956 F.3d 311, 316 (5th Cir. 2020); *Parrish*, 917 F.3d at 378; *Hefren v. McDermott, Inc.*, 820 F.3d 767, 771 (5th Cir. 2016).

"However, in cases such as this one that involve review of agency action under the APA, the Rule 56 standard does not apply." *Alfa Int'l Seafood v. Ross*, 264 F. Supp. 3d 23, 36 (D.D.C. 2017). Indeed, a motion for summary judgment "stands in a somewhat unusual light, in that the administrative record provides the complete factual predicate for the court's review." *Exxon Mobil Corp. v. Mnuchin*, 430 F. Supp. 3d 220, 228 (N.D. Tex. 2019) (quoting *Tex. Comm. on Nat. Res. v. Van Winkle*, 197 F. Supp. 2d 586, 595 (N.D. Tex. 2002)); *see Pol'y & Rsch., LLC v. U.S. Dep't of Health & Hum. Servs.*, 313 F. Supp. 3d 62, 74 (D.D.C. 2018) (explaining that "the court must limit its review to the 'administrative record' and the facts and reasons contained therein to determine whether the agency's action was 'consistent with the relevant APA standard of review'" (quoting *Ho–Chunk, Inc. v. Sessions*, 253 F. Supp. 3d 303, 307 (D.D.C. 2017)). As

a result, the entire case "is a question of law," and "the district court sits as an appellate tribunal." *Zevallos v. Obama*, 10 F. Supp. 3d 111, 117 (D.D.C. 2014) (quoting *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993)), *aff'd*, 793 F.3d 106 (D.C. Cir. 2015); *Alfa Int'l Seafood*, 264 F. Supp. 3d at 36. Therefore, the court must decide whether, as a matter of law, "the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Zevallos*, 10 F. Supp. 3d at 117 (quoting *Kadi v. Geithner*, 42 F. Supp. 3d 1, 9 (D.D.C. 2012)).

> B.     Administrative Procedure Act

> 1.     Delay Rule

Plaintiffs contend that Defendants violated the APA when promulgating the Delay Rule because they committed procedural errors. The court agrees.

"The APA establishes the procedures federal administrative agencies use for 'rule making,' [which is] defined as the process of 'formulating, amending, or repealing a rule.'" *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 95 (2015) (quoting 5 U.S.C. § 551(5)). "'Rule,' in turn, is defined broadly to include 'statement[s] of general or particular applicability and future effect' that are designed to 'implement, interpret, or prescribe law or policy.'" *Id.* at 95-96 (quoting 5 U.S.C. § 551(4)). If an agency's rulemaking is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," the agency action is unlawful and must be set aside. *Wages & White Lion Invs., L.L.C. v. United States Food & Drug Admin.*, 16 F.4th 1130, 1136 (5th Cir. 2021) (quoting 5 U.S.C. § 706(2)); *Huawei Techs. USA, Inc. v. Fed. Commc'ns Comm'n*, 2 F.4th 421, 459 (5th Cir. 2021) (citing 5 U.S.C. § 706).

"The APA requires rules to undergo notice and comment unless they are exempt." *Texas v. United States*, 524 F. Supp. 3d 598, 657 (S.D. Tex. 2021) (citing 5 U.S.C. § 553(a)-(b)).  The APA "prescribes a three-step procedure" for notice-and-comment rulemaking:

> First, the agency must issue a "[g]eneral notice of proposed rule making," ordinarily by publication in the Federal Register.  Second, if "notice [is] required," the agency must "give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments."  An agency must consider and respond to significant comments received during the period for public comment.  Third, when the agency promulgates the final rule, it must include in the rule's text "a concise general statement of [its] basis and purpose."

*Perez*, 575 U.S. at 96 (quoting 5 U.S.C. § 553(b)-(c)).

The purposes of the notice-and-comment requirement are "(1) to ensure that agency regulations are tested via exposure to diverse public comment, (2) to ensure fairness to affected parties, and (3) to give affected parties an opportunity to develop evidence in the record to support their objections to the rule and thereby enhance the quality of judicial review." *Texas v. U.S. Envtl. Prot. Agency*, 389 F. Supp. 3d 497, 503 (S.D. Tex. 2019) (quoting *Int'l Union, United Mine Workers of Am. v. Mine Safety & Health Admin.*, 407 F.3d 1250, 1259 (D.C. Cir. 2005)); *accord Mid Continent Nail Corp. v. United States*, 846 F.3d 1364, 1373 (Fed. Cir. 2017); *United States v. Lott*, 750 F.3d 214, 219 (2d Cir. 2014); *United States v. Reynolds*, 710 F.3d 498, 517 (3d Cir. 2013).  A meaningful comment period serves as "an exchange of views, information, and criticism between interested persons and the agency," and it "[enables] 'the agency [to] maintain[] a flexible and open-minded attitude towards its own rules.'" *Prometheus Radio Project v. Fed. Commc'ns Comm'n*, 652 F.3d 431, 449 (3d Cir. 2011) (quoting *McLouth Steel Prods. Corp. v. Thomas*, 838 F.2d 1317, 1325 (D.C. Cir. 1988); *Home Box Off., Inc. v. Fed. Commc'ns Comm'n*, 567 F.2d 9, 36 (D.C. Cir. 1977)); *accord Reynolds*, 710 F.3d at 517.  Simply put, the APA's

comment requirement allows for "meaningful public comment on issues critical to the rule making process." *Save Our Springs v. Babbitt*, 27 F. Supp. 2d 739, 748 (W.D. Tex. 1997).

Rules that are required to be issued through the notice-and-comment process are known as legislative or substantive rules. *Perez*, 575 U.S. at 96 (citing *Chrysler Corp. v. Brown*, 441 U.S. 281, 302-03 (1979)); *Texas v. United States*, 201 F. Supp. 3d 810, 829 (N.D. Tex. 2016). Legislative rules affect existing individual rights and obligations and have the "force and effect of law." *Perez*, 575 U.S. at 96 (citing *Chrysler Corp.*, 441 U.S. at 302-03). Not all rules, however, are required to be issued using the notice-and-comment process. *Id*.

There are two provisions in the APA that provide exemptions to the notice-and-comment requirement. *See* 5 U.S.C. § 553. The first exception states that unless "notice or hearing is required by statute," notice and comment is not required to issue "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(A). In relevant part here, interpretive[1] rules are those that are "issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers." *Perez*, 575 U.S. at 96 (quoting *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 99 (1995)). Put another way, interpretive rules are "statements as to what the administrative officer thinks the statute or regulation means." *La Union Del Pueblo Entero v. Fed. Emergency Mgmt. Agency*, No. 1:08-CV-487, 2017 WL 2539451, at *7 (S.D. Tex. Feb. 15, 2017) (citing *Brown Express Inc. v. United States*, 607 F.2d 695, 700 (5th Cir. 1979)). These rules are more readily issued than

---

[1] Although the statute mentions "interpretative rules," they are more commonly known as "interpretive rules," and the court will refer to them as such. *See Perez*, 575 U.S. at 96.

legislative rules and, consequently, "do not have the force and effect of law and are not accorded that weight in the adjudicatory process." *Perez*, 575 U.S. at 96 (quoting *Shalala*, 514 U.S. at 99).

"Although the APA does not provide a definition of 'interpretive' rules, courts have developed general broad tests to determine the question." *La Union Del Pueblo Entero*, 2017 WL 2539451, at *7. For example, in *Brown Express, Inc. v. United States*, the United States Court of Appeals for the Fifth Circuit found that "an agency's notice was not an interpretive rule because it (1) 'did not purport to interpret a statute or regulation,' (2) was 'not a mere clarification,' (3) 'defined no ambiguous term,' and (4) 'gave no officer's opinion about the meaning of the statute or regulations.'" *Id.* (quoting *Brown Express, Inc.*, 607 F.2d at 700). Rather, the court concluded that the notice was a legislative rule because "it effect[ed] a change in the method used by the [agency] in granting substantive rights." *Id.* (quoting *Brown Express, Inc.*, 607 F.2d at 700).

The APA's second exemption to the notice-and-comment procedure is the good cause exception. There are two types of exceptions for good cause, which are based on "[d]ifferent policies" and "can be invoked for different reasons." *E. Bay Sanctuary Covenant v. Biden* (*E. Bay II*), 993 F.3d 640, 675 n.15 (9th Cir. 2021) (quoting *Riverbend Farms, Inc. v. Madigan*, 958 F.2d 1479, 1485 (9th Cir. 1992)). The first good cause exception allows an agency to bypass notice and comment in its rulemaking "when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. § 553(b)(B). The second provides an exception to the number of days necessary before a rule goes into effect. *See* 5 U.S.C. § 553(d)(3). The APA generally requires agencies to provide a thirty-day "waiting period" before a rule becomes effective. *United States v. Johnson*, 632 F.3d 912,

916 (5th Cir. 2011). The thirty-day waiting period is "intended to give affected parties time to adjust their behavior before the final rule takes effect." *E. Bay II*, 993 F.3d at 675 n.15 (quoting *Riverbend Farms, Inc.*, 958 F.2d at 1485). This requirement, however, can be waived when "good cause [is] found." 5 U.S.C. § 553(d)(3).

"The 'APA's notice and comment exemptions must be narrowly construed.'" *Texas v. United States*, 809 F.3d 134, 171 (5th Cir. 2015) (quoting *Prof'ls & Patients for Customized Care v. Shalala*, 56 F.3d 592, 595 (5th Cir. 1995)). In doing so, courts avoid "providing agencies with an 'escape clause' from the requirements Congress prescribed.'" *See Johnson*, 632 F.3d at 928 (quoting *United States v. Garner*, 767 F.2d 104, 120 (5th Cir. 1985)). "The burden of establishing good cause is on the agency, and the exception is applicable in 'emergency situations, or where delay could result in serious harm.'" *United States v. Dean*, No. 08-CR-67(LAP), 2020 WL 3073340, at *2 (S.D.N.Y. June 9, 2020) (quoting *Nat'l Highway Traffic Safety Admin.*, 894 F.3d at 113-14); *accord E. Bay Sanctuary Covenant v. Trump* (*E. Bay I*), 932 F.3d 742, 777 (9th Cir. 2018) (stating that "[t]he good cause exception is essentially an emergency procedure," and to use it, an agency must "'overcome a high bar' and show that 'delay would do real harm' to life, property, or public safety" (quoting *United States v. Valverde*, 628 F.3d 1159, 1164-65 (9th Cir. 2010)). To determine whether good cause exists, the court must "rely only on the 'basis articulated by the agency itself' at the time of the rulemaking." *Texas v. Becerra*, No. 5:21-CV-300-H, 2021 WL 6198109, at *13 (N.D. Tex. Dec. 31, 2021) (quoting *Johnson*, 632 F.3d at 928); *accord N.C. Growers' Ass'n, Inc. v. United Farm Workers*, 702 F.3d 755, 767 (4th Cir. 2012) (citing *United States v. Gould*, 568 F.3d 459, 469-70 (4th Cir. 2009); *Garner*, 767 F.2d at 116-17).

a.    <u>Notice and Comment</u>

Plaintiffs argue that the Delay Rule is invalid under the APA because there was no meaningful opportunity for notice and comment by the public.  Defendants counter that the 19-day notice-and-comment period for the Delay Rule did not violate the APA.  Defendants assert that the Delay Rule did not require notice and comment because it postponed the Independent Contractor Rule, which is merely interpretive.  Defendants further contend that even if notice-and-comment rulemaking were required, the condensed comment period and the immediate effective date were permissible under the APA's good cause exception.   The court, however, is unpersuaded by Defendants' arguments.

i.    <u>Whether Notice and Comment was Required</u>

As an initial matter, the court finds that the Delay Rule, which postponed the effective date of the Independent Contractor Rule, constitutes an amendment or rescission of the Independent Contractor Rule.[2]  *See Nat. Res. Def. Council v. Nat'l Highway Traffic Safety Admin.*, 894 F.3d 95, 113 (2d Cir. 2018) ("[A]ltering the effective date of a duly promulgated standard could be, in substance, tantamount to an amendment or rescission of the [rule]." (quoting *Nat. Res. Def. Council v. Abraham*, 355 F.3d 179, 194 (2d Cir. 2004)));[3] *see also Clean Water Action v. U.S. Envtl. Prot. Agency*, 936 F.3d 308, 315 (5th Cir. 2019) (concluding that an agency's rule delaying

_____

[2] There is no apparent dispute between the parties that the Delay Rule's postponement of the Independent Contractor Rule's effective date qualifies as an amendment or rescission of that rule.

[3] "A significant body of authority reinforces this proposition."  *Nat'l Highway Traffic Safety Admin.*, 894 F.3d at 113 ("In any event, an 'indefinite suspension' does not differ from a revocation simply because the agency chooses to label it a suspension." (citing *Public Citizen v. Steed*, 733 F.2d 93, 98 (D.C. Cir. 1984))); *Envtl. Def. Fund, Inc. v. Envtl. Prot. Agency*, 716 F.2d 915, 920 (D.C. Cir. 1983) ("[S]uspension or delayed implementation of a final regulation normally constitutes substantive rulemaking under APA § 553."); *Nat. Res. Def. Council, Inc. v. U.S. Envtl. Prot. Agency*, 683 F.2d 752, 761-62 (3d Cir. 1982) (holding that indefinite delay of an effective date was a "rule" for purposes of APA)).

certain compliance dates required notice and comment).  As such, the Delay Rule constitutes substantive rulemaking, and it must be promulgated using the notice-and-comment procedure.  *See Sierra Club v. Jackson*, 833 F. Supp. 2d 11, 27 (D.D.C. 2012) (stating that "the suspension or delayed implementation of a rule normally constitutes substantive rulemaking" (citing *Abraham*, 355 F.3d at 194; *Public Citizen*, 733 F.2d at 98; *U.S. Envtl. Prot. Agency*, 683 F.2d at 763 n.23)); *see also Perez*, 575 U.S. at 96 (holding that substantive rules must use notice-and-comment procedures).

Moreover, the Delay Rule required notice and comment for another reason—because the Independent Contractor Rule is a legislative rule and was promulgated using the notice-and-comment procedure.  Contrary to Defendants' contention, the court finds that the Independent Contractor Rule qualifies as legislative because it would have affected existing individual rights. According to Defendants, the Independent Contractor Rule "would have made a number of significant changes to the [DOL]'s longstanding analysis of who is an employee under the FLSA or an independent contractor, including adding a new part to Title 29 of the Code of Federal Regulations (Part 795) and introducing a generally applicable analysis that neither the [DOL] nor any court had ever applied."  In addition, the classification of a worker as either an employee or independent contractor changes the rights that he or she has under the FLSA.  Because, as Defendants explain, the analysis of who is an employee or independent contractor—and potentially what rights each worker has—would have been changed by the Independent Contractor Rule, the rule affected existing individual rights and obligations and is, thus, legislative.  *See Chrysler Corp.*, 441 U.S. at 302-03.

12

Defendants' argument that the Independent Contractor Rule is interpretive, rather than legislative, is further undermined by the DOL's "own conduct" in how it enacted the rule. *See N.C. Growers' Ass'n, Inc.*, 702 F.3d at 765 (explaining that the agency's "own conduct" in promulgating a rule "is highly relevant" and shows how the agency classified the rule). The fact that the Independent Contractor Rule was promulgated using the notice-and-comment process suggests that the DOL believed that notice-and-comment was required and, further, that the Independent Contractor Rule was a legislative rule—at least until this litigation. *See id.* ("Similar attempts by an agency 'to comply with APA notice-and-comment procedures suggest that the agency believed them to be applicable,' and support the conclusion that 'those procedures were applicable.'" (quoting *Manufactured Hous. Inst. v. U.S. Envtl. Prot. Agency*, 467 F.3d 391, 399 (4th Cir. 2006))). Thus, contrary to Defendants' assertion, the rule was legislative and properly underwent the notice-and-comment procedure.

Quoting *Perez*, Defendants further argue that the Delay Rule did not require notice and comment because where "an agency is not required to use notice-and-comment procedures to issue an initial rule, it is also not required to use those procedures when it amends or repeals that interpretive rule." *Perez*, 575 U.S. at 101; *see Tilden Mining Co., Inc. v. Sec'y of Labor*, 832 F.3d 317, 321 (D.C. Cir. 2016) ("In simple terms, the [*Perez*] Court held that if an agency's interpretation of a statute or regulation does not require notice-and-comment rulemaking procedures in the first instance, a change in that interpretation does not require notice-and-comment rulemaking procedures merely because it is a change."). Defendants, however, ignore the Supreme Court's statement earlier in its opinion that, under section 2 of the

13

APA, agencies must "use the same procedures when they amend or repeal a rule as they used to issue the rule." *Perez*, 575 U.S. at 93 (citing 5 U.S.C. § 551(5)).

Indeed, in 2019, the Fifth Circuit applied this rule, as elucidated by the *Perez* court.  In *Clean Water Action v. United States Environmental Protection Agency*, the Fifth Circuit determined that the Environmental Protection Agency's postponement rule, which delayed certain compliance dates of an earlier 2015 rule, complied with the APA.  936 F.3d at 310.  The 2015 rule was promulgated using the notice-and-comment process, as was the postponement rule.  *See id*. at 310, 316.  The Fifth Circuit concluded that the postponement rule did not violate the APA when it amended the 2015 rule because "[t]he agency supplied a reasoned basis for its action," and, in relevant part here, the agency "accomplished the revision using 'the same procedures when they amend[ed] . . . [the 2015] rule as they used to issue the rule in the first instance.'"  *Id.* at 316.[4]  Thus, under the APA, a rule that is promulgated through the notice-and-comment procedure must also be amended using the same process.  *See id*; *accord United States v. Colliot*, No.

---

[4] Indeed, the Fifth Circuit quoted this *Perez* rule three times in its opinion.  *Id.* at 312-14, 316.

AU-16-CA-01281-SS, 2018 WL 2271381, at *3 (W.D. Tex. May 16, 2018) ("Rules issued via notice-and-comment rulemaking must be repealed via notice-and-comment rulemaking.").[5]

As explained earlier, the Independent Contractor Rule was properly promulgated using the notice-and-comment process. Because the DOL must use "the same procedures when [it] amend[s] or repeal[s] [the Independent Contractor Rule] as [it] used to issue the rule in the first instance," the DOL was also required to promulgate the Delay Rule using the notice-and-comment procedure. *See Perez*, 575 U.S. at 93 (citing 5 U.S.C. § 551(5)). Accordingly, the court rejects Defendants' contention that notice and comment was not required to issue the Delay Rule.

Nevertheless, while the Delay Rule had a notice-and-comment period, it lasted for only 19 days. Then, on March 4, 2021, the DOL issued the Delay Rule, effective immediately. The court, therefore, must determine whether Defendants violated the APA by (1) failing to provide

---

[5] The Fifth Circuit, in dicta, noted that "intentionally delaying implementation of a duly promulgated rule may be analogous to an agency's issuing a rule that is inconsistent with a prior rule." *Clean Water Action*, 936 F.3d at 314 n.11. The court continued, "In the latter situation, the D.C. Circuit, quoting Judge Easterbrook, holds that such a rule is necessarily a revision of the prior rule, which is permissible as long as pursued through the appropriate administrative processes." *Id*.

> It is a maxim of administrative law that: "If a second rule repudiates or is irreconcilable with [a prior legislative rule], the second rule must be an amendment of the first; and, of course, an amendment to a legislative rule must itself be legislative." Michael Asimow, *Nonlegislative Rulemaking and Regulatory Reform*, 1985 DUKE L.J. 381, 396. Judge Easterbrook has lucidly explained why in such circumstances notice and comment rulemaking must be followed: A volte face . . . may be an attempt to avoid the notice and opportunity for comment that the [APA] requires for the alteration of a rule. When an agency gets out the Dictionary of Newspeak and pronounces that for purposes of its regulation war is peace, it has made a substantive change for which the APA may require procedures. If in the air bags case, *Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 103 S. Ct. 2856, 77 L. Ed.2d 443 (1983), instead of repealing the rule the agency had proclaimed that an ordinary seat belt is a "passive restraint[,"] the Court would have treated this the same as it treated revocation of the rule. Both require notice, an opportunity for comment, and an adequate record. *Homemakers North Shore, Inc. v. Bowen*, 832 F.2d 408, 412 (7th Cir. 1987).

*Id*. (quoting *Nat'l Fam. Planning & Reprod. Health Ass'n., Inc. v. Sullivan*, 979 F.2d 227, 235 (D.C. Cir. 1992)).

the public with a meaningful opportunity for notice and comment regarding the Delay Rule; or (2) making the rule effective on the date of its issuance.  Defendants deny that the APA was violated and further claim that the DOL had good cause for its actions.

ii.     Meaningful Opportunity for Notice and Comment

Plaintiffs assert that the Delay Rule's comment period was insufficient to provide a meaningful opportunity for notice and comment.  Specifically, Plaintiffs aver that the Delay Rule's comment period was too short and limited in scope.

1.     Length of Comment Period

Although "the APA does not establish a minimum time period for third parties to submit comments," courts require that agencies provide a "meaningful" opportunity for comment.  *E.g.*, *Fleming Cos., Inc. v. U.S. Dep't of Agric.*, 322 F. Supp. 2d 744, 764 (E.D. Tex. 2004) (citing 5 U.S.C. § 553), *aff'd sub nom. Fleming Cos., Inc. v. Dep't of Agric.*, 164 F. App'x 528 (5th Cir. 2006); *see N.C. Growers Ass'n*, 702 F.3d at 764; *Prometheus Radio Project*, 652 F.3d at 449; *Rural Cellular Ass'n v. Fed. Commc'ns Comm'n*, 588 F.3d 1095, 1101 (D.C. Cir. 2009) (citing *Gerber v. Norton*, 294 F.3d 173, 179 (D.C. Cir. 2002)).  The Fifth Circuit, for instance, has observed that the APA generally requires "a minimum thirty-day period for participation in the rulemaking through comment."  *Chem. Mfrs. Ass'n v. Envtl. Prot. Agency*, 899 F.2d 344, 347 (5th Cir. 1990); *see Azar v. Allina Health Servs.*, ___ U.S. ___, 139 S. Ct. 1804, 1809 (2019) (noting that a congressionally-mandated 60-day comment period was "twice the APA minimum of 30 days"); *United States v. Reyes*, No. EP-10-CR-985-PRM, 2010 WL 2542030, at *5 (W.D. Tex. June 22, 2010); *Fleming Cos., Inc.*, 322 F. Supp. 2d at 764.  Indeed, "a 30-day comment period is generally the shortest time period sufficient for interested persons to meaningfully review

16

a proposed rule and provide informed comment." *Nat'l Lifeline Ass'n v. Fed. Commc'ns Comm'n*,
921 F.3d 1102, 1117 (D.C. Cir. 2019) (citing *Petry v. Block*, 737 F.2d 1193, 1201 (D.C. Cir.
1984); *Prometheus Radio Project*, 652 F.3d at 453); *but see Centro Legal de la Raza v. Exec. Off.
for Immigr. Rev.*, 524 F. Supp. 3d 919, 955 (N.D. Cal. 2021) (finding that an agency's 30-day
notice-and-comment period was insufficient for a rule that implemented extensive changes to the
immigration court system).  For this reason, a rule that has a comment period of less than 30 days
typically must fall under the good cause exception.  *See United States v. Torres*, 573 F. Supp. 2d
925, 948 (W.D. Tex. 2008) (citing 5 U.S.C. § 553(b)(B)); *see also N.C. Growers' Ass'n, Inc.*,
702 F.3d at 770 (noting that instances warranting a comment period of less than 30 days "are
generally characterized by the presence of exigent circumstances in which agency action was
required in a mere matter of days"); *Nw. Airlines, Inc. v. Goldschmidt*, 645 F.2d 1309, 1320-21
(8th Cir. 1981) (finding that good cause existed to justify the agency's decision to reduce the
comment period and declare the regulation effective upon issuance).

Here, the DOL found that it gave a meaningful opportunity for comment despite the
shortened comment period:

> The [DOL] believes that the 19-day comment period did provide a meaningful
> opportunity to comment on the proposed delay.  The [DOL] received over 1,500
> comments in response to the [Delay Rule NPRM], comparable to the approximately
> 1,800 comments it received in response to the substantive [NPRM for the
> Independent Contractor Rule] that it published in September 2020.  Moreover,
> given the Independent Contractor Rule's original March 8, 2021[,] effective date,
> it would have been impracticable to afford a longer comment period.  Had the
> [DOL] allowed for a longer comment period, the Independent Contractor Rule
> would have taken effect before the delay could begin, which would have defeated
> the purpose of this rule and caused additional confusion for regulated entities.

Delay Rule, 86 Fed. Reg. at 12,537.

The court disagrees and concludes that, due to the limited time frame for comments, the DOL did not provide a meaningful opportunity for comment.  Although the APA does not mandate the minimum number of days necessary for adequate comment, circumstances warranting a comment period of less than 30 days are "rare" and generally require "good cause."  *N.C. Growers' Ass'n, Inc.*, 702 F.3d at 770; *Nw. Airlines, Inc.*, 645 F.2d at 1320-21 (finding that good cause existed to justify the agency's decision to reduce the comment period and declare the regulation effective upon issuance).  Good cause, however, is not present in this case.

Good cause may be found where "'delay [of the rule] would do real harm' to life, property, or public safety."  *California v. Azar*, 911 F.3d 558, 576 (9th Cir. 2018); *accord E. Bay I*, 932 F.3d at 777 (quoting *Valverde*, 628 F.3d at 1164-65).  "Examples of such circumstances under which good cause existed include an agency determination that new rules were needed 'to address threats posing a possible imminent hazard to aircraft, persons, and property within the United States,' or were 'of life-saving importance to mine workers in the event of a mine explosion,' or were necessary to 'stave off any imminent threat to the environment or safety or national security.'"  *N.C. Growers' Ass'n, Inc.*, 702 F.3d at 766 (quoting *Mack Trucks, Inc. v. Envtl. Prot. Agency*, 682 F.3d 87, 93 (D.C. Cir. 2012)).

Defendants fail to establish that any serious, imminent harm would result if there was a postponement in the Delay Rule's effective date—that is, if the Independent Contractor Rule were to have gone into effect on March 8, 2021.  The court surmises that had the rule gone into effect, some employees may have been reclassified as independent contractors, but it is unlikely that the

18

Independent Contractor Rule would have caused grave harm to the safety or security of American workers.[6]

Instead, Defendants primarily complain that harm would result because, had the Independent Contractor Rule gone into effect, the rule would have "potentially creat[ed] confusion about worker protections and employer obligations," and "the regulated community may have unnecessarily expended resources to modify their operations in light of the Independent Contractor Rule." Although the court recognizes the DOL's desire to "eliminate . . . legal and regulatory uncertainty," that mission does "not by itself constitute good cause." *See California*, 911 F.3d at 576 (citing *Valverde*, 628 F.3d at 1167); *Envtl. Def. Fund, Inc.*, 716 F.2d at 920-21 ("[I]t was not at all reasonable for [the agency] to rely on the good cause exception" simply because of "an alleged pressing need to avoid industry compliance with regulations that were to be eliminated," thereby preventing "the regulated community [from] expend[ing] resources"); *Nat'l Venture Cap. Ass'n v. Duke*, 291 F. Supp. 3d 5, 19 (D.D.C. 2017) (rejecting the agency's argument that good cause existed because implementing the final rule "would sow confusion and likely cause the waste of resources by multiple stakeholders with interests in [the] rulemaking"); *see also Nat'l Highway Traffic Safety Admin.*, 894 F.3d at 115 (holding that an agency's preference for "different regulations that are easier or less costly to comply with" does not constitute good cause (citing *Mack Trucks, Inc.*, 682 F.3d at 94)).

---

[6] Indeed, in the Independent Contractor Rule, the DOL explained that it did "not expect there to be many current employees whose positions are converted to independent contractor relationships without meaningful ability to influence the terms of the new position in a way that mitigates deleterious impacts of the resulting tradeoff." Independent Contractor Rule, 86 Fed. Reg. at 1,210.

Simply put, there is no serious harm that would result from extending the comment period for the Delay Rule.  Nor does the record establish that there would be any such harm in connection with the Independent Contractor Rule going into effect, even if only temporarily.  *See Purdue Univ. v. Scalia*, No. CV 20-3006 (EGS), 2020 WL 7340156, at *8 (D.D.C. Dec. 14, 2020) (holding that the agency did not show that notice and comment was impracticable because there was no "record support establishing that there is imminent 'serious fiscal harm' to U.S. workers in connection with [certain visas]" (citing *Cap. Area Immigrants' Rights Coal. v. Trump*, No. 19-2117 (TJK), 2020 WL 3542481, at *12 (D.D.C. June 30, 2020))).  Rather, the pressure for immediacy stems from the change of administration from that of Former President Donald Trump to President Joseph Biden.  While the Biden Administration sought additional time to review, revise, and repeal the Trump Administration's lingering regulations, that objective does not constitute an emergency or, further, meet the high bar necessary for good cause.  *See Nat'l Educ. Ass'n v. DeVos*, 379 F. Supp. 3d 1001, 1022 (N.D. Cal. 2019) (concluding that "the new administration's desire to suspend [certain regulations] while it tries to reverse or revise them is not an 'emergency' that justifies the [agency]'s circumventing the statutorily required negotiated-rulemaking procedures"); *Pineros y Campesinos Unidos del Noroeste v. Pruitt*, 293 F. Supp. 3d 1062, 1067 (N.D. Cal. 2018) ("A new administration's simple desire to have time to review, and possibly revise or repeal, its predecessor's regulations falls short of this exacting [good cause] standard." (citing *Clean Air Council v. Pruitt*, 862 F.3d 1, 9 (D.C. Cir. 2017))).  Similarly, "the mere existence of any deadlines for agency action"—as provided by the Regulatory Freeze and OMB Memoranda—"does not in itself constitute good cause." *Vista Health Plan, Inc. v. U.S. Dep't of Health & Hum. Servs.*, No. 1:18-CV-824-LY, 2020 WL 6380206, at *9 (W.D.

Tex. Sept. 21, 2020) (quoting *U.S. Steel Corp. v. U.S. Envtl. Prot. Agency*, 595 F.2d 207, 214 (5th Cir. 1979)).

The court, therefore, does not find that good cause exists to warrant a shortened comment period in this instance.  Rather, the Delay Rule required a comment period of at least 30 days in order for "interested persons to meaningfully review a proposed rule and provide informed comment."  *Nat'l Lifeline Ass'n*, 921 F.3d at 1117 (citing *Petry*, 737 F.2d at 1201; *Prometheus Radio Project*, 652 F.3d at 453).  The DOL, thus, failed to provide a meaningful opportunity for comment in promulgating the Delay Rule.

## 2.    Content Restriction

In addition, the DOL limited the scope of the Delay Rule's comment period to include only "comments about [the DOL's] proposal to delay the [Independent Contractor Rule]'s effective date."  Delay Rule, 86 Fed. Reg. at 8,326.  The DOL remarked:

> As to the issue of the scope of comments sought in this rulemaking, the [DOL] sought comments about, and considered whether, issues of policy, law, and fact warrant an extension of the Independent Contractor Rule's original effective date by 60 days.  If after having had additional time to consider the January 2021 Rule, the [DOL] decides to propose any changes to the January 2021 Rule, it will at that point solicit comments on its substantive proposal.

Delay Rule, 86 Fed. Reg. at 12,537.

"The notice and comment provisions of the APA require, among other things, that the agency give 'interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments,' and that the agency shall explain its decision, '[a]fter consideration of the relevant matter presented.'"  *N.C. Growers' Ass'n, Inc.*, 702 F.3d at 769 (quoting 5 U.S.C. § 553(b)-(c)).  When an agency limits the scope of comments in promulgating a new rule, however, the agency may preclude interested persons from having a

meaningful opportunity for comment. *See id*. at 769-70; *California by & through Becerra v. U.S. Dep't of the Interior*, 381 F. Supp. 3d 1153, 1176 (N.D. Cal. 2019); *S.C. Coastal Conservation League v. Pruitt*, 318 F. Supp. 3d 959, 967 (D.S.C. 2018).

The court finds the Fourth Circuit's decision in *North Carolina Growers' Association, Inc*. to be instructive. 702 F.3d at 770. In that case, the plaintiffs brought an APA action against the DOL after it suspended 2008 regulations governing the H–2A visa program, which permitted the temporary admission of foreign agricultural workers, and reinstated the prior set of 1987 regulations. *Id*. at 759-64. In the suspension rule's NPRM, the DOL proposed to suspend the 2008 regulations because there were issues operating the H–2A visa program, "including a lack of resources, inability to implement operations, and processing delays." *Id*. at 770. The DOL's NPRM stated that it "would consider comments concerning [only] the suspension action itself, and not regarding the merits of either [the 2008 or 1987] regulations." *Id*. at 761.

The Fourth Circuit determined that the DOL's content restriction in the NPRM violated the APA. *Id*. at 770. The court explained that the reasons identified in the NPRM for the suspension were "significant, substantive matters," which implicated questions regarding the merits of both the 2008 and 1987 regulations. *Id*. The court concluded that "as a result of the [DOL]'s content restriction, the [DOL] refused to receive comments on and to consider or explain 'relevant and significant issues.'" *Id*. (citing 5 U.S.C. § 553(b)-(c)). The court further held that "the content restriction was so severe in scope, by preventing any discussion of the 'substance or merits' of either set of regulations, that the opportunity for comment cannot be said to have been 'a meaningful opportunity.'" *Id*. (citing *Prometheus Radio Project*, 652 F.3d at 450).

Similar to the suspension NPRM in *North Carolina Growers' Association, Inc.*, the Delay Rule NPRM limited comments to the suspension itself, while excluding consideration of any comments regarding the Independent Contractor Rule or the independent contractor analysis that predated the rule.[7]  *See id.*; *California by & through Becerra*, 381 F. Supp. 3d at 1175; *Puget Soundkeeper All. v. Wheeler*, No. C15-1342-JCC, 2018 WL 6169196, at *5 (W.D. Wash. Nov. 26, 2018).   By preventing the discussion of the "substance or merits" of the Independent Contractor Rule or the analysis that remained after the rule's delay, the DOL refused to receive comments on or consider "relevant and significant issues."  *N.C. Growers' Ass'n, Inc.*, 702 F.3d at 70 (quoting 5 U.S.C. § 553(b); *Prometheus Radio Project*, 652 F.3d at 450).   As a result, the Delay Rule's "content restriction was so severe in scope" that there was no meaningful opportunity for comment, thereby violating the APA.  *Id.*; *Puget Soundkeeper All.*, 2018 WL 6169196, at *5.

b.   Effective Date of the Delay Rule

Plaintiffs further argue that the APA was violated when there was no 30-day waiting period for the Delay Rule, as it became effective immediately.  In the Delay Rule, the DOL contends that "delaying the effective date of the Independent Contractor Rule would give the Department additional opportunity to review and consider the Independent Contractor Rule, as the Regulatory

---

[7] Although the Delay Rule NPRM stated that it would consider comments regarding the Independent Contractor Rule if it proposed a change to that rule, the limiting of comments to only the suspension of the Independent Contractor Rule constitutes a "content restriction" in violation of the APA. *See California by & through Becerra*, 381 F. Supp. 3d at 1175 (holding that there was a content restriction violating the APA, where the agency published two NPRMs, one which proposed a repeal of certain regulations and sought comments regarding only the repeal and a second which sought comments on revisions for the regulations).

Freeze Memorandum and OMB Memorandum M-21-14 contemplate." Moreover, the DOL

asserts that it had good cause for making the rule effective immediately upon publication:

> Like allowing for a longer comment period, allowing for a 30-day delay between publication and the effective date of this rulemaking would result in the January 2021 Rule taking effect before the delay begins, which would undermine this rule's fundamental purpose of delaying the effective date before the Independent Contractor Rule takes effect in accord with the Regulatory Freeze Memorandum and result in additional confusion for regulated entities. The Regulatory Freeze Memorandum was issued on January 20, 2021, only 47 days before the rule's original effective date of March 8, 2021. It would not have been practicable to issue an NPRM proposing to delay the Independent Contractor Rule and allow for ample time for public comment on that proposal in time to publish a final rule not less than 30 days before March 8. Moreover, this rulemaking merely implements a 60-day delay of the Independent Contractor Rule, rather than itself imposing any new compliance obligations on the regulated community. Therefore, the [DOL] finds that a lapse between publication and the effective date of this rule delaying the Independent Contractor Rule's effective date is unnecessary. Because allowing for a 30-day period between publication and the effective date of this rulemaking is both unnecessary and impracticable, there is good cause to make this final rule delaying the Independent Contractor Rule's effective date effective immediately upon publication.

Delay Rule, 86 Fed. Reg. at 12,535.

For the reasons stated earlier, the court is not persuaded that good cause exists warranting

the Delay Rule's immediate effective date. *See Envtl. Def. Fund v. U.S. Envtl. Prot. Agency*, 515

F. Supp. 3d 1135, 1150 (D. Mont. 2021) ("'Congress intended to impose upon an administrative

agency the burden of showing a public necessity for an early effective date,' and an agency

therefore 'cannot arbitrarily find good cause.'" (quoting *Nw. Airlines, Inc.*, 645 F.2d at 1320

n.16)). Rather, Defendants fail to establish that any serious, imminent harm would result if there

was a postponement in the Delay Rule's effective date and the Independent Contractor Rule were

to have gone into effect on March 8, 2021.

In sum, the court determines that the DOL did not have good cause to shorten the comment period, which, along with the content restriction, prevented a meaningful opportunity for comment.  Similarly, the court finds that good cause does not exist to bypass the 30-day waiting period required for the Delay Rule.  For these reasons, the promulgation of the Delay Rule violated the APA, and the rule is vacated.

2. Withdrawal Rule

Having vacated the Delay Rule, the court turns to the Withdrawal Rule.  Plaintiffs claim that the Withdrawal Rule is arbitrary and capricious, in violation of the APA.  Again, the court agrees.

a. Arbitrary and Capricious

In addition to compelling notice-and-comment rulemaking in certain circumstances, the APA mandates that an agency cannot act in an arbitrary and capricious manner in promulgating any rules.  *See* 5 U.S.C. § 706(2)(A).  If an agency action is arbitrary and capricious, the court must hold that action to be unlawful and set it aside.  *Texas v. Biden*, 20 F.4th 928, 988 (5th Cir. 2021) (quoting 5 U.S.C. § 706(2)(A)).  "The APA's arbitrary-and-capricious standard requires that agency action be reasonable and reasonably explained."  *Fed. Commc'ns Comm'n v. Prometheus Radio Project*, ___ U.S. ___, 141 S. Ct. 1150, 1158 (2021); *accord Texas*, 20 F.4th at 988-89.  To that end, agency action is arbitrary and capricious if:

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

25

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc.*, 463 U.S. at 43; *accord Sierra Club v. U.S. Envtl. Prot. Agency*, 939 F.3d 649, 663-64 (5th Cir. 2019) (quoting *Tex. Oil & Gas Ass'n v. U.S. Envtl. Prot. Agency*, 161 F.3d 923, 933 (5th Cir. 1998)).

"[T]he scope of review under the 'arbitrary and capricious' standard is narrow[,] and a court is not to substitute its judgment for that of the agency . . . ." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc.*, 463 U.S. at 43; *accord Sierra Club*, 939 F.3d at 664. Nevertheless, the court must "ensure that the agency 'examined the relevant data and articulated a satisfactory explanation for its action.'" *Sierra Club*, 939 F.3d at 664 (quoting *10 Ring Precision, Inc. v. Jones*, 722 F.3d 711, 723 (5th Cir. 2013)); *accord Motor Vehicle Mfrs. Ass'n of the U.S., Inc.*, 463 U.S. at 43. In reviewing the agency's explanation, the court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Sierra Club*, 939 F.3d at 664 (quoting *Motor Vehicle Mfrs. Ass'n of the U.S., Inc.*, 463 U.S. at 43).

Agencies, of course, are "free to change their existing policies," as long as "they provide a reasoned explanation for the change."[8] *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016) (citing *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981-82 (2005)); *see Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 863-64 (1984). "[T]he agency must at least 'display awareness that it is changing position' and 'show that there are good reasons for the new policy.'" *Encino Motorcars, LLC*, 579 U.S. at 222 (citing *Fed.*

---

[8] Because the Delay Rule violated the APA and is now vacated, the Independent Contractor Rule should have gone into effect on March 8, 2021. Had the Independent Contractor Rule gone into effect, it would have been the controlling policy at the time the Withdrawal Rule was promulgated. Thus, the court views the Independent Contractor Rule to constitute the relevant existing policy in this instance.

*Commc'n Comm'n v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009)); *see Texas*, 20 F.4th at 991 ("When a 'new policy rests upon factual findings that contradict those which underlay [an agency's] prior policy,' the agency must provide 'a more detailed justification' than usual to avoid arbitrariness and capriciousness." (quoting *Fed. Commc'n Comm'n*, 556 U.S. at 515)).

In particular, where, as here, "an agency rescinds a prior policy[,] its reasoned analysis must consider the alternatives that are within the ambit of the existing policy." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, ___ U.S. ___, 140 S. Ct. 1891, 1913 (2020) (citing *Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 51); *accord Texas*, 20 F.4th at 992; *Wages & White Lion Invs., L.L.C.*, 16 F.4th at 1139.   An agency is not required to "consider all policy alternatives." *Dep't of Homeland Sec.*, 140 S. Ct. at 1913 (citing *Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 51).   But, by failing to contemplate alternatives within the ambit of the existing policy, the agency fails to "consider important aspects of the problem before [it]." *See id*.  This omission alone causes agency action to be arbitrary and capricious. *Id.*; *Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 43.

b.   Failure to Consider Alternatives

In this instance, the court finds that the DOL failed to consider potential alternatives to rescinding the Independent Contractor Rule.   Indeed, the DOL prohibited any comments on the issue.   The Withdrawal Rule NPRM stated:

> The [DOL] is not proposing any regulatory guidance to replace the guidance that the Independent Contractor Rule would have introduced . . . , so any commenter feedback addressing or suggesting such a replacement or otherwise requesting that the [DOL] adopt any specific guidance if the Rule is withdrawn will be considered to be outside the scope of this NPRM.

Withdrawal Rule NPRM, 86 Fed. Reg. at 14,035.

The Independent Contractor Rule's primary purpose was to provide clarity to the economic realities test—the multi-factor test used by the courts to "determine whether, as a matter of economic reality, an individual is in business for himself or herself as an independent contractor, or is an employee of another." *See Purdham v. Fairfax Cnty. Sch. Bd.*, 637 F.3d 421, 433 (4th Cir. 2011) (citing *Krause v. Cherry Hill Fire Dist. 13*, 969 F. Supp. 270, 274-75 (D.N.J. 1997); *Cleveland v. City of Elmendorf*, No. SA-02-CA-0395 NN, 2004 WL 305609 (W.D. Tex. Jan. 23, 2004), *aff'd*, 388 F.3d 522 (5th Cir. 2004)); *see also Saleem v. Corp. Transp. Grp., Ltd.*, 854 F.3d 131, 142 (2d Cir. 2017) (explaining that the economic realities test looks at the economic reality of what the individual actually does for work to determine employment status).  As the Independent Contractor Rule explained, the economic realities test has evolved over time from its inception in three United States Supreme Court cases from the 1940s to today.  *See United States v. Silk*, 331 U.S. 704, 712 (1947); *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727-29 (1947); *Bartels v. Birmingham*, 332 U.S. 126, 130 (1947).  Both the Independent Contractor and Withdrawal Rules confirmed that, presently, the economic realities test varies between courts.[9] Independent Contractor Rule, 86 Fed. Reg. at 1,170; Withdrawal Rule, 86 Fed. Reg. at 24,304.  Although courts consistently note that the factors for the economic realities test are non-exhaustive, some courts have differed in their application of the test.  Specifically, depending on the jurisdiction, courts may apply a five- or six-factor economic realities test to determine whether a worker is an employee or independent contractor.  *See, e.g., Sanchez Oil & Gas Corp. v.*

---

[9] There have even been "several variations of economic reality tests" applied within the same court.  *See Brown v. N.Y.C. Dep't of Educ.*, 755 F.3d 154, 167 (2d Cir. 2014) (examining the variations of economic reality tests in the Second Circuit and concluding that there was no "single 'economic realities' test consisting of uniform factors that should have been applied" in the instant case).

*Crescent Drilling & Prod., Inc.*, 7 F.4th 301, 313 n.17 (5th Cir. 2021) (quoting *Parrish*, 917 F.3d at 379) (applying the *Silk* five-factor test); *Saleem*, 854 F.3d at 139 n.19 (*Silk* five-factor test); *Acosta v. Off Duty Police Servs., Inc.*, 915 F.3d 1050, 1055 (6th Cir. 2019) (quoting *Rutherford Food Corp.*, 331 U.S. at 807) (six-factor test); *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1311-12 (11th Cir. 2013) (six-factor test); *Jimenez v. Best Behav. Healthcare, Inc.*, 391 F. Supp. 3d 380, 388 (E.D. Pa. 2019) (quoting *Martin v. Selker Bros.*, 949 F.2d 1286, 1293 (3d Cir. 1991)) (six-factor test).

        Courts applying a six-factor economic realities test consider the following factors:

1.     [t]he degree of control exercised by the alleged employer over the worker,
2.     the worker's opportunity for profit or loss,
3.     the worker's investment in the business,
4.     the permanence of the working relationship,
5.     the degree of skill required to perform the work, and
6.     the extent to which the work is an integral part of the alleged employer's business.

*Acosta v. Paragon Contractors Corp.*, 884 F.3d 1225, 1235 (10th Cir. 2018) (quoting *Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998)); *accord Acosta*, 915 F.3d at 1055; *Karlson v. Action Process Serv. & Priv. Investigation, LLC*, 860 F.3d 1089, 1092 (8th Cir. 2017); *McFeeley v. Jackson St. Ent., LLC*, 825 F.3d 235, 241 (4th Cir. 2016).  In contrast, the Second and Fifth Circuits utilize a five-factor economic realities test.  *See Franze v. Bimbo Bakeries USA, Inc.*, 826 F. App'x 74, 76 (2d Cir. 2020) (quoting *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1059 (2d Cir. 1988)); *Hobbs v. Petroplex Pipe & Constr., Inc.*, 946 F.3d 824, 829 (5th Cir. 2020) (citing *Silk*, 331 U.S. at 712; *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008)).  The Second Circuit combines the second and third factors above—the worker's opportunity for profit or loss and his or her investment in the business—and analyzes them as a

single factor.  *Franze*, 826 F. App'x at 76 (quoting *Brock*, 840 F.2d at 1059).  The Fifth Circuit,

on the other hand, uses the *Silk* five-factor test.  *Hobbs*, 946 F.3d at 829 (citing *Silk*, 331 U.S. at

712; *Hopkins*, 545 F.3d at 343).  The *Silk* test lists the first five factors enumerated by other

circuits but does not include the last factor—whether the work is an integral part of the purported

employer's business.[10]  *Id.*

Even the non-binding guidance produced by the DOL's Wage and Hour Division is

inconsistent.[11]  U.S. Dep't of Labor, Fact Sheet #13: Employment Relationship Under the Fair

Labor Standards Act (FLSA) (2008).  Indeed, Fact Sheet #13, which "provides general

information concerning the meaning of 'employment relationship,'" concedes that "there is no

single rule or test for determining whether an individual is an independent contractor or an

employee for purposes of the FLSA.  *Id.*  The fact sheet further states that the U.S. Supreme

Court has considered seven factors to be "significant."  *Id.*  Those include the six factors listed

above, as well as an additional factor—"[t]he amount of initiative, judgment, or foresight in open

market competition with others required for the success of the claimed independent contractor."

*Id.*

Over time, the economic reality factors, themselves, have evolved.  For example, some

courts have altered the investment factor to consider "the extent of the relative investments of the

worker and the alleged employer."  *Nelson v. Tex. Sugars, Inc.*, 838 F. App'x 39, 42 (5th Cir.

---

[10]  Nevertheless, noting that the *Silk* factors are non-exhaustive, the Fifth Circuit has considered the integral factor when it was asked to do so by the parties.  *Id.* at 836.

[11]  Fact Sheet #13 notes that "[t]he contents of this document do not have the force and effect of law and are not meant to bind the public in any way.  [Fact Sheet #13] is intended only to provide clarity to the public regarding existing requirements under the law or agency policies."  U.S. Dep't of Labor, Fact Sheet #13: Employment Relationship Under the Fair Labor Standards Act (FLSA) (2008).

2020); *Karlson*, 860 F.3d at 1096; *Levi v. Gulliver's Tavern, Inc.*, No. CV 15-216 WES, 2018 WL 10149710, at *3 (D.R.I. Apr. 23, 2018).  Other courts have not revised the factor's phrasing but have decided to compare the worker's and purported employer's relative investments in assessing the factor.  *See Keller v. Miri Microsystems LLC*, 781 F.3d 799, 810 (6th Cir. 2015); *Baker*, 137 F.3d at 1442; *Walsh v. Alpha & Omega USA, Inc.*, ___ F.3d ___, No. CV 20-1033 (DSD/HB), 2021 WL 3492296, at *7 (D. Minn. Aug. 9, 2021); *Kellogg v. Fannie's Inc.*, 467 F. Supp. 3d 1296, 1312 (N.D. Ga. 2020); *Flores v. Velocity Express, LLC*, 250 F. Supp. 3d 468, 488 (N.D. Cal. 2017).

Additionally, some courts have modified the permanence factor.  Under *Silk*, this factor considers the continuity and duration of the working relationship between the putative employer and employee.  *Flores*, 250 F. Supp. 3d at 491; *McFeeley v. Jackson St. Ent., LLC*, 47 F. Supp. 3d 260, 272 (D. Md. 2014), *aff'd*, 825 F.3d 235 (4th Cir. 2016).  When analyzing the permanence factor, some courts have also considered the exclusivity of the working relationship—*i.e.*, whether the worker could perform work for other companies.  *Parrish*, 917 F.3d at 387 (citing *Carrell v. Sunland Const., Inc.*, 998 F.2d 330, 332 (5th Cir. 1993)); *Keller*, 781 F.3d at 807 (citing *Sec'y of Labor v. Lauritzen*, 835 F.2d 1529, 1537 (7th Cir. 1987)).  In some cases, however, the issue of exclusivity is analyzed under other factors, such as the degree of control or opportunity for profit or loss.  *See Freund v. Hi-Tech Satellite, Inc.*, 185 F. App'x 782, 783 (11th Cir. 2006) (affirming the trial court's determination that a company had little control over the worker because, in part, he "was free to perform installations for other companies"); *Franklin v. Jenn's Angels, LLC*, No. CV 21-399-SDD-SDJ, 2022 WL 69213, at *4 (M.D. La. Jan. 6, 2022) (finding that the fact that the plaintiffs "could not accept employment from other companies" indicated that

the defendants had a high degree of control); *Hargrave v. Aim Directional Servs., LLC*, No. 2:18-CV-449, 2021 WL 5155697, at *5 (S.D. Tex. May 24, 2021) (noting that the worker's ability to "work[] for other companies" suggested that the workers retained the opportunity for profits and losses (citing *Carrell*, 998 F.2d at 333-34)); *Roeder v. Directv, Inc.*, No. C14-4091-LTS, 2017 WL 151401, at *18 (N.D. Iowa Jan. 13, 2017) (finding that the worker's performance of work for a competitor was relevant to his opportunity for profit or loss and weighed in favor of independent contractor status).  As a result, courts may consider exclusivity multiple times under different factors.  *See Freund*, 185 F. App'x at 783 (affirming the district court's conclusion that the company "exerted very little control over [the worker]" because he "was free to perform installations for other companies" and that the worker's relationship with the company did not have "a significant degree of permanence" because he "was able to take jobs from other installation brokers"); *Olukayode v. UnitedHealth Grp.*, No. CV 19-1101(DSD/HB), 2021 WL 3293648, at *8 (D. Minn. Aug. 2, 2021) (explaining that the consultants' "work for competitors" was evidence of the defendants' level of control and the consultants' "ability to work for competitors" was evidence of "the permanency of the relationship"); *Roeder*, 2017 WL 151401, at *22 (considering the plaintiff's work for a competitor under both the opportunity for profit or loss and permanency factors).

Moreover, some courts have expanded the degree-of-skill factor to consider the worker's initiative—that is, whether the worker has "some ability to exercise significant initiative within the business."  *Parrish*, 917 F.3d at 385 (quoting *Hopkins*, 545 F.3d at 345); *see Karlson*, 860 F.3d at 1093; *Gayle v. Harry's Nurses Registry, Inc.*, 594 F. App'x 714, 717 (2d Cir. 2014) (quoting *Brock*, 840 F.2d at 1058-59); *Hay v. ALH Admin. Servs.*, 283 F. Supp. 3d 1273, 1276

32

(M.D. Fla. 2017).  For those courts that apply it, the integral factor has also evolved.  *See Hobbs*, 946 F.3d at 829 (citing *Silk*, 331 U.S. at 712; *Hopkins*, 545 F.3d at 343) (not including the integral factor in its economic realities test).  In *Rutherford Food Corp.*, this factor considered whether the worker was "a part of the integrated unit of production."  331 U.S. at 729.[12]  More recently, courts consider whether the service rendered is an integral part of the purported employer's business so that it "could not function without the services its workers provide." *Acosta*, 915 F.3d at 1055; *accord Gilbo v. Agment, LLC*, 831 F. App'x 772, 778 (6th Cir. 2020); *see Verma v. 3001 Castor, Inc.*, 937 F.3d 221, 232 (3d Cir. 2019) (holding that dancers were an integral part of a gentleman's club's business because they provided the club's "primary offering").

Simply put, due to the courts' varied approaches to applying the economic realities test, there has been confusion among businesses and workers as to whether an employment relationship exists.  The Independent Contractor Rule was promulgated as a response to this uncertainty and sought to provide clarity to the economic realities test.  In doing so, the Independent Contractor Rule explained that to determine whether an employment relationship existed, the following non-exhaustive list of factors may be considered:  (1) the nature and degree of control over the work;

---

[12] In *Rutherford*, the Supreme Court agreed with the Tenth Circuit in its characterization of meat boners as employees due to their work as part of the integrated unit of production in the slaughterhouse:
> The operations at the slaughterhouse constitute an integrated economic unit devoted primarily to the production of boneless beef.  Practically all of the work entering into the unit is done at one place and under one roof. . . .  The boners work alongside admitted employees of the plant operator at their tasks.  The task of each is performed in its natural order as a contribution to the accomplishment of a common objective.

*Id*. at 726 (quoting *Walling v. Rutherford Food Corp.*, 156 F.2d 513, 516 (10th Cir. 1946)).

33

(2) the individual's opportunity for profit or loss;[13] (3) the amount of skill required for the work; (4) the degree of permanence of the working relationship between the individual and the potential employer; and (5) whether the work is part of an integrated unit of production.  Independent Contractor Rule, 86 Fed. Reg. at 1,246-47.

The Independent Contractor Rule further identified two core factors—(1) the nature and degree of control over the work and (2) the individual's opportunity for profit or loss—that would "typically (but not necessarily) carry greater weight" than the remaining factors.  Independent Contractor Rule, 86 Fed. Reg. at 1,199.  Specifically, the rule explained:

> Given these two core factors' greater probative value, if they both point towards the same classification, whether employee or independent contractor, there is a substantial likelihood that is the individual's accurate classification.  This is because other factors are less probative and, in some cases, may not be probative at all, and thus are highly unlikely, either individually or collectively, to outweigh the combined probative value of the two core factors.

Independent Contractor Rule, 86 Fed. Reg. at 1,246.  Nevertheless, consistent with the existing case law, the Independent Contractor Rule explained that "[t]hese factors are not exhaustive, and no single factor is dispositive."  Independent Contractor Rule, 86 Fed. Reg. at 1,246; *see Sanchez Oil & Gas Corp.*, 7 F.4th at 313 n.17 (quoting *Parrish*, 917 F.3d at 379); *Acosta*, 915 F.3d at 1055; *Scantland*, 721 F.3d at 1312.

In this instance, because the DOL rescinded the Independent Contractor Rule, it was required to contemplate alternatives within the ambit of the rule.  *Dep't of Homeland Sec.*, 140 S. Ct. at 1913 (citing *Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 51).  This requirement

---

[13] This factor also considered the individual's investment in the business, which mirrors the Second Circuit's application of the economic realities test.  *See Franze*, 826 F. App'x at 76 (quoting *Brock*, 840 F.2d at 1059).

was set forth in one of the "leading administrative law cases," *Motor Vehicle Manufacturers Association of the United States, Inc. v. State Farm Automobile Insurance Co*. *Id*. at 1912; *see Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 51.

> There, the National Highway Traffic Safety Administration [("NHTSA")] promulgated a requirement that motor vehicles produced after 1982 be equipped with one of two passive restraints:  airbags or automatic seatbelts.  Four years later, before the requirement went into effect, NHTSA concluded that automatic seatbelts, the restraint of choice for most manufacturers, would not provide effective protection.  Based on that premise, NHTSA rescinded the passive restraint requirement in full.
>
> [The Supreme Court] concluded that the total rescission was arbitrary and capricious.  As [the court] explained, NHTSA's justification supported only "disallow[ing] compliance by means of" automatic seatbelts.  It did "not cast doubt" on the "efficacy of airbag technology" or upon "the need for a passive restraint standard."  Given NHTSA's prior judgment that "airbags are an effective and cost-beneficial lifesaving technology," [the court] held that "the mandatory passive restraint rule [could] not be abandoned without any consideration whatsoever of an airbags-only requirement."

*Dep't of Homeland Sec.*, 140 S. Ct. at 1912 (citing *Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 37-38, 46-47, 51)

This same requirement—that agencies must consider alternatives within the ambit of the existing policy—was further examined in a recent Supreme Court case, *Department of Homeland Security v. Regents of the University of California*.  140 S. Ct. at 1896.  That case involved the Deferred Action for Childhood Arrivals ("DACA") program.  *Id*.  DACA had two main components:  It allowed "certain unauthorized aliens who arrived in the United States as children to apply for a two-year forbearance of removal," and "[t]hose granted such relief became eligible for . . . various government benefits."  *Id*.  The Department of Homeland Security ("DHS") expanded DACA eligibility and created a related program called Deferred Action for Parents of Americans and Lawful Permanent Residents ("DAPA").  *Id*.  The legality of DAPA was

challenged in court, and the Fifth Circuit "found that DAPA violated the [Immigration and Nationality Act] because it extended eligibility for benefits to a class of unauthorized aliens." *Id.* at 1896, 1911.  Nothing in the Fifth Circuit's decision, however, affected DHS's forbearance-of-removal authority.  Yet, when DHS rescinded DACA, taking into consideration the Fifth Circuit's decision, "it considered only the yes-no choice whether to retain or terminate the entire program: Its 'memorandum contain[ed] no discussion of forbearance or the option of retaining forbearance without benefits.'" *Texas*, 20 F.4th at 992 (citing *Regents*, 140 S. Ct. at 1913; *Wages & White Lion Invs., L.L.C.*, 16 F.4th at 1139).

The Supreme Court held that DHS's failure to consider retaining forbearance was arbitrary and capricious because the department did not consider the alternatives within the ambit of the existing policy.  *Dep't of Homeland Sec.*, 140 S. Ct. at 1913 (citing *Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 51).  The Supreme Court explained:

> Even if it is illegal for DHS to extend [government] benefits to DACA recipients, that conclusion supported only "disallow[ing]" benefits.  It did "not cast doubt" on the legality of forbearance or upon DHS's original reasons for extending forbearance to childhood arrivals.  Thus, given DHS's earlier judgment that forbearance is "especially justified" for "productive young people" who were brought here as children and "know only this country as home," the DACA Memorandum could not be rescinded in full "without any consideration whatsoever" of a forbearance-only policy.

*Id.* at 1912 (citing *Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 47, 51).

In short, agency action is arbitrary and capricious when the agency considers only the binary choice of whether to retain or rescind a policy, without also "considering less disruptive alternatives." *See Texas*, 20 F.4th at 992 (quoting *Wages & White Lion Invs., L.L.C.*, 16 F.4th at 1139).  These alternatives may include "more limited policies," such as making "possible changes" to the policy being rescinded.  *Id.*; *Texas v. Biden*, ___ F. Supp. 3d ___, No.

2:21-CV-067-Z, 2021 WL 3603341, at *19 (N.D. Tex. Aug. 13, 2021), *aff'd*, 20 F.4th 928 (5th

Cir. 2021).  Furthermore, the consideration of alternatives is particularly necessary when there

is nothing that has "cast doubt" on the reasons for the original policy.  *Dep't of Homeland Sec.*,

140 S. Ct. at 1913 (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 47).

Similarly here, by prohibiting comments on regulations to replace the Independent

Contractor Rule, the DOL refused to "meaningfully consider more limited policies" than the total

withdrawal of the Independent Contractor Rule.  Withdrawal Rule, 86 Fed. Reg. at 14,035; *Texas*,

2021 WL 3603341, at *19.  Although the Withdrawal Rule concluded that the Independent

Contractor Rule did not provide clarity to the economic realties test, nothing "cast doubt" on

the need for a more unified standard for independent-contractor analysis.  *Dep't of Homeland Sec.*,

140 S. Ct. at 1912 (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 47); *see, e.g.*,

*Brown*, 755 F.3d at 167 (rejecting the plaintiff's argument that "there is a single 'economic

realities' test consisting of uniform factors").  Thus, given the DOL's prior judgment that

"stakeholders would benefit from clarification" of the economic realities test and its more recent

declaration that it is "always seeking to improve clarity for workers and employers," the

Independent Contractor Rule "could not be rescinded in full 'without any consideration

whatsoever'" of a more limited policy.  Independent Contractor Rule, 86 Fed. Reg. at 1,171;

Withdrawal Rule, 86 Fed. Reg. at 24,310; *Dep't of Homeland Sec.*, 140 S. Ct. at 1912 (quoting

*Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 51).

To satisfy its obligations under the APA, the DOL should have contemplated making

potential changes to the Independent Contractor Rule.  *See Texas*, 20 F.4th at 992 (quoting *Wages

& White Lion Invs., L.L.C.*, 16 F.4th at 1139).  Indeed, there were a multitude of alternative

policies that the DOL could have considered that would have provided more guidance for the independent contractor analysis than existed at the time, while still addressing the issues outlined in the Withdrawal Rule.  To name a few, the DOL could have considered implementing a version of the Independent Contractor Rule that did not elevate any factors as core factors.  As another option, the Department could have promulgated a regulation that enumerated six factors instead of five, ranked the factors, or rephrased any of the factors' wording.  The DOL could have also considered adopting the seven factors that the Department previously set forth in Fact Sheet #13 as the applicable economic realities test.  Such alternatives were certainly within the ambit of the existing policy.  *See Regents*, 140 S. Ct. at 1913 (concluding that the DACA termination was arbitrary and capricious because DHS failed to consider alternative actions short of terminating DACA, such as eliminating DACA benefits); *Motor Vehicle Mfrs. Ass'n of the U.S., Inc.*, 463 U.S. at 43 (holding that the NHTSA had acted arbitrarily and capriciously by not considering airbags as an alternative to automatic seatbelts); *Texas*, 2021 WL 3603341, at *19 (concluding that DHS failed to consider alternatives within the ambit of the existing policy where the department explained its decision to terminate, rather than modify, a program in a single sentence); *Nat'l Urb. League v. Ross*, 489 F. Supp. 3d 939, 993-94 (N.D. Cal. 2020) (holding that the U.S. Census Bureau did not consider alternatives to its decision to reduce the time to complete the 2020 census because it did not consider leaving the deadlines unchanged while still making a good faith effort to meet the statutory deadlines).

By refusing to consider alternatives to the total withdrawal of the Independent Contractor Rule, the DOL failed to "consider important aspects of the problem before [it]"—the lack of clarity of the economic realities test and the need for regulatory certainty.  *Dep't of HomelandSec.*,

140 S. Ct. at 1913 (citing *Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 51); *see Texas v. Brooks-LaSure*, No. 6:21-CV-00191, 2021 WL 5154219, at *11 (E.D. Tex. Aug. 20, 2021) ("[A]n important aspect of the existing policy was establishing legal authority for the billions of dollars spent in Texas's Medicaid program.  [The Centers for Medicare and Medicaid Services] could have considered retaining that authority by leaving the approval in place while pursuing less-restrictive alternatives to vindicate its concerns."); Independent Contractor Rule, 86 Fed. Reg. at 1,172-75 (explaining that coherence was a goal of the rule).  As explained in the Withdrawal Rule, the DOL rescinded the Independent Contractor Rule, in part, because the agency determined that the rule did not accomplish that goal.[14]  Although the DOL concluded in the Withdrawal Rule that the Independent Contractor Rule would not have reduced confusion, the inconsistent application of the economic realities test confirms that its current rendition is anything but clear.  Moreover, in the Withdrawal Rule, the DOL affirmed that it is "always seeking to improve clarity for workers and employers."  Withdrawal Rule, 86 Fed. Reg. at 24,310.

For these reasons, the court finds that the economic realties test's lack of clarity was an important aspect of the problem the DOL sought to address.  Despite the DOL's purported desire to provide clarity, the Department did not address the inconsistencies and lack of coherence in the manner in which the economic realities test was applied across the country prior to the Independent Contractor Rule.  Nor did the DOL contemplate a solution for that problem—as previously identified by the Department.  Rather, the DOL merely stated that the economic realities test was more intelligible before the promulgation of the Independent Contractor Rule.

---

[14] The Withdrawal Rule also expressed concerns that the Independent Contractor Rule was not fully aligned with past case law and did not benefit American workers, apparently discounting the notion that a single standard providing greater clarity would be beneficial to all.

Although "as a matter of general principle, uniformity in the application of federal statutory law is desired and required," the withdrawal of the Independent Contractor Rule left regulated parties without consistent guidance regarding the proper classification of workers under the FLSA. *Bostic v. Ohio River Co. (Ohio Div.) Basic Pension Plan*, 517 F. Supp. 627, 636 (S.D. W. Va. 1981); *see generally Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 222 (2008) (explaining that the construction of federal law must "ensure that the statutory scheme is coherent and consistent"); LARRY M. EIG, CONG. RSCH. SERV., 97-589, STATUTORY INTERPRETATION: GENERAL PRINCIPLES AND RECENT TRENDS 23 (2014) (stating that "[f]ederal law usually applies uniformly nationwide").  As a practical matter, in the absence of a uniform regulation that is consistent throughout the nation, a worker's classification as an independent contractor or an employee is dependent on the happenstance of geography, *i.e.*, the judicial circuit in which the worker resides or works.  This outcome falls short of providing clarity to the workforce of the United States or to those who compensate them.  Therefore, by not considering more limited courses of action or alternative approaches than the total withdrawal of the Independent Contractor Rule, the DOL did not take into account important aspects of the problem before it.  "'That omission alone' makes the [Withdrawal Rule] arbitrary and capricious." *See Texas v. United States*, No. 6:21-CV-00016, 2021 WL 3683913, at *50 (S.D. Tex. Aug. 19, 2021) (quoting *Regents*, 140 S. Ct. at 1913), *appeal dism'd*, No. 21-40618, 2022 WL 517281 (5th Cir. Feb. 11, 2022).

In sum, the court concludes that the Delay Rule violated the procedural requirements of the APA.  The court further finds that the Withdrawal Rule is arbitrary and capricious.  Consequently, both the Delay and Withdrawal Rules violate the APA and are vacated.

III.     Conclusion

      Based on the foregoing, Plaintiffs' Motion for Summary Judgment (#18) is GRANTED, and Defendants' Cross-Motion for Summary Judgment (#23) is DENIED.  It is further ORDERED that the Delay Rule, Independent Contractor Status Under the Fair Labor Standards Act (FLSA): Delay of Effective Date, 86 Fed. Reg. 12,535 (Mar. 4, 2021), and the Withdrawal Rule, Independent Contractor Status Under the Fair Labor Standards Act (FLSA): Withdrawal, 86 Fed. Reg. 24,303 (May 6, 2021), are VACATED.  Therefore, the Independent Contractor Rule, Independent Contractor Status Under the Fair Labor Standards Act, 86 Fed. Reg. 1,168 (Jan. 7, 2021), became effective as of March 8, 2021, the rule's original effective date, and remains in effect.

      SIGNED at Beaumont, Texas, this 14th day of March, 2022.


_Marcia A. Crone_
_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE

41