**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS, BEAUMONT DIVISION**

| | | |
|---|---|---|
| **COALITION FOR WORKFORCE INNOVATION; ASSOCIATED BUILDERS AND CONTRACTORS OF SOUTHEAST TEXAS; ASSOCIATED BUILDERS AND CONTRACTORS, INC.; FINANCIAL SERVICES INSTITUTE, INC.; NATIONAL FEDERATION OF INDEPENDENT BUSINESS; CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA; NATIONAL RETAIL FEDERATION; AND AMERICAN TRUCKING ASSOCIATIONS,** | § § § § § § § § § § § § § § | |
| **Plaintiffs,** | § § § | **CASE NO.  21-CV-00130-MAC** |
| **vs.** | § § § | |
| **JULIE SU, ACTING SECRETARY, UNITED STATES DEPARTMENT OF LABOR, in her official capacity; JESSICA LOOMAN, ADMINISTRATOR, WAGE AND HOUR DIVISION, U.S. DEPARTMENT OF LABOR, in her official capacity; and UNITED STATES DEPARTMENT OF LABOR,** | § § § § § § § § § | |
| **Defendants.** | § § | |

**PLAINTIFFS' SECOND AMENDED COMPLAINT**

Plaintiffs COALITION FOR WORKFORCE INNOVATION ("CWI"), ASSOCIATED

BUILDERS AND CONTRACTORS OF SOUTHEAST TEXAS ("ABCSETX"), ASSOCIATED

BUILDERS AND CONTRACTORS, INC. ("ABC"), FINANCIAL SERVICES INSTITUTE,

INC. ("FSI"), NATIONAL FEDERATION OF INDEPENDENT BUSINESS ("NFIB"),

CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA ("U.S. CHAMBER" or the "CHAMBER"), NATIONAL RETAIL FEDERATION ("NRF"), and AMERICAN TRUCKING ASSOCIATIONS ("ATA"), (collectively "Plaintiffs"), by and through their undersigned counsel, for their Complaint against the Defendants, herein state as follows:

## **PRELIMINARY STATEMENT**

1.      Less than two years ago, this Court vacated the attempt by the Department of Labor ("Department" or "DOL") to delay and withdraw its rules on independent contractors under the Fair Labor Standards Act ("FLSA") (the "2021 Independent Contractor Rule" or "2021 Rule") due to violations of the Administrative Procedure Act ("APA"). *Coalition for Workforce Innovation v. Walsh*, 2022 U.S. Dist. LEXIS 68401 (E.D. Tex. 2022), vacated as moot, 22-40316 (5th Cir. Feb. 21, 2024). Among other things, this Court found the Department's purported withdrawal of the 2021 Rule to be arbitrary and capricious because it "left regulated parties without consistent guidance regarding the proper classification of workers under the Fair Labor Standards Act ("FLSA")." *Id.* at *48. In response to that decision, the Department has now issued a new rule on independent contractors (the "2024 Independent Contractor Rule" or "2024 Rule"), which rescinds the 2021 Independent Contractor Rule again and replaces it with a rule that replicates the fatal flaws of its previously invalidated rulemaking. Like its predecessor, the 2024 Rule fails to address (and will only add to) the confusion over the proper classification of independent contractors, and will irreparably harm not just companies employing independent contractors nationwide, but the workers themselves. The 2024 Rule should likewise be enjoined.

2.      In vacating the Department's first attempts to delay and then withdraw the 2021 Rule, this Court found that the Department "failed to consider important aspects of the problem before it—the lack of clarity of the economic realities test and the need for regulatory certainty."

*Id.* at \*46 (citing *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1913 (2020)). The Court also agreed with Plaintiffs that the Department violated the APA because it arbitrarily and capriciously departed from the 2021 Rule without considering potential alternatives within the ambit of the existing policy. *See id.* at \*44-45.

3.      Rather than contest this Court's order on its merits, the Department has issued a new rule that largely repeats the Department's previous errors and fails to remedy the confusion addressed by the 2021 Independent Contractor Rule. The 2024 Rule repeals the 2021 Independent Contractor Rule currently in effect and substitutes an amorphous, vague, and unworkable standard for determining employee or independent contractor status under the FLSA. The 2024 Rule mischaracterizes and ignores substantial data in the record; dismisses without justification the Department's previous findings; mischaracterizes the 2021 Rule's content and purpose; reverses course without adequate explanation; misinterprets long-standing FLSA precedent; fails to sufficiently consider reasonable alternatives; and suffers from numerous additional defects under the APA, FLSA, and Regulatory Flexibility Act ("RFA").

4.      The flaws in the new rule include, but are not limited to, the same APA errors this Court previously identified.  Among other deficiencies, DOL has acted arbitrarily and capriciously by once again attempting to withdraw (and now replace) its prior, comprehensive regulations without adequate justification. The Department has failed to consider important aspects of the problems it purports to address, has relied on factors that it should not have considered, and has failed to meaningfully consider reasonable alternatives.  It has acted contrary to law in endorsing a worker classification test sharply at odds with binding Supreme Court precedent interpreting the FLSA.  In addition, as the Small Business Administration's Office of Advocacy found, the Department's cost-benefit analysis is grossly inadequate, in violation of both the APA and the

RFA.  The Department does not even attempt to account for the massive costs the 2024 Rule will impose after a single year and ignores the loss of hundreds of millions of dollars in benefits that it found would have resulted from the 2021 Rule that it now would repeal.

5.      This Court should vacate the Department's withdrawal of the 2021 Independent Contractor Rule, as it did previously, vacate the Department's promulgation of the 2024 Independent Contractor Rule, and enjoin the Department from enforcing the 2024 Rule.

## **PARTIES**

6.      Plaintiff CWI is a coalition that supports choice, flexibility, and opportunity in the modern workforce. CWI represents a diverse array of stakeholders, including those who represent and advocate on behalf of workers, small businesses, start-ups, entrepreneurs, and technology companies. CWI also represents and advocates on behalf of traditional businesses and associations in industries such as media, transportation, distribution, retail, and service. CWI supports modernized guidance on how to define the scope of the independent contractor relationship as CWI advocates on behalf of students, parents, entrepreneurs, retirees, and other independent workers who prioritize the flexibility and freedom of non-traditional work arrangements. CWI also supports work opportunities for groups such as immigrants, caregivers, veterans, first time small business owners and entrepreneurs, and individuals with criminal backgrounds, who may struggle to find employment in the traditional job market. Additionally, CWI enters into contractual relationships with independent contractors in furtherance of its own operations.

7.      CWI supported the 2021 Independent Contractor Rule because it provides clarity for both workers and businesses. The withdrawal of the 2021 Rule and replacement by the 2024 Rule threatens CWI, its members, and their constituents with irreparable harm. Accordingly, CWI

strongly opposed the 2024 Rule and has a substantial interest in the 2021 Independent Contractor Rule remaining in effect.

8.      Plaintiff ABCSETX is a non-profit trade association of two hundred construction industry contractors and related firms operating in Southeast Texas and around the country. Headquartered in this judicial district at 2700 N. Twin City Highway in Nederland, Texas, ABCSETX is a separately incorporated affiliate of the national construction industry trade association plaintiff ABC.

9.      Plaintiff ABC represents more than 21,000 member contractors and related firms both in Texas and throughout the country, who share the philosophy that work in their industry should be awarded and performed based on merit, without regard to labor affiliation. ABC and its sixty-nine chapters, including ABCSETX, help members develop people, win work and deliver that work safely, ethically and profitably for the betterment of the communities in which they work. ABC's membership represents all specialties within the U.S. construction industry and is comprised primarily of firms that perform work in the industrial and commercial sectors.

10.     Independent contractors are essential to many of the businesses whom ABCSETX and ABC represent, providing specialized skills to many such businesses. Moreover, by utilizing independent contractors, the businesses ABCSETX and ABC represent can allow for entrepreneurial opportunities and maintain stability during fluctuations of work common to construction. Conflicting court rulings have confused and frustrated efforts of the businesses who ABCSETX and ABC represent to perform services on a cost-efficient basis. Both ABCSETX and ABC likewise utilize the services of independent contractors in conducting their own businesses and operations.  ABCSETX and ABC supported the 2021 Independent Contractor Rule's effort to clarify the independent contractor standard and facilitate a consistent application among courts.

ABCSETX, ABC, and their member businesses will be significantly, and in some instances irreparably, harmed if the 2021 Rule is arbitrarily withdrawn and replaced by the 2024 Rule.

11.     Plaintiff Financial Services Institute, Inc. ("FSI") is a trade association advocating on behalf of the independent financial services industry. More than 30,000 independent financial advisors and more than 80 independent financial services firms are members of FSI. Since 2004, through advocacy, education, and public awareness, FSI has been working to create a healthier regulatory environment for these members so they can provide affordable, objective financial advice to hard-working Americans. FSI's mission is to ensure that all Americans have access to competent and affordable financial advice, products, and services, delivered by a growing network of independent financial advisors, who serve as independent contractors to independent financial services firms.

12.     FSI members are firms and individuals who base their business model on a system under which self-employed, independent financial advisors affiliate with independent financial services firms. These financial advisors are licensed professionals who typically establish their own business without any prior coordination with a firm; they affiliate with a firm to take advantage of economies of scale, ensure regulatory compliance, and obtain access to business services like platforms and products, all of which helps them tailor their professional services and advice to the needs of their clients—ordinary Americans across all income levels.

13.     As a result of this unique business model, FSI member firms and their affiliated financial advisors are well positioned to provide Main Street Americans with the affordable financial advice, products, and services necessary to achieve their investment goals, including saving for common financial needs such as college tuition, homeownership, retirement, and support for aging parents.

14.     FSI's members are significantly harmed by the 2024 Rule's withdrawal and replacement of the 2021 Rule. Financial advisors' status as independent contractors gives them the flexibility to manage their own businesses, set their own hours, offer their preferred products and services, and enjoy a healthy work-life balance. The 2024 Rule threatens this model and will damage FSI members' businesses, decrease their value, and cause irreparable harm by generating regulatory uncertainty and the risk that financial advisors mistakenly will be misclassified as employees, based, for example, on their common practice of obtaining assistance with regulatory compliance from the firms with which they affiliate. The 2024 Rule will divert resources from the core business competency of helping clients with financial planning and investing to, instead, defending against baseless claims by government agencies that independent financial advisors are actually employees. For these reasons, FSI supported the 2021 Rule's effort to clarify the independent contractor standard and facilitate a consistent application among courts, and opposed the Department's adoption of the 2024 Rule.

15.     Plaintiff NFIB, a California nonprofit mutual benefit corporation, is the nation's leading small business association. NFIB's mission is to promote and protect the right of its members to own, operate, and grow their businesses. NFIB represents the interests of its members to all fifty state governments and the federal government. NFIB's members include small businesses that rely on independent contractors for their continued operation and success.  NFIB itself relies on independent contractors for its continued operation and success. NFIB challenges in this case the lawfulness of the 2024 Rule, which poses a substantial risk that the Department will classify as employees some of the independent contractors upon whom NFIB relies or its members rely, which would increase the cost to NFIB and its members, respectively, of using their services.

16.     Plaintiff U.S. CHAMBER is the world's largest business federation. The U.S. Chamber represents approximately 300,000 direct members and indirectly represents the interests of more than three million companies and professional organizations of every size, in every industry sector, and from every region of the country, including the Eastern District of Texas. Among other things, the Chamber routinely represents the interests of its member-employers in employment and labor-relations matters—including matters arising under the FLSA—as part of its overall mission to advocate for policies designed to help businesses create jobs and grow the national economy.  In advancing its mission, the Chamber seeks to preserve the ability of its members to choose how to structure their economic relationships without incurring unanticipated liability under the FLSA. Moreover, the Chamber itself is harmed by such a standard, as it also engages the services of independent contractors in the conduct of its business and representation of its members.

17.     Plaintiff NRF, established in 1911, is the world's largest retail trade association and the voice of retail worldwide. Retail is the largest private-sector employer in the United States. The NRF's membership includes retailers of all sizes, formats, and channels of distribution, spanning all industries that sell goods and services to consumers. The NRF provides courts with the perspective of the retail industry on important legal issues impacting its members. To ensure that the retail community's position is heard, the NRF often files amicus curiae briefs expressing the views of the retail industry on a variety of topics, including wage and hour issues.

18.     Plaintiff ATA is the voice of the trucking industry that America depends on most to move the nation's freight. A federation with state trucking association affiliates in all 50 states, ATA has been representing the industry for over 90 years. ATA represents every industry sector, from less than truckload to truckload, agriculture and livestock, to auto haulers, and from large

motor carriers to small mom-and-pop operations. As the nation's largest trade association representing the trucking industry, ATA is vitally interested in safely expanding the number of professional drivers to meet the demand for freight transportation in the nation's economy, given that the shortage of qualified drivers is at a near-record high of 78,000 in 2022. Truck drivers today are in the literal and figurative driver's seat regarding their jobs and compensation. The labor market for them is tight, resulting in opportunities to move around the industry and obtain sign-on bonuses and increased pay. Given these realities, workforce issues are critical for ATA and its members, and independent contractors are a vital part of that workforce. ATA members will be irreparably harmed if the 2021 Independent Contractor Rule is withdrawn and replaced by the 2024 Rule.

19.     Defendant Julie Su is functioning as the Acting Secretary of the Department of Labor, although she has not been confirmed by the Senate to that position.

20.     Defendant Jessica Looman is the Administrator of the Wage and Hour Division of the U.S. Department of Labor, which promulgated the challenged rule.

21.     Acting Secretary Su and Administrator Looman are sued in their official capacities and the relief sought extends to all of their successors, employees, officers, and agents.

22.     Defendant U.S. Department of Labor is an agency of the United States and published the 2024 Rule in the *Federal Register*.

## JURISDICTION, VENUE AND STANDING

23.     This action arises under the APA, 5 U.S.C. § 701 *et seq.*, the FLSA, 29 U.S.C. §

201 *et seq.*, and the RFA, 5 U.S.C. § 601 *et seq*. This Court has jurisdiction over these federal

claims under 28 U.S.C. § 1331 (federal question).

24.     This Court has the authority to grant the requested declaratory and injunctive relief

under the APA, 5 U.S.C. §§ 701-706 (APA), and the Declaratory Judgment Act, 28 U.S.C.

§§ 2201-2202.

25.     Venue is properly vested in this Court pursuant to 28 U.S.C. § 1391(e) because one

or more of the Plaintiffs are based within the judicial district of this Court.

26.     Plaintiffs have associational standing to bring this lawsuit on behalf of their various

members.  Plaintiffs' members have standing to sue in their own right because they participate in

contractual arrangements that are more likely to expose them to liability and to increased costs

under the Rule, including substantial costs as they modify their businesses to comply and to

account for those risks.  Plaintiffs and their members are effectively the object of regulation under

the Rule, and as such, will be directly injured by its heightened burdens and new regulatory

requirements. *See, e.g.*, *Contender Farms, L.L.P. v. U.S. Dep't of Agric.*, 779 F.3d 258, 264 (5th

Cir. 2015) ("If a plaintiff is an object of a regulation there is ordinarily little question that the action

or inaction has caused him injury, and that a judgment preventing or requiring the action will

redress it.").

27.     The Rule also conflicts with each Plaintiff's policy objectives, and challenging the

Rule is germane to each Plaintiff's purpose.  All of the foregoing national associations participated

in the notice and comment process that resulted in the final 2024 Rule, filing comment letters on

or before December 13, 2022 in the administrative docket (RIN 1235-AA43) and requesting that

the Department withdraw the proposed rule and leave in place the Department's 2021 Independent Contractor Rule.

28.     Neither the claims asserted nor the relief requested requires Plaintiffs' individual members to participate, as this complaint raises questions of law based on the Administrative Record.  *See Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977).

29.     Plaintiffs also have organizational standing to bring this suit, as many of them use the skills of independent contractors and thus are directly and adversely impacted by the Department's 2024 Rule.

30.     Plaintiffs are also eligible to bring suit under the judicial-review provisions of the Regulatory Flexibility Act, 5 U.S.C. § 611, because many of their members have annual receipts that are sufficiently low to qualify them as a "small business" entitled to judicial review of an agency's compliance with section 604 of the RFA. *See* 5 U.S.C. § 611 (establishing that small businesses are entitled to judicial review of the RFA § 604 requirement that an agency publish final regulatory flexibility analysis).

## **FACTUAL BACKGROUND**

### A.     **The 2021 Independent Contractor Rule Under the Fair Labor Standards Act**

31.     The FLSA provides that certain employees are entitled to a minimum wage and overtime pay.  Employers who violate the FLSA's minimum wage and overtime requirements are subject to civil liability and, in some cases, even criminal penalties.  29 U.S.C. §§ 201-219.

32.     By contrast, independent contractors are not covered by the wage and hour provisions of the FLSA.

33.     On September 25, 2020, the Department published a Notice of Proposed Rulemaking ("NPRM") through which it proposed to amend and clarify the standards by which the Department will deem workers to be either statutory "employees" or independent contractors

under the FLSA. *See generally* 85 Fed. Reg. 60600.

34.     On January 7, 2021, the Department issued the final 2021 Independent Contractor Rule, 86 Fed. Reg. 1168, which was to take effect on March 8, 2021.

35.     The preamble to the 2021 Rule thoroughly analyzed the confusion around the FLSA's application to worker classifications, focusing on the longstanding economic reality test under the Act. That Rule clarified the relevant classification factors to reflect contemporary business arrangements.

36.     The 2021 Rule identified five factors for evaluating whether an individual is an employee or independent contractor. Of these, the Rule designated two "core" factors—the nature and degree of control over work and the individual's opportunity for profit or loss—based on the determination that they are "most probative" of whether an individual is "economically dependent" on a business. 86 Fed. Reg. at 1246-47 (29 C.F.R. § 795.105(c)-(d)).  The 2021 Rule specified that the other three factors—the amount of skill required for the work; the degree of permanence of the working relationship between the individual and the potential employer; and whether the work is part of an integrated unit of production—were "less probative and, in some cases, may not be probative at all, and thus are highly unlikely, either individually or collectively, to outweigh the combined probative value of the two core factors."  *Id.* at 1246.

37.     The Department's determination that "control" over work performance and the opportunity for profit or loss are the most probative of classification was based on a thorough review of caselaw.  *See* 86 Fed. Reg. at 1196-1203.  That review concluded that in cases where courts determined that the "control" factor and "opportunity for profit or loss" factor both aligned in favor of a certain classification, that classification was the one the court found to be correct. *See id.* at 1197.

38.     The 2021 Rule also announced that the Department would "consider investment as part of the opportunity [for profit or loss] factor." *Id.* at 1186.  Although some lower courts previously had considered investment as a separate factor, distinct from the opportunity for profit or loss, the Department determined that merging those factors best served the goal of creating a "clear and non-duplicative analysis for determining employee versus independent contractor status" and to avoid "unnecessary and duplicative analysis of the same facts under two factors." *Id.*

39.     The 2021 Rule also clarified that "the actual practice of the parties involved is more relevant than what may be contractually or theoretically possible." *Id.* at 1247 (29 C.F.R. § 795.110). The Department explained that "unexercised powers, rights, and freedoms are not irrelevant," but "are merely *less* relevant than powers, rights, and freedoms which are actually exercised," because "[a]ffording equal relevance to reserved control and control that is actually exercised … would ignore the Supreme Court's command to focus on the 'reality' of the work arrangement." *Id.* at 1204 (quoting *United States v. Silk*, 331 U.S. 704, 713 (1947)).

40.     Finally, the 2021 Rule included a robust economic analysis of the costs and benefits of its standard. *See* 86 Fed. Reg. at 1209-44. Overall, the Department determined that businesses would benefit from the "improved clarity" provided by the 2021 Rule, which would "increase the efficiency of the labor market, allowing businesses to be more productive and decreasing their litigation burden." *Id.* at 1209. The Department therefore concluded that the 2021 Rule would "improve the welfare of both workers and businesses." *Id.* And workers would benefit because of reduced compliance costs, decreased misclassification, increased creation of independent contractor jobs, and likely conversion of some existing positions from employee to independent contractor status.  *Id.* at 1209–10.

41.     Altogether, the 2021 Rule provided a clarified and sharpened test for determining worker classification that was faithful to binding Supreme Court precedent. Its core-factor framework and articulation of the other applicable factors provided much-needed guidance to businesses, workers, and courts alike, and created a predictable structure for agency investigatory and enforcement activities.

42.     The 2021 Rule also expressly provided that regulated parties could rely on it "in accordance with section 10 of the Portal-to-Portal Act, 29 U.S.C. 251–262." 86 Fed. Reg. at 1246 (finalized 29 C.F.R. § 795.100).  Section 10 provides parties a good faith defense in FLSA litigation.  *See* 29 U.S.C. § 259.  The 2021 Rule thus directly affected Plaintiffs' member companies (and many others) by creating a safe harbor from aspects of the confused and conflicting litigation under the FLSA in recent years.

43.     In sum, the 2021 Independent Contractor Rule reflected consideration of relevant facts and statutory and other legal considerations as well as the Department's reasoned judgment regarding applicable policy considerations. That Rule also reflected consideration of contrary facts and arguments and included an exhaustive description and citations to the hundreds of authorities, facts, data, and other analyses on which the Department relied. The Department cited numerous commenters with whom it agreed and those with whom it disagreed, and the Department explained its reasoning throughout the final 2021 Rule. *See* 86 Fed. Reg. at 1168-1175, 1178-1196, 1209-1234.

**B.     The Department's Defective Attempt to Delay and Withdraw the 2021 Rule**

44.     On February 5, 2021, the Department issued an NPRM proposing a 60-day delay of the 2021 Rule's effective date. *See* 86 Fed. Reg. 8326. The NPRM provided for a 19-day comment period on the proposed delay from March 8 to May 7, 2021.

14

45.     After an unduly abbreviated rulemaking proceeding, the Department issued a final

rule that immediately postponed the effective date of the 2021 Rule from March 8, 2021 to May

7, 2021. *See* 86 Fed. Reg. 12535 (March 4, 2021) (the "Delay Rule").

46.     Plaintiffs filed suit in this Court seeking an injunction against the Delay Rule.

47.     On March 12, 2021, the Department issued an NPRM to withdraw the 2021 Rule.

*See* 86 Fed. Reg. 14027 (March 12, 2021).

48.     On May 6, 2021, the Department issued a final rule purporting to withdraw the

2021 Rule effective immediately. *See* 86 Fed. Reg. 24303 (May 6, 2021) (the "Withdrawal Rule").

49.     Plaintiffs subsequently filed an Amended Complaint to challenge both the Delay

and the Withdrawal Rules.

50.     On March 14, 2022, this Court granted Plaintiffs' motion for summary judgment

and vacated both the Delay and the Withdrawal Rules. *See Coalition for Workforce Innovation v.

Walsh*, 2022 U.S. Dist. LEXIS 68401. This Court found that the Department "failed to consider

important aspects of the problem before it—the lack of clarity of the economic realities test and

the need for regulatory certainty." *Id.* at *46 (citing *Dep't of Homeland Sec.*, 140 S. Ct. at 1913).

The Court agreed with Plaintiffs that the Department violated the APA by arbitrarily and

capriciously withdrawing the 2021 Rule without considering potential alternatives within the ambit

of the existing policy. *See id.* at *44-45. For these reasons, the Court ordered that the 2021 Rule

took effect on March 8, 2021 and remained in effect.

51.     Defendants appealed to the U.S. Court of Appeals for the Fifth Circuit. *See

Coalition for Workforce Innovation v. Walsh*, No. 22-40316 (5th Cir.). Soon thereafter, the

Department announced its intent to engage in a new independent contractor rulemaking. *See id.*,

Docket Entry No. 19 (June 7, 2022). At the Department's request, the Fifth Circuit ordered the

appeal held in abeyance pending the outcome of that rulemaking. *See id.*, Docket Entry No. 27 (June 10, 2022).

52.     On October 13, 2022, the Department published an NPRM, which proposed again to rescind the 2021 Rule and to "modify" the independent contractor standards with a new "multifactor," "totality-of-the-circumstances" analysis.  *See* 87 Fed. Reg. 62218-19.

53.     The Department received more than 49,000 comments (including extensive comments in opposition from Plaintiffs) during the comment period, and more than 6,400 comments after the close of the comment period.

54.     On January 10, 2024, the Department published the final 2024 Independent Contractor Rule in the *Federal Register*. 89 Fed. Reg. 1638.

55.     The following day, Plaintiffs filed a motion with the Fifth Circuit to remand so that Plaintiffs could file an amended complaint challenging the new rule. *Id.,* Docket Entry No. 59 (January 11, 2024).

56.     On February 19, 2024, the Fifth Circuit granted Plaintiffs' motion, remanding the case to this Court "to allow the Plaintiffs to file an amended complaint." *Id.*, Docket Entry No. 82 (February 19, 2024).

### C.     The 2024 Independent Contractor Rule

57.     The 2021 Rule's clarifying "core factor" framework adhered closely to judicial precedent, provided clear guidance to businesses, workers, and the courts, and created a predictable structure for agency investigations and enforcement actions. The 2024 Rule abandons that workable framework and replaces it with a totality-of-the-circumstances test that is unlawful, unclear, and inappropriately biased toward classifying workers as employees, in conflict with binding Supreme Court precedent.

58.     The 2024 Rule inflicts heavy costs on business and workers—costs that the

Department ignores or minimizes.  These costs include but are not limited to wage cuts, benefits reductions, and layoffs in response to misclassification of independent contractors as employees— since many employers will not be able to afford the increased costs and employee benefits associated with employee status. Additional costs will result from disruption of major industries represented by Plaintiffs; increased litigation, compliance, and recordkeeping costs; and operational changes necessary to comply with the rule.

59.    The 2024 Rule also erodes predictability and a key defense that had been available to businesses under the 2021 Rule and the Portal-to-Portal Act.  As noted above, the 2021 Rule provided a good faith defense under the Portal-to-Portal Act in FLSA litigation to employers who relied on and complied with the 2021 Rule. *See supra* ¶ 42.  That defense has now been all but eliminated, as it will be close to impossible for businesses to demonstrate compliance with the 2024 Rule because it lacks any meaningful standards.

## COUNT I

### (APA and FLSA—Withdrawal of the 2021 Rule Is Arbitrary and Capricious)

60.    Plaintiffs incorporate the preceding paragraphs by reference.

61.    The APA requires courts to set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A).

62.    Under the APA, an agency's action is arbitrary and capricious when, *inter alia*, it fails to provide "good reasons" for changing policy positions, including rescissions of rules. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009); *see also Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 44 (1983); *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1910–11 (2020).  The agency "must provide … a 'detailed justification' to explain why it is changing course" and may not "casually ignor[e]"

its previous findings and "arbitrarily chang[e] course." *California v. BLM*, 286 F. Supp. 3d 1054, 1068 (N.D. Cal. 2018). Indeed, when an agency changes existing policy, it "must" "provide a more detailed justification than what would suffice for a new policy … when its prior policy has engendered serious reliance interests." *Fox TV*, 556 U.S. at 515; *see also Encino Motorcars, LLC, v. Navarro*, 579 U.S. 211, 222 (2016) ("*Encino I*") (in changing existing policies, agencies must be cognizant of "serious reliance interests").

63.     An agency's action is also arbitrary and capricious where it relies on inconsistent reasoning, fails to consider important aspects of the problem, offers explanations for its rule that run counter to the evidence, fails to consider alternatives within the ambit of the existing policy, relies on factors that it should not have considered, or fails to adequately consider important issues raised by commenters. *See Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 41-43; *Chamber of Commerce of the U.S.A. v. U.S. Dep't of Labor*, 885 F.3d 360, 382 (5th Cir. 2018).

64.     A stated purpose of the 2021 Rule was to provide greater clarity, and the 2024 Rule claims to share that objective. 89 Fed. Reg. at 1649. But the Department's assertion that the 2021 Rule has created confusion is entirely unsubstantiated. On the contrary, many commenters persuasively explained that the 2021 Rule provided much more clarity than existed before.[1]

65.     The Department states now—citing no support in the administrative record—that the 2021 Rule was confusing because it used "ambiguous terms and concepts." *Id.* at 1654. Foremost, this conclusory statement ignores the numerous comments which confirmed that the 2021 Rule was helpful in bringing much-needed clarity. Moreover, the oddity of the Department

---

[1] *See, e.g.,* Comment Letter of FSI 6–7 (Dec. 15, 2022), https://www.regulations.gov/comment/WHD-2022-0003-53818; Comment Letter of CWI 1, 22 (Dec. 15, 2022), https://www.regulations.gov/comment/WHD-2022-0003-54040; Comment Letter of ABC 2–3 (Dec. 15, 2022), https://www.regulations.gov/comment/WHD-2022-0003-53419; Comment Letter of U.S. Chamber of Commerce 11 (Dec. 15, 2022), https://www.regulations.gov/comment/WHD-2022-0003-53819.

criticizing its own prior rule as "ambiguous" is particularly striking insofar as the 2024 Rule itself uses numerous terms and concepts that are far more ambiguous. For example, the 2024 Rule asserts that only "capital or entrepreneurial investment" by a worker is indicative of independent contractor status, *id.* at 1742, and states that control over "economic aspects of the working relationship"—an ambiguous new phrase that does not appear in *Silk* or any other Supreme Court case applying the economic reality test—is indicative of employee status. *Id.* at 1743. Those terms are vague and fail to provide meaningful guidance to the regulated public.

66.     The 2024 Rule mischaracterizes the 2021 Rule's content and purpose in identifying the core factors at the heart of the economic realities test described by the Supreme Court and many court decisions. The Department contends that the 2021 Independent Contractor Rule "set forth a *new* articulation of the economic realities test [by] elevating two factors … as 'core.'" 89 Reg. at 1650 (emphasis added).

67.     Contrary to the 2024 Rule, the 2021 Rule did not create a "new" standard, but rather provided clear and uniform guidance to businesses and independent workers that would better enable them to avoid misclassifications while providing entrepreneurial opportunities for millions of workers. The 2024 Rule identifies no factual or legal errors in the Department's thorough discussion of case law identifying the "core factors" applied by many courts within the rubric of the overall "economic realities" test.

68.     Nor has the Department refuted the 2021 Rule's analysis of all appellate courts applying the multifactor test that concluded the control and opportunity factors were "the most predictive of a worker's classification status," 86 Fed. Reg. at 1240. It remains true, as the 2021 Rule observed, that in all instances where these two factors pointed to the same status under the FLSA, that was the classification the court found to be the correct one. *See id.* at 1197. Yet the

Department now contends without support that its own previous analysis "improperly simplified the courts' analysis." 89 Fed. Reg. at 1651.  In doing so, the 2024 Rule ignores the 2021 Independent Contractor Rule's adoption of the analysis it set forth when it proposed the 2021 Rule that "[f]ocusing on control and opportunity for profit or loss is further supported by the *results* of federal courts of appeals cases weighing the economic reality factors since 1975." *See* 86 Fed. Reg. 1197; 85 Fed. Reg. at 60619 (emphasis added).

69.    Similarly, the Department inappropriately and inaccurately relies on an uncritical interpretation of what "most courts" have done to justify its abandonment of the 2021 Rule. *See, e.g.*, 89 Fed. Reg. at 1652, 1665, 1669, 1676, 1707. This is an appeal to the authority of courts whose opinions are not binding outside of their jurisdictions (or not at all, in the case of non-precedential circuit opinions and district court cases); the Department cannot defer to them instead of offering its own reasoned analysis. *See Dep't of Homeland Security v. Regents*, 140 S. Ct. at 1910-11.

70.    In addition, the Department's decision to jettison the core-factor framework relies on inconsistent reasoning.  The Department rejected commenters' citation of cases supporting a core-factor framework to the extent the cases "reference[d] a joint employment analysis rather than an employee classification analysis." 86 Fed. Reg. at 1650.  But elsewhere the Department repeatedly cites cases and Department guidance concerning joint employment in support of the 2024 Rule.  *See id.* at 1693 n.365, 1694 n.371, 1698–99 nn.401, 408.  Such "internal inconsistency [is] characteristic of arbitrary and unreasonable agency action."  *Chamber of Commerce*, 885 F.3d at 382.

71.    Ultimately, the 2024 Rule impermissibly (and incorrectly) relies on the purported "remedial" purpose of the FLSA to justify its withdrawal of the 2021 Rule. 89 Fed. Reg. 1668

n.221. By doing so, it commits a clear error of law and arbitrarily and capriciously relies upon factors that should not be considered. *See Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018) (*Encino II*) (instructing that the FLSA must be given a "fair" reading, no more and no less). Similarly, the Department's examination of reasonable alternatives to the wholesale repeal of the 2021 Rule is cursory, superficial, and only examines "options" that the Department concedes are legally impermissible in any event. 89 Fed. Reg. at 1663. The Department's failure to meaningfully analyze viable alternatives again renders rescission of the 2021 Rule arbitrary and capricious in violation of the APA. *See CWI*, 2022 U.S. Dist. LEXIS 68401 at *44-45.

72.     The 2024 Rule also offers explanations for withdrawing the 2021 Rule that run counter to the evidence before it, including but not limited to comments and studies submitted by Plaintiffs and other business and public policy organizations. The data set forth in these comments strongly supports the Department's previous recognition of the important economic benefits of independent contracting. In arbitrarily dismissing the Department's own previous findings in that regard, the 2024 Rule improperly treats independent contractor status as harmful to workers, notwithstanding the Supreme Court's longstanding recognition that the FLSA was intended to accommodate contractor classifications. *See Walling v. Portland Terminal Co.*, 330 U.S. 148, 152 (1947).

73.     A principal justification for the 2024 Rule's rescission of the 2021 Rule is the Department's assertion that it "will likely benefit workers as a whole," 89 Fed. Reg. at 1659, but elsewhere the Department refuses to consider commenters' explanations that the 2024 Rule will "infringe upon workers' … choices" to work as independent contractors, which can for many workers be preferable to employment relationships. *Id.* at 1670-71. Similarly, the Department arbitrarily concludes without adequate explanation that it was "inappropriate to conclude

independent contractors generally earn a higher hourly wage than employees," 89 Fed. Reg. at 1738, even though its own analysis concluded that "[a] simple comparison of mean hourly wages showed that independent contractors tend to earn more per hour than employees do." 86 Fed. Reg. at 24325 (noting that 2017 data shows that independent contractors earn approximately $3 more per hour than employees). The Department's 2024 conclusion that "no statistically significant difference" exists between the pay of independent contractors and employees after "controlling for observable differences," 89 Fed. Reg. at 1738, in fact *supports* maintaining the 2021 Rule, particularly where, as here, the Department did not explain its process for controlling for "observable differences" and did not explain what the average pay rates of independent contractors and employees were for different groups after it controlled for such differences. *Id.*

74.     In short, the Department has failed to give substantive consideration to the important interests of the regulated community in obtaining clear and long overdue guidance for industries and jobs that in many instances did not even exist when the Department's standards were last updated.

75.     The 2024 Rule also fails to meaningfully address the chaotic litigation environment which the 2021 Rule analyzed in exhaustive detail and sought to clarify. In rejecting the 2021 Rule—and replacing it with a test that is more confusing and more difficult to apply—the Department has "casually ignor[ed]" its previous findings and "arbitrarily chang[ed] course;" its actions are arbitrary and capricious in violation of the APA. *See California v. BLM*, 286 F. Supp. 3d at 1064.

## COUNT II

**(APA and FLSA—2024 Replacement Rule Is Arbitrary and Capricious, an Abuse of Discretion, and Contrary to Law)**

76.     Plaintiffs incorporate the preceding paragraphs by reference.

77.     The APA requires courts to set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). A decisionmaker "by definition abuses its discretion when it makes an error of law," *Koon v. United States*, 518 U.S. 81, 100 (1996), and thereby violates the APA. DOL's new test in the 2024 Rule for employment classification under the FLSA is arbitrary and capricious, an abuse of discretion, and contrary to law for numerous reasons, including the following (which overlap to a substantial degree with the errors underlying the Department's related reasoning in support of its withdrawal of the 2021 Rule):

78.     Although the Department acknowledges that it is legally constrained from adopting tests that depart from the Supreme Court's controlling interpretation of the FLSA, the 2024 Rule nevertheless misinterprets binding Supreme Court precedent applying the FLSA. The Department must use an "economic reality" test to determine whether a worker is an employee or an independent contractor. *Silk*, 331 U.S. 704; *see* 89 Fed. Reg. at 1660–61.  *Silk* announced five factors and emphasized control and opportunity for profit as the most important factors.  But the 2024 Rule defies Supreme Court precedent by abandoning the 2021 Rule's core-factor framework and demoting the control factor from a "core" consideration to being the fourth factor in an unweighted list of six non-exhaustive factors. The 2024 Rule thus unlawfully departs from Supreme Court precedent, which is binding on the Department.

79.     Indeed, the 2024 Rule does not deny that in the overwhelming majority of cases cited by the Department, the 2021 Rule's two core factors pointed in the same direction as the classification ultimately reached by the circuit court.  *See id.* at 1651 (acknowledging that "there are certainly many cases" in this category).  In no case cited by DOL did both core factors point the other way.  *See id.* at 1651–52 (purporting to identify a handful of cases in which *one* core

factor—not both—pointed the other way from the ultimate classification).  While purporting to return to a supposedly conventional six-part inquiry in the 2024 Rule, the Department in fact relies on outlier cases and constructs a novel test that has never been articulated by any court.

80.     As noted above, the Department impermissibly elevates the FLSA's putative "remedial purpose" over text and precedent, claiming that the purpose requires the FLSA's employment protections to be construed broadly.  89 Fed. Reg. at 1668 & n.221.  The Supreme Court has specifically "reject[ed]" such an atextual approach as a "guidepost for interpreting the FLSA."  *Encino II*, 138 S. Ct. at 1142.  Dismissing "the flawed premise that the FLSA pursues its remedial purpose at all costs," the Supreme Court instructed that the statute's provisions must be given "a fair reading," not one slanted in favor of expanded coverage.  *Id.* (quotation marks omitted). The Department previously recognized this in the 2021 Rule. *See* 86 Fed. Reg. at 1207-08.

81.     Nor is the 2024 Rule's assertion that theoretical possibilities about working conditions can outweigh actual practice in accordance with the FLSA.  *See* 89 Fed. Reg. at 1719. Treating theoretical possibilities as equally or more probative than actual practice is inconsistent with the Supreme Court's instruction that the FLSA is concerned with the "economic reality" of the relationship between worker and business.  *See Goldberg v. Whitaker House Coop.*, 366 U.S. 28, 33 (1961).  The Department acknowledges, but does not meaningfully address, circuit courts' "longstanding case law that considers the actual behavior of the parties."  89 Fed. Reg. at 1719.

82.     The Department transforms the factor assessing "control" over the work being done in a manner that conflicts with precedent correctly interpreting the FLSA. In addition to wrongly minimizing the importance of this "control" factor, the Department expands it to encompass control over the undefined "economic aspects of the working relationship."  89 Fed. Reg. at 1698,

1701, 1743.  The Department does not explain the source of that ambiguous new phrase, which does not appear in *Silk* or any other Supreme Court case applying the economic-reality test.

83.     The 2024 Rule wrongly suggests that taking measures to ensure compliance with legal and safety obligations is a relevant form of "control."  *See Loc. 777, Democratic Union Org. Comm. v. NLRB*, 603 F.2d 862, 875 (D.C. Cir. 1978) ("Government regulations constitute supervision not by the employer but by the state.").  In fact, as the 2021 Rule correctly explained and Congress has recognized in other contexts, "these types of requirements are generally imposed by employers on both employees and independent contractors," 86 Fed. Reg. at 1183, so that "insisting on adherence to certain rules to which the worker is already legally bound would not make the worker more or less likely to be an employee."  *Id.* at 1182. The Department purports to recognize this principle in the preamble to the rule, but fails to account for it in the regulatory text, where it adopts a narrow and vaguely-defined exception based on employer "purpose." 89 Fed. Reg. at 1694, 1743.

84.     Contrary to Supreme Court precedent, the Department deletes and replaces the "integrated unit of production" factor set forth in *Rutherford Food Corp. v. McComb*, 331 U.S. 722 (1947).  Jettisoning the "integrated unit of production" inquiry entirely, the 2024 Rule asks instead whether the work performed is an "integral part" (*i.e.*, a "critical, necessary, or central" part) of the employer's business.  89 Fed. Reg. at 1726, 1743.  The Department's new formulation is not probative of independent contractor status and skews the analysis arbitrarily toward employee classification, since many roles for which employers traditionally retained skilled independent contractors are necessary to their business.

85.     Also contrary to Supreme Court precedent, the 2024 Rule improperly counts "investment" as a separate factor from "opportunity for profit or loss." 89 Fed. Reg. at 1639, 1742. *Silk* articulated these factors separately but analyzed them together. 331 U.S. at 719.

86.     Without offering a reasonable explanation for doing so, the 2024 Rule assesses a worker's investment relative to the company's investment.  The Department acknowledges that "the Supreme Court in *Silk* did not make such a comparison," but attempts to justify this approach by asserting that "federal courts of appeals … routinely" do. 89 Fed. Reg. at 1684.  But aside from reciting those courts' conclusions, the Department offers no explanation why that relative inquiry is probative of independent contractor status.  *Id.*

87.     The Department unreasonably turns the "permanence of the work relationship" factor into a one-way ratchet in favor of employee classification.  Under its new test, a permanent relationship definitely "weigh[s]" in favor of employee classification, but a lack thereof is "not necessarily indicative of independent contractor status."  89 Fed. Reg. at 1685–86.  Not only is this illogical—the factor should either cut both ways or neither—it has no support in law.

88.     Again contrary to Supreme Court precedent, the 2024 Rule improperly expands the "skill" factor to encompass "initiative." 89 Fed. Reg. at 1639, 1743.  The Department's discussion of this factor does not meaningfully address *Silk* or explain how the expansion of this factor is consistent with that precedent.  *See id.* at 1711–15.

89.     The Department also acknowledges, but does not respond to or rebut, commenters' concerns that the Department framed the skill and initiative factor so that it points to employee status merely because a worker does not use the skills in an "entrepreneurial" fashion. *Id.* at 1713. But it fails to offer any real guidance on that point. Such inconsistent reading and the failure to consider important issues raised by commenters are both hallmarks of arbitrary and capricious

26

agency action. *See Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 63; *Chamber of Commerce*, 885 F.3d at 382.

90.     The Department's justifications in the preamble are in other ways internally inconsistent, fail to respond to important issues raised by commenters, unreasonably and improperly analyze the specific factors governing worker classification, and contravene Supreme Court precedent.  For example, as noted above, the Department attempts to justify the 2024 Rule based on its belief that it "will likely benefit workers as a whole," 89 Fed. Reg. at 1659, but elsewhere the Department refuses to consider commenters' explanations that the 2024 Rule will "infringe upon workers' … choices" to work as independent contractors, which can for many workers be preferable to employment relationships. *Id.* at 1670–71.

91.     In the end, the Rule directly contravenes the Department's own professed purposes because its adoption of a totality-of-the-circumstances test with unweighted factors undermines its stated goal of promoting regulatory certainty and predictability.  *See* 89 Fed. Reg. at 1649, 1655–56, 1739.  A regulation that "will undermine the [agency's] own objective" is arbitrary and capricious.  *In re FCC 11-161*, 753 F.3d 1015, 1143 (10th Cir. 2014).  Here, the Department purports to act in the name of fostering regulatory clarity, but its chosen means will actually have the exact opposite effect, as "experience has shown that … open-ended balancing tests … can yield unpredictable and at times arbitrary results."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 136 (2014).

92.     The result is that 2024 Rule establishes a vague, amorphous, and shifting standard that lacks sufficient clarity for regulated entities to know the steps sufficient to avail themselves of the protections of the Portal-to-Portal Act safe harbor.  *See* 29 U.S.C. § 259(a).  In addition to

all the flaws enumerated above, therefore, the 2024 Rule is arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law.

## COUNT III

### (APA and RFA—2024 Rule's Failure To Consider Costs and Benefits Is Arbitrary and Capricious)

93.     Plaintiffs incorporate the preceding paragraphs by reference.

94.     The APA requires courts to set aside agency action that is "arbitrary" or "capricious." 5 U.S.C. § 706(2)(A).

95.     Agency action is "arbitrary" or "capricious" when the agency fails to "consider[] the costs and benefits associated" with the action. *Mex. Gulf Fishing Co. v. Dep't of Commerce*, 60 F.4th 956, 973 (5th Cir. 2023); *see also State Farm*, 463 U.S. at 43 ("Normally, an agency rule would be arbitrary and capricious if the agency has … entirely failed to consider an important aspect of the problem.").

96.     The Regulatory Flexibility Act, 5 U.S.C. § 601 *et seq.*, further requires that agencies issuing rules under the Administrative Procedure Act must publish a final regulatory flexibility analysis assessing the negative impact of the rule on small businesses and to consider less burdensome alternatives. This analysis also requires the agency to respond to "any comments filed by the Chief Counsel for Advocacy of the Small Business Administration in response to the proposed rule." 5 U.S.C. § 604(a)(3).

97.     The final regulatory analysis must "demonstrate[e] a 'reasonable, good-faith effort' to carry out [the Regulatory Flexibility Act's] mandate." *U.S. Cellular Corp. v. FCC*, 254 F.3d 78, 88 (D.C. Cir. 2001); *see also Associated Fisheries of Me., Inc. v. Daley*, 127 F.3d 104, 114 (1st Cir. 1997) ("Congress, in enacting section 604, intended to compel administrative agencies to explain the bases for their actions.").

98.    When issuing the 2024 Rule, including both the withdrawal and replacement of the 2021 Rule, the Department violated both the APA and the RFA by failing to consider important and obvious costs of misclassification.  These costs include but are not limited to:

a.    Loss of independent contractors in the workforce;

b.    Reduced wages and benefits as well as potential layoffs in response to the increased costs of classifying workers as employees;

c.    Indirect costs including increased Social Security and Medicare taxes that businesses will likely pay for workers misclassified as employees (given the Department's assumption that businesses will classify workers across-the-board for all benefits purposes, including associated taxes);

d.    Disruption of major industries like financial services and insurance;

e.    Increased litigation costs;

f.    Operational changes necessary to comply with the rule, including obtaining legal advice, implementing reclassification, restructuring operations, and hiring or firing workers;

g.    Recordkeeping costs under the FLSA, *see* 29 U.S.C. § 211(c); 29 C.F.R. § 825.500(c);

h.    Reducing workplace safety and increasing the risks of non-compliance with a wide variety of laws, regulations, and best practices by incentivizing businesses not to oversee independent contractor safety and compliance efforts;

i.    Reliance interests and the cost of shifting operations, *see Encino I*, 579 U.S. at 221; *Fox TV*, 556 U.S. at 515; and

> j.     All costs after the first year, including the loss of hundreds of $452 million per year
>
> (at minimum) in *benefits* that the Department itself previously recognized would
>
> flow from the adoption of the 2021 Rule (which the Department is now repealing).

99.     By the same token, the Department overstates the purported benefits of the 2024 Rule.  Among other things, it mistakenly assumes that independent contractors will benefit from the 2024 Rule through receipt of overtime pay, when in fact many independent contractors wrongly classified as employees under the Rule will qualify for an exemption from the FLSA's overtime requirements.  *See* 89 Fed. Reg. at 1737.

100.     The Department also ignores that forcing businesses to reclassify independent contractors as employees will result in decreased opportunities for independent workers, as many employers will not be able to afford to pay the costly benefits associated with reclassification. Alternatively, those workers previously performing contract work will have to decide whether to accept employee roles at what will likely be lower rates of pay due to the benefit costs included in employer pay determination.

101.     Finally, the Department erroneously claims that a benefit of the 2024 Rule will be "[i]ncreased consistency" in classifying workers, *id.* at 1734, when in fact, for all of the reasons detailed above, the 2024 Rule will only promote inconsistency and uncertainty.

102.     The Department also did not appropriately consider and analyze the many costs and burdens that the 2024 Rule will impose on small businesses.  In addition to violating the Regulatory Flexibility Act, this deficiency independently amounts to a failure to consider a significant aspect of the problem, rendering it arbitrary and capricious.  *See*, *e.g.*, *Allied Loc. & Reg'l Mfrs. Caucus v. EPA*, 215 F.3d 61, 79 (D.C. Cir. 2000) (a court "may consider" Regulatory Flexibility Act

requirements "in determining whether [the agency] complied with the overall requirement that an agency's decision making be neither arbitrary nor capricious").

103.    In addition, the 2024 Rule fails to comply with the specific requirements of the RFA noted above, specifically 5 U.S.C. § 604(a)(3).  The Small Business Administration's Office of Advocacy submitted a comment letter in response to the 2022 Proposed Rule expressing grave concern that, despite this statutory imperative, "DOL's Initial Regulatory Flexibility Analysis is deficient for this rule" for several reasons including the following:

a.    "DOL only estimates minimal costs for small entities to read the rule. However, DOL has failed to estimate any costs for small businesses and independent contractors to reclassify workers as independent contractors, for lost work, and for business disruptions."

b.    "Small businesses commented that they found this test very confusing, and they could not be certain if they were classifying their independent contractors correctly. The only way that employers would have certainty is by classifying their workers as employees. This rule may be biased toward finding an employment relationship."

c.    "DOL has underestimated the compliance costs and administrative burdens of this rule for small businesses and independent contractors… Small businesses at Advocacy's roundtable expressed frustration at these low compliance cost estimates for a rule that is almost 200 pages long.  At a reading speed of 200 words per minute, it would take four hours to read a 50,000-word rule."

d.    "A representative from the National Association of Women Business Owners commented that many women-owned businesses are freelance workers that started

during the pandemic.  These women value the flexibility, profitability, and the work/life balance that comes with an independent contractor work arrangement."

e.  "At Advocacy's roundtable, small businesses were concerned that the control factor may conflict with requirements for employers to ensure that their workers comply with federal requirements for safety and other mandates… For example, a representative from the Associated Builders and Contractors commented that a general contractor must enforce compliance by subcontractors and independent contractors with workplace safety rules."[2]

104.    For all of these reasons, the Small Business Administration's Office of Advocacy concluded that "DOL significantly underestimates the economic impacts of this rule to small businesses and independent contractors," that it "may be detrimental and disruptive to millions of small businesses that rely upon independent contractors as part of their workforce," and that it also may cause independent contractors to "lose work," and therefore urged DOL to reconsider the Proposed Rule.  *Id.*

105.    The 2024 Rule's final regulatory flexibility analysis failed to respond meaningfully to the SBA's concerns and was so deficient as to violate the RFA in multiple respects.  In the final pages of the preamble, the Department belatedly acknowledged that "[c]ommenters, including the Small Business Administration Office of Advocacy (SBA) contended that the Department has severely underestimated the economic impacts of this rule on small businesses and independent contractors."  89 Fed. Reg. at 1739.  But it either failed to respond to those concerns or did so only in a way that does not adequately address the magnitude of the problems identified in comments. *E.g.*, *id.* at 1740 (defending unrealistic estimate of 30 minutes for independent contractors (and

---

[2]Comment Letter of SBA Office of Advocacy (Dec. 12, 2022), https://advocacy.sba.gov/wp-content/uploads/2022/12/Comment-Letter-DOL-Independent-Contractor-508c.pdf.

one hour for other establishments) to read and familiarize themselves with this rule, the release of which was hundreds of pages). This refusal to consider statutorily mandated factors meaningfully did not comport with the Department's duties under the RFA, and thus violates both the RFA and the APA.

106.     By failing to properly consider costs and benefits, the Rule violates the RFA and again violates the APA. The Rule is therefore arbitrary, capricious, and not in accordance with the law. It should be set aside. *See* 5 U.S.C. §§ 604(a)(3), 706(2)(A).

## COUNT IV

### (Declaratory Judgment Act)

107.     Plaintiffs incorporate each of the preceding paragraphs by reference.

108.     The Declaratory Judgment Act allows "any court of the United States to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought," in "a case of actual controversy within [the court's] jurisdiction." 28 U.S.C. § 2201.  "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." Id. § 2202.  The Declaratory Judgment Act thus gives this Court the power to grant declaratory relief under 28 U.S.C. § 2201, and to grant injunctive relief based on a declaratory judgment under 28 U.S.C. § 2202.

109.     For the reasons set forth at length above, Plaintiffs are entitled to a declaration that the Department's issuance of the 2024 Rule violated the APA, FLSA, and RFA.

## REQUESTS FOR RELIEF

For the foregoing reasons, Plaintiffs respectfully ask that the Court:

1.   Declare unlawful and set aside the Department's rescission of the 2021 Rule and promulgation of the 2024 Independent Contractor Rule;

2.   Declare that the Department's rescission of the 2021 Rule and promulgation of the 2024 Independent Contractor Rule are arbitrary and capricious;

3.   Declare that the 2021 Independent Contractor Rule has been and remains in effect as of March 8, 2021;

4.   Enjoin the Department from enforcing its 2024 Independent Contractor Rule against Plaintiffs and their members;

5.   Award Plaintiffs their costs and expenses, including reasonable attorneys' fees; and

6.   Grant such other and further relief as the Court deems just and proper.

Dated:  March 5, 2024                     Respectfully submitted,

                                          */s/ Robert F. Friedman*
                                          Robert F. Friedman

                                          LITTLER MENDELSON, P.C.
                                          2001 Ross Avenue, Suite 1500
                                          Dallas, TX 75201
                                          (214) 880-8100
                                          (214) 880-8101 (Fax)
                                          rfriedman@littler.com

                                          Maurice Baskin (*pro hac vice*)
                                          LITTLER MENDELSON, P.C.
                                          815 Connecticut Ave., N.W.
                                          Washington, D.C. 20006
                                          (202) 772-2526
                                          mbaskin@littler.com

                                          ATTORNEYS FOR ALL PLAINTIFFS


                                          Eugene Scalia (*pro hac vice pending*)
                                          Jason J. Mendro (*pro hac vice pending*)
                                          Andrew G.I. Kilberg (*pro hac pending*)
                                          GIBSON, DUNN & CRUTCHER LLP
                                          1050 Connecticut Ave., N.W.
                                          Washington, D.C. 20036
                                          (202) 955-8500
                                          escalia@gibsondunn.com
                                          jmendro@gibsondunn.com
                                          akilberg@gibsondunn.com

                                          ATTORNEYS FOR PLAINTIFF FINANCIAL
                                          SERVICES INSTITUTE, INC.

Stephanie A. Maloney
D.C. Bar No. 1044276 (*pro hac vice to be filed*)
Jordan L. Von Bokern
D.C. Bar No. 1032962 (*pro hac vice to be filed*)
U.S. Chamber Litigation Center
1615 H Street, N.W.
Washington, DC 20062-2000
(202) 463-5337
smaloney@uschamber.com
jvonbokern@uschamber.com

ATTORNEYS FOR PLAINTIFF CHAMBER OF
COMMERCE OF THE UNITED STATES OF
AMERICA

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 5, 2024, the foregoing Second Amended Complaint was electronically filed in the above and foregoing with the Clerk of the Court, utilizing the ECF system, which sent notification of such filing to the following counsel for Defendants:

Lisa A. Olson
U.S. Department of Justice
1100 L Street NW; Room 12200
Washington, D.C. 20005
(202) 514-5633
lisa.olson@usdoj.gov

Andrea L. Parker
Assistant United States Attorney
U.S. Department of Justice
550 Fannin St., Suite 1250
Beaumont, Texas 77701
(409) 839-2538
andrea.parker@usdoj.gov

*/s/Maurice Baskin*
Maurice Baskin