**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS, BEAUMONT DIVISION**

| | | |
|---|---|---|
| **COALITION FOR WORKFORCE INNOVATION, *et al.*,** | § § § | |
| **Plaintiffs,** | § § | |
| **vs.** | § § | **CASE NO. 21-CV-00130-MAC** |
| **SU, *et al.*,** | § § | |
| **Defendants.** | § § § | |

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND BRIEF IN SUPPORT**

Robert F. Friedman
LITTLER MENDELSON, P.C.
2001 Ross Avenue, Suite 1500
Dallas, TX 75201
(214) 880-8100
(214) 880-8101 (Fax)
rfriedman@littler.com

Maurice Baskin (*pro hac vice*)
James A. Paretti, Jr. (*pro hac vice*)
LITTLER MENDELSON, P.C.
815 Connecticut Ave., N.W.
Washington, D.C. 20006
(202) 772-2526
mbaskin@littler.com
jparetti@littler.com

ATTORNEYS FOR ALL PLAINTIFFS

Eugene Scalia (*pro hac vice*)
Jason J. Mendro (*pro hac vice*)
Andrew G.I. Kilberg (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Ave., N.W.
Washington, D.C. 20036
(202) 955-8500
escalia@gibsondunn.com
jmendro@gibsondunn.com
akilberg@gibsondunn.com

ATTORNEYS FOR PLAINTIFF
FINANCIAL SERVICES INSTITUTE

Stephanie A. Maloney
D.C. Bar No. 1044276 (*pro hac vice*)
Jordan L. Von Bokern
D.C. Bar No. 1032962 (*pro hac vice*)
U.S. Chamber Litigation Center
1615 H Street, N.W.
Washington, DC 20062-2000
(202) 463-5337
smaloney@uschamber.com
jvonbokern@uschamber.com

ATTORNEYS FOR PLAINTIFF CHAMBER OF
COMMERCE OF THE UNITED STATES OF
AMERICA

# TABLE OF CONTENTS

**PAGE**

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ........................................................ 1

STATEMENT OF ISSUES ............................................................................................. 4

STANDARD OF REVIEW ............................................................................................. 4

STATEMENT OF UNDISPUTED MATERIAL FACTS ......................................................... 5

     A.    Worker Classification Under the FLSA ............................................ 5

     B.    The 2021 Rule ............................................................................ 6

     C.    DOL's First Attempt to Rescind the 2021 Rule ................................ 7

     D.    The 2024 Rule ............................................................................ 8

STANDING ............................................................................................................... 8

SUMMARY OF ARGUMENT .......................................................................................... 9

ARGUMENT .............................................................................................................. 10

I.     DOL's Arbitrary and Capricious Rescission of the 2021 Rule Violates the APA. ......... 10

     A.    Rescission of the 2021 Rule Will Produce Confusion and Uncertainty. ............. 11

     B.    Rescission of the Rule Based on DOL's Newfound Reading of Case Law Is Untenable. ......................................................................... 14

II.    The 2024 Rule Misinterprets and Misapplies the FLSA. ................................. 18

III.   The 2024 Rule's Inadequate Cost-Benefit Analysis Is Arbitrary and Capricious and Violates the Regulatory Flexibility Act. ........................................................ 25

     A.    DOL Failed to Consider Significant Costs of the 2024 Rule ............................. 25

     B.    DOL Unreasonably Exaggerated the 2024 Rule's Benefits. ............................. 28

IV.   The 2024 Rule Should Be Vacated. ........................................................... 30

CONCLUSION ........................................................................................................... 30

i

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Aeronautical Repair Station Ass'n, Inc. v. FAA*,
    494 F.3d 161 (D.C. Cir. 2007) ........................................................................................25, 28

*Bartels v. Birmingham*,
    332 U.S. 126 (1947) ..............................................................................................................5

*Bishop v. Bostick*,
    No. 9:13-CV-82, 2015 WL 5913191 (E.D. Tex. Sept. 21, 2015) ..........................................4

*Bus. Roundtable v. SEC*,
    647 F.3d 1144 (D.C. Cir. 2011) ..........................................................................................28

*Calumet Shreveport Ref., L.L.C. v. EPA*,
    86 F.4th 1121 (5th Cir. 2023) ........................................................................................15, 18

*Cent. & S. W. Servs., Inc. v. EPA*,
    220 F.3d 683 (5th Cir. 2000) ..............................................................................................30

*Chamber of Com. v. DOL*,
    885 F.3d 360 (5th Cir. 2018) ..........................................................................................5, 17

*Chamber of Com. v. NLRB*,
    No. 6:23-CV-00553, 2024 WL 1203056 (E.D. Tex. Mar. 18, 2024) ...................................18

*Christopher v. SmithKline Beecham Corp.*,
    567 U.S. 142 (2012) ............................................................................................................12

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
    401 U.S. 402 (1971) ............................................................................................................30

*Coal. for Workforce Innnovation v. Walsh,*
    No. 1:21-CV-130, 2022 WL 1073346 (E.D. Tex. Mar. 14, 2022), *vacated as*
    *moot on other grounds*, 22-40316 (5th Cir. Feb. 21, 2024)..................................1, 4, 7, 11, 13

*Coal. for Workforce Innovation v. Walsh*,
    No. 22-40316, ECF No. 37 (5th Cir. Feb. 19, 2024) .............................................................7

*Contender Farms, L.L.P. v. Dep't of Agric.*,
    779 F.3d 258 (5th Cir. 2015) ................................................................................................9

*Data Mktg. P'ship, LP v. DOL*,
    45 F.4th 846 (5th Cir. 2022) ...............................................................................................30

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
140 S. Ct. 1891 (2020) .................................................................2, 14, 16, 17

*Dist. Hosp. Partners, L.P. v. Burwell*,
786 F.3d 46 (D.C. Cir. 2015) ....................................................................29

*Encino Motorcars, LLC v. Navarro*,
579 U.S. 211 (2016)...............................................................................4, 14

*Encino Motorcars, LLC v. Navarro*,
584 U.S. 79 (2018) ...........................................................................3, 10, 17

*In re FCC 11-161*,
753 F.3d 1015 (10th Cir. 2014) ..........................................................11, 14

*FCC v. Fox Television Stations, Inc.*,
556 U.S. 502 (2009)..........................................................................4, 5, 14

*Franciscan All., Inc. v. Becerra*,
47 F.4th 368 (5th Cir. 2022) ....................................................................30

*Goldberg v. Whitaker House Co-op., Inc.*,
366 U.S. 28 (1961).................................................................................6, 16

*Guedes v. ATF*,
140 S. Ct. 789 (2020) (statement of Gorsuch, J.) ....................................13

*Hernandez v. Plastipak Packaging, Inc.*,
15 F.4th 1321 (11th Cir. 2021) .................................................................17

*Hunt v. Wash. State Apple Advert. Comm'n*,
432 U.S. 333 (1977)....................................................................................9

*Kisor v. Wilkie*,
139 S. Ct. 2400 (2019) ................................................................................2

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014)...................................................................................12

*McFeeley v. Jackson St. Ent., LLC*,
825 F.3d 235 (4th Cir. 2016) ....................................................................26

*Mexican Gulf Fishing Co. v. United States Dep't of Com.*,
60 F.4th 956 (5th Cir. 2023) ................................................................5, 25

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29, (1983).................................................................2, 5, 24, 27

*Nat'l Fuel Gas Supply Corp. v. FERC*,

468 F.3d 831 (D.C. Cir. 2006) ........................................................................................4

*New Prime Inc. v. Oliveira,*
586 U.S. 105 (2019), 539 (2019) ...............................................................................5, 21

*Office of Commc'n of United Church of Christ v. FCC,*
779 F.2d 702 (D.C. Cir. 1985) ........................................................................................2

*Parrish v. Premier Directional Drilling, L.P.,*
917 F.3d 369 (5th Cir. 2019) ........................................................................................20

*Razak v. Uber Techs., Inc.,*
951 F.3d 137 (3d Cir.), *amended,* 979 F.3d 192 (3d Cir. 2020) .............................................17

*Rutherford Food Corp. v. McComb,*
331 U.S. 722 (1947).....................................................................................................5, 21

*Sec'y of Lab. v. Lauritzen,*
835 F.2d 1529 (7th Cir. 1987) (Easterbrook, J., concurring)...........................................6, 22

*Sw. Elec. Power Co. v. EPA,*
920 F.3d 999 (5th Cir. 2019) ...............................................................................4, 10, 11

*Texas Ent. Ass'n, Inc. v. Hegar,*
10 F.4th 495 (5th Cir. 2021) ...........................................................................................9

*Texas v. Nuclear Reg. Comm'n,*
78 F.4th 827 (5th Cir. 2023) ...........................................................................................8

*United States v. Mead Corp.,*
533 U.S. 218 (2001) (Scalia, J., dissenting)....................................................................12

*United States v. Silk,*
331 U.S. 704 (1947).............................................................................................. *passim*

*Wallen v. TendoNova Corp.,*
2022 WL 17128983 (D.N.H. Nov. 22, 2022) .......................................................................13

*Walling v. Portland Terminal Co.,*
330 U.S. 148 (1947)......................................................................................................26

*Window Covering Mfrs. Ass'n v. CPSC,*
82 F.4th 1273 (D.C. Cir. 2023)........................................................................................29

**Statutes**

Administrative Procedure Act, 5. U.S.C. § 701 *et seq.*........................................... *passim*

Declaratory Judgment Act, 8 U.S.C. §§ 2201-02 ...........................................................1

Fair Labor Standards Act, 29 U.S.C. § 701 *et seq.* ................................................................ *passim*

Regulatory Flexibility Act, 5 U.S.C. § 601 *et seq* ..........................................................1, 3, 9, 25

**Other Authorities**

9 C.F.R. § 795.105 ..........................................................................................................6, 11

29 C.F.R. § 795.110 ..................................................................................................8, 20, 21, 24

29 C.F.R. § 825.500 ......................................................................................................................27

Final Rule, "Employee or Independent Contractor Classification Under the Fair
Labor Standards Act," 89 Fed. Reg. 1638 (Jan. 10, 2024) . ............................................ *passim*

Final Rule, "Independent Contractor Status Under the Fair Labor Standards Act,"
86 Fed. Reg. 1168 (Jan. 7, 2021) . ................................................................................ *passim*

Comment Letter of FSI (Dec. 15, 2022),
https://www.regulations.gov/comment/WHD-2022-0003-53818 ..9, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29

Comment Letter of CWI (Dec. 15, 2022),
https://www.regulations.gov/comment/WHD-2022-0003-54040)..9, 12, 21, 23, 24, 25, 26, 27

Comment Letter of ABC (Dec. 15, 2022),
https://www.regulations.gov/comment/WHD-2022-0003-53419 ). .......................9, 12, 22, 23

Comment Letter of SBA Office of Advocacy (Dec. 12, 2022),
https://advocacy.sba.gov/wp-content/uploads/2022/12/Comment-Letter-DOL-
Independent-Contractor-508c.pdf ......................................................................................25, 28

Comment Letter of U.S. Chamber of Commerce 11 (Dec. 15, 2022),
https://www.regulations.gov/comment/WHD-2022-0003-53819 ) ..................................12, 22

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs Coalition for Workforce Innovation ("CWI"), Associated Builders and Contractors of Southeast Texas, Inc. ("ABCSETX"), Associated Builders and Contractors, Inc. ("ABC"), Financial Services Institute, Inc. ("FSI"), National Federation of Independent Business ("NFIB"), Chamber of Commerce of the United States of America ("U.S. Chamber"), National Retail Federation ("NRF"), and American Trucking Associations ("ATA") (collectively, "Plaintiffs"), hereby move for summary judgment on all counts of their Second Amended Complaint challenging the final rule of the U.S. Department of Labor ("DOL") entitled "Employee or Independent Contractor Classification Under the Fair Labor Standards Act," 89 Fed. Reg. 1638 ("2024 Rule"). Plaintiffs are challenging the Rule under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq*. ("APA"), the Regulatory Flexibility Act, 5 U.S.C. § 601 *et seq*. ("RFA"), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02 ("DJA"). As grounds for their motion, and as more fully explained below, Plaintiffs state as follows:

1.      In 2021, DOL adopted a rule with a clear and understandable test for determining who is an employee rather than an independent contractor under the Fair Labor Standards Act ("FLSA"). 86 Fed. Reg. 1168 ("2021 Rule"). DOL explained that its "clear articulation will lead to increased precision and predictability in the economic reality test's application, which will in turn benefit workers and businesses and encourage innovation and flexibility in the economy." *Id.*

2.      This Court agreed that the 2021 Rule achieved greater clarity for the regulated community in its previous holding in this case. *Coal. for Workforce Innovation v. Walsh* (*CWI*), No. 1:21-CV-130, 2022 WL 1073346, at *19 (E.D. Tex. Mar. 14, 2022)(citation omitted), *vacated as moot on other grounds*, 22-40316 (5th Cir. Feb. 21, 2024). At the same time, the Court found that DOL acted arbitrarily in attempting to withdraw the 2021 Rule, holding that rescission did

"not address the inconsistencies and lack of coherence in the manner in which the economic realities test was [previously] applied across the country." *Id.* at \*19.

3. Barely two years after this Court's rejection of its previous rescission attempt, DOL has again proclaimed that the 2021 Rule should be withdrawn, via the "2024 Rule." But the new rescission attempt repeats DOL's previous errors, improperly ignoring the inconsistencies in the tests articulated by the courts prior to 2021; repudiating without basis the exhaustive analysis in the 2021 Rule; and ignoring this Court's previous findings. DOL's rescission of the 2021 Rule is once again arbitrary, capricious, and contrary to law. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1913 (2020); *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 47 (1983).

4. DOL purports to justify its rescission of the 2021 Rule on the grounds that it is the 2021 Rule that is somehow confusing. This is the sort of flip-flopping that has given agency rulemaking a bad name—in Justice Kavanaugh's words, a regulatory "shock[] to the system" that is delivered "when a new administration comes in." Tr. of Oral Argument at 96, *Relentless, Inc. v. Dep't of Com.*, No. 22-1219 (Jan. 17, 2024); *accord Kisor v. Wilkie*, 139 S. Ct. 2400, 2418 (2019) (criticizing the "disruption of expectations . . . when an agency substitutes one view" that "'conflict[s] with a prior' one"). It defies credulity that a rule an agency declared to be "clear" three years ago has now reasonably been found by that same agency to be unclear and confusing.

5. Making matters worse, the 2024 Rule promulgates a new standard to replace the rescinded 2021 Rule—a formless, totality-of-the-circumstances test that injects new inconsistencies and incoherence to the analysis of independent contractor status. The Rule thereby achieves the opposite of what DOL claims to be the rationale for its action, producing confusion when the agency promises clarity. That is the quintessence of arbitrary agency action. *Office of*

2

*Commc'n of United Church of Christ v. FCC*, 779 F.2d 702, 707-08 (D.C. Cir. 1985) ("Rational decisionmaking . . . dictates that the agency simply cannot employ means that actually undercut its own purported goals."). This new standard also departs substantially from the factors articulated by the Supreme Court in *United States v. Silk*, 331 U.S. 704 (1947). The Rule unjustifiably minimizes the factor of control, which the Department found in 2021 to be a "core" factor. It adopts a new "integral part" factor, again in defiance of Supreme Court authority. And it twists the previously settled meanings of the factors considering investment, permanence, skill, and initiative. At every turn, the 2024 Rule converts these factors into one-way ratchets that are highly likely to increase findings of employment status, to the detriment of long-established practices previously recognized as independent.

6.      Ultimately, DOL falls back on the FLSA's "remedial purpose" to support both its rescission of the 2021 Rule and its promulgation of the 2024 Rule, a canon of interpretation that the Supreme Court has firmly rejected. *See Encino Motorcars, LLC v. Navarro* (*Encino II*), 584 U.S. 79, 89 (2018).

7.      DOL's errors do not end with its legal interpretation. Its cost-benefit analysis is grossly inadequate, as the Small Business Administration's Office of Advocacy concluded in comments DOL was obligated to consider and respond to under the RFA. 5 U.S.C. § 604. DOL arbitrarily ignores the significant costs that its actions will impose on independent contractors and businesses, while exaggerating their benefits. DOL's flawed measure of the Rule's impacts violates the RFA and the APA.

8.      DOL's rescission of the 2021 Rule, and its promulgation of the 2024 Rule, are both arbitrary, capricious, contrary to law, and an abuse of discretion under the APA and the RFA. When multiple reasons are given for agency action, a defect in any one reason warrants vacating

3

the rule. *See Nat'l Fuel Gas Supply Corp. v. FERC*, 468 F.3d 831, 839-40 (D.C. Cir. 2006) (Kavanaugh, J.). Here, there are defects aplenty. Both the rescission and replacement should be vacated.

## STATEMENT OF ISSUES

Whether DOL's rescission of the 2021 Rule and its promulgation of the 2024 Rule were arbitrary, capricious, an abuse of discretion, or otherwise contrary to law in violation of the APA and/or the RFA.

## STANDARD OF REVIEW

A court's review of final agency action under the APA typically presents purely legal questions that can be resolved on summary judgment. *Bishop v. Bostick*, No. 9:13-CV-82, 2015 WL 5913191, at *4 (E.D. Tex. Sept. 21, 2015) ("The summary judgment mechanism is particularly appropriate for the review of a decision of a federal administrative agency."). "[T]he court must decide whether, as a matter of law, 'the agency action is supported by the administrative record and otherwise consistent with the APA." *CWI*, 2022 WL 1073346, at *3 (citation omitted).

An agency violates the APA when it fails to provide "good reasons" for changing positions, including when rescinding rules and reversing policies. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). Where, as here, an agency "chang[es] position," it must "show that there are good reasons for the new policy" and "provide a more detailed justification than what would suffice for a new policy." 556 U.S. at 515; *see also Encino Motorcars, LLC v. Navarro* (*Encino I*), 579 U.S. 211, 222 (2016).

"An unexplained inconsistency in agency policy is a reason for holding an interpretation to be … arbitrary and capricious." *Sw. Elec. Power Co. v. EPA*, 920 F.3d 999, 1030 (5th Cir. 2019). An agency's action is also arbitrary and capricious where it relies on inconsistent reasoning, fails to consider important aspects of the problem, offers explanations for its rule that run counter to the

evidence, fails to consider alternatives within the ambit of the existing policy, relies on factors that it should not have considered, or fails to adequately consider important issues raised by commenters. *See Motor Vehicle Mfrs. Ass'n.*, 463 U.S. at 41-43; *Fox*, 556 U.S. at 515; *Chamber of Com. v. DOL*, 885 F.3d 360, 382 (5th Cir. 2018). Finally, agency action is arbitrary or capricious when the agency fails to "consider[] the costs and benefits associated" with the action. *Mexican Gulf Fishing Co. v. United States Dep't of Com.*, 60 F.4th 956, 973 (5th Cir. 2023).

### STATEMENT OF UNDISPUTED MATERIAL FACTS[1]

### A.    Worker Classification Under the FLSA

1.    The FLSA sets minimum wage and overtime requirements to be followed by employers of employees. *See* 29 U.S.C. §§ 206-07. However, "there is in the [FLSA] no definition that solves problems as to the limits of the employer-employee relationship under the Act." *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728 (1947). On this point, the Supreme Court has articulated the "original meaning of the statute," which controls here. *See New Prime Inc. v. Oliveira*, 586 U.S. 105, 113 (2019). Nearly 80 years ago, the Court stated that "'employees' include[s] workers who were such as a matter of economic reality.'" *United States v. Silk*, 331 U.S. 704, 713 (1947); *see also Bartels v. Birmingham*, 332 U.S. 126, 130 (1947) ("employees are those who as a matter of economic reality are dependent upon the business to which they render service").[2] The Court went on to identify several factors relevant to that "economic reality" inquiry: "degrees of control, opportunities for profit or loss, investment in facilities, permanency of relation[,] and skill required in the claimed independent operation," *Silk*, 331 U.S. at 716, along with whether the work being performed is "part of the integrated unit of production," *Rutherford*,

---

[1] All statements of undisputed material facts are derived from the Administrative Record ("AR") certified by DOL, ECF No. 50, and from case law.
[2] *Silk* and *Bartels* concerned the Social Security Act, but the Court relied upon *Silk* in *Rutherford* when applying the FLSA. *See* 331 U.S. at 729-30.

331 U.S. at 729. In *Silk*, however, the Court emphasized the factors of control and opportunity, without analyzing the other factors. 331 U.S. at 717-19; *see also Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 32-33 (1961) (primarily considering control and opportunity for profit). Over the decades, lower courts have applied different variations of these factors, and wrestled with substantial uncertainty over "which aspects of 'economic reality' matter, and why." *Sec'y of Lab. v. Lauritzen*, 835 F.2d 1529, 1549 (7th Cir. 1987) (Easterbrook, J., concurring).

**B.    The 2021 Rule**

2.      In early 2021, DOL decided to address the significant confusion and uncertainty over the economic-reality test, which had become worse "over time as technology, economic conditions, and work relationships [] evolved." 86 Fed. Reg. at 1172.

3.      Based on a thorough review of case law, DOL determined that two "core" factors—the nature and degree of control over work and the individual's opportunity for profit or loss—are "most probative" of whether an individual is "economically dependent" on a business. *Id*. at 1246-47 (29 C.F.R. § 795.105(c)-(d)); *see* 86 Fed. Reg. at 1196-1203. Where these two factors pointed toward the same classification, in every relevant case since 1975, that was the classification the court concluded was correct. *Id.* at 1196-97.

4.      DOL also specified that three other factors—the amount of skill required for the work; the degree of permanence of the working relationship between the individual and the potential employer; and whether the work is part of an integrated unit of production—were "less probative and, in some cases, may not be probative at all, and thus are highly unlikely, either individually or collectively, to outweigh the combined probative value of the two core factors." *Id*. at 1246 (29 C.F.R. § 795.105(c)).

5.      DOL analyzed the costs and benefits of the 2021 Rule, concluding that it would "improve the welfare of both workers and businesses." 86 Fed. Reg. at 1209. Businesses would

benefit from "improved clarity," which would "increase the efficiency of the labor market, allowing businesses to be more productive and decreasing their litigation burden." *Id*. And workers would benefit from reduced compliance costs, decreased misclassification, increased creation of independent contractor jobs, and likely conversion of some existing positions from employee to independent contractor status. *Id.* at 1209-10.

6.       The 2021 Rule also expressly provided that regulated parties (like Plaintiffs and their members) could rely on the Rule "in accordance with section 10 of the Portal-to-Portal Act, 29 U.S.C. § 251-262," which provides parties a good faith defense in FLSA litigation. 86 Fed. Reg. at 1246 (29 C.F.R. § 795.100).

## C.       DOL's First Attempt to Rescind the 2021 Rule

7.       After the change in administration, DOL postponed the effective date of the 2021 Rule, 86 Fed. Reg. 12535 (March 4, 2021) (the "Delay Rule"), and then issued a final rule withdrawing the 2021 Rule, 86 Fed. Reg. 24303 (May 6, 2021) (the "Withdrawal Rule").

8.       Plaintiffs challenged both the Delay and Withdrawal Rules under the APA. ECF Nos. 1, 6. This Court granted Plaintiffs' motion for summary judgment. The Court concluded that DOL "failed to 'consider important aspects of the problem before [it]'—the lack of clarity of the economic realities test and the need for regulatory certainty." *CWI*, 2022 WL 1073346, at *19 (citation omitted). The Court also concluded that "DOL refused to 'meaningfully consider more limited policies' than the total withdrawal of the [2021 Rule]." *Id.* at *18 (citation omitted). The Court thus vacated the Delay and Withdrawal Rules. *Id.* at *20.[3]

---

[3] DOL appealed, and the appeal was held in abeyance as DOL engaged in a new rulemaking. After that rulemaking was completed, the Fifth Circuit remanded to this Court to allow Plaintiffs to amend their complaint to challenge the 2024 Rule. *Coal. for Workforce Innovation v. Walsh*, No. 22-40316, ECF No. 37 (5th Cir. Feb. 19, 2024).

### D.   <u>The 2024 Rule</u>

9.      On January 10, 2024, DOL published the 2024 Rule, which again rescinds the 2021 Rule and this time replaces it with a new test. 89 Fed. Reg. 1638. DOL claimed that the 2021 Rule "would have likely caused confusion and uncertainty" and "would have complicated rather than simplified" the FLSA worker classification analysis. *Id.* at 1654. DOL further contended that the 2021 Rule's core-factors framework "unduly narrowed the economic reality test." *Id.* at 1649. In DOL's newfound view, these two supposed errors combined to make misclassification of employees as independent contractors more likely, which DOL maintains would harm workers. *Id.* at 1657-58.

10.     DOL decided to replace the 2021 Rule with a rule that swings far in the other direction—a new, freewheeling totality-of-the-circumstances test that has at least seven unweighted factors—six enumerated factors, plus unenumerated "[a]dditional factors." *Id.* at 1742-43 (29 C.F.R. § 795.110). DOL refuses to give any guidance about how to balance those factors, asserting that doing so would undermine the test's "flexibility" to "encompass continued social changes." *Id.* at 1649.

11.     DOL claims that it is merely "return[ing]" to a test that predates the 2021 Rule. *Id.* at 1639. But DOL had never issued a rule on worker classification under the FLSA before the 2021 Rule. And the 2024 Rule is built from cherry-picked case law and a misinterpretation of the factors courts previously considered. It skews those factors toward classification as an employee at the expense of legitimate independent contracting relationships. The only certainty of the 2024 Rule is that DOL will be more likely to find employment relationships that never before existed.

<h3 style="text-align:center"><u>STANDING</u></h3>

Plaintiffs' standing to challenge the 2024 Rule is "self-evident," as in Plaintiffs' prior challenge to the Delay and Withdrawal Rules. *Texas v. Nuclear Reg. Comm'n*, 78 F.4th 827, 835

(5th Cir. 2023). Plaintiffs and their members use independent contractors and in some cases are independent contractors themselves. They therefore are directly regulated by the 2024 Rule, which exposes them to liability and increased costs, as described in the comments Plaintiffs filed in the Administrative Record.[4] *See, e.g.*, *Contender Farms, L.L.P. v. Dep't of Agric.*, 779 F.3d 258, 264 (5th Cir. 2015) ("If a plaintiff is an object of a regulation there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it."). In addition, challenging the Rule is germane to each Plaintiff's purpose, and neither the claims asserted nor the relief requested requires the participation of individual members, effectively all of whom are adversely impacted by the 2024 Rule. The three-part test for associational standing is therefore satisfied. *Texas Ent. Ass'n, Inc. v. Hegar*, 10 F.4th 495, 504 (5th Cir. 2021); *see Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

Many of Plaintiffs' members also are eligible to sue under the RFA, which provides a cause of action for "small entit[ies]." 5 U.S.C. § 611(a)(1). These companies are "small business[es]" as defined in 5 U.S.C. § 601(3), and thus are "small entit[ies]" as defined in 5 U.S.C. § 601(6), because their annual receipts are below the maximum established by the Small Business Administration. *See* SAC ¶ 30; ABC Cmt. 2 (majority of construction firms are small businesses).

## SUMMARY OF ARGUMENT

DOL's rescission of the 2021 Rule—like its last attempt—is arbitrary, capricious, an abuse of discretion, and contrary to law. 5 U.S.C. § 706(2)(A). Neither of its asserted justifications withstand APA scrutiny. First, rescission of the 2021 Rule does not promote clarity, reduce

---

[4] *See, e.g.*, FSI Cmt. 31-34 (Dec. 15, 2022), https://www.regulations.gov/comment/WHD-2022-0003-53818; NFIB Cmt. 8-9 (Dec. 10, 2022), https://www.regulations.gov/comment/WHD-2022-0003-47662; CWI Cmt. 2-6 (Dec. 15, 2022), https://www.regulations.gov/comment/WHD-2022-0003-54040; ABC Cmt. 12-13 (Dec. 15, 2022), https://www.regulations.gov/comment/WHD-2022-0003-53419; ATA Cmt. 14 (Dec. 13, 2022), https://www.regulations.gov/comment/WHD-2022-0003-51407.

confusion, and aid consistency of worker classification. Second, rescission of the 2021 Rule does not (and cannot) overcome DOL's prior conclusion that the 2021 Rule's core-factor framework is supported by Supreme Court precedent and the strong weight of appellate decisions. DOL does not adequately rebut its prior characterization of this case law, instead relying on an improper invocation of the FLSA's perceived "purpose" to expand the category of workers classified as employees beyond those covered under "a fair reading" of the statute. *Encino II*, 584 U.S. at 89.

DOL's replacement of the 2024 Rule is also arbitrary, capricious, an abuse of discretion, and contrary to law. It introduces uncertainty and incoherence, improperly relies on the FLSA's "purpose," and contravenes Supreme Court precedent by elevating so-called "reserved control." The 2024 Rule also sets out deeply flawed interpretations of nearly all of the factors it enumerates. What is more, DOL's cost-benefit analysis of the 2024 Rule fails to consider significant costs to both independent contractors and businesses and unreasonably exaggerates its benefits.

For each and all of these reasons, the rescission of the 2021 Rule and the replacement 2024 Rule should be vacated.

## **ARGUMENT**

### I.     **DOL's Arbitrary and Capricious Rescission of the 2021 Rule Violates the APA.**

DOL offers two principal grounds for rescinding the 2021 Rule. First, it asserts that its "[o]bjective" is to provide a "consistent approach" that will "reduce[] confusion" and "provide clarity on the concept of economic dependence." 89 Fed. Reg. at 1648-49, 1653-56, 1661, 1739. Second, it claims the 2021 Rule "depart[ed] from case law." 89 Fed. Reg. at 1639. If either justification fails APA scrutiny, the Court must vacate the rescission of the 2021 Rule. *Nat'l Fuel*, 468 F.3d at 839-40; *see Sw. Elec.*, 920 F.3d at 1014 (agency can defend action only on the grounds articulated below (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 95 (1943)). Here, both justifications are fatally flawed.

A.     <u>**Rescission of the 2021 Rule Will Produce Confusion and Uncertainty.**</u>

Rescinding the 2021 Rule is patently inconsistent with DOL's stated goal of increasing clarity and reducing confusion. Because rescission "will undermine [DOL's] own objective," it is arbitrary and capricious. *In re FCC 11-161*, 753 F.3d 1015, 1143 (10th Cir. 2014); *see also Sw. Elec.*, 920 F.3d at 1030 (where "the agency's rationales contradict themselves," its action is "'illogical on its own terms' and therefore cannot stand").

In vacating the previous Withdrawal Rule, this Court recognized that, "due to the courts' varied approaches to applying the economic realities test, there has been confusion among businesses and workers as to whether an employment relationship exists." *CWI*, 2022 WL 1073346, at *16. The 2021 Rule brought much-needed structure and clarity to worker classification by identifying two "'core' factors—the nature and degree of the worker's control over the work and the worker's opportunity for profit or loss"—that "are more probative of the question of economic dependence or lack thereof than other factors, and thus typically carry greater weight in the analysis" of the economic reality test. 86 Fed. Reg. at 1168; *see supra* at 6. Those factors "drive at the heart of what is meant by being in business for oneself: Such a person typically controls the work performed in his or her business and enjoys a meaningful opportunity for profit or risk of loss through personal initiative or investment." 86 Fed. Reg. at 1196. By contrast, other factors commonly considered as part of the economic reality test are "less probative" of worker classification because they often describe *both* employees and independent contractors. *Id.* Thus, the 2021 Rule instructed that if the two core factors "both point towards the same classification, whether employee or independent contractor, there is a substantial likelihood that is the individual's accurate classification," and the remaining factors "are highly unlikely, either individually or collectively, to outweigh the combined probative value of the two core factors." *Id.* at 1246 (29 C.F.R. § 795.105(c)). The 2021 Rule adopted this framework and other measures to

"improve the certainty and predictability of the economic reality test" for the benefit of workers and businesses. 86 Fed. Reg. at 1168, 1196; *see also id.* at 1172, 1178, 1191, 1197, 1203, 1208, 1210, 1214, 1216, 1240.

By definition, a test that prioritizes two core factors is simpler, clearer, and less confusing than a freewheeling "totality-of-the-circumstances analysis in which the economic reality factors are not assigned a predetermined weight." 89 Fed. Reg. at 1640. "[E]xperience has shown that … open-ended balancing tests … can yield unpredictable and at times arbitrary results." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 136 (2014); *see also United States v. Mead Corp.*, 533 U.S. 218, 241 (2001) (Scalia, J., dissenting) ("th'ol' 'totality of the circumstances' test" is the kind of inquiry "most feared by litigants who want to know what to expect."). Such "vague and open-ended regulations," which agencies like DOL "can later interpret as they see fit," deprive a regulated party of fair warning of what the law requires. *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 158 (2012).

DOL nevertheless claims that the 2021 Rule would create "greater confusion among employers" because it supposedly "departed from" prior case law in articulating the core-factor framework, and DOL has "concerns about the extent to which federal courts would have adopted the 2021 IC Rule." 89 Fed. Reg. at 1639, 1654. That assertion is not credible. To start, comment after comment from businesses rebutted that premise.[5] As one comment explained:

> At the end of the day, it is simply impossible to imagine how the 2021 rule could have caused confusion. It relied on the same factors as present in existing case law, but whereas existing case law failed to prioritize among the factors, the 2021 rule gave some prioritization guidance. *Even if one incorrectly believes that this*

---

[5] *See, e.g.,* FSI Comment 6-7 (Dec. 15, 2022), https://www.regulations.gov/comment/WHD-2022-0003-53818; CWI Comment 1, 22 (Dec. 15, 2022), https://www.regulations.gov/comment/WHD-2022-0003-54040; ABC Comment 2-3 (Dec. 15, 2022), https://www.regulations.gov/comment/WHD-2022-0003-53419; U.S. Chamber of Commerce Comment 11 (Dec. 15, 2022), https://www.regulations.gov/comment/WHD-2022-0003-53819.

> guidance is somewhat confusing on account of its novelty, it cannot be less clear
> than no prioritization guidance.[6]

And DOL entirely ignores that the 2021 Rule provided a safe harbor for businesses that relied on its guidance—a safe harbor that offers critical certainty to businesses and that is absent after the rule's rescission. *See* 86 Fed. Reg. at 1246 (29 C.F.R. § 795.100); 29 U.S.C. § 259.[7] DOL not only failed to explain its disregard of these comments, but also conspicuously pointed to no new evidence or changed circumstances to justify flipping its position now. The Supreme Court in recent years has repeatedly admonished agencies for such "bureaucratic pirouetting." *Guedes v. ATF*, 140 S. Ct. 789, 791 (2020) (statement of Gorsuch, J.).

As justification for the rescission, DOL cannot cite the experience of the regulated community in applying and living under the 2021 Rule—the agency issued the rule just three years ago and almost immediately started attempting to scrap it. DOL claims as "notable" one court's statement that the 2021 Rule "may not be valid," but ignores that the court cited DOL's ongoing rescission attempt as the basis for that assertion. 89 Fed. Reg. at 1655 n.150; s*ee Wallen v. TendoNova Corp.*, 2022 WL 17128983, at *4 n.6 (D.N.H. Nov. 22, 2022). And DOL neglects to mention the only court decision to address the substance of the 2021 Rule—the decision of *this* Court—recognized that the rule was "consistent with the existing case law." *CWI*, 2022 WL 1073346, at *16-17.

If any doubt remained, the 2024 Rule's replacement test confirms that DOL's actions disserve its purported objective of "provid[ing] more consistent guidance to employers." 89 Fed. Reg. 1640. The 2024 Rule creates *more* uncertainty, not less, for the regulated public. And it does

---

[6]   Rachel   Greszler   and   David   Burton   Comment   3   (Dec.   13,   2022)   (emphasis   added), https://downloads.regulations.gov/WHD-2022-0003-51897/attachment_1.pdf.
[7] *See also* Club for Growth Foundation Comment 5 (Dec. 12, 2022), https://www.regulations.gov/comment/WHD-2022-0003-51463 ("Further, there is no confusion [under the 2021 Rule] given that the Portal-to-Portal Act provides an absolute defense to FLSA claims taken in good-faith reliance on the Wage and Hour Division's regulations, notwithstanding the regulation is later held invalid by a court.").

this by introducing a multifactor test where any of seven different factors could be determinative of employee status. This promises confusion and invites litigation over the ambiguous new concepts that will require decades to be worked out in the courts. *See infra* at 20. And beyond the nebulous standard, the test compounds the likelihood of confusion by pronouncing that reserved (i.e., potential) control can outweigh actual practice when determining the proper classification. *See* 89 Fed. Reg. at 1721-22.

In short, DOL has failed to "show that there are good reasons" for abandoning the 2021 Rule. *Fox*, 556 U.S. at 515; *see also Encino I*, 579 U.S. at 222. Rather, DOL's rescission of the 2021 Rule actually "undermines [its] own objective." *In re FCC 11-161*, 753 F.3d at 1143. Because promoting clarity is a principal ground on which DOL "seek[s] to justify" withdrawing the 2021 Rule, the withdrawal "cannot [be] upheld." *Nat'l Fuel*, 468 F.3d at 839-40.

### B.    Recission of the 2021 Rule Based on DOL's Newfound Reading of Case Law Is Untenable.

DOL also attempts to justify rescission by claiming the 2021 Rule "depart[ed] from case law." 89 Fed. Reg. at 1639; *see id.* at 1647 ("the Department believes that the 2021 IC Rule did not fully comport with the FLSA's text and purpose as interpreted by courts."). But where an agency asserts that its action is legally compelled, and that legal premise turns out to be incorrect, the action must be set aside. *See, e.g., Regents*, 140 S. Ct. at 1910-11.

And the agency is indeed wrong here. The 2021 Rule rooted its worker classification framework in the "economic reality" test of *Silk* while harmonizing the oft-conflicting methods used by different circuits to apply this test, thoroughly analyzing a host of appellate decisions in the process. *See* 86 Fed. Reg. 1170, 1240 (discussing circuits' inconsistent exposition and application of multi-factor test). DOL now rejects its own prior analysis as contrary to Supreme Court precedent and decades of case law, but neither argument holds water.

First, DOL misinterprets Supreme Court precedent. The agency now suggests that the 2021 Rule runs "contrary to" precedent because the "Supreme Court has emphasized the employment status … turns upon 'the circumstances of the whole activity,' rather than isolated factors." 89 Fed. Reg. at 1644, 1651. But as DOL explained when promulgating the 2021 Rule, "[i]n the very case that announced the economic reality factors, the Supreme Court listed five factors that are 'important for decision' but did not treat them equally." 86 Fed. Reg. at 1197-98. The Court "instead emphasized the most probative factors"—specifically, "'the control exercised [and] the opportunity for profit'"—"while deemphasizing less probative ones in that case." *Id.* at 1198 (alteration in original) (quoting *Silk*, 331 U.S. at 719). The focus on these core factors is entirely consistent with the Court's application of the economic reality test.

Moreover, the 2021 Rule release explained and discussed the specific ways in which "[t]he Supreme Court has interpreted" the FLSA's economic-reality test and how it differs from "the common law standard," which focused more exclusively on control. 86 Fed. Reg. at 1169. It therefore simply is not true that recognizing control as a core factor "effectively adopt[s] the narrower scope of employment under the common law control test." *Id.* at 1200. Rather, employment under the FLSA *is* broader than the common-law control test, but *Silk* nonetheless identified "degrees of control" as the first in its list of factors relevant to the economic reality inquiry and analyzed it specifically, along with the opportunity-for-profit factor. 331 U.S. at 716; *see also Whitaker House*, 366 U.S. at 32-33 (primarily considering control and opportunity for profit). DOL's change in position is thus contrary to law and violates the APA. *See Calumet Shreveport Ref., L.L.C. v. EPA*, 86 F.4th 1121, 1137-38 (5th Cir. 2023).

Second, DOL also relies on a superficial understanding of how "most courts" have described the economic-reality test. *See, e.g.*, 89 Fed. Reg. at 1652, 1665, 1669, 1676, 1707

(repeatedly relying on "most courts"). Decades of lower court precedent support the 2021 Rule, not the agency's present flip-flop on the law. *See supra* at 2. These cases demonstrate how the economic-reality test shakes out in practice, and support the focus on two core factors. 86 Fed. Reg. at 1196. Critically, in support of the 2021 Rule, DOL studied every relevant appellate decision since 1975 and found that in every case where the "opportunity for profit" and "control" factors pointed to the same classification, courts concluded that was the correct classification. 86 Fed. Reg. at 1196-97. To downplay this precedent, DOL relies heavily on lower courts' rote recitation of the totality-of-the-circumstances inquiry. But in doing so, DOL brushes past the courts' actual holdings in these cases. An agency acts arbitrarily where, as here, it does not "appreciate the full scope of [its] discretion" but instead wrongly considers itself "bound" by authorities that do not in fact control. *Regents*, 140 S. Ct. at 1910-11.

In promulgating the 2021 Rule, DOL also found that "the opportunity factor aligned with the ultimate classification in every case" reviewed. 86 Fed. Reg. at 1197. By contrast, in trying to rescind the 2021 Rule, DOL has found only one case in which the opportunity for profit factor, when it was considered and pointed in a discernable direction, did not align with the ultimate outcome. *See* 89 Fed. Reg. at 1652 (citing *Donovan v. Tehco, Inc.*, 642 F.2d 141, 143 (5th Cir. 1981)).[8]

DOL dismissed out-of-hand other cases, identified by commenters, that emphasize control as a preeminent factor in the economic-reality inquiry. *See* 89 Fed. Reg. at 1650-51 & n.124. DOL wrongly claims that some of the cases are "relevant to a different statute." *Id.* Not so. Those were FLSA cases. DOL tries to dismiss other cases as relevant only to "a joint employment analysis," not to independent contractor status. *Id.* But those cases address the same central inquiry: whether

---

[8] DOL also claims that the 2021 Rule "significantly altered the 'control' and 'opportunity for profit or loss' factors." 89 Fed. Reg. at 1652. As shown below, it is the 2024 Rule that misconstrued the factors. *See infra* at 19, 23.

workers are "employees" under the FLSA. *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 142–43 (3d Cir.), *amended*, 979 F.3d 192 (3d Cir. 2020). For that reason, DOL repeatedly cites joint-employment cases and guidance in support of the 2024 Rule. *See id.* at 1693 n.365, 1694 n.371, 1698-99 nn.401, 408. Such "internal inconsistency [is] characteristic of arbitrary and unreasonable agency action." *Chamber of Com.*, 885 F.3d at 382.

DOL's reasoning is also flawed because it relies heavily on lower courts' repeated rote recitation of the totality-of-the-circumstances inquiry, at the expense of considering the decisions those courts ultimately reached. An agency acts arbitrarily where, as here, it does not "appreciate the full scope of [its] discretion" but instead wrongly considers itself "*bound*" by authorities that do not in fact control. *Regents*, 140 S. Ct. at 1910-11.

Ultimately, DOL falls back on the purported remedial purpose of the FLSA to justify its rescission of the 2021 Rule. 89 Fed. Reg. 1668 n.221; *see also, e.g.*, *id.* at 1639; 1640; 1645; 1647; 1649; 1661; 1663; 1668; 1724; 1725; 1726; 1739 (invoking "purpose"); *id.* at 1650; 1667; 1668 ("intent"). But the Supreme Court has expressly rejected "this principle as a useful guidepost for interpreting the FLSA" and instructed that there is "no license" to give the statute "anything but a fair reading." *Encino II*, 584 U.S. at 88. DOL contends that *Encino II* applies only to FLSA "exemptions" and not the "definitions" at issue here. 89 Fed. Reg. at 1668 n.221. But nothing in *Encino II* suggests that the case is so limited, and courts have not found it so. *See, e.g.*, *Hernandez v. Plastipak Packaging, Inc.*, 15 F.4th 1321, 1329 (11th Cir. 2021) (recognizing that *Encino II* applies to the FLSA in full). Dismissing "the flawed premise that the FLSA pursues its remedial purpose at all costs," the Court instructed that the statute be given "a fair reading," not one slanted in favor of expanded coverage. *Encino II*, 584 U.S. at 89 (internal quotation marks and citations omitted). It is particularly misguided, moreover, to invoke a statute's remedial purpose when

addressing the antecedent question of whether a worker is an employee and, thus, even within the category of persons Congress sought to protect. By flouting *Encino II*, DOL commits a clear error of law and arbitrarily and capriciously relies upon factors that should not be considered. This error requires vacatur of the rulemaking. *See National Fuel*, 468 F.3d at 839-40.[9]

## II.      **The 2024 Rule Misinterprets and Misapplies the FLSA.**

The 2024 Rule abandons the two core factors of the 2021 Rule and adopts instead a novel, multifactor standard that has never before been articulated by any court. This new rule rests on unreasoned decision making and on misunderstanding of the law, including Supreme Court precedent, and thus violates the APA. 5 U.S.C. § 706(2)(A); *see Calumet*, 86 F.4th at 1137-38 (5th Cir. 2023). It defies DOL's stated goal of regulatory certainty and predictability, and promises confusion for stakeholders, increased litigation, and a chilling effect on independent work opportunities. On all levels, the new rule fails to fulfill DOL's obligations under the FLSA and APA.[10]

As a threshold matter, DOL is, of course "constrain[ed]" to follow Supreme Court precedent interpreting the FLSA. 89 Fed. Reg. at 1739. The 2024 Rule conflicts with Supreme Court precedent by relying on the remedial purpose of the FLSA in an improper attempt to expand the category of workers classified as employees. *See supra* at 10 (citing *Encino II*, 584 U.S. at 89). Likewise, DOL's abandonment of "actual practice" as the touchstone of FLSA worker

---

[9] DOL further contends that the 2021 Rule could "result[] in the misclassification of employees as independent contractors," which in turn "could harm the affected workers." 89 Fed. Reg. at 1656. DOL has exaggerated any benefits to workers of the 2024 Rule. *See infra* at 28. Regardless, DOL explained that its concern about an "increased … risk of worker misclassification" is derivative of its asserted belief that the 2021 Rule "add[ed] considerable confusion and uncertainty" and "improperly narrowed the focus of the [classification] inquiry." 89 Fed. Reg. at 1658. As demonstrated exhaustively above, neither of those conclusions are justified.

[10] Indeed, another judge in this district recently vacated the National Labor Relations Board's replacement of its 2020 rule governing joint-employer status because that replacement rule failed to establish a "definite, readily available standard" that could "reduce uncertainty and litigation over the basic parameters of joint-employer status." *Chamber of Com. v. NLRB*, No. 6:23-CV-00553, 2024 WL 1203056, at *15 (E.D. Tex. Mar. 18, 2024).

classification analysis is also contrary to Supreme Court precedent. *See* FSI Cmt. 11-12; Club for Growth Cmt. 10-11. As the 2021 Rule explained, the focus on actual practice is not a matter subject to DOL's discretion, but a longstanding "principle … derived from the Supreme Court's holding that 'economic reality' rather than 'technical concepts' is to be the test of employment under the FLSA." 86 Fed. Reg. at 1203 (quoting *Whitaker House*, 366 U.S. at 33); *see* FSI Cmt. 11-12. In support of this conclusion, the 2021 Rule analyzed the key Supreme Court precedents at length, including *Silk* and *Bartels*. 86 Fed. Reg. at 1203. But the 2024 Rule erroneously departs from this precedent by treating theoretical possibilities as "equally" or even "*more*[] indicative of the economic reality than the actual practice of the parties." 89 Fed. Reg. at 1720 (emphasis added). DOL utterly fails to contend with the on-point Supreme Court decisions discussed in the 2021 Rule, pointing only to a clause in *Silk* that mentioned the "'power of control, whether exercised or not.'" *See* 89 Fed. Reg. at 1718 & n.529 (quoting *Silk*, 331 U.S. at 713). But that was a description of the Restatement of Agency's "technical" control test that the Court rejected. *Silk*, 331 U.S. at 713 (citation omitted).

In addition to these overarching flaws, DOL further erred in its analysis of individual factors under the economic-reality test, including the following.

**A. Control.** The 2024 Rule makes major changes to the traditional treatment of the factor assessing "control" by improperly expanding both what activity DOL considers and what circumstances it will deem indicative of control. 89 Fed. Reg. at 1670. Through these changes, DOL both underplays the importance of control to the analysis and inappropriately expands the concept of control to increase the number of workers classified as employees. *See supra* at 3 (discussing erroneous demotion of control from "core" status).

DOL's expansion of the definition of "control" is not supported by logic or precedent and

repeatedly slants the analysis in favor of employee classification. In particular, DOL inappropriately expands the *object* of the "control" at issue—i.e., the question of *what* a putative employer must control for an employment relationship to be established. The 2021 Rule pointed to control over "key aspects of the performance of the work," 86 Fed. Reg. at 1246-47 (29 C.F.R. § 795.115(b)(1)(i)), consistent with *Silk*'s understanding of control over "the manner of performing service to the industry" and over "how 'work shall be done.'" 31 U.S. at 713–714. The 2024 Rule blows this factor open to include control over "the performance of the work *and the economic aspects of the working relationship*." 89 Fed. Reg. at 1743 (new 29 C.F.R. § 795.110(b)(4) (emphasis added)). The ambiguous new phrase "economic aspects of the working relationship" does not appear in *Silk* or any other Supreme Court case applying the economic-reality test, and DOL's only authority for it appears to be a single lower-court decision that refers to the "economic aspects of the *business*." *See id.* at 1693 & nn.360-62 (quoting *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008) (emphasis added)). Regardless, neither DOL nor any lower court has authority to expand the object of control beyond the binding "original meaning of the statute." *New Prime*, 586 U.S. at 113. And the addition of this nebulous concept of control will only exacerbate the confusion and uncertainty that this new Rule causes. *See* FSI Cmt. 17-18.

The 2024 Rule also suggests that "control" may be indicated where a business takes measures related to compliance with legal and safety obligations. 89 Fed. Reg. at 1743. That is wrong. As the Fifth Circuit has held, such measures by businesses (e.g., to ensure compliance with "safety training and drug testing") are "not the type of control that counsels in favor of employee status" because they indicate control by a regulator, not an employer. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 382 (5th Cir. 2019). Indeed, as the 2021 Rule correctly

explained and Congress has recognized in other contexts, "these types of requirements are generally imposed by employers on both employees and independent contractors," so that "insisting on adherence to certain rules to which the worker is already legally bound would not make the worker more or less likely to be an employee." 86 Fed. Reg. at 1182-83; *see also, e.g.*, FSI Cmt. 18-20; CWI Cmt. 37; Flex Association Cmt. 18-27; Am. Truck Ass'n Cmt. 4-10.

DOL now purports to have addressed this flaw by adopting a carveout, which provides that certain compliance measures do not weigh in favor of employee status. 89 Fed. Reg. at 1694-95. But the carveout only applies to measures taken "for the *sole* purpose of complying with a *specific*" regulation. *Id.* at 1743 (29 C.F.R. § 795.110(b)(4)) (emphasis added). That narrow articulation offers no practical relief; instead, it invites a fact-dependent inquiry into a company's intent that once again makes DOL's Rule less clear and more confounding.

**B. "Integral Part" of Employer's Business.** DOL's replacement of the 2021 Rule's "integrated unit of production" factor, which the 2021 Rule took directly from *Rutherford Food Corp. v. McComb*, 331 U.S. 722 (1947), also contravenes governing precedent. *See* 86 Fed. Reg. at 1247 (29 C.F.R. § 795.105(d)(2)(iii)). Properly articulated, this factor can be probative of worker classification because it asks whether workers "'work alongside admitted employees'" toward "'a common objective'" in a manner that suggests they are not in business for themselves. *Rutherford Food*, 331 U.S. at 726 (citation omitted).

The 2024 Rule instead asks whether the work performed is an "integral part"—*i.e.*, a "critical, necessary, or central" part—of the employer's business. 89 Fed. Reg. at 1743 (new 29 C.F.R. § 795.110(b)(5)). Although some lower courts have used this alternative meaning of the "integral" factor, as the 2021 Rule explained, such an interpretation "deviate[s] from the Supreme Court's guidance" in *Rutherford*. 86 Fed. Reg. at 1194. The Court in *Silk* used the phrase "integral

part" in passing, but it "was not one of the distinct factors identified [] as being 'important for decision.'" *Id.* (citing *Silk*, 331 U.S. at 716). As Judge Easterbrook has rightly pointed out, "everything the employer does is 'integral' to its business—why else do it?" *Lauritzen*, 835 F.2d at 1541. Asking what is "essential" simply fails to distinguish between employees and *anyone else* in the web of a company's relationships. *See, e.g.*, Chamber Cmt. 10. Numerous people may be essential or important to a business—customers, parts suppliers, retailers, marketing consultants, regulators—without being employees.

DOL's only explanation for this about-face is an unreasoned appeal to circuit court decisions that used the "integral" framing, sometimes in loose language. 89 Fed. Reg. at 1655. But as explained, DOL cannot abdicate its obligation of reasoned decisionmaking by pointing to these nonbinding cases. Its failure to recognize its own discretion independently renders its action arbitrary and capricious. *See supra* at 16 (citing *Regents*, 140 S. Ct. at 1910-11).

**C. Investment.** The 2024 Rule improperly counts "investment" as a separate factor from "opportunity for profit or loss." 89 Fed. Reg. at 1639, 1742. *Silk* analyzed these factors together. 331 U.S. at 719; *see* ABC Cmt. 6; FSI Cmt. 22-23. Disregarding *Silk*, the 2024 Rule lists investment as a separate factor and instructs that a worker's investment be compared to the company's investment. DOL acknowledges that "the Supreme Court in *Silk* did not make such a comparison," but again erroneously attempts to justify this approach by asserting that "federal courts of appeals … routinely" do. 89 Fed. Reg. at 1684; *but see supra* at 15 (explaining the unlawfulness of this approach). Aside from reciting those courts' conclusions, DOL offers no explanation why that relative inquiry is probative of independent contractor status.

**D. Permanence.** DOL also unreasonably turns the "permanence of the work relationship" factor into a one-way ratchet in favor of employee classification. Under its new test, a permanent

relationship definitively "weigh[s]" in favor of employee classification, but a lack thereof is "not necessarily indicative of independent contractor status." 89 Fed. Reg. at 1685-86. Not only is that illogical—impermanent work for a particular business suggests that the individual is in business for himself—it has no support in law. *See, e.g.*, ABC Cmt. 7-8; CWI Cmt. 33-34. Under the 2021 Rule, this factor "weigh[ed] in favor of the individual being an independent contractor to the extent the work relationship is by design definite in duration or sporadic" and, conversely, "weigh[ed] in favor of the individual being an employee to the extent the work relationship is instead by design indefinite in duration or continuous." 86 Fed. Reg. at 1247 (29 C.F.R. § 795.105(d)(2)(ii)); *see* 86 Fed. Reg. at 1192 (collecting cases). But DOL failed even to "display awareness" of its departure from its prior analysis, as it adopted its new unbalanced framework without addressing this aspect of the 2021 Rule. *See* 89 Fed. Reg. at 1685-86.

**E. Skill and Initiative.** The 2024 Rule improperly expands the "skill" factor to encompass "initiative," contravening Supreme Court precedent and creating confusing redundancy between factors. 89 Fed. Reg. at 1711; *see* FSI Cmt. 24-25; Coalition of Business Stakeholders Cmt. 15. The Supreme Court's original articulation of this factor in *Silk* examined the "skill required" as part of the economic-reality test. 331 U.S. at 716. As the 2021 Rule explained, the addition of "initiative" to this factor is a "modification[]" that "some courts of appeals have made to the economic reality factors as originally articulated … by the Supreme Court." 86 Fed. Reg. at 1170, 1174. This gloss on the skill factor, however, improperly double-counts this consideration as "capacity for on-the-job initiative is already part of the control factor." *Id.* at 1174. DOL asserts in conclusory fashion that its new articulation "is consistent with *Silk*," *id.* at 1711, but its discussion is cursory and fails to reconcile that assertion with the 2021 Rule's contrary conclusion.

**F. Improper Focus on Entrepreneurship.** Multiple commenters objected to DOL's focus

on entrepreneurial drive, which the 2024 Rule injects into multiple factors. FSI Cmt. 14-15; CWI Cmt. 41-42. For example, as noted above, DOL counts a worker's "capital or entrepreneurial investment" in a business as a separate factor, distinct from "opportunity for profit or loss." 89 Fed. Reg. at 1742 (29 C.F.R. § 795.110(b)(2)). Similarly, the Rule imports the consideration of "initiative" or "managerial" skill into its discussion of the "control," "skill," and "permanence" factors. *Id.* at 1742-43 (29 C.F.R. § 795.110(b)(2), (3), (6)). DOL thus weights the test in favor of employee classification by making a lack of entrepreneurialism count against independent contractor status multiple times, across different factors.

This approach is contrary to the proper interpretation of the individual factors and skews the inquiry as a whole. The effect is to narrow the category of independent contractors to only those who are particularly driven or successful. But as in all walks in life, there will be independent contractors whose energy and zeal are less than ideal. That may make them poor independent contractors. It does not make them employees. Surely many plumbers, gardeners, and handymen exhibit entrepreneurial zeal. But plenty may not exhibit the managerial skill or drive to expand their businesses that one associates with an entrepreneur. *See* FSI Cmt. 15. DOL has largely ignored these criticisms of its test. Nowhere does it grapple with 2024 Rule's pervasive diminishment of traditional independent contractor professions. That failure to consider important issues raised by commenters is arbitrary and capricious. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 63.

* * *

In all of these ways, the 2024 Rule establishes a vague and amorphous standard that is inconsistent with binding Supreme Court precedent and rests on arbitrary and capricious reasoning. It must be "set aside." 5 U.S.C. § 706(2)(A).

III.     **The 2024 Rule's Inadequate Cost-Benefit Analysis Is Arbitrary and Capricious and Violates the Regulatory Flexibility Act.**

It is "arbitrary and capricious" for an agency to fail to "consider[] the costs and benefits associated" with its action. *Mexican Gulf Fishing*, 60 F. 4th at 973. The RFA goes further and requires agencies to publish regulatory flexibility analyses assessing their rules' impact on small businesses particularly. 5 U.S.C. § 604. The RFA also requires agencies to respond to comments submitted by the Small Business Administration ("SBA") and authorizes private parties to enforce that requirement. *Id.* §§ 604(a)(3), 611(a)(1). An agency violates the RFA where it fails to comply with the Act's requirements of "precise, specific steps an agency must take." *Aeronautical Repair Station Ass'n, Inc. v. FAA*, 494 F.3d 161, 178 (D.C. Cir. 2007).

A.     **DOL Failed to Consider Significant Costs of the 2024 Rule.**

DOL violated the APA and RFA by failing to adequately consider significant costs of the withdrawal of the 2021 Rule and its 2024 Rule replacement. DOL's discussion of the 2024 Rule's costs is less than two pages and addresses only one category of costs—those associated with "rule familiarization." 89 Fed. Reg. at 1733-34. That blinkered analysis unreasonably omits whole categories of important costs raised by commenters, including the following.

**1. *Loss of, and effects, on independent contractors in the workforce.*** DOL overlooks that reclassification will harm many independent contractors and may drive some out of the workforce altogether. *See, e.g.*, CWI Cmt. 14, FSI Cmt. 25. As the SBA explained, the cost-benefit analysis in DOL's proposed rule was "deficient" because, among other failings, DOL did not consider that many independent contractors do "not want to be employees" and "believe they will lose work because of this rule."[11] The 2024 Rule could force many workers currently offering services as

---

[11] SBA Comment 4, 6-7 (Dec. 12, 2022), https://www.regulations.gov/comment/WHD-2022-0003-51006 ("SBA Cmt."); *see also* CWI Cmt. 1-2.

independent contractors to work set shifts or a fixed number of hours—something that many independent contractors cannot or do not want to do. If forced to be hired as employees due to reclassification, some "[w]orkers . . . might sorely miss the flexibility and freedom that independent-contractor status confers." *McFeeley v. Jackson St. Ent., LLC*, 825 F.3d 235, 243 (4th Cir. 2016); *see also* 86 Fed. Reg. at 1210 (describing "autonomy" of independent contractors). Extending FLSA coverage to genuine independent contractors may also lead to job cuts, hiring freezes, resignations, retirements, or automation. *See* CWI Cmt, 13-14; FSI Cmt. 26, 30, 34.[12]

In supposed response to these concerns, DOL dismissed what it deemed the "suggest[ion]" that the 2024 Rule "would infringe upon workers' or businesses' choices," because "FLSA-protected rights cannot be waived by" workers or businesses. 89 Fed. Reg. at 1670-71. But the inability to waive the FLSA's requirements is exactly why the costs of establishing employment relationships to obtain services previously provided by independent contractors are real costs that must be considered by DOL. By refusing to do so, DOL arbitrarily set aside commenters' concerns and its own previous findings regarding workers who were not "compelled to sell [their] services" without the FLSA's protections. *Walling v. Portland Terminal Co.*, 330 U.S. 148, 152 (1947).

Rather than consider those costs, DOL doubled down by counting employee status as entirely beneficial, because some workers would become entitled to new employee benefits. *Id.* at 1734, 1736-37. That ignores the obvious economic truth that the overall number of workers may *decrease* because the 2024 Rule makes their services more expensive for employers (who incur new tax and employee benefit obligations and less attractive to workers (who lose flexibility and autonomy). Flex Cmt. 1-2. Indeed, DOL concedes that some employers may respond to the 2024

---

[12] *See also* Oxford Economics, *The DOL's Independent Contractor Classification Would Decrease Access to Advice and Increase Costs for Investors* 17-18 (Jan. 2023), https://tinyurl.com/378e938b ("Oxford Report"). FSI lodged this study with DOL in January 2023, shortly after the comment period closed.

Rule by adopting "a downward adjustment in the worker's wage rate to offset a portion of the employer's cost associated with these new benefits." *Id.* at 1736. Yet DOL does not even attempt to analyze how many workers will face lower rates of pay, how much lower wages from a newly created position may be, or whether and how many opportunities for work will be lost from the workforce altogether. CWI Cmt. 13-14.

2. ***Harms to businesses and the economy.*** DOL similarly ignored harms to businesses and the economy. DOL asserted blithely that covering "health insurance and other benefits," as well as paying "higher taxes," would merely be "transfers," and that the only actual *costs* to businesses under the Rule will be familiarization costs in the Rule's first year. *Id.* at 1734. In truth, the costs to businesses go well beyond reading the 2024 Rule. DOL neglected to address comments explaining that reclassification would create "widespread effects . . . on occupations traditionally reliant on an independent-contractor model," precipitating wholesale restructuring of some businesses, reduced investment, and decreased services available to those businesses' customers. *See* FSI Cmt. 27, 31-33; Oxford Report 14-16, 18-21. Commenters also explained that the costs of the 2024 Rule—including the displacement of independent contractors from the labor market— would have deleterious effects on the economy beyond any given company or industry. *See* FSI Cmt. 34; TechNet Cmt. 3. The repeated failure to consider important issues raised by commenters is arbitrary and capricious. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 63.

DOL's treatment of recordkeeping costs is a striking example of its failure to address the costs its 2024 Rule will impose on business. The FLSA requires employers to keep various records relating to "wages, hours, and other conditions and practices of employment." 29 U.S.C. § 211(c); *see also* 29 C.F.R. § 825.500(c). If workers performing services as independent contractors are forced to take employee roles, businesses will need to keep additional records to demonstrate

compliance and avoid litigation. *See* FSI Cmt. 30-31; Nat. Ass'n of Manufacturers Cmt. 4. But

DOL explicitly disclaims such costs, based solely on the one-sentence assertion that the 2024 Rule

"does not create any new reporting or recordkeeping requirements for businesses." 89 Fed. Reg.

at 1740-41. That misses the point, which is that the 2024 Rule will extend the FLSA's preexisting

requirements to businesses and workers that have never before been considered subject to them.

The D.C. Circuit has characterized a similar failure to consider a rule's *consequences* merely

because the consequences were not an explicit *requirement* of the rule as "unutterably mindless."

*Bus. Roundtable v. SEC*, 647 F.3d 1144, 1156 (D.C. Cir. 2011) (vacating rule). So too here.

DOL also dismisses SBA's concerns that "DOL significantly underestimates the economic

impacts of this rule to small businesses and independent contractors," which would "be detrimental

and disruptive to millions of small businesses that rely upon independent contractors as part of

their workforce." SBA Cmt. 6, 10. DOL acknowledges that SBA and others "contended that the

Department has severely underestimated the economic impacts of this rule on small businesses

and independent contractors." 89 Fed. Reg. at 1739. But DOL fails to respond to certain concerns,

and responds to others in a manner that dismisses the magnitude of the problem. *E.g.*, *id.* at 1740

(defending estimate of 30 minutes for independent contractors, and one hour for other

establishments, to read the Rule's hundreds of pages). This refusal to meaningfully consider

statutorily-mandated factors fails DOL's obligations under the RFA, and thus violates both the

RFA and the APA. *See, e.g.*, *Aeronautical Repair*, 494 F.3d at 178 (inadequate agency analysis

violates RFA).

### B.   DOL Unreasonably Exaggerated the 2024 Rule's Benefits.

In addition to ignoring significant costs inflicted by the 2024 Rule, DOL compounds its

error by overstating the purported benefits. Among other things, it mistakenly assumes that

independent contractors will benefit from the 2024 Rule through receipt of overtime pay, when in

fact many independent contractors wrongly classified as employees under the Rule will qualify for an exemption from the FLSA's overtime requirements or otherwise will not be entitled to FLSA benefits. *See* 89 Fed. Reg. at 1737; *see also* FSI Cmt. 28; NRF Cmt. 7. Additionally, DOL erroneously claims that a benefit of the 2024 Rule will be "[i]ncreased consistency" in classifying workers. 89 Fed. Reg. at 1734. To the contrary, for all of the reasons detailed above, the 2024 Rule will only have the opposite effect, promoting inconsistency and uncertainty. *Supra* at 11-14.

Further, DOL's analysis of purported benefits arbitrarily discards its previous finding that independent contractors earn more than employees on average. 89 Fed. Reg. at 1738 (deeming it "inappropriate to conclude independent contractors generally earn a higher hourly wage than employees"). DOL now maintains that independent contractors and employees earn similar hourly payment, arriving at this conclusion through a statistical analysis that it claims "control[s] for observable differences." *Id.* But DOL does not explain its process for controlling for "observable differences," nor does it provide the average pay rates of independent contractors and wage rates for employees after controlling for such differences. *Id.* All DOL has left for its assertion that independent contractors do not earn more than employees is a 2018 study that relied on data from 2005 and concluded that more recent data from 2015 showed "that primary independent contractors earned more per hour than traditional employees." *Id.* DOL rejected that conclusion because of "the imprecision of the estimates." *Id.* But data does not need to be "perfect" for an agency to incorporate it into its decision making, and DOL's "refusal to use more recent data" is arbitrary and capricious. *Dist. Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46, 61-62 (D.C. Cir. 2015). DOL's analysis of the supposed benefits of the 2024 Rule, like its failure to fully analyze its costs, violates the APA and RFA. *See Window Covering Mfrs. Ass'n v. CPSC*, 82 F.4th 1273, 1288 (D.C. Cir. 2023).

**IV.**   **The 2024 Rule Should Be Vacated.**

In light of the Rule's manifold defects, this Court should set aside the 2024 Rule in entirety. The APA directs that courts "*shall . . .* hold unlawful and set aside agency action" that is contrary to law. 5 U.S.C. § 706(2)(A) (emphasis added). Accordingly, the APA's plain text requires that "[i]n *all* cases," unlawful "agency action *must* be set aside." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 413–14 (1971) (emphases added); *see Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 374-75 (5th Cir. 2022) ("Vacatur is the only statutorily prescribed remedy for a successful APA challenge to a regulation."). Although courts in this Circuit have occasionally remanded without vacatur where an agency would "'be able to substantiate its decision'" and vacatur would be "'disruptive,'" *Cent. & S. W. Servs., Inc. v. EPA*, 220 F.3d 683, 692 (5th Cir. 2000), that is no basis to withhold vacatur here. DOL would be unable to support its decision on remand, as the 2024 Rule is contrary to law, and its blunderbuss approach cannot be rationalized. Nor would vacating the Rule cause disruption: Vacatur would *maintain* the status quo under the 2021 Rule. This Court should apply the "default" remedy under Fifth Circuit precedent and set aside the order on review. *Data Mktg. P'ship, LP v. DOL*, 45 F.4th 846, 859 (5th Cir. 2022).

## CONCLUSION

For each of the reasons set forth above, Plaintiffs respectfully request that the Court grant this motion for summary judgment; declare unlawful and set aside DOL's rescission of the 2021 Rule and promulgation of the 2024 Rule; declare that the 2021 Rule has been and remains in effect as of March 8, 2021; and enjoin DOL from enforcing the 2024 Rule.

Dated: April 17, 2024                          Respectfully submitted,

                                               */s/ Robert F. Friedman*
                                               Robert F. Friedman
                                               LITTLER MENDELSON, P.C.
                                               2001 Ross Avenue, Suite 1500
                                               Dallas, TX 75201
                                               (214) 880-8100
                                               (214) 880-8101 (Fax)
                                               rfriedman@littler.com

                                               Maurice Baskin (*pro hac vice*)
                                               James A. Paretti, Jr. (*pro hac vice*)
                                               LITTLER MENDELSON, P.C.
                                               815 Connecticut Ave., N.W.
                                               Washington, D.C. 20006
                                               (202) 772-2526
                                               mbaskin@littler.com
                                               jparetti@littler.com

                                               ATTORNEYS FOR ALL PLAINTIFFS

                                               Eugene Scalia (*pro hac vice*)
                                               Jason J. Mendro (*pro hac vice*)
                                               Andrew G.I. Kilberg (*pro hac vice*)
                                               GIBSON, DUNN & CRUTCHER LLP
                                               1050 Connecticut Ave., N.W.
                                               Washington, D.C. 20036
                                               (202) 955-8500
                                               escalia@gibsondunn.com
                                               jmendro@gibsondunn.com
                                               akilberg@gibsondunn.com

                                               ATTORNEYS FOR PLAINTIFF
                                               FINANCIAL SERVICES INSTITUTE, INC.

Stephanie A. Maloney
D.C. Bar No. 1044276 (*pro hac vice*)
Jordan L. Von Bokern
D.C. Bar No. 1032962 (*pro hac vice*)
U.S. Chamber Litigation Center
1615 H Street, N.W.
Washington, DC 20062-2000
(202) 463-5337
smaloney@uschamber.com
jvonbokern@uschamber.com

ATTORNEYS FOR PLAINTIFF CHAMBER OF
COMMERCE OF THE UNITED STATES OF
AMERICA

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 17, 2024, the foregoing Motion for Summary Judgment was electronically filed in the above and foregoing with the Clerk of the Court, utilizing the ECF system, which sent notification of such filing to the following counsel for Defendants:

Lisa A. Olson
U.S. Department of Justice
1100 L Street NW; Room 12200
Washington, D.C. 20005
(202) 514-5633
lisa.olson@usdoj.gov

Andrea L. Parker
Assistant United States Attorney
U.S. Department of Justice
550 Fannin St., Suite 1250
Beaumont, Texas 77701
(409) 839-2538
andrea.parker@usdoj.gov

*/s/ Maurice Baskin*
Maurice Baskin

33