IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS, BEAUMONT DIVISION

|  |  |  |
|---|---|---|
| COALITION FOR WORKFORCE INNOVATION, ET AL., | ) | |
| PLAINTIFFS | ) | |
| | ) | Case No. 1:21-cv-00130-MAC |
| v. | ) | |
| | ) | |
| JULIE SU, ET AL., | ) | |
| DEFENDANTS | ) | |
| _____ | ) | |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' CROSS MOTION TO DISMISS OR ALTERNATIVELY FOR SUMMARY JUDGMENT AND REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Robert F. Friedman
LITTLER MENDELSON, P.C.
2001 Ross Avenue, Suite 1500
Dallas, TX 75201
(214) 880-8100
(214) 880-8101 (Fax)
rfriedman@littler.com

Maurice Baskin (*pro hac vice*)
James A. Paretti, Jr. (*pro hac vice*)
LITTLER MENDELSON, P.C.
815 Connecticut Ave., N.W.
Washington, D.C. 20006
(202) 772-2526
mbaskin@littler.com
jparetti@littler.com

ATTORNEYS FOR ALL PLAINTIFFS

Eugene Scalia (*pro hac vice*)
Jason J. Mendro (*pro hac vice*)
Andrew G.I. Kilberg (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Ave., N.W.
Washington, D.C. 20036
(202) 955-8500
escalia@gibsondunn.com
jmendro@gibsondunn.com
akilberg@gibsondunn.com

ATTORNEYS FOR PLAINTIFF
FINANCIAL SERVICES INSTITUTE, INC.


Stephanie A. Maloney (*pro hac vice*)
Jordan L. Von Bokern (*pro hac vice*)
U.S. Chamber Litigation Center
1615 H Street, N.W.
Washington, DC 20062-2000
(202) 463-5337
smaloney@uschamber.com
jvonbokern@uschamber.com

ATTORNEYS FOR PLAINTIFF
CHAMBER OF COMMERCE OF THE
UNITED STATES OF AMERICA

## TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT ................................................................................... 1

ARGUMENT ...................................................................................................... 2

I.      Plaintiffs Have Standing to Challenge the 2024 Rule. ........................... 2

II.     Rescission of the 2021 Rule Is Arbitrary and Capricious. ..................... 6

        A.      Rescission of the 2021 Rule Will Produce Confusion and
                Uncertainty. ........................................................................ 7

        B.      DOL's Rescission of the 2021 Rule Was Arbitrary and Capricious
                Because It Was Based on a Misinterpretation of Caselaw. ..................... 10

III.    The 2024 Rule Misapplies the FLSA .................................................... 14

IV.     The 2024 Rule's Inadequate Cost-Benefit Analysis Is Arbitrary and
        Capricious and Violates Both the APA and Regulatory Flexibility Act. ........... 22

V.      Vacatur of the Entire 2024 Rule Is the Appropriate Remedy Here. .................. 24

CONCLUSION ................................................................................................... 25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Fed'n of Gov't Emps., AFL-CIO v. FLRA*,
  24 F.4th 666 (D.C. Cir. 2022) .................................................................................22

*Aeronautical Repair Station Ass'n, Inc. v. FAA*,
  494 F.3d 161 (D.C. Cir. 2007) ................................................................................23

*Armendariz-Mata v. DEA*,
  82 F.3d 679 (5th Cir. 1996) .......................................................................................3

*Biden v. Nebraska*,
  143 S. Ct. 2355 (2023) ...............................................................................................3

*Brock v. Mr. W Fireworks, Inc.*,
  814 F.2d 1042 (5th Cir. 1987) ..........................................................................15, 17

*Brock v. Superior Care, Inc.*,
  840 F.2d 1054 (2d Cir. 1988) ..................................................................................15

*Buiness  Roundtable v. SEC*,
  647 U.S. 1144 (D.C. Cir. 2011) ..............................................................................23

*Carrell v. Sunland Const., Inc.*,
  998 F.2d 330 (5th Cir. 1993) ...................................................................................17

*Chamber of Com. v. DOL*,
  885 F.3d 360,382 (5th Cir. 2018) ...........................................................................12

*Chamber of Com. v. NLRB*,
  2024 WL 1203056 (E.D. Tex. Mar. 18, 2024) ..........................................................9

*Chamber of Com. v. SEC*,
  88 F.4th 1115 (5th Cir. 2023) ..................................................................................25

*Coal. for Workforce Innovation v. Walsh*,
  2022 WL 1073346 (E.D. Tex. March 14, 2022), *vacated as moot on other
  grounds*, No. 22-40316 (5th Cir. Feb. 21, 2024) ............................................ *passim*

*Contender Farms, L.L.P. v. U.S. Dep't of Agriculture*,
  779 F.3d 258 (5th Cir. 2015) .....................................................................................3

*Data Mktg. P'ship, LP v. DOL*,
  45 F.4th 846 (5th Cir. 2022) ....................................................................................24

*Dep't of Homeland Sec. v. Regents of the Univ. of California*,
    591 U.S. 1 (2020) ..........................................................................................10, 17

*Dist. of Columbia v. Dep't of Agriculture*,
    496 F. Supp. 3d. 213 (D.D.C. 2020) ................................................................23

*Encino Motorcars, LLC v. Navarro* (*Encino I*),
    579 U.S. 11 (2016) ...........................................................................................25

*Encino Motorcars, LLC v. Navarro* (*Encino II*),
    584 U.S. 79 (2018) ....................................................................................12, 13

*In re FCC 11-161*,
    753 F.3d 1015 (10th Cir. 2014) .....................................................................7, 9

*FCC v. Fox Television Stations, Inc.*,
    556 U.S. 502 (2009) ...........................................................................................9

*Franciscan Alliance, Inc. v. Becerra*,
    47 F.4th 368 (5th Cir. 2022) ...........................................................................24

*Funeral Consumers All., Inc. v. Serv. Corp. Int'l*,
    695 F.3d 330 (5th Cir. 2012) .............................................................................6

*Goldberg v. Whitaker House Co-op., Inc.*,
    366 U.S. 28 (1961) ...........................................................................................15

*Hargrave v. AIM Directional Servs., L.L.C.*,
    2022 WL 1487020 (5th Cir. May 11, 2022) ...................................................17

*Herman v. Express Sixty-Minutes Delivery Serv., Inc.*,
    161 F.3d 299 (5th Cir. 1998) ...........................................................................10

*Hernandez v. Plastipak Packaging, Inc.*,
    15 F.4th 1321 (11th Cir. 2021) .......................................................................13

*Hobbs v. Petroplex Pipe and Const., Inc.*,
    946 F.3d 824 (5th Cir. 2020) .......................................................................8, 17

*Hopkins v. Cornerstone Am.*,
    545 F.3d at 343 .........................................................................................17, 19

*Klick v. Cenikor Foundation*,
    94 F.4th 352 (5th Cir. 2024) ...........................................................................17

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ...........................................................................................8

*Nat'l Ass'n of Priv. Fund Managers v. SEC*,
  2024 WL 2836655 (5th Cir. 2024) ............................................................6, 24

*Office of Commc'n of United Church of Christ v. FCC*,
  779 F.2d 702 (D.C. Cir. 1985) ...................................................................19

*Parrish v. Premier Directional Drilling, L.P.*,
  917 F.3d 369 (5th Cir. 2019) ............................................13, 14, 15, 18

*Pub. Citizen, Inc. v. EPA*,
  343 F.3d 449 (5th Cir. 2003) .....................................................................24

*Restaurant Law Center. v. DOL*,
  66 F.4th 593 (5th Cir. 2023) ........................................................................3

*Reyes v. Julia Place Condominiums*,
  2015 WL 5012930 (E.D. La. Aug. 20, 2015) ...........................................6

*Rumsfeld v. Forum for Acad. Freedom & Institutional Rights*,
  547 U.S. 47 (2006)..........................................................................................3

*Rutherford Food Corp. v. McComb*,
  331 U.S. 722 (1947).............................................................................15, 16

*Sanchez Oil & Gas Corp. v. Crescent Drilling & Prod., Inc.*,
  7 F.4th 301 (5th Cir. 2021) .......................................................................17

*Scenic Am., Inc. v. Dep't of Transp.*,
  836 F.3d 42 (D.C. Cir. 2016) ......................................................................5

*SEC v. Chenery Corp.*,
  318 U.S. 80 (1943).................................................................................13, 14

*Sec'y of Lab. v. Lauritzen*,
  835 F.2d 1529 (7th Cir. 1987) (Easterbrook, J., concurring)...................17

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009).......................................................................................6

*Teva Pharms. USA, Inc. v. Sebelius*,
  595 F.3d 1303 (D.C. Cir. 2010) ..................................................................5

*Texas v. EEOC*,
  933 F.3d 433 (5th Cir. 2019) ..................................................................2, 5

*Texas v. EPA*,
  726 F.3d 180 (D.C. Cir. 2013) (Kavanaugh, J., dissenting) ...................19

*Texas v. EPA*,
   829 F.3d 405 (5th Cir. 2016) ............................................................................3

*Texas v. Nuclear Regul. Comm'n*,
   78 F.4th 827 (5th Cir. 2023) ............................................................................6

*Thibault v. Bellsouth Telecomms., Inc.*,
   612 F.3d 843 (5th Cir. 2010) ..........................................................................17

*United States v. Silk*,
   331 U.S. 704 (1947).............................................................................. *passim*

*Usery v. Pilgrim Equip. Co.*,
   527 F.2d 1308 (5th Cir. 1976) ........................................................................15

*Wages & White Lion Invs., LLC v. FDA*,
   90 F.4th 357 (5th Cir. 2024) ......................................................................13, 14

*Zheng v. Liberty Apparel Co.*,
   355 F.3d 61 (2d Cir. 2003)..............................................................................12

**Statutes**

29 U.S.C. § 259 ......................................................................................4, 7

**Other Authorities**

29 C.F.R. § 795.100 ................................................................................4, 7

29 C.F.R. § 795.110 ..............................................................................15, 18

Final Rule, "Employee or Independent Contractor Classification Under the Fair
   Labor Standards Act," 89 Fed. Reg. 1638 (Jan. 10, 2024) . ........................... *passim*

Final Rule, "Independent Contractor Status Under the Fair Labor Standards Act,"
   86 Fed. Reg. 1168 (Jan. 7, 2021) ................................................................ *passim*

Comment of ABC (Dec. 15, 2022), https://www.regulations.gov/comment/WHD-
   2022-0003-53419 ............................................................................................3

Comment of ATA (Dec. 13, 2022), https://www.regulations.gov/comment/WHD-
   2022-0003-51407 ............................................................................................3

Comment of CWI (Dec. 15, 2022),
   https://www.regulations.gov/comment/WHD-2022-0003-54040) .....................................3, 21

Comment of FSI (Dec. 15, 2022),
   https://www.regulations.gov/comment/WHD-2022-0003-53818 .................................3, 21, 22

Comment of NFIB (Dec. 10, 2022), https://www.regulations.gov/comment/WHD-
        2022-0003-47662.................................................................................................................3

Comment of U.S. Chamber of Commerce (Dec. 15, 2022),
        https://www.regulations.gov/comment/WHD-2022-0003-53819_) ...................................3, 21

## SUMMARY OF ARGUMENT

Two years ago, this Court ruled that the 2021 Rule issued by the Department of Labor ("DOL") brought clarity and order to a "confusi[ng]" body of law, and that DOL failed to show otherwise in its last attempt to withdraw the rule. *Coalition for Workforce Innovation v. Walsh*, 2022 WL 1073346 (E.D. Tex. March 14, 2022), *vacated as moot on other grounds*, No. 22-40316 (5th Cir. Feb. 21, 2024) (hereinafter, "*CWI*"), at *19. DOL's Opposition to Plaintiffs' Motion for Summary Judgment and Cross-Motion to Dismiss or for Summary Judgment ("DOL Br.") fails to rebut the 2021 Rule's demonstration that its "core factors" test yields results consistent with caselaw and provides the public a streamlined approach to determining employee status *before* the matter is resolved through litigation. The 2024 Rule's six unweighted factors, supplemented by other unidentified criteria, cannot possibly yield as clear and predictable an outcome as a reduced number of factors (five), two of which are given predominant weight—DOL scarcely attempts to prove otherwise.

DOL leans heavily on its contention that the 2024 Rule "merely codifies in regulations longstanding judicial precedent," DOL Br. at 19 n.9, but that assertion does not survive comparison with caselaw from this Circuit.  The 2024 Rule adopts a broad "integral part" test that is not recognized by the Fifth Circuit; ignores the Fifth Circuit's insistence that the "economic *reality*" test depends on *actual* practice, not on theoretical power; and repudiates the Fifth Circuit's recognition that a company's efforts to ensure the safety and compliance of its contractors does not indicate an employment relationship.  As a whole, the 2024 Rule stitches together extreme positions wrenched out of context from court of appeals decisions across the country; the result is a new never-before-articulated test designed to shrink the role of independent contractors throughout the economy.

DOL's other arguments fail as well.  Plaintiffs have standing to challenge a law that warps the FLSA and decades of case law and that will (as DOL admits, *see* Final Rule, "Independent Contractor Classification Under the Fair Labor Standards Act," 89 Fed. Reg. 1638, 1733 (Jan. 10, 2024)) impose hundreds of millions of dollars in costs, require treating more workers as employees, and strip employers of the more protective safe harbor of the 2021 Rule.  For these and other reasons, DOL's cost-benefit analysis is entirely flawed too.

The 2024 Rule should be vacated.

## ARGUMENT

### I.  Plaintiffs Have Standing to Challenge the 2024 Rule.

In March 2022, this Court held that DOL's attempted withdrawal of the 2021 Independent Contractor Rule violated the APA.  *See CWI*, 2022 WL 1073346 at *19.  DOL did not question Plaintiffs' standing to bring the case nor suggest that this Court lacked jurisdiction to decide it, and DOL cannot credibly advance that argument now.

**1.  *Plaintiffs and their members have established injury-in-fact.*** "If, in a suit 'challenging the legality of government action,' 'the plaintiff himself is an object of the action, there is ordinarily little question that the action or inaction has caused him injury, and that judgment preventing or requiring the action will redress it." *Texas v. EEOC*, 933 F.3d 433, 446 (5th Cir. 2019) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992)); *see id.* ("Whether someone is in fact an object of a regulation is a flexible inquiry rooted in common sense.").  That describes this case to a tee.  Recognizing the direct impact the 2024 Rule has on their organizations and their members,  Plaintiffs filed extensive comments with DOL during rulemaking on the 2024 Rule, setting out in detail how the then-proposed rule would affect them and their members,

whether through increased cost, reduced flexibility, legal uncertainty, increased litigation costs, or some combination of each.[1]

Several Plaintiffs and their members also have now submitted declarations reiterating the costs they will incur from complying with the 2024 Rule and from the uncertainty caused by rescission of the 2021 Rule.[2] *See* Declaration of Dale Brown, attached hereto as Exhibit 1; Declaration of Richard Kuhlman, attached hereto as Exhibit 2; Declaration of Eric Chartan, attached hereto as Exhibit 3; Declaration of James Price, attached hereto as Exhibit 4; Declaration of James Logan, attached hereto as Exhibit 5; Declaration of Sally Estes, attached hereto as Exhibit 6; Declaration of Marc Freedman, attached hereto as Exhibit 7.  An increased regulatory burden, such as that imposed on Plaintiffs by the 2024 Rule, "typically satisfies the injury in fact requirement" and supports injunctive relief in APA suits.  *Contender Farms, L.L.P. v. U.S. Dep't of Agriculture*, 779 F.3d 258, 266 (5th Cir. 2015).  Even "purely economic costs" are irreparable, *Restaurant Law Center v. DOL*, 66 F.4th 593, 597, 600 (5th Cir. 2023), because sovereign immunity prevents courts from awarding monetary damages, *Armendariz-Mata v. DEA*, 82 F.3d 679, 682 (5th Cir. 1996).  That is why the Fifth Circuit has held that "complying with a regulation later held invalid almost always produces the irreparable harm of nonrecoverable compliance costs." *Texas v. EPA*, 829 F.3d 405, 433 (5th Cir. 2016).

---

[1] *See, e.g.*, FSI Cmt. 31-34 (Dec. 15, 2022), https://www.regulations.gov/comment/WHD-2022-0003-53818; U.S. Chamber of Commerce Cmt. 26-32 (Dec. 15, 2022), https://www.regulations.gov/comment/WHD-2022-0003-53429 NFIB Cmt. 7-9 (Dec. 10, 2022), https://www.regulations.gov/comment/WHD-2022-0003-47662; CWI Cmt. 8-14 (Dec. 15, 2022), https://www.regulations.gov/comment/WHD-2022-0003-54040; ABC Cmt. 12-13 (Dec. 15, 2022), https://www.regulations.gov/comment/WHD-2022-0003-53419; ATA Cmt. 4, 13-14 (Dec. 13, 2022), https://www.regulations.gov/comment/WHD-2022-0003-51407.

[2] DOL questions the harm alleged by certain Plaintiffs, DOL Br. 15 n.8, but one plaintiff's standing is sufficient for *all* to proceed in the case. *Rumsfeld v. Forum for Academic Freedom & Institutional Rights*, 547 U.S. 47, 52 n.2 (2006). "If at least one plaintiff has standing, the suit may proceed." *Biden v. Nebraska*, 143 S. Ct. 2355, 2365 (2023) (citing *Rumsfeld*).

DOL has admitted that rescission of the 2021 Rule and promulgation of the 2024 Rule will impose economic costs on regulated parties. DOL estimates that the 2024 Rule will impose more than $150 million in just familiarization and compliance costs on businesses (including Plaintiffs themselves) in the first year of its application alone. 89 Fed. Reg. at 1733. And as discussed in Plaintiffs' Motion and below, that cost estimate is a gross underestimate. *See* CWI Br. 25-28; *infra* 22-24.

Likewise, the 2021 Rule created a safe harbor under the Portal-to-Portal Act; if regulated entities that in good faith relied on the 2021 Rule, they could use that reliance as a defense in FLSA litigation. *See* 29 U.S.C. § 259; 86 Fed. Reg. at 1246 (29 C.F.R. § 795.100). DOL effectively has eliminated Plaintiffs' ability to rely on that safe harbor by rescinding the 2021 Rule and replacing it with the 2024 Rule, harming Plaintiffs and their members.

Any doubt that rescission of the 2021 Rule and replacement with the 2024 Rule injures Plaintiffs and their members is eliminated by DOL's stated purpose to require companies to classify more workers as employees. *See, e.g.*, 89 Fed. Reg. at 1658-59, 1726 ("Compared to the 2021 Rule, the Department anticipates that this rule may reduce misclassification of employees as independent contractors."); *see also, e.g.,* U.S. Department of Labor News Release, "U.S. Department of Labor Announces Final Rule on Classifying Workers as Employees or Independent Contractors Under the Fair Labor Standards Act" (Jan. 9, 2024) ("Misclassifying employees as independent contractors is a serious issue that deprives workers of basic rights and protections," explained Acting Secretary of Labor Julie Su. "This rule will help protect workers … by making sure they are classified properly…") . DOL cannot promulgate a rule whose intent is a reduction in the number of independent contractors and then seek to avoid challenge to the rule by claiming

that allegations of such reduction are speculative and conjectural, or not likely to result in injury to regulated parties.

DOL attempts to minimize Plaintiffs' injuries by arguing that the 2024 Rule is merely "interpretive guidance" and that Plaintiffs cannot be directly regulated by it.  DOL Br. 18.  This Court has already rejected that characterization, holding that the 2021 Rule and DOL's prior attempt to delay it "affected existing individual rights and obligations and [were], thus, legislative."  *CWI*, 2022 WL 1073346, at *5-*6.  In any event, the classification of the 2024 Rule does not matter for standing.  As the D.C. Circuit has explained, "[f]or purposes of the classic constitutional standing analysis, it makes no difference to the 'injury' inquiry whether the agency adopted the policy at issue in an adjudication, a rulemaking, a guidance document, or indeed by Ouija board."  *Teva Pharms. USA, Inc. v. Sebelius*, 595 F.3d 1303, 1312 (D.C. Cir. 2010); s*ee also, e.g.*, *Scenic Am., Inc. v. Dep't of Transp.*, 836 F.3d 42, 55 (D.C. Cir. 2016) (holding that organization had standing to challenge interpretive rule).  That is particularly true when the rule provided a safe harbor defense that government has deliberately sought to narrow. *See Texas v. EEOC*, 933 F.3d at 442.

**2.  *Plaintiffs have established causation and redressability.***  DOL contends that causation and redressability cannot be shown because the 2024 Rule merely restores the status quo prior to the 2021 Rule.  DOL. Br. 15-16.  But such arguments go to the merits here, and this Court assumes for purposes of standing that Plaintiffs are "correct on the merits."  *Texas v. EEOC*, 933 F.3d at 447. DOL's decision to withdraw the 2021 Rule and replace it with the 2024 Rule causes Plaintiffs' injuries. *See* Ex. 1, Brown Decl., ¶¶ 11-15; Ex. 7, Freedman Decl., ¶¶ 12-17. Vacatur of the 2024 Rule and reinstatement of the 2021 Rule erases those harms—Plaintiffs and their members will avoid significant ongoing compliance costs, including the costs that DOL itself estimated in

its economic analysis.  *See* 89 Fed. Reg. 1733–34 ("Rule Familiarization Costs").  Having claimed

that "this [2024] rule could reduce or prevent" misclassification of workers, 89 Fed. Reg. 1726,

DOL cannot now argue that its rulemaking will have no impact on employer practices.

     **3.  *Plaintiffs have associational standing.***  In addition to their own standing, Plaintiffs

have associational standing to sue on behalf of their members.  *See* CWI Br. 9.

     Contrary to DOL's assertion (DOL Br. 17), Plaintiffs are not required to identify by name

individual members who have "misclassified" employees as independent contractors.  As the Fifth

Circuit has held, Plaintiffs "need not identify particular members" when it is clear that "at least

one petitioner … has standing." *Nat'l Ass'n of Priv. Fund Managers v. SEC*, 2024 WL 2836655,

at *9 (5th Cir. 2024).[3]  That is clearly the case here because Plaintiffs represent numerous members

who use the services of independent contractors. Regardless, Plaintiffs have identified affected

members and the harms the 2024 Rule has and will continue to impose on them. *See* Ex. 2,

Kuhlman Decl., ¶¶10-12; Ex. 3, Chartan Decl., ¶¶10-12; Ex. 4, Price Declaration ¶¶10-12; Ex. 5,

Logan Decl., ¶¶9-11, Ex. 6, Estes Decl. ¶¶9-11. *See Texas v. Nuclear Regul. Comm'n,* 78 F.4th

827, 835 (5th Cir. 2023) ("once constitutional standing [i]s challenged," plaintiffs may then submit

"evidence to show their standing").

## II.   Rescission of the 2021 Rule Is Arbitrary and Capricious.

     DOL's brief confirms that its rescission of the 2021 Rule was not based on reasoned

decisionmaking.  DOL attempts to justify the rescission on two grounds.  First, it contends that

---

[3] The two cases DOL cites are readily distinguishable.  In *Summers v. Earth Island Inst.*, 555 U.S. 488 (2009), the organizational plaintiffs' case was based on a speculative claim that some of its members might someday visit national parkland that might be affected by the challenged regulation.  And the plaintiffs in *Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 344 (5th Cir. 2012) failed to demonstrate any plans to participate in the relevant market (buying caskets). In contrast, the rulemaking here on its face directly regulates and imposes compliance costs on all Plaintiffs and their members.  *Cf. Reyes v. Julia Place Condominiums*, 2015 WL 5012930, at *4 (E.D. La. Aug. 20, 2015) (distinguishing *Funeral Consumers*).

withdrawing the 2021 Rule would provide a "'consistent approach'" that will reduce "confusion" and provide "clarity" on the concept of economic dependence.  DOL Br. 3, 14, 27.  Second, it claims the 2021 Rule "departed from" case law.  *Id.* at 2.  Neither argument survives scrutiny.

### A.    Rescission of the 2021 Rule Will Produce Confusion and Uncertainty.

Rescinding the 2021 Rule is arbitrary and capricious because it "will undermine [DOL's] own objective," *In re FCC 11-161*, 753 F.3d 1015, 1143 (10th Cir. 2014), of "reduc[ing] confusion" and "provid[ing] clarity on the concept of economic dependence," 89 Fed. Reg. at 1648-49.

As Plaintiffs have explained, the 2021 Rule brought much-needed structure and clarity to worker classification by identifying two "'core' factors—the nature and degree of the worker's control over the work and the worker's opportunity for profit or loss"—that "are more probative of the question of economic dependence or lack thereof than other factors, and thus typically carry greater weight in the analysis" of the economic reality test.  86 Fed. Reg. at 1168; *see also* CWI Br. 11-12; *CWI*, 2022 WL 1073346, at *16 (describing pre-2021 "confusion among businesses and workers as to whether an employment relationship exists").  The 2021 Rule also increased certainty by establishing a safe harbor under the Portal-to-Portal Act for businesses that relied on its guidance.  *See* 86 Fed. Reg. at 1246 (29 C.F.R. § 795.100); 29 U.S.C. § 259; CWI Br. 12-13.

DOL has not even responded to Plaintiffs' explanation that the Portal-to-Portal Act increased certainty for businesses.  DOL says only that the Portal-to-Portal Act does not prohibit DOL from modifying its interpretations, DOL Br. 22 n.11, but that is not the issue.  Certainty provided by the safe harbor has been lost, and to that consequence of its action, DOL has no response.

Nor does DOL dispute that a test focusing on two core factors with three supplementary factors is simpler and clearer than a wholly unweighted six-factor-plus test.  Rather, DOL claims

that the 2021 Rule increased confusion and uncertainty because it supposedly "departed from" prior case law.  That is untrue.  *See infra* 10-13.  And although DOL criticizes the 2021 Rule's purportedly "novel" approach, DOL Br. 28, this Court already has recognized that there is nothing "novel" about the 2021 Rule, which accurately synthesized and was "consistent with the existing case law." *CWI*, 2022 WL 1073346, at *16-17; *see also infra* 12.  Nor does the Fifth Circuit's application of "non-exhaustive" factors in *Hobbs v. Petroplex Pipe and Const., Inc.*, 946 F.3d 824, 829 (5th Cir. 2020), "resolve this case in DOL's favor," DOL Br. 27-28.  *Petroplex* said nothing about the appropriateness of emphasizing certain core factors; rather it agreed with the 2021 Rule that relative investment is "afforded … little weight."  946 F.3d at 832.  Moreover, novelty is not the opposite of clarity in any event.  American law is replete with new regulations that clarify and streamline previously disputed areas of law.  *See, e.g.*, 89 Fed. Reg. 33898, 33932 (DOL proposes "clarifying edits that provide clearer direction … but that do not change the regulation's meaning") (Apr. 29, 2024); 87 Fed. Reg. 73822, 73827-28 (Dec. 1, 2022) (DOL addition of "a new provision clarifying" existing law).

The supposed flaws DOL perceives in the 2021 Rule merely point up more serious failings in the 2024 Rule that make the latter more confusing and uncertain in application.  For instance, DOL faults the 2021 Rule for not defining "what it would mean in practice" for the "core factors" to be "entitled to greater weight" and for not "specify[ing]" the relative weight of the factors.  DOL Br. 30.  But the 2024 Rule offers no improvement here.  The 2021 Rule explained that some factors generally receive "greater weight" than others.  86 Fed. Reg. at 1168.  The 2024 Rule, by contrast, provides no guidance about how to prioritize consideration of the factors.  *See, e.g.*, 89 Fed. Reg. at 1640.  It is exactly the type of "open-ended balancing test[]" that invites "unpredictable and arbitrary results." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 136

(2014).  Although the 2021 Rule does not provide scientific precision regarding the balancing of the relevant factors, its identification of core factors is indisputably clearer than the 2024 Rule's unweighted test, which DOL concedes is designed to promote "flexible application," i.e., to foster uncertainty in how the Rule will be applied in practice.  DOL Br. 27-29.  To make matters worse, the 2024 Rule cobbles together a hodgepodge of interpretations of individual factors that have never before been articulated together. *See* CWI Br. 18-24; *infra* 14-21.[4]

DOL has thus failed to "show that there are good reasons" for abandoning the 2021 Rule, *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009), and the rescission of the 2021 Rule actually "undermines [DOL's] own objective," *In re FCC 11-161*, 753 F.3d at 1143.  Because promoting clarity is a principal ground on which DOL "seek[s] to justify" withdrawing the 2021 Rule, the withdrawal "cannot [be] upheld." *Nat'l Fuel*, 468 F.3d 831, 839-40 (D.C. Cir. 2006); *see also Chamber of Com. v. NLRB*, 2024 WL 1203056, at *15 (E.D. Tex. Mar. 18, 2024) (vacating a rule where NLRB failed to establish that it would "reduce uncertainty and litigation"). As in its previous attempt to delay and withdraw the 2021 Rule, "DOL failed to 'consider important aspects of the problem before [it]—the lack of clarity of the economic realities test and the need for regulatory certainty." *CWI*, 2022 WL 1073346, at *19 (citing *Regents*, 140 S. Ct. at 1913 (citing *Motor Vehicle Mfrs. Ass'n of U.S. Inc.*, 463 U.S. 29 at 51 ).

---

[4] DOL's assertion that the 2024 Rule will lead to less litigation over its meaning than the 2021 Rule similarly rests on the premise that the 2021 Rule was "new," and that the 2024 Rule "adopts an analytical scheme that the agency and courts have applied for decades." DOL Br. 29. As this brief demonstrates, both parts of that rationale are mistaken.  Nor is it the case that Plaintiffs "prefer[] [their] own judgment to the agency's judgment."  DOL Br. 29.  Rather, Plaintiffs stand by *DOL's* original judgment from just three years ago.

**B.**     **DOL's Rescission of the 2021 Rule Was Arbitrary and Capricious Because It Was Based on a Misinterpretation of Caselaw.**

An agency acts arbitrarily and capriciously when, because of its misunderstanding of applicable substantive law, it does not "appreciate the full scope of [its] discretion."   *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 26-27 (2020).   DOL's brief does not dispute this rule of decision and it controls here, because DOL's rescission of the 2021 Rule was based on a superficial analysis of pre-2021 case law.

The 2021 Rule correctly recognized that "whenever the control and opportunity factors both pointed to the same classification—whether employee or independent contractor—that was the court's conclusion regarding the worker's ultimate classification."  86 Fed. Reg. at 1197.  That remained true even when multiple non-core factors pointed in the opposite direction.  *See, e.g.*, *Herman v. Express Sixty-Minutes Delivery Serv., Inc.*, 161 F.3d 299, 303-06 (5th Cir. 1998) (holding that workers were independent contractors where the core factors weighed in favor of independent-contractor status and the relative-investment and skill factors weighed in favor of employee status).  As Plaintiffs have explained, DOL uncritically relied on nonbinding decisions to justify rescinding the 2021 Rule, which thoroughly analyzed appellate decisions applying the "economic reality" test.  *See, e.g.*, 89 Fed. Reg. at 1639 (emphasizing DOL's belief "that the 2021 IC Rule did not fully comport with the FLSA's text and purpose as interpreted by courts and departed from decades of case law applying the economic reality test"); *see id.* at 1647 ("[T]he Department believes that the 2021 IC Rule did not fully comport with the FLSA's text and purpose as interpreted by courts."); *see also* CWI Br. 14-16.

DOL's brief perpetuates that superficial analysis of pre-2021 case law. DOL does not dispute the 2021 Rule's conclusion that whenever the control and opportunity factors both pointed to the same classification, that was the classification the court adopted.  Nor does DOL address

10

that, given this conclusion, identifying two core factors—as the 2021 Rule did—increases predictability and clarity.[5]

Instead, DOL elevates form over function, arguing that the "2021 Rule did not identify any cases stating that the two 'core factors' are 'more probative' of a worker's classification than other factors." DOL Br. 24. But as a practical matter, and as DOL demonstrated when promulgating the 2021 Rule, the control and profit-or-loss factors have been at the "core" of the actual case outcomes. There is not "a single court decision where the combined weight of the control and opportunity factors was outweighed by the other economic reality factors." 86 Fed. Reg. at 1197.[6]

DOL's error is compounded by its treatment of cases that commenters cited in defense of the core-factor framework. *See* CWI Br. 16-17. Several of those cases concerned worker classification under the FLSA, yet DOL falsely claimed that those cases are only "relevant to a different statute" when promulgating the 2024 Rule. *See* 89 Fed. Reg. at 1650-51 & n.124. DOL's brief offers no defense of this mistaken treatment of caselaw that conflicted with the agency's preferred outcome.

DOL discounted other cases cited by defenders of the 2021 Rule on the ground that those cases concerned the joint employer doctrine, not independent contractor status. 89 Fed. Reg. at 1650-51 & n.124. Elsewhere, however, DOL cited joint-employment cases (and guidance) in

---

[5] Plaintiffs further explained that in *United States v. Silk*, 331 U.S. 704, 716, 719 (1947), the Supreme Court emphasized the "control" and "opportunity for profit" factors, which is consistent with its teaching that "[n]o one factor is controlling." As with its treatment of lower court caselaw, DOL highlights language explaining that no *single* factor is dispositive, without examining how the factors were actually treated by the Court. *See* DOL Br. 22.

[6] DOL suggests (at 23) that the two "core" factors identified in the 2021 Rule were given undue weight because—DOL says—"multiple" *other* factors also pointed in the same direction in the cases the 2021 Rule cites. Even if true, that is completely different than determining that two *specific* factors were *invariably* aligned with the outcome in *every* court of appeals decision reviewed where they pointed in the same direction.

support of rescinding the 2021 Rule. *Id.* at 1693 n.365, 1694 n.371.  DOL's brief repeats that inconsistency. It argues that "the joint employment cases" address a "completely different context[]." DOL Br. 25.  But the joint employment inquiry asks the same fundamental question that underlies worker classification:  "whether an employment relationship exists" under the "economic reality" principle that "govern[s] our application of the FLSA." *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 66 (2d Cir. 2003). DOL's "internal inconsistency [is] characteristic of arbitrary and unreasonable agency action." *Chamber of Com. v. DOL*, 885 F.3d 360,382 (5th Cir. 2018).

Unable to demonstrate that the core-factor framework is incompatible with caselaw, DOL repeatedly mischaracterizes it, claiming that 2021 Rule assigned the core factors "specific and invariabl[e] weight" and "ran counter to Supreme Court and federal court of appeals precedent holding that no single factor in the economic reality analysis is dispositive."  DOL Br. 21 (quotation marks omitted); *see also id.* 23.  That does not describe the 2021 Rule, which gives greater weight to two factors—not to a "single" factor—does not give those factors "specific" weight (as DOL laments elsewhere, *see* DOL Br. 30), and expressly stated that its enumerated "factors are not exhaustive," and that in particular cases other factors could "outweigh the combined probative value of the two core factors."  86 Fed. Reg. 1246 (29 C.F.R. § 795.105(c)). DOL's fundamental misunderstanding of the 2021 Rule demonstrates that its decision to rescind the rule was unreasoned, mistaken, and arbitrary.

Ultimately, DOL cannot help but fall back on the purported remedial purpose of the FLSA to justify its rescission of the 2021 Rule.  CWI Br. 17-18.  In belated recognition of the Supreme Court's recent command to give the FLSA "a fair reading," *Encino Motorcars, LLC v. Navarro* (*Encino II*), 584 U.S. 79, 89 (2018), DOL now asserts that it "does not in the 2024 Rule or herein

rely on the Act's remedial purpose for its interpretations or any rule of statutory construction," DOL Br. 26. But that new litigating position is flatly inconsistent with DOL's own reasoning in the 2024 Rule, which repeatedly announced that DOL was in fact "consider[ing] the purpose of the Act" and relying on the FLSA's supposed "remedial" or "protective purposes" to give the definition of employee an "expansive reading." 89 Fed. Reg. at 1668 & n.211, 1671; *see also id.* at 1638, 1639, 1640, 1645, 1647, 1649, 1661, 1663, 1725, 1726, 1735, 1739 (other instances of DOL expressly relying on the FLSA's "purpose" as distinct from, and in addition to, its "text"). DOL cannot change horses in this way; an "agency is not free to defend its decision by supplying new, *post hoc* rationalizations for it when sued." *Wages & White Lion Invs., LLC v. FDA*, 90 F.4th 357, 371 (5th Cir. 2024) (quoting *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943)). And an agency's reliance on factors it should not have considered renders a rule arbitrary and capricious. *State Farm Mut. Auto. Ins. Co.*, 463 U.S. at 41-43.

Nor is it true, as DOL asserts, that *Encino II* is limited to the FLSA's exemptions. DOL Br. 26-27. *Encino II* dismissed "the flawed premise that the FLSA pursues its remedial purpose at all costs" and specifically "reject[ed]" such an atextual approach as a "guidepost for interpreting the FLSA." 584 U.S. at 88. DOL never explains why it makes sense to limit *Encino II*'s "fair reading" principle to just the FLSA's exemptions. And contrary to DOL's assertion that "courts" have adopted its limited reading of *Encino II*, DOL Br. 26-27, other courts have in fact rejected that view and applied that decision to FLSA questions not involving exemptions—persuasive decisions that DOL fails to address. *E.g.*, *Hernandez v. Plastipak Packaging, Inc.*, 15 F.4th 1321, 1329 (11th Cir. 2021) (recognizing that *Encino II* applies to the FLSA in full); *see* CWI Br. 17-18.[7]

---

[7] DOL cites just one post-*Encino II* case as supposed support for its reading of that decision. DOL Br. 27. But *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369 (5th Cir. 2019), did not even cite *Encino II*—nor did the briefs of the parties. The statement quoted by DOL is *dicta*

### III.     The 2024 Rule Misapplies the FLSA.

DOL's brief fails to reconcile the 2024 Rule's jerry-rigged multifactor standard with the FLSA, or to demonstrate that the agency employed reasoned decisionmaking.  DOL errs on a fundamental level by abandoning "actual practice" as the touchstone of FLSA worker classification analysis.  And factor after factor, it codifies interpretations that are unreasoned and inconsistent with caselaw, and does so without adequately responding to significant comments pointing out those flaws.  The result is a cherry-picked amalgamation of interpretations that is designed to tilt the test in favor of employee classification.  Finally, because the 2024 Rule treats all factors equally and without any guidance as to how they should be weighted, the Rule cannot be salvaged by severing flawed parts from the whole.

**1.   *Actual practice must drive the economic-reality test.***  DOL fails to defend the 2024 Rule's abandonment of "actual practice" as the touchstone of FLSA worker classification under the Supreme Court's "economic reality" test.  *See* CWI Br. 18-19.  Retreating from the text of its own rule, DOL now insists that it "does not treat theoretical possibilities as more probative than actual practice."  DOL Br. 40.  But that cannot be squared with DOL's deletion of the 2021 Rule provision specifying that "'the actual practice of the parties involved is more relevant than what may be contractually or theoretically possible.'"  89 Fed. Reg. at 1718 (quoting 86 Fed. Reg. at 1247).  Once again, *Chenery* forbids DOL's *post hoc* attempt to re-rationalize its rulemaking in court.  *See Wages & White Lion Invs. LLC*, 90 F.4th at 371.  In any event, DOL later reverts to its original position in the same paragraph of its brief, stating that under the 2024 Rule "reserved or unexercised rights" *can outweigh* "the actual practices of the parties."  DOL Br. 40-41.

---

quoting a pre-*Encino II* decision on issues not disputed in the case—and the statement was made by the *Parrish* court en route to holding that the workers in question *were* independent contractors. *Id.* at 378.

Both in the rulemaking and in its brief, moreover, DOL betrays a fundamental misunderstanding of the Supreme Court's command that "'economic reality' rather than 'technical concepts' is to be the test" under the FLSA. *Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33 (1961) (citing *United States v. Silk*, 331 U.S. 704, 713 (1947); *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 726 (1947)). As the 2021 Rule correctly explained, these precedents establish that "the actual practice of the parties involved—both of the worker (or workers) at issue and of the potential employer—is more relevant than what may be contractually or theoretically possible." 86 Fed. Reg. at 1203. But in defending the 2024 Rule's abandonment of that principle, DOL's brief does not even cite these binding precedents or attempt to explain how they can be reconciled with its approach. *See* DOL Br. 40-41.

DOL seeks refuge instead in "appellate court precedent," DOL Br. 40, which cannot override the Supreme Court. DOL also ignores a line of Fifth Circuit decisions recognizing that "[i]t is not significant how one 'could have' acted under the contract terms. The controlling economic realities are reflected by the way one actually acts." *Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308, 1312 (5th Cir. 1976); *see also, e.g.*, *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1047 (5th Cir. 1987) ("[I]t is not what the operators *could* have done that counts, but as a matter of economic reality what they actually *do* that is dispositive."); *Parrish*, 917 F.3d at 380 (same). This case law persuasively illustrates the error in DOL's position: the very nature of the "economic reality" test requires a focus on actual practice—on reality.[8]

---

[8] DOL's reliance on *Brock v. Superior Care, Inc.*, 840 F.2d 1054 (2d Cir. 1988), is also misplaced. The Second Circuit did not say that theoretical rights are more probative than actual practice; rather, it reasoned that the "unequivocally expressed … right to supervise" reinforced the implications of the actual practice of "supervisory visits." *Id.* at 1060.

**2.** ***"Integral Part" of Employer's Business.***  As Plaintiffs have explained, one factor in the 2021 Rule asked "[w]hether the work is part of an integrated unit of production," 86 Fed. Reg. at 1247 (29 C.F.R. § 795.105(d)(2)(iii)), which was taken directly from *Rutherford Food Corp.*, 331 U.S. at 726.  *See* CWI Br. 21-22.  The 2024 Rule threw out that factor, replacing it with an inquiry into whether the work performed is an "integral part"—*i.e.*, a "critical, necessary, or central" part—of the company's business."  89 Fed. Reg. at 1743 (new 29 C.F.R. § 795.110(b)(5)). That revision contravenes Supreme Court precedent and is wholly unreasoned—DOL simply parroted the reference to the factor by some courts, with no accompanying explanation or justification.  CWI Br. 22.

DOL has responded to *none* of these arguments.  To begin, DOL suggests that it "reasonably determined" that *Rutherford*'s "integrated unit of production" test is not binding. DOL Br. 37-38.  DOL's interpretations of Supreme Court cases are entitled to no deference.  *Ass'n of Civilian Technicians v. FLRA*, 353 F.3d 46, 50 (D.C. Cir. 2004) ("Where an agency interprets and applies judicial precedent … we review its decision de novo.  This is because an agency has no special competence or role in interpreting a judicial decision." (internal quotation marks omitted)).  And while DOL notes that *Silk* used the phrase "integral part" in passing, *see* DOL Br. 38, that decision did not elaborate on how the phrase is to be understood.  *Rutherford*, in contrast, pointed to whether workers "work alongside admitted employees" toward "a common objective" in a manner that suggests they are not in business for themselves.  331 U.S. at 726 (citation omitted).

DOL also ignores Plaintiffs' argument that the "integral part" factor, as defined in the 2024 Rule, is useless in determining employee status.  Asking whether the work performed is "necessary" provides no reasonable basis for distinguishing between employees and anyone else

16

that contributes services to a business. CWI Br. 22.  The factor "has neither significance nor meaning" because *"[e]verything* the employer does is 'integral' to its business—why else do it?" *Sec'y of Lab. v. Lauritzen*, 835 F.2d 1529, 1541 (7th Cir. 1987) (Easterbrook, J., concurring). Moreover, because it is not difficult to show that a service a company pays for is an "integral part" of the company's business, DOL's change to this factor tilts the scales heavily in favor of employee classification.

Nor does DOL meaningfully respond to Plaintiffs' argument that DOL's reliance on circuit court decisions is unreasoned and fails to even recognize its discretion, *see Regents*, 591 U.S. at 26-27, again simply asserting that its invocation of circuit caselaw was "correct," DOL Br. 24. DOL also misleadingly implies that the Fifth Circuit has adopted the 2024 Rule's understanding of the "integral part" factor.  *Id.* at 38 (citing *Petroplex*, 946 F.3d at 836).  But as DOL elsewhere concedes, the Fifth Circuit does not even "identify the 'integral part' factor" in its standard analysis. *Id.* at 7.  Indeed, case after case confirms that the Fifth Circuit uses a five-factor test that does not include the "integral part" factor.[9]  And *Petroplex* itself merely observed that "*other* circuits … include this consideration as an enumerated sixth factor" and, *in dicta*, noted that the factor was "neutral" in that specific case without considering the distinction between an "integral part" and an "integrated unit of production."  946 F.3d at 836 (emphasis added).  In short, DOL has provided no defense of the 2024 Rule's replacement of the 2021 Rule's "integrated unit of production" factor.

---

[9] *See Klick v. Cenikor Foundation*, 94 F.4th 352, 370 (5th Cir. 2024); *Hargrave v. AIM Directional Servs., L.L.C.*, 2022 WL 1487020, at *2 (5th Cir. May 11, 2022); *Sanchez Oil & Gas Corp. v. Crescent Drilling & Prod., Inc.*, 7 F.4th 301, 313 n.17 (5th Cir. 2021); *Thibault v. Bellsouth Telecomms., Inc.*, 612 F.3d 843, 846 (5th Cir. 2010); *Hopkins,* 545 F.3d at 343; *Carrell v. Sunland Const., Inc.*, 998 F.2d 330, 332 (5th Cir. 1993); *Mr. W Fireworks*, 814 F.2d at 1043; *Pilgrim Equip.*, 527 F.2d at 1311.

**3.  *Control.***   The 2024 Rule provides that any compliance measure that goes a millimeter beyond the minimum legal requirement can indicate "control" that favors employee classification. It also introduces a new test for the "control factor"—whether the business has "control over the economic aspects of the working relationship"—that is apparently without any precedent.  *See* CWI Br. 19-21.  Again, DOL fails to substantively respond to those arguments.

DOL does not address Plaintiffs' arguments regarding compliance with legal and safety obligations.  As Plaintiffs explained, the Fifth Circuit has held that compliance measures are "not the type of control that counsels in favor of employee status" because they indicate control by a regulator, not an employer.  *Parrish*, 917 F.3d at 382.  DOL's purported carve-out of certain compliance measures is illusory, *see* CWI Br. 20-21, and its answer that compliance measures may be probative of a worker's economic dependence is erroneous.  *See* DOL Br. 35.  Nor does DOL explain how its compliance officers and the courts will ascertain when a company's compliance measures require a slight bit more than "what is legally required" (DOL Br. 35)—compliance measures that could implement an immense array of federal, state, and local regulations.  As just two examples:  A nationwide company may make a practice required by some but not all States a company-wide practice, for reasons of efficiency, consistency, and compliance with those state-imposed mandates.  Or, a company might adopt measures that, while not strictly required, are the proven best means of assuring compliance.  A company might, for example, require independent contractors to adhere to safety measures technically required only for employees, to facilitate oversight of compliance by employees and consistency of operations.  More generally, the pressure the Rule places on companies to *minimally* comply with the law is flatly contrary to what DOL and other regulators urge in other contexts.  DOL cannot defend arbitrary and capricious agency action by ignoring the flaws in its reasoning and caselaw that is to the contrary.

DOL further modifies the "control" factor by replacing the 2021 Rule's emphasis on control over "key aspects of the performance of the work," 86 Fed. Reg. at 1246-47 (29 C.F.R. § 795.115(b)(1)(i)), with control over "the performance of the work *and the economic aspects of the working relationship*."  89 Fed. Reg. at 1743 (new 29 C.F.R. § 795.110(b)(4) (emphasis added)).  That ambiguous new phrase is inconsistent with *Silk*, which evaluated control over "the manner of performing service to the industry" and over "how 'work shall be done.'"  31 U.S. at 713-714.  Again, this change slants the test in favor of employee classification.  *See* CWI Br. 20.

DOL claims that "the economic aspects of the working relationship" is equivalent to "economic aspects of the business," pointing to Fifth Circuit caselaw that used the latter phrase. DOL Br. 34-35.  As an initial matter, DOL ignores that the Fifth Circuit has not looked at simply *any* control of the economic aspects of the business, but rather "meaningful" control.  *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008).  And even assuming that contract terms such as the pricing of products and the definition of sales territories at issue in *Hopkins* may be indicative of a company's control indicating employee status, DOL's phrasing—"economic aspects of the working relationship"—is different and thus opens the inquiry to unknowable applications.  Moreover, DOL's insistence that the exact wording of its regulation is irrelevant— in DOL's words, mere "quibbles over minor differences in terminology," DOL Br. 35—conflicts with its claim that the 2024 Rule's goal is regulatory certainty.  *See supra* 8-9.  That is the quintessence of arbitrary agency action.  *Office of Commc'n of United Church of Christ v. FCC*, 779 F.2d 702, 707-08 (D.C. Cir. 1985) ("Rational decisionmaking … dictates that the agency simply cannot employ means that actually undercut its own purported goals."); *see also Texas v. EPA*, 726 F.3d 180, 202 (D.C. Cir. 2013) (Kavanaugh, J., dissenting) ("As a matter of basic

administrative law, we cannot countenance the agency's blatant disregard of the text of its own regulations.").

**4.** ***Investment.***   The 2024 Rule disregards *Silk* by counting "investment" as a separate factor from "opportunity for profit or loss," and decreeing that a worker's investment must be compared to a company's investment.  89 Fed. Reg. at 1639, 1742. DOL defends its departure from Supreme Court precedent as consistent with lower-court precedent.  DOL Br. 32-33.  But aside from reciting the lower courts' conclusions, DOL offers no reasoned explanation why a worker's investments should be divorced from her opportunity for profit or loss.  Indeed, as DOL explained in 2021, "investment is a pathway to opportunity for profit or loss," 86 Fed. Reg. at 1186, and *Silk* analyzed those considerations together, 331 U.S. at 717-18.  Making matters worse, by emphasizing that the magnitude of the worker's investment should be compared to that of the business regardless of the relative size of the latter, DOL creates a factor that will almost always favor employee status at the expense of legitimate independent contracting relationships.

**5.** ***Permanence.***   The 2024 Rule's permanence factor also creates a one-way ratchet in favor of employee classification that is unsupported by precedent, and that DOL failed to acknowledge is a change from the 2021 Rule's balanced approach to the issue.  CWI Br. 22-23. DOL's brief ignores those arguments, neither explaining why it is logical for the factor to *never* support independent contractor classification, nor addressing DOL's failure to acknowledge it was changing its position from the 2021 Rule.  DOL Br. 36.

**6.** ***Skill and Initiative.***   The 2024 Rule improperly expands the "skill" factor to encompass "initiative," contravening Supreme Court precedent, and creating confusing redundancy between factors.  CWI Br. 23.  Contrary to DOL's assertion (at 37), *Silk* did not directly compare the

"simple tasks" performed by workers who unload coal from railcars to the initiative of truck drivers who "are small businessmen."  *Silk*, 331 U.S. at 716.

7. ***Entrepreneurial Drive.***    Multiple commenters objected to DOL's focus on entrepreneurial drive, yet DOL largely ignored these comments and injected that consideration into four of the 2024 Rule's six factors:  "investment," "control," "skill," and "permanence." Despite using the word "entrepreneurial" (and variations) scores of times in the preamble to the 2024 Rule and three times in the Rule's text, DOL quotes no case that even uses that term.  As Plaintiffs explained, moreover, many competent but workmanlike independent contractors may not exhibit the elevated managerial skill, or the drive to expand and grow, that one equates with a genuine entrepreneur.   Working the flexible, potentially part-time schedule available to an independent contractor is a decision frequently made by those who, for a time, purposely place other priorities ahead of their career.  *See, e.g.*, CWI Cmt. 5, 11; FSI Cmt. 5, 24; U.S. Chamber of Commerce Cmt. 2, 4.   By making a lack of entrepreneurialism count against independent contractor status under multiple different factors, DOL weighted its new test heavily toward employee status.  *See* CWI Br. 23-24.  Once again, DOL fails to engage with Plaintiffs' argument, instead simply repeating the conclusions it asserted in the 2024 Rule and declaring that its "approach is true to the overall inquiry of who qualifies as an 'employee' under the FLSA."  DOL Br. 34.  *Ipse dixit* is not a defense to a failure to consider important issues raised by commenters. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 63.[10]

8. ***The FLSA's supposed remedial purpose cannot save DOL's flawed test.***  As explained above, DOL ultimately falls back on the purported remedial purpose of the FLSA to justify its

---

[10] DOL's misguided emphasis on entrepreneurialism also exacerbates the other ways that the 2024 Rule's "investment," "control," "skill," and "permanence" factors are arbitrary and capricious.  *See* CWI Br. 19-20, 22-23.

imposition of a novel, unweighted, multifactor balancing test that pulls together extreme articulations of various factors to expand the category of workers classified as employees.  *See supra* 12-13.  That interpretive approach contravenes Supreme Court precedent.[11]

## IV.   The 2024 Rule's Inadequate Cost-Benefit Analysis Is Arbitrary and Capricious and Violates Both the APA and Regulatory Flexibility Act.

DOL's brief fails to rebut Plaintiffs' demonstration that the agency violated *both* the APA and the Regulatory Flexibility Act ("RFA") by not adequately considering the significant costs of withdrawing the 2021 Rule and replacing it with the 2024 Rule.  *See* CWI Br. 25-29.

DOL's economic analysis implausibly asserted that the only costs of the 2024 Rule were "rule familiarization."  89 Fed. Reg. at 1733-34.  It dismissed other obvious and significant costs, including the loss of independent contractors in the workforce, potential net job losses, reductions in wages and benefits, and the economic harm that the 2024 Rule will wreak more broadly on businesses and the economy.  *See* CWI Br. 25-28.  DOL further unreasonably exaggerated the 2024 Rule's benefits by wrongly assuming that reclassified independent contractors will necessarily earn overtime pay, and by arbitrarily discarding its prior finding that independent contractors earn more than employees on average.  CWI Br. 28-29.  Numerous commenters flagged these issues for DOL, *see, e.g.*, FSI Cmt, and DOL's failure to respond to these comments is arbitrary and capricious.  *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 63.  In short, DOL

---

[11] DOL suggests in passing that the Court might find particular provisions of the 2024 Rule to be "severable," DOL Br. 48 n.27, but that makes no sense.  Courts only "limit invalidation to defective portions of an agency's action"—that is, sever particular provisions—when "they operate entirely independent of one another."  *Am. Fed.'n of Gov't Emps., AFL-CIO v. FLRA*, 24 F.4th 666, 674 (D.C. Cir. 2022) (internal quotation marks omitted).  In this case, by contrast, DOL's central claim is that it has accurately replicated a well-established six-factor test.  To remove one or more of those factors would produce a test that fails to achieve even DOL's own professed objective, and—quite likely—a test that no court has ever applied.  In any event, if this Court were to sever all the provisions of this Rule that deserve vacatur, there would be scarcely anything left of DOL's thoroughly flawed rule.

"inconsistently and opportunistically framed the costs and benefits of the rule; failed adequately to quantify the certain costs or to explain why those costs could not be quantified; neglected to support its predictive judgments; contradicted itself; and failed to respond to substantial problems raised by commenters." *Business Roundtable v. SEC*, 647 U.S. 1144, 1148-49 (D.C. Cir. 2011).

DOL's responses to these arguments are unavailing.  To begin, DOL ignores that Plaintiffs raised an APA claim, casting Plaintiffs' complaint and summary judgment motion as raising arguments under the RFA only.  That is incorrect.  *See, e.g.*, CWI Br. 25 ("DOL violated the APA *and* RFA") (emphasis added); SAC ¶¶ 94, 96 (citing both the APA and RFA).  DOL's argument that the RFA supports only procedural (as opposed to substantive) claims—while incorrect, *see, e.g.*, *Aeronautical Repair Station Ass'n, Inc. v. FAA*, 494 F.3d 161, 178 (D.C. Cir. 2007)—is beside the point.

DOL's primary substantive contention is that the 2024 Rule will not "force" any stakeholder "to do anything, much less change classifications" because it merely provides "general interpretations," DOL Br. 43—a position this Court has squarely rejected, *see CWI*, 2022 WL 1073346, at *5-*6.  Yet DOL contradicts itself in the very next paragraph, claiming that the 2024 Rule remedies the harms "flowing from the 2021 Rule," which "would have resulted in the misclassification of employees as contractors."  DOL Br. 44.  In any event, DOL cannot shirk its statutory obligation to consider the "foreseeable costs of the Rule."  *Dist. of Columbia v. Dep't of Agriculture*, 496 F. Supp. 3d 213, 255 (D.D.C. 2020).

All DOL has left is the meek assertion that its cost-benefit analysis "was not unreasonable" because it "considered all the comments received," coupled with a rote restatement of the assertions in the cost-benefit analysis itself.  DOL Br. 42-44.  It is not enough to restate "the agency's conclusions," *id.* at 44—DOL's "reasons and policy choices" must "satisfy minimum

standards of rationality." *Pub. Citizen, Inc. v. EPA*, 343 F.3d 449, 455 (5th Cir. 2003).  Yet DOL's

brief fails to even address, much less rebut, nearly all the material flaws Plaintiffs raised.  As noted

above, *ipse dixit* is not a defense to a failure to consider important issues raised by commenters.

*Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 63.[12]

## V.      Vacatur of the Entire 2024 Rule Is the Appropriate Remedy Here.

DOL makes two arguments related to vacatur: that vacatur is "unauthorized, and

improper"; and that vacatur is inappropriate in this case specifically.  DOL Br. 46-49.  Neither

argument holds water.

"Under section 706 of the APA, when a court holds that an agency rule violates the APA,

it '"shall"—not may—'hold unlawful and set aside' [the] agency action."  *Nat'l Ass'n of Priv.*

*Fund Managers v. SEC*, 2024 WL 2836655, at *12 (citation omitted); *see also, e.g.*, *Franciscan*

*Alliance, Inc. v. Becerra*, 47 F.4th 368, 374 (5th Cir. 2022) ("Vacatur is the only statutorily

prescribed remedy for a successful APA challenge to a regulation."); *Data Mktg. P'ship, LP v.*

*DOL*, 45 F.4th 846, 859 (5th Cir. 2022) (vacatur is not only the "proper remedy," but the "default"

one).  That is enough to reject DOL's argument and order vacatur.  Indeed, DOL concedes, as it

must, that the Fifth Circuit squarely permits vacatur.  DOL Br. 47.

---

[12] DOL's brief addresses only one of Plaintiffs' specific arguments regarding the cost-benefit analysis, and even then fails to respond to the substantive point.  Plaintiffs explained that DOL's analysis of purported benefits to workers relies on a statistical analysis of hourly compensation that supposedly "control[s] for observable differences," but the economic analysis does not explain DOL's process for controlling for "observable differences," nor does it provide the average pay rates of independent contractors and wage rates for employees after controlling for such differences. 89 Fed. Reg. at 1738; *see* CWI Br. 29.  DOL's brief addresses neither of those flaws.  Instead, it simply repeats—in a footnote—that the agency had controlled for observable differences and did not find a statistically significant difference in the hourly compensation of independent contractors and employees.  *See* DOL Br. 40 n.22.  Plaintiffs' retorts remain unaddressed.

There are no exceptional circumstances supporting deviation from the APA's commands. The Fifth Circuit has recently explained that courts may depart from vacatur as the remedy "only in rare cases satisfying two conditions." *Chamber of Com. v. SEC*, 88 F.4th 1115, 1118 (5th Cir. 2023).  First, remand without vacatur may be appropriate if the agency appears able to "correct the rule's defects on remand"; but if the agency action suffers from "one or more serious procedural or substantive deficiencies," remand without vacatur is "inappropriate." *Id.*  Second, remand may be warranted if vacating the rule would produce "disruptive consequences." *Id.*  As explained above, the defects with the 2024 Rule are substantively deficient, so remand without vacatur is inappropriate.  This is not a case where, for example, the agency can justify its rulemaking with more evidence. *See id.*  Rather, the flaws in the 2024 Rule are fundamentally legal, and DOL does not claim that it would change its interpretation on remand.  Nor would vacating the 2024 Rule be disruptive.  On the contrary, the 2024 Rule *is* the disruption.  Companies across the country and across industries have reliance interests in the 2021 Rule's clear interpretive guidance and accompanying safe harbor; the 2024 Rule displaces that with uncertainty and confusion. DOL's failure to adequately consider costs and the reliance interests of regulated parties again makes the 2024 Rule arbitrary and capricious in violation of the APA. *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 222-24 (2016) (*Encino I*).

This thoroughly flawed rule should be vacated.

## **CONCLUSION**

For each of the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion for Summary Judgment and deny Defendant's Cross-Motion; declare unlawful and set aside DOL's rescission of the 2021 Rule and promulgation of the 2024 Rule; declare that the 2021 Rule has been and remains in effect as of March 8, 2021; and enjoin DOL from enforcing the 2024 Rule.

Date:   June 14, 2024                          Respectfully submitted,

                                               */s/ Robert F. Friedman*
                                               Robert F. Friedman
                                               LITTLER MENDELSON, P.C.
                                               2001 Ross Avenue, Suite 1500
                                               Dallas, TX 75201
                                               (214) 880-8100
                                               (214) 880-8101 (Fax)
                                               rfriedman@littler.com

                                               Maurice Baskin (*pro hac vice*)
                                               James A. Paretti, Jr. (*pro hac vice*)
                                               LITTLER MENDELSON, P.C.
                                               815 Connecticut Ave., N.W.
                                               Washington, D.C. 20006
                                               (202) 772-2526
                                               mbaskin@littler.com
                                               jparetti@littler.com

                                               ATTORNEYS FOR ALL PLAINTIFFS


                                               Eugene Scalia (*pro hac vice*)
                                               Jason J. Mendro (*pro hac vice*)
                                               Andrew G.I. Kilberg (*pro hac vice*)
                                               GIBSON, DUNN & CRUTCHER LLP
                                               1050 Connecticut Ave., N.W.
                                               Washington, D.C. 20036
                                               (202) 955-8500
                                               escalia@gibsondunn.com
                                               jmendro@gibsondunn.com
                                               akilberg@gibsondunn.com

                                               ATTORNEYS FOR PLAINTIFF
                                               FINANCIAL SERVICES INSTITUTE,
                                               INC.

Stephanie A. Maloney (*pro hac vice*)
Jordan L. Von Bokern (*pro hac vice*)
U.S. CHAMBER LITIGATION CENTER
1615 H Street, N.W.
Washington, DC 20062-2000
(202) 463-5337
smaloney@uschamber.com
jvonbokern@uschamber.com


ATTORNEYS FOR PLAINTIFF
CHAMBER OF COMMERCE OF THE
UNITED STATES OF AMERICA

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 14, 2024, the foregoing Motion for Summary Judgment was electronically filed in the above and foregoing with the Clerk of the Court, utilizing the ECF system, which sent notification of such filing to the following counsel for Defendants:

Lisa A. Olson
U.S. Department of Justice
1100 L Street NW; Room 12200
Washington, D.C. 20005
(202) 514-5633
lisa.olson@usdoj.gov

Andrea L. Parker
Assistant United States Attorney
U.S. Department of Justice
550 Fannin St., Suite 1250
Beaumont, Texas 77701
(409) 839-2538
andrea.parker@usdoj.gov

*/s/ Maurice Baskin*
Maurice Baskin