# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS, BEAUMONT DIVISION

| | | |
|---|---|---|
| **COALITION FOR WORKFORCE INNOVATION**, *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:21-cv-00130-MAC** |
| | ) | |
| **SU, ACTING SECRETARY, UNITED STATES DEPARTMENT OF LABOR,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANTS' REPLY IN SUPPORT OF CROSS-MOTION TO DISMISS OR ALTERNATIVELY FOR SUMMARY JUDGMENT

Dated: July 5, 2024

BRIAN M. BOYNTON
Acting Assistant Attorney General

JULIE STRAUS HARRIS
Assistant Director, Federal Programs Branch

/s/ *Lisa A. Olson*
Lisa A. Olson
Senior Trial Counsel
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W., Room 12200
Washington, D.C. 20005
Tel: (202) 514-5633
Fax: (202) 616-8470
lisa.olson@usdoj.gov

Counsel for Defendants

## INTRODUCTION

Plaintiffs have failed to cure the major flaws in their case. First, plaintiffs fail to show standing, because strikingly, their seven new declarations offer merely speculation and unfounded fears regarding the 2024 Rule and no evidence that they have suffered or will suffer concrete injury as a result. That the declarations contain only speculation of a possible injury is unsurprising given that the 2024 Rule reflects the economic reality analysis that courts have applied for decades (and the Department of Labor ("DOL") applied prior to the 2021 Rule), and workers who were properly classified prior to the 2021 Rule are unlikely to be reclassified now.

Second, plaintiffs' piecemeal attack on the factors of the 2024 Rule's economic reality analysis misinterprets case law, ignores the plain language of the 2024 Rule, mischaracterizes defendants' position and the 2021 and 2024 Rules, and misapprehends the totality-of-the-circumstances, economic reality analysis that courts have long applied. By focusing on isolated factors, plaintiffs ignore the fact that the analysis requires the consideration of all factors together to gauge the degree of a worker's economic dependence on an employer. And in their quest for simplicity, plaintiffs overlook the fact that the economic reality analysis is not subject to "neat diagnostic formulas," *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1043 (5th Cir. 1987), or a "rule of thumb," *U.S. v. Silk*, 331 U.S. 704, 716 (1947), and that the factors "should not be applied mechanically," *Parrish v. Premier Drilling, L.P.*, 917 F.3d 369, 380 (5th Cir. 2019).

Plaintiffs' arguments demonstrate a mere disagreement with the 2024 Rule rather than showing that it fails to "conform to minimal standards of rationality," *Luminant Generation Co. LLC v. U.S.E.P.A.*, 714 F.3d 841, 850 (5th Cir. 2013), or is outside the "zone of reasonableness," *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021). The 2024 Rule is consistent with decades of precedent and provides well-reasoned guidance for applying its economic reality

analysis, whereas the 2021 Rule introduced a test that no court has ever applied and conflicts with longstanding precedent interpreting the Fair Labor Standards Act ("FLSA"). While plaintiffs may prefer the 2021 Rule as a matter of policy, the Court may not substitute plaintiffs' or its own policy judgment for that of DOL, *id.* at 1158, and the 2024 Rule should be upheld.[1] *See Ohio v. Env't Prot. Agency*, No. 23A349, 2024 WL 3187768, at *7 (U.S. Jun. 27, 2024).

## I.   PLAINTIFFS LACK STANDING

In their futile effort to establish standing, plaintiffs submit seven declarations, ECF Nos. 88-1, 88-2, 88-3, 88-4, 88-5, 89-1, 89-2, none of which articulates any actual, concrete harm resulting from the 2024 Rule. *Murthy v. Missouri*, _ U.S. _, No. 23-411, 2024 WL 3165802, at *7 (U.S. Jun. 26, 2024); *Lutostanski v. Brown*, 88 F.4th 582, 585-86 (5th Cir. 2023). Remarkably, the declarants fail to cite a single instance in which they actually changed a worker's classification from independent contractor to employee as a result of the 2024 Rule.[2] Plaintiffs fall short because, as defendants have explained, *see* ECF No. 72 ("Def. Opp.") at 14-15, if plaintiffs' workers were properly classified prior to the 2021 Rule, the 2024 Rule is unlikely to change their classifications. And that is because the 2024 Rule's analysis reflects the

---

[1] Plaintiffs filed a notice of supplemental authority regarding *Loper Bright Enterprises v. Raimondo*, 603 U.S. __, No. 22-451, slip op. (Jun. 28, 2024). The 2024 Rule, however, contains DOL's "general interpretations" and cites to *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). 89 Fed. Reg. 1741-42 (29 C.F.R. § 795.100). *Loper* did not disturb *Skidmore* and therefore does not apply to this case. *See* slip. op. at 16 (recognizing that "courts may—as they have from the start—seek aid from the interpretations of those responsible for implementing particular statutes" and that "[s]uch interpretations 'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance' consistent with the APA") (quoting *Skidmore*, 323 U.S. at 140).

[2] Plaintiffs also fail to cite a single instance in which they changed a worker's classification as a result of the 2021 Rule, wholly undercutting any alleged reliance on that Rule.

same analysis that courts have applied for decades, 89 Fed. Reg. 1658, under which plaintiffs

and their members operated without apparent injury.

Nor have plaintiffs cited a single instance in which their businesses have actually been

the subject of enforcement action for misclassifying their workers as a result of the 2024 Rule.

Despite their unfounded protestations about what "would" or "will" happen, *see, e.g.*, ECF Nos.

88-1 at ¶¶ 11, 14-17, 20; 88-2 at ¶¶ 10, 12; what could "potentially" happen, *see, e.g.*, ECF Nos.

88-2 at ¶ 11; 88-4 at ¶ 11; 89-1 at ¶ 10; or what they "anticipate" happening, *see, e.g.*, ECF Nos.

88-2 at ¶ 10; 88-3 at ¶ 10; 89-1 at ¶ 9, there is no evidence that any of their predictions have

actually come to pass or will come to pass as a result of the 2024 Rule. Thus, plaintiffs altogether

fail to demonstrate concrete injury.

Indeed, plaintiffs' alleged injury is based on their purely self-initiated decision to "re-

analyze" their workers' classification, ECF Nos. 88-1 ¶ 11; 88-2 ¶ 10; 88-3 ¶ 10; 88-4 ¶ 10; 88-5

¶ 9; 89-1 ¶ 9, and dedicate resources to defend against hypothetical future "investigations or

litigation regarding worker classification," ECF Nos. 88-1 ¶ 12; 88-2 ¶ 10; 88-2 ¶ 11; 88-4 ¶ 11;

88-5 ¶ 10; 89-1 ¶ 10; 89-2 ¶ 17; *see also* ECF No. 89-2 ¶ 16 (citing "risk that federal officials

will bring meritless enforcement actions"), and to defend against the speculative costs of

hypothetical "reclassifications" that have not yet occurred, and may never occur, ECF Nos. 88-1

¶¶ 16, 17; 89-2 ¶¶ 12, 13, 14. What is glaringly absent from these allegations, of course, is any

indication that plaintiffs have in fact been compelled *by the 2024 Rule* to "re-analyze" or

"reclassify" their workers, or that they have in fact been investigated or sued *as a result of the*

*2024 Rule*. Alleged "costs must be based on more than speculation or unfounded fears."

*Restaurant Law Center v. DOL*, 66 F.4th 593, 597 (5th Cir. 2023). Because the 2024 Rule

merely provides DOL's "general interpretations," 89 Fed. Reg. 1741-42 (29 C.F.R. § 795.100),

and thus does not impose any requirements, and because workers who were properly classified prior to the 2021 Rule are unlikely to be misclassified under the 2024 Rule's economic reality analysis, plaintiffs' claims are based on nothing but "speculation and unfounded fears."

Plaintiffs argue that an "increased regulatory burden" such as that allegedly imposed by the 2024 Rule "typically satisfies the injury in fact requirement." ECF No. 88 ("Pl. Rep.") at 11. But the 2024 Rule does not require anyone to do anything. Hence, no "increased regulatory burden" exists. *Contender Farms, L.L.P. v. USDA*, 779 F.3d 258 (5th Cir. 2015), cited by plaintiffs, stands in stark contrast to the present case. The petitioners in *Contender* demonstrated a "concrete injury" resulting from the regulation at issue because they faced "harsher, mandatory penalties" or "prosecution" as a result of that regulation, and were *required* "to take additional [compliance] measures," "agree to new procedures," and "forfeit their rights under the previous regulatory framework," whereas the 2024 Rule imposes no such requirements.

Plaintiffs' claim that the 2024 Rule created a "safe harbor" for employers that the 2024 Rule "eliminated," Pl. Rep. at 12, 15, mischaracterizes the availability of the "safe harbor" defense under the Portal-to-Portal Act ("Portal Act"). The Portal Act's "safe harbor" defense is available to any employer that meets the statutory requirements in 29 U.S.C. § 259(a), and has been available to employers for over 70 years. Contrary to defendants' assertions, the 2021 Rule did not "create" the defense, nor did the 2024 Rule "eliminate" or modify it in any way—it operates the way it always has.[3] And there is nothing about the possible availability of the Portal Act's "safe harbor" defense that establishes harm for purposes of standing.

---

[3] Thus, nothing in the 2024 Rule prevents an employer from asserting that an "act or omission" prior to the 2024 Rule's rescission of the 2021 Rule "was in good faith in conformity with and in reliance" on the 2021 Rule for purposes of the Portal Act defense. 29 U.S.C. § 259(a).

Plaintiffs' assertion that the 2024 Rule's "stated purpose" is "to require companies to classify more workers as employees," Pl. Rep. at 12, misconstrues the very language plaintiffs cite. Specifically, DOL anticipates that the 2024 Rule "may reduce misclassification of employees as independent contractors." *Id.* (citing 89 Fed. Reg. 1658-59, 1726). Hence, the 2024 Rule's purpose is not to require more workers to be classified as employees, but rather, to reduce the *mis*classification of workers who should *properly* be classified as employees to begin with. While plaintiffs suggest that the 2024 Rule is intended to "reduc[e] . . . the number of independent contractors," *id.* at 12-13, there is no basis for this. The 2024 Rule repeatedly emphasizes the importance of conducting a totality-of-the-circumstances analysis where no one factor or set of factors has predetermined weight, consistent with decades of judicial precedent, without any assumptions about whether the outcome of such analysis leads to more or fewer independent contractors, whom DOL recognizes play an important role in the economy.

Plaintiffs claim associational standing because their members are allegedly "affected" by the 2024 Rule. Pl. Rep. at 14. However, that claim fails because they have demonstrated nothing more than that their members may suffer self-initiated harms based on speculation and unfounded fears. While plaintiffs argue that they are not required "to identify by name" individual members who have "misclassified" employees as independent contractors, *id.*, defendants have never argued for such a standard. Rather, as defendants noted, and the Supreme Court recently affirmed, plaintiffs must show that one "identified member" has suffered concrete injury that would be redressable by the Court. Def. Opp. at 18; *see Murthy*, 2024 WL 3165801, at *7 ("A proper case or controversy exists only when at least one plaintiff establish[es] that [she] ha[s] standing to sue."). And since plaintiffs have demonstrated only hypothetical harm, and have failed to show that they have reclassified workers, restructured their businesses, or been

subject to investigations or litigation as a result of the 2024 Rule, or that they face "certainly impending" injury, *see Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013); *Glass v. Paxton*, 900 F.3d 233, 239 (5th Cir. 2018), plaintiffs cannot meet their burden to establish associational standing. The idea that plaintiffs automatically have standing merely because they are subject to the 2024 Rule, *see* Pl. Rep. at 14 n.3, even in the absence of concrete harm, is antithetical to basic principles of standing.

## II.    RESCINDING THE 2021 RULE AND REPLACING IT WITH THE 2024 RULE WAS NOT ARBITRARY AND CAPRICIOUS

Plaintiffs' death-by-a-thousand-cuts attack on the 2024 Rule and its rescission of the 2021 Rule fails on every count. Plaintiffs' unavailing arguments are addressed seriatim below.

### A.    Confusion created by 2021 Rule and reduced by 2024 Rule

Plaintiffs argue that rescinding the 2021 Rule will produce confusion and uncertainty, but this argument is based on two fundamental misconceptions. First, as explained, plaintiffs' contention that the "safe harbor" defense available under the Portal Act has been "lost," Pl. Rep. at 15, seems purposely vague and mischaracterizes the availability of that defense. As always, if employers can show that they acted "in good faith in conformity with and in reliance on" a DOL regulation or interpretation, then the defense would continue to protect them from liability when applicable. 29 U.S.C. § 259(a); *see* Def. Opp. at 22 n.11.

Second, in contending that the 2021 Rule was not novel, Pl. Rep. at 16, plaintiffs ignore 70 years of judicial precedent with which the 2021 Rule conflicts and improperly rely on a vacated decision which was rendered without the benefit of the 2024 Rule's detailed preamble. That preamble comprehensively explains why the 2021 Rule's analysis of the economic reality test, with its predetermined weighting of two "core factors," was unprecedented. In any event, contrary to plaintiffs' suggestion, *id.* at 15-16, defendants have not argued that novelty by itself

rendered the 2021 Rule unclear. Its lack of clarity stemmed from the confusion it would create and already created because it contradicted 70 years of judicial precedent. *See* Def. Opp. at 30.

Additionally, plaintiffs' argument that the 2024 Rule "provides no guidance about how to prioritize consideration of the [economic reality] factors," Pl. Rep. at 16, erroneously presupposes that any factor or factors even *should* be prioritized or given predetermined weight. Under the totality-of-the-circumstances, economic reality test universally applied by courts, no single factor is accorded greater or lesser weight on a predetermined basis, and all factors must be considered based on the facts of the case. 89 Fed. Reg. 1638, 1651 (citing cases).

Finally, plaintiffs' invocation of *Petroplex*, Pl. Rep. at 16, is based on flawed logic. The court's alleged silence "about the appropriateness of emphasizing certain core factors" does not equate to an endorsement. Rather, the court expressly rejected the notion that the "control" factor should always be accorded greater weight, stating, "[c]ontrol is *only* significant when it shows an individual exerts such control over a meaningful part of the business that [the individual] stands as a separate entity." *Petroplex*, 946 F.3d at 830 (emphasis added) (quoting *Parrish*, 917 F.3d at 381 (quoting *Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308, 1312-13 (5th Cir. 1976))). Thus, *Petroplex* is at odds with the 2021 Rule's analytical approach and its emphasis on the "core factor" of control.

In addition, while the Court in *Petroplex* afforded the investment factor "little weight" in that case, it reached that conclusion "in light of the nature of the industry and the work involved" – in other words, because of the particular facts of that case. 946 F.3d at 832; *see Sanchez Oil & Gas Corp. v. Crescent Drilling & Prod., Inc.*, 7 F.4th 301, 313 (5th Cir. 2021) (the economic reality test is a "fact-intensive inquiry"); *Herman v. Express Sixty-Minutes Delivery Serv., Inc.*, 161 F.3d 299, 305 (5th Cir. 1998) (same). *Petroplex* does not signify that investment should be

afforded "little weight" under *every set* of facts in *all cases*. Rather, it reinforces the approach of the 2024 Rule, and *all* other courts, that the totality-of-the-circumstances analysis requires the consideration of "multiple factors . . . with no factor or factors having predetermined weight." 89 Fed. Reg. 1638. And while considering two factors may be simpler than considering six, Pl. Rep. at 16-17, what plaintiffs mischaracterize as an alleged "hodgepodge of interpretations" of individual factors in the 2024 Rule, *id.* at 17, is actually a reasoned explanation of how to interpret each factor, in accordance with how courts have applied the economic reality analysis.

### B.      2021 Rule's flawed "core factors" analysis

Plaintiffs claim that rescinding the 2021 Rule was based on misinterpretation of case law, Pl. Rep. at 18, but plaintiffs are the ones who have misinterpreted case law. In support of the 2021 Rule's "core factors" analysis, plaintiffs argue that whenever the control and opportunity factors both pointed to the same classification, that was the court's conclusion regarding the workers' ultimate classification. *Id*. But this mechanical approach overlooks the fact that neither the Supreme Court, nor any other court, has *ever* held that those two factors, or any other factor or factors, should always be afforded more weight in the analysis, regardless of whether in particular cases those two factors might happen to point to the same classification that was ultimately determined to be correct. *See* Def. Opp. at 22-23.

Nor does plaintiffs' reliance on *Express Sixty-Minutes*, 161 F.3d at 303-06, avail them. While the control and opportunity for profit or loss factors weighed in favor of independent contractor status in that case, so did a third factor, so that "three of the five traditional factors point[ed] toward independent contractor status." *Id.* at 305. *Express Sixty-Minutes* does not suggest that control and opportunity for profit or loss must always dictate a worker's

classification when they point in the same direction, especially given that a third factor contributed to the outcome of the economic reality analysis in that case.[4]

Further, while plaintiffs argue that DOL failed to examine how the Court in *U.S. v. Silk*, 331 U.S. 704 (1947), actually treated the economic reality factors, Pl. Rep. at 19 n.5, how the factors were treated on the basis of the unique facts and circumstances of that case does not alter the general principle, enunciated by the Court, that "[n]o one [factor] is controlling . . . .", *Silk*, 331 U.S. at 716. Indeed, as the Fifth Circuit has noted, "[i]t is impossible to assign to each of these factors a specific and invariably applied weight." *Parrish*, 917 F.3d at 380.

Moreover, contrary to plaintiffs' claim, DOL has not mischaracterized the 2021 Rule, *see* Pl. Rep. at 20, which "gives greater weight to two factors," Pl. Rep. at 20, in *every* case, regardless of the circumstances. That approach runs counter to the holdings by *all* courts that no single factor or factors should be accorded a predetermined weight. *See, e.g., Castillo v. Givens*, 704 F.2d 181, 190 (5th Cir. 1983) ("By focusing on selected and isolated control factors . . . defendant loses sight of the circumstances of the whole activity."). While other factors could outweigh the "core factors," Pl. Rep. at 20, the 2021 Rule still improperly prioritized two factors.

Nor is there any inconsistency or impropriety in DOL's treatment of the joint employment cases cited by commenters in support of the 2021 Rule. Pl. Rep. at 20. Neither case cited by commenters stands for the overarching proposition for which the commenters cited them, *i.e.*, in support of a predetermined elevation of any factor or set of factors under the economic reality analysis used to determine employee or independent contractor classification,

---

[4] Plaintiffs allege that DOL "falsely claimed" that certain cases cited in defense of the 2021 Rule's "core-factor framework" were only relevant to a different statute, Pl. Rep. at 19, but there is nothing false about that claim. The cases in question concerned either the Americans with Disabilities Act or Title VII, *see* 89 Fed. Reg. 1650-51 & n.124, and plaintiffs fail to explain how cases decided under other statutes are relevant to FLSA classifications.

89 Fed. Reg. 1650-51. On the other hand, a joint employment case and guidance were cited for much narrower purposes to help illustrate in the first instance that the FLSA reaches even those employers who "[d]o not directly supervise the activities of putative employees," 89 Fed. Reg. 1693 n.365, and that DOL did not previously have a blanket prohibition on consideration of compliance with legal obligations, *id.* at 1694 & n.371.

Additionally, plaintiffs inaccurately suggest that "DOL cannot help but fall back on the purported remedial purpose of the FLSA." Pl. Rep. at 20-21. There is no legal basis for the proposition that DOL must ignore the purpose of a federal statute it is authorized to enforce. And contrary to plaintiffs' suggestion, *id.* at 20, DOL has not "belated[ly]" recognized the holding in *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79 (2018); rather, DOL discussed *Encino* extensively in the 2024 Rule's preamble, *see* 89 Fed. Reg. 1668 n.221 (noting that "*Encino* did not hold that the FLSA's remedial purpose may never be considered, [but] it simply noted that it is a 'flawed premise that the FLSA pursues its remedial purpose at all costs.'").

In promulgating the 2024 Rule, DOL did not rely on the remedial purposes of the FLSA, but rather, on the clear textual indication in the FLSA's definitions, by the inclusion of the "suffer or permit" language, that broad coverage under the FLSA was intended. 89 Fed. Reg. 1668 & n.221; Def. Reply at 26. To the extent DOL considered the FLSA's remedial purpose, it construed that "purpose *as interpreted by [the] courts*." 89 Fed. Reg. 1639, 1640, 1647, 1649, 1661, 1663, 1725, 1726, 1739 (emphasis added). Those courts include this Circuit, which has consistently acknowledged the FLSA's "remedial" purpose.[5]

---

[5] *See, e.g.*, *Parrish*, 917 F.3d at 378; *Reich v. Circle C. Investments, Inc.*, 998 F.2d 324, 329 (5th Cir. 1993); *McLaughlin v. Seafood, Inc.*, 867 F.2d 875, 877 (5th Cir. 1989); *Pilgrim Equip.*, 527 F.2d at 1311; *see also Castillo*, 704 F.2d at 190 ("[T]he ultimate criteria for the determination of employee status are found in the purposes of the Act.").

Finally, plaintiffs wrongly assert that DOL never explains why it "makes sense" to limit *Encino's* "fair reading" principle to the FLSA's exemptions. Pl. Rep. at 21. The Court's holding that "there is no reason to give [them] anything other than a fair (rather than a narrow) interpretation," *Encino*, 584 U.S. at 88-89, was only in the context of examining whether the "*exemptions* to the FLSA should be construed narrowly," *id.* at 88 (emphasis added). As DOL observed, "this decision did not apply to the Act's definitions (which have not been interpreted under the 'narrow construction' principle)," even though some courts have extended the "fair reading" principle to other parts of the FLSA. 89 Fed. Reg. 1668 n.221. As DOL further reasoned, "[t]here is no need to rely on the 'fair reading' principle here because there is a clear textual indication in the Act's definitions, by the inclusion of the 'suffer or permit' language, that broad coverage under the Act was intended," but even if the "fair reading" principle applies, DOL's interpretation is "fair." *Id.*

## C.      Emphasis on "actual practice"

Plaintiffs assert that actual practice must drive the economic reality test, Pl. Rep. at 22-23, but defendants have never argued otherwise. As DOL stated, "actual practice is always relevant to the economic reality test." 89 Fed. Reg. 1719. Rather, DOL reasonably declined to adopt the 2021 Rule's bright line rule that in all circumstances, "the actual practice of the parties involved is more relevant than what may be contractually or theoretically possible." *Id.* at 1718. DOL rejected the 2021 Rule's rigid rule to allow for situations where reserved or unexercised rights, such as the right to control, are more indicative of the economic reality than the actual practice of the parties. That was the situation in *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1060 (2d Cir. 1988), where the Court recognized as probative of control the right reserved by an

employer to supervise workers even though it did so infrequently.[6] *See* Def. Opp. at 40-41; *see also Silk*, 331 U.S. at 713 (referring to "power of control, whether exercised or not").

### D.    Use of "integral part" terminology

Plaintiffs wrongly assert that defendants provided no response to their arguments against the 2024 Rule's adoption of the "integral part" terminology. Pl. Rep. at 24. Defendants did respond, Def. Opp. at 37-38, and plaintiffs simply disagree with those responses, as evidenced by plaintiffs' discussion of the very responses they contend defendants failed to provide, Pl. Rep. at 24-25. First, plaintiffs argue that DOL's interpretations of Supreme Court cases are entitled to no deference, *id.* at 24, but DOL is not "interpreting" *Rutherford* or any other Supreme Court case. Rather, DOL simply determined that it is not bound to adopt *Rutherford*'s terminology, as opposed to that of *Silk* and other appellate court decisions. Def. Opp. at 37-38.

Second, plaintiffs argue that the "integral part" factor is "useless" and rely on a Seventh Circuit concurrence. Pl. Rep. at 24-25. By contrast, defendants' position is supported by case law in all other circuit courts, including the Fifth Circuit. 89 Fed. Reg. 1707. Moreover, contrary to plaintiffs' contention that DOL never explained why it believes the "integral part" formulation of the integral factor can be useful, Pl. Rep. at 24-25, DOL explained that it had used the "integral part" factor "for decades and has consistently found it to be a useful factor in the economic reality analysis." 89 Fed. Reg. 1707. And while the Fifth Circuit does not "list" the "integral part" factor as part of its five-factor test, it has used that factor in its economic reality analysis

---

[6] In *Mr. W Fireworks* (cited in Pl. Rep. at 23), the Court held that reserved, unexercised rights could affect workers' actions and therefore be indicative of control. The workers' contracts reserved the employer's right to exercise control by setting prices. 814 F.2d at 1046. Although the workers could alter the prices, the Court found that most of them never did, because "as a result of the contract, they felt compelled to adhere to the employer's 'suggested' prices." *Id.* at 1047.

when looking to "other factors to help gauge the economic dependence" of workers – employing the "integral part" terminology used in *Silk*. *See Petroplex*, 946 F.3d at 836.

### E.      Control and compliance measures

Plaintiffs mischaracterize DOL's "control" analysis by asserting that "any compliance measure that goes a millimeter beyond the minimum legal requirement can indicate 'control.'" Pl. Rep. at 26. DOL explained its approach, made in response to comments from the business community, that "actions taken by the potential employer for the sole purpose of complying with a specific, applicable Federal, State, Tribal, or local law or regulation are not indicative of control," while "a potential employer's control over compliance methods . . . that goes beyond what is required by specific, applicable Federal, State, Tribal, or local law or regulation may in some—but not all—cases be relevant to the analysis of a potential employer's control if it is probative of a worker's economic dependence." 89 Fed. Reg. 1694. Moreover, the kinds of business decisions plaintiffs reference, Pl. Rep. at 26, occur in many industries and circumstances, and do not result from the 2024 Rule. As DOL explained, "businesses already must comply with various legal and regulatory requirements—for example, from the IRS, state licensing boards, and city ordinances." 89 Fed. Reg. 1694. Indeed, prior to the 2021 Rule, there was no guidance regarding compliance with legal obligations and the economic reality test, and those facts were evaluated as any other relevant facts--with no evidence that this resulted in the problems plaintiffs allege. *Id.* DOL took into account commenters' concerns, not unlike plaintiffs', as part of its reasoning for changing the final regulatory text to explicitly state that such compliance actions "are not indicative of control." 29 C.F.R. § 795.110(b)(4). DOL's reasoned approach is not arbitrary or capricious.

### F.      Control over "economic aspects of the working relationship"

Plaintiffs contend that the 2024 Rule's consideration of control over the "economic aspects of the working relationship" uses terminology that is inconsistent with *Silk*, which referred to control over "the manner of performing service to the industry" and over "how 'work shall be done.'" Pl. Rep. at 27. But plaintiffs are attempting to manufacture differences in meaning that do not exist. Under the 2024 Rule, the "[n]ature and degree of control" factor "considers the potential employer's control . . . over the performance of the work and the economic aspects of the working relationship." 29 C.F.R. § 795.110(b)(4); 89 Fed. Reg. 1743. This description embodies the *Silk* concepts of control concerning the performance of work. And while courts have referred to control over a "meaningful" part of the business, the 2024 Rule reflects that approach by examining the "*[n]ature* [be it "meaningful" or not] and degree of control" by a potential employer to determine if there are more indicia of control by the potential employer or by the worker. 29 C.F.R. § 795.110(b)(4) (emphasis added); 89 Fed. Reg. 1743.

### G.    Separate factors of "investment" and "opportunity for profit or loss"

Plaintiffs allege that the 2024 Rule "disregards *Silk* by counting 'investment' as a separate factor from 'opportunity for profit or loss,'" Pl. Rep. at 28, when in fact, *Silk* expressly articulated "opportunities for profit or loss, [and] investment in facilities" as separate factors, *Silk*, 331 U.S. at 716, as does "the overwhelming majority of federal appellate caselaw." 89 Fed. Reg. 1679. Although plaintiffs dismiss as "lower-court precedent" the cases on which DOL relies, Pl. Rep. at 28, that precedent is from courts of appeals, including the Fifth Circuit.[7] And while plaintiffs contend that DOL offers "no reasoned explanation" why the two factors should be separate, defendants do in fact offer an extensively reasoned explanation. 89 Fed. Reg. 1676-

---

[7] *See* Def. Opp. at 32-33; 89 Fed. Reg. 1680 (citing *Parrish*, 917 F.3d at 382-85 (analyzing investment as a separate factor from opportunity for profit or loss); *Cromwell v. Driftwood Electrical Contractors, Inc.*, 348 F. Appx. 57, 60-61 (5th Cir. 2009) (same)).

85. In short, treating investments as a separate factor "ensures that investments are accorded . . . the same considerations as the other factors and that the probative value of the investments toward the worker's dependence or independence will affect the ultimate outcome of the analysis," consistent with a "totality-of-the-circumstances approach." 89 Fed. Reg. 1680.

While plaintiffs claim that DOL has "created a factor" that favors employee status by comparing the magnitude of the worker's investment to that of the business, Pl. Rep. at 28, DOL in fact never required such a comparison. As the regulatory text plainly states: "The worker's investments need not be equal to the potential employer's investments and should not be compared only in terms of the dollar values of investments or the sizes of the worker and the potential employer. Instead, the focus should be on comparing the investments to determine whether the worker is making similar types of investments as the potential employer (even if on a smaller scale) to suggest that the worker is operating independently, which would indicate independent contractor status." 89 Fed. Reg. 1742; *see also Petroplex*, 946 F.3d at 831 (considering "the relative investments of the pipe welders and Petroplex"); *Express Sixty-Minutes*, 161 F.3d at 303 (considering "[r]elative investment of worker and alleged employer"). Nor is DOL "creating" a factor when investment has been considered as a factor for decades by circuit courts around the country. *See, e.g.*, 89 Fed. Reg. 1679 & n.274 (citing cases).

### H.    Permanence factor dependent on work relationship

As to the permanence factor, plaintiffs wrongly contend that defendants failed to "explain[] why it is logical for the factor to *never* support independent contractor classification." Pl. Rep. at 28. The 2024 Rule does not state that the permanence factor can never support independent contractor classification; to the contrary, the rule clearly explains when permanence supports independent contractor classification: "This factor weighs in favor of the worker being

an independent contractor when the work relationship is definite in duration, non-exclusive, project-based, or sporadic based on the worker being in business for themself and marketing their services or labor to multiple entities." 29 U.S.C. § 795.110(b)(3). Further, contrary to plaintiffs' claim, DOL did "acknowledge it was changing its position from the 2021 Rule," *see* Pl. Rep. at 28, for example, by explaining that "consistent with the applicable case law, the Department is proposing to revise the 2021 IC Rule provision's acknowledgement that the seasonal nature of work alone would not necessarily indicate independent contractor status to acknowledge more broadly that a lack of permanence may be due to operational characteristics that are unique or intrinsic to particular businesses or industries and the workers they employ rather than the workers' business initiative, in which case this factor would not weigh in favor of independent contractor classification."  87 Fed. Reg. 62244; *see also* 89 Fed. Reg. 1686.

## I.    Skill factor including initiative

The 2024 Rule considers the degree of "initiative" when considering the skill factor because a worker's use of specialized skills in connection with business-like initiative helps distinguish a worker's status and is probative of the ultimate question of economic dependence. Def. Opp. at 36-37. This approach is consistent with *Silk*. However, plaintiffs erroneously assert that "*Silk* did not directly compare the 'simple tasks' performed by workers who unload coal from railcars to the initiative of truck drivers who 'are small businessmen.'" Pl. Rep. at 28-29. But *Silk* did plainly draw such a direct comparison. *Silk*, 331 U.S. at 716-18 (comparing "truckmen [who] depend upon their own initiative" to "unloaders [who] had no opportunity to gain or lose except from the work of their hands and these simple tools").

## J.    Entrepreneurial drive as illuminating economic (in)dependence

Contrary to plaintiffs' assertion, DOL did address plaintiffs' objections to DOL's alleged focus on "entrepreneurial" drive and their unsupported argument that the 2024 Rule is weighted "heavily toward employee status." Pl. Rep. at 29; *see* 89 Fed. Reg. 1680-81; Def. Opp. at 34. Plaintiffs simply disagree with DOL's explanations but ignore that this disagreement should apply equally to the 2021 Rule, which repeatedly invoked the concept of entrepreneurship. For example, the 2021 Rule stated that "an independent contractor is an *entrepreneur* who works for him- or herself, as opposed to for an employer." 86 Fed. Reg. 1178; *id.* ("[T]he relevant question . . . is whether the worker providing certain service to a potential employer is an *entrepreneur* 'in that line of business.'") (emphases added). In any event, entrepreneurial drive is one consideration in analyzing the totality of the circumstances, because it illuminates the distinction between whether a worker is economically dependent on the employer for work or is in business for herself. 89 Fed. Reg. 1676-77; 87 Fed. Reg. 62240.[8]

## III.     PLAINTIFFS FAIL TO STATE A REGULATORY FLEXIBILITY ACT CLAIM

---

[8] Plaintiffs filed a notice of supplemental authority regarding *National Association of Manufacturers v. SEC*, _ F.4th _, No. 22-51069, slip op. (5th Cir. June 26, 2024), contending that DOL's 2024 Rule is similarly arbitrary and capricious because it failed to provide sufficient explanation of its need for rulemaking, did not respond to commenters' concerns, and DOL's defense of the Rule relies on *post hoc* rationalizations. DOL notes, as an initial matter, that plaintiffs erroneously continue to rely on and cite to this Court's previous decision regarding DOL's delay and withdrawal rules, which was vacated as moot. *See Coal. for Workforce Innovation v. Walsh*, No. 22-40316, Order (5th Cir. Feb. 19, 2024) [ECF 82-2]. This case pertains solely to the 2024 Rule, which did not merely rescind the 2021 Rule; it replaced it with a different rule with different provisions, and it justified that choice in a detailed explanation of the need for rulemaking where various features of the new rule were discussed in comparison with the old rule and other alternatives. *See* 89 Fed. Reg. 1638, 1646-64. DOL specifically addressed the rationale underlying the 2021 Rule, *id.* at 1647, why it did not agree with that rationale at this time, *id.* at 1647-56, and responded to a multitude of comments such as the concerns plaintiffs raise here about the timing of the rulemaking, *id.* at 1660. Moreover, for the reasons explained herein, plaintiffs inaccurately assert that defendants have relied on *post hoc* rationalizations when in fact these explanations are contained in the preamble to the 2024 Rule.

As defendants correctly explained, Def. Opp. at 41-42, the RFA is a purely "procedural rather than substantive agency mandate." *Alenco Commc'ns, Inc. v. FCC*, 201 F.3d 608, 625 (5th Cir. 2000); *see U.S. Cellular Corp. v. FCC*, 254 F.3d 78, 88-89 (D.C. Cir. 2001) (RFA's requirements are "[p]urely procedural"). Plaintiffs cite *Aeronautical Repair Station Ass'n, Inc. v. FAA*, 494 F.3d 161 (D.C. Cir. 2007), but that case expressly supports defendants' position, stating that "[t]he RFA is a procedural statute setting out precise, specific steps an agency must take." *Id.* at 178. Moreover, the issue in *Aeronautical Repair* was whether the agency was required to conduct a regulatory flexibility analysis, not whether the petitioners could seek relief based on their substantive disagreements with the analysis that the agency conducted. The court upheld the substance of the agency's final rule, remanding for the limited purpose of conducting the required regulatory flexibility analysis. *Id.* Thus, *Aeronautical Repair* does not support plaintiffs' argument that their disagreement with DOL's substantive conclusions regarding costs gives rise to an RFA claim or warrants invalidating the 2024 Rule.

In any event, plaintiffs' contention that DOL failed to consider significant costs of withdrawing the 2021 Rule and replacing it with the 2024 Rule is based on their inaccurate views regarding the impact of the rule. Pl. Rep. at 30 (listing "the loss of independent contractors in the workforce, potential net job losses, reductions in wages and benefits, and the economic harm that the 2024 Rule will wreak more broadly on businesses and the economy"). As DOL explained repeatedly, including in response to comments regarding such alleged costs, DOL does not believe that such costs will be incurred because it does not believe that the 2024 Rule will "lead to widespread reclassification," or "lead to job losses," or otherwise change the economic reality analysis that existed prior to the 2021 Rule. 89 Fed. Reg. 1658-59; 1669; 1727; 1734; 1739-40. DOL has therefore not "shirked" its obligation to consider "foreseeable costs," Pl. Rep. at 31, nor

18

was it required to conduct an economic analysis of costs associated with every effect raised by commenters. *See Aeronautical Repair*, 494 F.3d at 176 ("Congress did not intend to require that every agency consider every indirect effect that any regulation might have on small businesses in any stratum of the national economy.").

Plaintiffs argue that this Court rejected the contention that the 2024 Rule will not "force" any stakeholder to do anything, much less change classifications, Pl. Rep. at 31, but that now vacated ruling was issued without the benefit of the 2024 Rule and its preamble. Plaintiffs misrepresent DOL's position in arguing that it is a contradiction to say on the one hand that the 2024 Rule requires nothing, but that it remedies the harms flowing from the 2021 Rule. *Id*. What DOL actually said is that the 2021 Rule would have "increased the risk of worker misclassification," Def. Opp. at 43-44, a harm which the 2024 Rule "should help prevent," *id.* at 4; *see also id.* at 20, 42. DOL's brief does address at length – and rebut – the flaws that plaintiffs allege regarding the 2024 Rule. *Id.* at 20-45.[9]

## IV.    VACATUR IS INAPPROPRIATE

Defendants have shown that vacatur would be inappropriate here. Def. Opp. at 45-51; *see also Braidwood Mgmt., Inc. v. Becerra*, No. 23-10326, _ F.4th _, 2024 WL 3079340, at *17 (5th Cir. June 21, 2024) ("[I]t was an abuse of discretion to enter universal injunctive relief after already providing complete relief to the plaintiffs"). Defendants have shown that the 2024 Rule is reasonable and soundly based in judicial precedent. Plaintiffs address none of the disruptive

---

[9] Plaintiffs also complain that defendants did not adequately explain details pertaining to studies of earnings for independent contractors and employees when analyzing the benefits to workers. Pl. Rep. at 32 n.12. Contrary to plaintiffs' reading of the economic analysis, DOL did not rely on these analyses to calculate the benefits of the rule, but rather discussed them as part of a larger analysis of transfers. *See* 89 Fed. Reg. 1738.

consequences that would result from vacatur, *see* Def. Opp. at 47, arguing only that the 2024

Rule is itself the disruption. Pl. Rep. at 33. Nor have plaintiffs articulated any *actual* "reliance

interests" as alleged. In fact, another court in this Circuit has already found that challengers to

the 2024 Rule showed "no immediate threat of harm or immediate harm," and that "the

likelihood of success is at least questionable, if not unable to be sustained." *Frisard's Transp.,*

*L.L.C. v. DOL*, No. 2:24-cv-00347-EEF-MBN, March 8, 2024 Trans. Of Hearing [ECF No. 41-1

Tab 4] at 20 ll.13-22; *id.,* Minute Entry denying TRO and preliminary injunction (E.D. La. Mar.

8, 2024) [ECF No. 19], *stayed pending appeal* No. 24-30223 (5th Cir. filed Apr. 8, 2024) (E.D.

La. July 3, 2024) [ECF No. 44]. And three other cases outside this Circuit are pending.[10] Vacatur

risks creating conflicting rulings and confusing employers as they seek to comply with the

FLSA.

## **CONCLUSION**

Defendants' cross-motion to dismiss or alternatively for summary judgment should be

granted, and plaintiffs' motion for summary judgment should be denied.

Dated: July 5, 2024                    Respectfully submitted,

                                       BRIAN M. BOYNTON
                                       Acting Assistant Attorney General

                                       JULIE STRAUS HARRIS
                                       Assistant Director, Federal Programs Branch

                                       /s/ *Lisa A. Olson*
                                       Lisa A. Olson
                                       Senior Trial Counsel
                                       U.S. Department of Justice
                                       Civil Division, Federal Programs Branch
                                       1100 L Street, N.W., Room 12200

---

[10] *See Colt & Joe Trucking LLC v. DOL*, No. 1:24-cv-00391-JHR-GBW (D.N.M. filed Apr. 25,
2024)*; Littman v. DOL*, No. 3:24-cv-00194 (M.D. Tenn. filed Feb. 21, 2024); *Warren v. DOL*,
No. 2:24-cv-00007-RWS (N.D. Ga. filed Jan. 16, 2024).

Washington, D.C. 20005
Tel: (202) 514-5633
Fax: (202) 616-8470
lisa.olson@usdoj.gov

Counsel for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on July 5, 2024, the foregoing Defendants' Reply in Support of

Cross-Motion To Dismiss Or Alternatively For Summary Judgment was electronically filed in

this case with the Clerk of the Court, utilizing the ECF system, which sent notification to all

counsel of record.


/s/ *Lisa A. Olson*
Lisa A. Olson