IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS, BEAUMONT DIVISION

| | |
|---|---|
| COALITION FOR WORKFORCE INNOVATION, *et al.*, </br></br> Plaintiffs, </br></br> v. </br></br> SU, ACTING SECRETARY, UNITED STATES DEPARTMENT OF LABOR, *et al.*, </br></br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) )   Case No. 1:21-cv-00130-MAC |

### DEFENDANTS' SUPPLEMENTAL BRIEF
### PURSUANT TO THE COURT'S OCTOBER 30, 2024 ORDER

Defendants submit this supplemental brief in support of their Cross-Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment ("Def. Memo.") [ECF No. 72], in response to the Court's October 30, 2024 Order directing the parties to "submit simultaneous supplemental briefing[] explaining the effect, if any, that the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), has on the issues before the court in the case at bar." ECF No. 101.

1. As a threshold matter, the core holding of *Loper Bright* has no impact on the outcome of this case, although *Loper Bright*'s underlying principles support upholding the 2024 Rule challenged here. In *Loper Bright*, the Supreme Court overruled *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), which had treated "statutory ambiguities" as "implicit delegations to agencies." *Loper Bright*, 144 S. Ct. at 2254. The Supreme Court concluded that "[t]he deference that *Chevron* requires of courts reviewing agency action cannot be squared with the APA." *Id.* at 2263. The Supreme Court held that courts must instead

"exercise independent judgment in determining the meaning of statutory provisions." *Id.* at 2262-63.

*Loper Bright*'s overruling of *Chevron* does not affect the outcome of this case, because the U.S. Department of Labor ("DOL") has not invoked *Chevron* deference in support of upholding the challenged rule. Nor would DOL have had any reason to do so, because the 2024 Rule contains the Department's "general interpretations for determining whether workers are employees or independent contractors" under the FLSA and does not purport to be a legally binding substantive rule. 29 C.F.R. 795.100. Rather, it is "intended to serve as a 'practical guide to employers and employees'" on "how the Department will seek to apply the Act[,]" and which the "Administrator of the Department's Wage and Hour Division will use" to "guide the performance of their duties under the Act." *Id.* (citing *Skidmore* v. *Swift & Co.,* 323 U.S. 134, 138 (1944)).

2. Although *Loper Bright*'s overruling of *Chevron* does not affect the outcome of this case, the 2024 Rule is nevertheless consistent with the Supreme Court's emphasis in *Loper Bright* on the primacy of the judiciary as "the final authority on issues of statutory construction," 144 S. Ct. at 2266, because it adopts an economic reality analysis that reflects 70-plus years of *judicial* precedent interpreting the FLSA. 29 C.F.R. § 795.110; 89 Fed. Reg. 1651 & nn. 125, 126, 1668. Since the 1940s, courts have applied an "economic reality" analysis, grounded in the FLSA's broad definition of employment, to determine whether a worker is an employee or an independent contractor under the Act. 89 Fed. Reg. 1638, 1641-42 (citing *Rutherford*, 331 U.S. 722 (1947) and discussing *U.S. v. Silk*, 331 U.S. 704 (1947); *Bartels v. Birmingham*, 332 U.S. 126 (1947)); *see* Def. Memo. [ECF No. 72] at 5-7. The analysis looks at whether, as a matter of economic reality, the worker is economically dependent on the employer for work (and is thus an

2

employee) or is in business for herself (and is thus an independent contractor). 89 Fed. Reg. 1638, 1641. In assessing economic dependence, courts have historically conducted a totality-of-the-circumstances analysis and considered multiple factors, with no one factor or factors having predetermined weight. 89 Fed. Reg. 1638, 1641-44; Memorandum and Order [ECF No. 32] at 28-33; *see* Memorandum and Order at 28 ("Although courts consistently note that the factors for the economic realities test are non-exhaustive, some courts have differed in their application of the test.").

Indeed, it was the Supreme Court that first declared, and has since repeatedly emphasized, that employment status under the economic reality test turns upon the "circumstances of the whole activity," rather than "isolated factors." 89 Fed. Reg. 1651 & n.125 (quoting *Rutherford*, 331 U.S. at 730; citing *Silk*, 331 U.S. at 716, 719 (denying the existence of a "rule of thumb to define the limits of the employer-employee relationship" and determining employment status based on "the total situation")); *see* Def. Memo. [ECF No. 72] at 20-21. Similarly, federal appellate courts have consistently cautioned against a mechanical or formulaic application of the economic reality test, 89 Fed. Reg. 1651 & n.126 (citing cases), and specifically warn that it "'is impossible to assign to each of these factors a specific and invariably applied weight.'" 89 Fed. Reg. 1651 (quoting *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 380 (5th Cir. 2019) (quoting *Hickey v. Arkla, Inc.*, 699 F.2d 738, 752 (5th Cir. 1983)). Hence, neither the Fifth Circuit nor any other court of appeals considers any one factor or combination of factors to invariably predominate over the others. 89 Fed. Reg. 1642 & nn.52, 53[1]; *see* Def. Memo. [ECF 72] at 21.

---

[1] Citing *Parrish*, 917 F.3d at 380 (stating that "the test cannot be rigidly applied" and "[i]t is impossible to assign to each of these factors a specific and invariably applied weight"); *Acosta v. Off Duty Police Servs., Inc.*, 915 F.3d 1050, 1055 (6th Cir. 2019) ("None of these factors is

The 2024 Rule is consistent with this approach—and fits within this Court's description of the relevant case law in its March 14, 2022 Memorandum and Order, [ECF No. 32] at 28-33—because it embodies a totality-of-the-circumstances economic reality analysis in which the factors do not have predetermined weight. 89 Fed. Reg. 1645. Just as courts have done for more than 70 years, the analysis in the 2024 Rule applies the economic reality test by examining the totality of the circumstances and does not single out any factor as dispositive. 89 Fed. Reg. 1668; *see* Def. Memo. [ECF No. 72] at 20-21. The 2024 Rule therefore does not usurp "the judicial role . . . 'to interpret the act of Congress,'" *Loper Bright*, 144 S. Ct. at 2257; rather, it mirrors decades of pre-existing judicial precedent interpreting the FLSA and reflects "the best reading of the statute" as already interpreted by courts. *Id.* at 2266.

"[E]xercising its independent judgment," *see Loper Bright*, 144 S. Ct. at 2269, this Court has already determined that "a version of the Independent Contractor Rule that did not elevate

---

determinative on its own, and each must be considered with an eye toward the ultimate question – [the worker's] economic dependence on or independence from the alleged employer."); *Acosta v. Paragon Contractors Corp.*, 884 F.3d 1225, 1235 (10th Cir. 2018) ("The overarching inquiry is based on the totality of the circumstances, and no single factor is dispositive."); *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1311-12 (11th Cir. 2013) ("The weight of each factor depends on the light it sheds on the putative employee's dependence on the alleged employer, which in turn depends on the facts of the case."); *Morrison v. Int'l Programs Consortium, Inc.*, 253 F.3d 5, 11 (D.C. Cir. 2001) ("No one factor standing alone is dispositive and courts are directed to look at the totality of the circumstances and consider any relevant evidence."); *Martin v. Selker Bros.*, 949 F.2d 1286, 1293 (3d Cir. 1991) ("It is a well-established principle that the determination of the employment relationship does not depend on isolated factors . . . [N]either the presence nor the absence of any particular factor is dispositive."); *Brock v. Superior Care*, 840 F.2d 1054, 1059 (2d Cir. 1988) ("No one of these factors is dispositive; rather, the test is based on a totality of the circumstances. . . . Since the test concerns the totality of the circumstances, any relevant evidence may be considered, and mechanical application of the test is to be avoided."); *Sec'y of Labor v. Lauritzen*, 835 F.2d 1529, 1534 (7th Cir. 1987) ("Certain criteria have been developed to assist in determining the true nature of the relationship, but no criterion is by itself, or by its absence, dispositive or controlling."); *see also* 89 Fed. Reg. 1669 & n.239.

4

any factors as core factors" would be "certainly within the ambit of the existing policy." Memorandum and Order (March 14, 2022) [ECF No. 32] at 38. The 2024 Rule does just that. Moreover, in this Court's digest of the case law interpreting the FLSA, none of the cases cited by the Court elevated two core factors in the economic reality analysis. *See id.* at 28-33. Instead, those cases uniformly emphasized a totality-of-the-circumstances approach, thereby supporting the conclusion that the elevation of two core factors would not be consistent with the FLSA. And even to the extent those cases -- which this Court invoked and on which the 2024 Rule relies -- were decided in reference to the principles of *Chevron*, the Supreme Court made clear that they are not in doubt by virtue of its decision *Loper Bright*. *See Loper Bright*, 144 S. Ct. at 2273 (stating that in overruling *Chevron*, "we do not call into question prior cases that relied on the *Chevron* framework").

    3. Contrary to the Court's analysis of the relevant case law, the 2021 Rule designated two "core factors" to always carry greater weight than the others in the economic reality analysis. 89 Fed. Reg. 1638; *see* 29 C.F.R. § 795.105(c), *quoted in* 86 Fed. Reg. 1246; *see* Def. Memo. [ECF No. 72] at 9-10. Under that Rule, the remaining factors would be "less probative" and "'highly unlikely, either individually or collectively, to outweigh the combined probative value of the two core factors.'" 89 Fed. Reg. 1645. But such an approach is inconsistent with both this Court's synopsis of applicable case law, and the longstanding judicial constructions of the FLSA that underlie that synopsis and are similarly reflected in the 2024 Rule. Thus, where the 2024 Rule is in harmony with "the judicial role . . . 'to interpret the act of Congress,'" *Loper Bright*, 144 S. Ct. at 2257, the 2021 Rule is at odds with *Loper Bright*'s designation of courts as the "final authority" in interpreting federal statutes. *Loper Bright*, 144 S. Ct. at 2266.

4. *Loper Bright* also supports upholding the 2024 Rule because the Court reaffirmed the review standard set forth in *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). Quoting *Skidmore*, 323 U.S. at 139-40, the Supreme Court in *Loper Bright* explained that "the interpretations and opinions' of the relevant agency, 'made in pursuance of official duty' and 'based upon ... specialized experience,' 'constitute[d] a body of experience and informed judgment to which courts and litigants [could] properly resort for guidance,' even on legal questions." *Loper Bright*, 144 S. Ct. at 2259. The Supreme Court further stated that "'[t]he weight of such a judgment in a particular case' . . . , would 'depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.'" *Id.* (quoting *Skidmore*, 323 U.S. at 140); *see id.*, 144 S. Ct. at 2309 (Kagan, J., dissenting) ("[T]he majority makes clear that what is usually called *Skidmore* deference continues to apply."). Moreover, agency interpretations are entitled to particular respect when they are "issued roughly contemporaneously with enactment of the statute and remained consistent over time." *Id.* at 2258.

Not only does the 2024 Rule accurately reflect decades of judicial precedent, but it is also consistent with DOL's own previous subregulatory guidance dating back to 1949, only a little over a decade following the passage of the FLSA (and contemporaneous with the Supreme Court's decisions interpreting the FLSA). 89 Fed. Reg. 1642-43 (detailing in a June 23, 1949 opinion letter the Department's reliance on Supreme Court precedent outlining the multifactor economic reality test in which "no single factor is controlling"). While considering more than 55,000 public comments, DOL comprehensively explained its reasonable justifications for the Rule, which relied extensively on decades of jurisprudence adopting and applying a totality-of-

the-circumstances multifactor economic reality test that does not consider any factor to be dispositive or to have predetermined weight. The 2024 Rule therefore is entitled to respect under *Skidmore*.

5. The 2024 Rule rescinded the 2021 Rule and separately replaced it with an interpretation that is more consistent with judicial precedent and the Act's text and purpose as interpreted by the courts. 89 Fed. Reg. 1638, 1647; *see* 29 C.F.R. Part 795. But even if the Court does not uphold the 2024 Rule's interpretation of the economic reality test under the FLSA, in crafting relief it should preserve the portion of the 2024 Rule which rescinded the 2021 Rule. *See* 89 Fed. Reg. 1664 (describing the agency's intention for the rescission of the 2021 Rule to operate independently from the regulatory interpretations in the 2024 Rule). In this Court's earlier order holding that the delay and withdrawal of the 2021 Rule should be vacated, this Court identified procedural infirmities in DOL's decision to delay and then withdraw the 2021 Rule. Any such defects do not afflict the 2024 Rule.

First, the Court held that the Withdrawal Rule was invalid because DOL had "failed to consider potential alternatives to rescinding" the 2021 Rule. Memorandum and Order [ECF No. 32] at 27. However, in promulgating the 2024 Rule, DOL considered four alternatives to rescinding and replacing the 2021 Rule. Def. Memo. [ECF No. 72] at 38-40; 89 Fed. Reg. 1660-64. It reasonably rejected them as inconsistent with the FLSA or judicial precedent, or as not enabling DOL to allow for notice-and-comment. Def. Memo. at 39-40.

Second, the Court faulted DOL's use of a shortened 19-day (instead of 30-day) comment period in its proposal to delay the 2021 Rule's original effective date, and further faulted DOL's failure to consider comments beyond its proposal to delay the 2021 Rule's effective date. Memorandum and Order [ECF No. 32] at 15, 21. The 2024 Rule, on the other hand, provided a

7

comment period of 61 days, 89 Fed. Reg. 1639, 1645-46, and imposed no limitation on comments.

And third, the Court found that DOL had improperly bypassed the 30-day waiting period for the Delay Rule to go into effect, as it became effective immediately.  Memorandum and Order at 23-25.  In contrast, the 2024 Rule was published on January 10, 2024, but did not go into effect until 61 days later, on March 11, 2024.  Thus, none of the procedural shortcomings in the delay and withdrawal of the 2021 Rule are present with respect to the 2024 Rule.  The portion of the 2024 Rule that rescinds the 2021 Rule should therefore stand even if this Court were to grant plaintiffs' requested relief regarding the regulatory interpretations contained in the 2024 Rule.

6. As a final matter, *Loper Bright*'s holding that courts must exercise independent judgment in construing statutes administered by agencies also has no effect on the remaining issues in this case.  That holding does not affect the threshold jurisdictional question of whether plaintiffs have standing, given that plaintiffs have shown no certainly impending injury, causality, or redressability.  *See* Def. Memo. [ECF No. 72] at 12-18.  Nor is *Loper Bright* applicable to the question of whether plaintiffs have stated a claim under the Regulatory Flexibility Act, which "requires federal agencies to consider the effect that agency regulations will have on small entities, analyze effective alternatives that may minimize a regulation's impact on such entities, and make the analyses available for public comment."  *Grocery Servs., Inc. v. USDA Food & Nutrition Serv.*, 2007 WL 2872876, at *10 (S.D. Tex. Sept. 27, 2007); 5 U.S.C. §§ 601–604.; *see* Def. Memo. [ECF No. 72] at 41.  Finally, *Loper Bright* is similarly inapplicable to the purely legal question of whether section 706(2) of the APA, 5 U.S.C. § 706(2), authorizes vacatur of the 2024 Rule.  *See* Def. Memo. at 45.  None of these issues

involves the question of whether the Court should defer to an agency's construction of a federal statute, nor have defendants relied on *Chevron* in connection with them and, accordingly, the decision in *Loper Bright* does not affect them.

Dated: Nov. 20, 2024                    Respectfully submitted,

                                        BRIAN M. BOYNTON
                                        Acting Assistant Attorney General

                                        JULIE STRAUS HARRIS
                                        Assistant Director, Federal Programs Branch

                                        /s/ *Lisa A. Olson*
                                        Lisa A. Olson
                                        Senior Trial Counsel
                                        U.S. Department of Justice
                                        Civil Division, Federal Programs Branch
                                        1100 L Street, N.W., Room 12200
                                        Washington, D.C. 20005
                                        Tel: (202) 514-5633
                                        Fax: (202) 616-8470
                                        lisa.olson@usdoj.gov

                                        Counsel for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2024, the foregoing Defendants' Supplemental Brief Pursuant to the Court's October 30, 2024 Order was electronically filed in this case with the Clerk of the Court, utilizing the ECF system, which sent notification to all counsel of record.

                                        /s/ *Lisa A. Olson*
                                        Lisa A. Olson

9