## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## AT NASHVILLE

| | | |
|---|---|---|
| **MARGARET LITTMAN** *et al.* | ) | |
| | ) | **Case No. 3:24-cv-00194** |
| **v.** | ) | **Judge Crenshaw** |
| | ) | **Magistrate Judge Holmes** |
| **UNITED STATES DEPARTMENT** | ) | |
| **OF LABOR** *et al.* | ) | |

TO:    Honorable Waverly D. Crenshaw, Jr., United States District Judge

### REPORT AND RECOMMENDATION[1]

Plaintiffs Margaret Littman and Jennifer Chesak initiated this case under the Administrative Procedures Act, 5 U.S.C. § 702, *et seq.* ("APA") against Defendants the United States Department Labor ("DOL"), the DOL's Wage and Hour Division, Julie Su in her official capacity as acting U.S. Secretary of Labor, and Jessica Looman in her official capacity as head of the DOL's Wage and Hour Division. Plaintiffs seek declaratory and injunctive relief related to the DOL's implementation of a 2024 rule titled "Employee or Independent Contractor Classification Under the Fair Labor Standards Act," which was promulgated to help determine whether someone is an "employee" under the Fair Labor Standards Act, 29 U.S.C. §§ 702, *et seq.* ("FLSA").

Presently pending before the Court are three cross-motions: Plaintiffs' motion for preliminary injunction (Docket No. 7); Defendants' motion to dismiss or, in the alternative, for summary judgment (Docket No. 11); and Plaintiffs' motion for summary judgment (Docket No. 25).

---

[1] By order entered February 26, 2024, the Court referred the above captioned case to the Magistrate Judge to dispose or recommend disposition of any pretrial motions under 28 U.S.C. § 636(b)(1)( B), Rule 72 of the Federal Rules of Civil Procedure, and the Local Rules of the Court. (Docket No. 4.)

For the reasons discussed below, the undersigned respectfully recommends that Plaintiffs' motion for preliminary injunction (Docket No. 7) be **DENIED**; Defendants' motion to dismiss or, in the alternative, for summary judgment (Docket No. 11) be **GRANTED**; and Plaintiffs' motion for summary judgment (Docket No. 25) be **DENIED**.

## I.    LEGAL BACKGROUND

### A.    The FLSA

Congress enacted the FLSA in 1938 to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). The FLSA requires employers to provide certain benefits to their employees, including the payment of a minimum wage and overtime wages. 29 U.S.C. §§ 201–19. The FLSA applies only to employees, which it defines as "any individual employed by an employer." 29 U.S.C. § 203(e)(1)); *Gilbo v. Agment, LLC*, 831 F. App'x 772, 775 (6th Cir. 2020). The FLSA does not apply to independent contractors, and it does not define that term. *Id.*

To determine whether a worker is an employee or independent contractor, courts typically apply what has come to be known as the economic realities test. *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 807 (6th Cir. 2015). The Sixth Circuit has identified six factors to consider when applying this test: (1) the permanency of the relationship between the parties; (2) the degree of skill required for the rendering of the services; (3) the worker's investment in equipment or materials for the task; (4) the worker's opportunity for profit or loss, depending upon his skill; (5) the degree of the alleged employer's right to control the manner in which the work is performed; and (6) whether the service rendered is an integral part of the alleged employer's business. *Id.* (citing *Donovan v. Brandel*, 736 F.2d 1114, 1117 (6th Cir. 1984)). No one factor is determinative.

*Id.* Rather, the "central question is the worker's economic dependence upon the business for which

he is laboring." *Brandel*, 736 F.2d at 1120.

## B.    The DOL's 2021 Rule and 2024 Rule

In January 2021, the DOL issued a rule interpreting a worker's status as an employee or

independent contractor under the FLSA (the "2021 Rule"). 86 Fed. Reg. 1168. The 2021 Rule was

intended to "promote certainty for stakeholders, reduce litigation, and encourage innovation in the

economy." *Id.* at 1168. The 2021 Rule emphasized two "core factors" when determining whether

to classify a worker as an employee or independent contractor: (1) the nature and degree of the

worker's control over the work; and (2) the worker's opportunity for profit or loss. *Id.* at 1171.

According to Plaintiffs, the 2021 Rule "provided clarity and helped alleviate the problem

of misclassification under FLSA, benefiting both businesses and workers." (Docket No. 1 at ¶ 26.)

Plaintiffs also contend that the DOL included a "robust cost-benefit analysis" and "relied on an

exhaustive study of facts, statutory, and other legal considerations" when it decided to adopt the

2021 Rule. (*Id.* at ¶ 27 (citing 86 Fed. Reg. 1168).)

However, in October 2022, the DOL announced rulemaking to replace the 2021 Rule. This

new rule was finalized on January 10, 2024 and went into effect on March 11, 2024 (the "2024

Rule"). 89 Fed. Reg. 1638.[2] The 2024 Rule, like the 2021 Rule, "addresses how to determine

whether a worker is properly classified as an employee or independent contractor." *Id.* at 1638. It

provides "general interpretations for determining" a worker's employment status and is "intended

---

[2] The 2024 Rule amended certain sections of Title 29 of the Code of Federal Regulations, which pertains to Labor. This includes Chapter 5, titled "Wage and Hour Division, Department of Labor"; Subchapter B, titled "Statements of General Policy or Interpretation Not Directly Related to Regulations"; Part 795 "Employee or Independent Contractor Classification Under the Fair Labor Standards Act"; and Section 795.110, titled "Economic reality test to determine economic dependence." 89 Fed. Reg. 1638, 1741–42.

to serve as a 'practical guide to employers and employees' as to how the [DOL] will seek to apply the [FLSA]." *Id.* at 1741–42 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 138 (1944)). The 2024 Rule was intended to "replace" the analysis for determining a worker's status with one that "is more consistent with judicial precedent and the [FLSA's] text and purpose." *Id.* at 1638. The 2024 Rule is meant to guide the administrator of the DOL's Wage and Hour Division "unless and until . . . otherwise directed by authoritative decisions of the courts." *Id.* at 1742.

The 2024 Rule eliminated the two "core factors" set forth in the 2021 Rule and, instead, adopted an "economic reality test" that focuses on "whether the worker is either economically dependent on the potential employer for work or in business for themself." 89 Fed. Reg. 1638, 1742. That test is based on six non-exhaustive factors that are meant to "guide an assessment of the economic realities of the working relationship and the question of economic dependence." *Id.* Those six factors are: (1) "opportunity for profit or loss depending on managerial skill"; (2) "investments by the worker and the potential employer"; (3) "degree of permanence of the work relationship"; (4) "nature and degree of control"; (5) "extent to which the work performed is an integral part of the potential employer's business"; and (6) "skill and initiative." *Id.* Additional factors may be relevant if they "indicate whether the worker is in business for themself, as opposed to being economically dependent on the potential employer for work." *Id.*

According to Plaintiffs, the 2024 Rule provides "no guidance or useful information about how to classify and structure economic relationships." (Docket No. 1 at ¶ 35.) Accordingly, they contend that it will "lead to increased confusion, litigation, and costs" because businesses and workers will find it difficult to distinguish between employees and independent contractors under the 2024 Rule's "economic reality test." (*Id.*) Plaintiffs argue that the DOL "cited contradictory

case law and acknowledges that it is adopting the view held by some courts over the view held by other courts in formulating the 2024 Rule." (*Id.* at ¶ 34.)

## II.    FACTUAL AND PROCEDURAL BACKGROUND[3]

Plaintiffs are freelance writers based in Nashville, Tennessee. (Docket No. 1 at ¶ 2.) They do not wish to be classified as employees under the FLSA. (*Id.* at ¶¶ 39, 44.) They believe that the 2024 Rule increases the risk that the companies with which they work will face liability for classifying them as independent contractors and will cease to work with them. (*Id.* at ¶¶ 41, 46.) Plaintiffs assert that, under the prior 2021 Rule, they were able to confidently predict how their commercial relationships with employers would be evaluated. (*Id.*) However, under the current 2024 Rule, Plaintiffs contend they face confusion and uncertainty, which, they allege, "will chill [their] future business practices." (*Id.*)

Plaintiff Chesak asserts that companies with which she works have "taken measures" to comply with the 2024 Rule that have harmed her. (*Id.* at ¶ 45.) She states that companies have required her to "spend many unpaid hours documenting precise tasks she performs as a freelancer"; "limited the number of hours [she] can work . . . as a freelancer"; and required her "to sign an agreement to indemnify the company if it were found liable for misclassifying" her. (*Id.*)

In their complaint –filed on February 21, 2024, before the 2024 Rule became effective – Plaintiffs assert three claims for relief against Defendants. *First*, Plaintiffs claim that Defendants violated the APA because the 2024 Rule is "arbitrary, capricious, an abuse of discretion, and

---

[3] Because Defendants' motion to dismiss is before the Court (Docket No. 11), the Court takes these facts from Plaintiffs' complaint. However, because the parties' motions for summary judgment are also before the Court, the Court will discuss which material facts are or are not disputed when analyzing the merits of the parties' arguments.

otherwise not in accordance with law." (*Id.* at ¶ 53.) In support of this claim, Plaintiffs assert that the DOL "failed to provide a reasoned explanation for its shift from the 2021 Rule's two-factor test to the 2024 Rule's six-factor test." (*Id.* at ¶ 50.) *Second*, Plaintiffs claim that Defendants violated the APA because the 2024 Rule is "in excess of statutory jurisdiction [or] authority." (*Id.* at ¶ 54.) In support of this claim, Plaintiffs assert that the 2024 Rule deviates from the text of the FLSA and that the FLSA does not provide the DOL with the authority to promulgate legislative rules that determine whether an employment relationship exists under the FLSA. (*Id.* at ¶¶ 55–56.) *Third and finally*, Plaintiffs claim that Defendants violated the non-delegation doctrine and separation of powers set forth in Article 1, Section 1 of the United States Constitution. (*Id.* at ¶ 58.) In support of this claim, Plaintiffs assert that Congress did not grant the DOL the authority to promulgate legislative rules to determine whether an employment relationship exists under the FLSA. (*Id.* at ¶ 61.)

Plaintiffs ask the Court to provide them with the following relief: enjoin Defendants preliminarily and permanently from enforcing the 2024 Rule; issue a declaratory judgment holding that the 2024 Rule is unlawful and setting it aside; award attorney's fees and costs; and issue any other relief the Court deems proper. (*Id.* at 12.)

Shortly after filing their complaint, Plaintiffs filed a motion for preliminary injunction. (Docket No. 7.) In response, Defendants moved to dismiss Plaintiffs' claims, or, in the alternative, moved for summary judgment on Plaintiffs' claims. (Docket No. 11.) Defendants opposed Plaintiffs' motion for preliminary injunction and supported their own motion with a "Consolidated Brief in Opposition to Plaintiffs' Motion for Preliminary Injunction and in Support of Defendants' Cross-Motion to Dismiss or, in the Alternative, for Summary Judgment" (Docket No. 12), a

statement of undisputed material facts (Docket No. 13), and a notice of filing of the administrative record along with the administrative record itself (Docket Nos. 14, 14-1).

In response to these filings, Plaintiffs filed a combined cross-motion for summary judgment, opposition to Defendants' cross-motion to dismiss, and reply in support of their motion for preliminary injunction (Docket No. 25); Defendants filed a combined opposition to Plaintiffs' cross-motion for summary judgment, and reply in support of their cross-motion to dismiss (Docket No. 27); and Plaintiffs filed a reply in support of their cross-motion for summary judgment (Docket No. 31).[4]

The parties' three cross-motions – (1) Plaintiffs' motion for preliminary injunction; (2) Defendants' motion to dismiss, or in the alternative, for summary judgment; and (3) Plaintiffs' motion for summary judgment – are fully briefed and ripe for this Court's consideration.

### III.    LEGAL STANDARDS

#### A.    Motion for Preliminary Injunction Standard

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington–Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). The movant bears the burden of making a "clear showing" of the need for the grant of a preliminary injunction. *Doe v. Burlew*, No. 4:24-CV-00045-GNS, 2024 WL 3402531, at *3 (W.D. Ky. Jul. 12, 2024) (citing *Gonzales v. O Centro Espirita Beneficente Uniã do Vegetal*, 546 U.S. 418, 429 (2006) ("[T]he

---

[4] The Court considered, but was not bound by, arguments and legal authority set forth in other, later filings, including a brief in support of Defendants' opposition to Plaintiffs' motion for preliminary injunction filed by amici curiae National Employment Law Project and Public Citizen, Inc. (Docket No. 29); a notice of supplemental authority filed by Defendants (Docket No. 39); and a response to the notice of supplemental authority filed by Plaintiffs (Docket No. 40).

7

burdens at the preliminary injunction stage track the burdens at trial.")). A plaintiff seeking a preliminary injunction may not rely on unsupported allegations, but rather must come forward with more than "scant evidence" to substantiate their allegations. *Tactical Edge, LLC v. Garland*, 696 F. Supp. 3d 460, 463 (M.D. Tenn. 2023) (citations omitted).

The party seeking a preliminary injunction must meet make four showings: (1) a likelihood of success on the merits, (2) irreparable harm in the absence of the injunction, (3) that the balance of equities favors them, and (4) that public interest favors an injunction. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008); *Sisters for Life, Inc. v. Louisville-Jefferson Cnty.*, 56 F.4th 400, 403 (6th Cir. 2022). "These factors are not prerequisites that must be met but are interrelated considerations that must be balanced together." *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991) (citing *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985)). Notwithstanding this balancing approach, however, the likelihood of success and irreparable harm factors predominate the preliminary injunction inquiry. *Cox v. Jackson*, 579 F. Supp. 2d 831, 853 (E.D. Mich. 2008). Accordingly, "[a]lthough no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. National Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000)

**B.    Motion to Dismiss Legal Standard**

A motion made under Rule 12(b)(6) asks the Court to test the legal sufficiency of the allegations made in the complaint. When presented with a motion to dismiss under Rule 12(b)(6), the Court does not assess the veracity of disputed facts, but whether the facts as alleged in the complaint "establish a cognizable theory of relief." *Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*, 255 F.R.D. 443, 446 (W.D. Mich. 2009).

Generally, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to survive a motion to dismiss under Rule 12(b)(6). *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 444 (6th Cir. 2012) (quoting Fed. R. Civ. P. 8(a)(2)). When reviewing a motion made under Rule 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff[] [and] accept all well-pleaded factual allegations as true[.]" *Matthew N. Fulton, D.D.S., P.C. v. Enclarity, Inc.*, 907 F.3d 948, 951–52 (6th Cir. 2018) (quoting *Hill v. Snyder*, 878 F.3d 193, 203 (6th Cir. 2017)). Matters outside of the pleadings are generally not considered in connection with a Rule 12(b)(6) motion to dismiss. *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011) (citation omitted).

## C.    Motion for Summary Judgment Legal Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A genuine issue of material fact is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of showing the absence of a genuine dispute over material facts. *Id.* at 249–50. Once the moving party has presented evidence sufficient to support a motion for summary judgment, the non-moving party must present significant probative evidence to support its position. *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). In considering whether summary judgment is appropriate, the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Sowards v. Loudon Cnty.*, 203 F.3d 426, 431 (6th Cir.), *cert. denied*, 531 U.S. 875 (2000). The Court must view the evidence and all inferences

9

drawn from underlying facts "in the light most favorable to the party opposing the motion." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd.*, 475 U.S. 574, 587 (1986); *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir.), *cert. denied*, 534 U.S. 896 (2001).

When a motion for summary judgment is properly supported under Rule 56, the non-moving party may not merely rest on the allegations in the litigation but must respond with affirmative evidence supporting his claims and establishing the existence of a genuine issue of material fact that requires that the action proceed to trial. *See Celotex Corp.*, 477 U.S. at 323–24; *Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003); *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). Conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In other words, to defeat summary judgment, the party opposing the motion must present affirmative evidence to support his or her position; a mere "scintilla of evidence" is insufficient. *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252).

## IV.    ANALYSIS

Plaintiffs seek summary judgment on their claims and ask the Court to set aside the 2024 Rule as unlawful under the APA and the U.S. Constitution. Plaintiffs also ask the Court to preliminarily enjoin Defendants from enforcing the 2024 Rule. By contrast, Defendants seek to dismiss Plaintiffs' claims because they believe Plaintiffs lack standing. Alternatively, Defendants seek summary judgment in their favor because they contend that the 2024 Rule does not violate the APA or U.S. Constitution.

10

Under the APA, Plaintiffs must demonstrate that they have both constitutional and prudential standing. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016) ("Article III standing requires a concrete injury even in the context of a statutory violation."). "[T]he proper practice is to resolve all questions regarding subject matter jurisdiction prior to ruling upon merits of the claim." *Gross v. Hougland*, 712 F.2d 1034, 1036 (6th Cir. 1983). The Court, therefore, will begin with a discussion on standing before ruling upon the merits of Plaintiffs' claims under the APA and the U.S. Constitution, if appropriate.

## A.    The Standing Doctrine

To establish subject matter jurisdiction, a plaintiff must show, among other things, that she has standing to litigate a particular claim. *Copas v. Lee*, 396 F. Supp. 3d 777, 786 (M.D. Tenn. 2019) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998) ("Standing to sue is part of the common understanding of what it takes to make a justiciable case."); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) ("[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III.")). The standing doctrine limits the category of federal court litigants to those whose disputes are appropriately resolved through the judicial process – preventing courts from "being used to usurp the powers of the political branches." *Protect Our Aquifer v. Tennessee Valley Auth.*, 654 F. Supp. 3d 654, 668 (M.D. Tenn. 2023) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013)). Simply put, standing preserves the "proper – and properly limited – role of the courts in a democratic society." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).

To demonstrate standing, a plaintiff must establish that (1) she suffered an injury in fact – a legally-protected interest that is concrete, particularized, and actual or imminent; (2) the defendants likely caused the injury; and (3) judicial relief would likely redress the injury. *Defs. of*

*Wildlife*, 504 U.S. at 560–61. The injury-in-fact element requires the plaintiff to "allege an injury to [her]self that is distinct and palpable, as opposed to merely abstract, and the alleged harm must be actual or imminent, not conjectural or hypothetical." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (internal citations omitted). For an injury to be sufficiently distinct, or "particularized," it "must affect the plaintiff in a personal and individual way." *Spokeo*, 578 U.S. at 339 (citation omitted). In addition to being particularized, the injury must also be "concrete," which means that it must be "*de facto*," must actually exist, and must be real rather than abstract. *Id.* at 339–40 (citation omitted).

"The party invoking federal jurisdiction bears the burden of establishing these elements. Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Defs. of Wildlife*, 504 U.S. at 561 (internal citations and quotation marks omitted). Where a plaintiff moves for a preliminary injunction, the district court should normally evaluate standing "under the heightened standard for evaluating a motion for summary judgment." *Waskul v. Washtenaw Cnty. Comm. Mental Health*, 900 F.3d 250, 255 n.3 (6th Cir. 2018) (quotation omitted). However, under a motion to dismiss under Rule 12, general factual allegations of injury resulting from the defendant's conduct may suffice to establish standing because the litigation is at the pleading stage. *See Nat'l Wildlife Fed'n*, 497 U.S. at 889 (a motion to dismiss "presumes that general allegations embrace those specific facts that are necessary to support the claim"). At the summary judgment stage, however, the party invoking federal jurisdiction and responding to the summary judgment motion "cannot rely on 'mere allegations' with respect to each standing element, 'but must set forth by affidavit or other evidence specific facts, which for

12

purposes of the summary judgment motion will be taken to be true.'" *McKay v. Federspiel*, 823 F.3d 862, 867 (6th Cir. 2016) quoting *Defs. of Wildlife*, 504 U.S. at 561). *See also Clapper*, 568 U.S. at 411–12.

Here, the Court is faced with all three motions – for a preliminary injunction against Defendants, to dismiss Plaintiffs' claims, and for summary judgment on Plaintiffs' claims. However, because the litigation is past the pleading stage and at the summary judgment stage, the Court will examine whether Plaintiffs have set forth specific facts, either by affidavit or other evidence, to demonstrate standing or whether Plaintiffs have relied on mere allegations to demonstrate standing. *McKay*, 823 F.3d at 867.

## B.    The Parties' Arguments

Defendants contend that Plaintiffs have failed to establish a "substantial likelihood" of standing. Their argument centers on whether Plaintiffs have demonstrated the injury-in-fact element. Defendants contend that Plaintiffs' claimed injuries are "founded upon mere speculation" that the 2024 Rule will cause them harm. (Docket No. 12 at 16.)

In their complaint, both Plaintiffs make several identical allegations of injuries. They contend that the 2024 Rule "increases the risk" that the companies with which they work will "face liability," "misclassify" them as employees, and "cease to work" with them. (Docket No. 1 at ¶¶ 41, 46.) Plaintiffs also contend that the 2024 Rule "will chill" their business practices. (*Id.* at ¶¶ 42, 47.) In response, Defendants assert that these alleged injuries are neither claims of specific present objective harm or threats of a specific future harm. (Docket No. 12 at 17 (citing *Clapper*, 568 U.S. at 418).) Defendants argue that Plaintiffs' fears are unreasonable because the 2024 Rule was intended to not disrupt the business of independent contractors like Plaintiffs and because the

2024 Rule is derived from the "economic realities" test that has been applied by courts for decades. (*Id.* at 17–18.)

Plaintiff Chesak makes allegations of ways in which she alone was injured. She asserts that she "works with companies that, to comply with the 2024 Rule, have taken measures that harm" her. (Docket No. 1 at ¶ 45.) Those measures include requiring her to spend unpaid hours documenting tasks that she performs as a freelancer, limiting the number of hours she can work as a freelancer, and requiring her to sign an agreement to indemnify the company if it were found liable for misclassifying her. (*Id.*) In response, Defendants argue that Plaintiff Chesak's allegations also do not establish standing. Defendants argue that these injuries are merely "conclusory statement[s]" and the complaint is devoid of "plausible" allegations that these injuries were sustained as a result of the 2024 Rule. (Docket No. 12 at 18.) Defendants point out that the companies allegedly took these measures prior to the filing of the complaint on February 21, 2024, and therefore any alleged injuries were sustained before the 2024 Rule went into effect on March 11, 2024. (*Id.*) Defendants therefore maintain that these injuries were not caused by the 2024 Rule. (*Id.*)

In response to Defendants' arguments, Plaintiffs contend that they meet the injury, traceability, and redressability requirements. (Docket No. 25-1 at 5–9.) They assert that the 2024 Rule does, indeed, inflict multiple injuries on them. In particular, they claim that the 2024 Rule "threatens" "classic pocketbook injury'" on them because it "threatens to unravel their economic relationships." (Docket No. 25-1 at 5.) They also claim that the 2024 Rule imposes "administrative and compliance costs and burdens" on them because companies have "passed along" costs to freelancers. (*Id.*) Plaintiffs point specifically to the costs imposed on Plaintiff Chesak, including the unpaid time she has spent documenting her tasks, the limitation to her hours, and the

indemnification agreement she was required to sign. (*Id.*) Plaintiffs also contend that the administrative record shows that their injuries are not "speculative." (*Id.* at 6–7.) They point to prior objections from other people that are included in the record and that state that the 2024 Rule would create "uncertainty and confusion." (*Id.* at 7 (quoting 89 Fed. Reg. 1666–67).)

As for the traceability and redressability requirements, Plaintiffs urge that they met these as well. (Docket No. 25-1 at 8.) They contend that their injuries are traceable to the DOL's implementation of the 2024 Rule because it is not "implausible" or "illogical" that, in response to the 2024 Rule, companies would take the measures that Plaintiff Chesak alleges have harmed her. (*Id.*) They contend that their injuries are redressable because "a favorable decision would reinstate the 2021 Rule, which provided the Freelancers with greater clarity and certainty about how they can structure their economic relationships." (*Id.*)

In reply to Plaintiffs' arguments about the harms they have suffered, Defendants reiterate that the alleged injuries are "conjectural and hypothetical" and "speculative." (Docket No. 27 at 10.) They contend that Plaintiffs have provided "no factual basis" to show that compliance costs have been passed on to them. (*Id.*) According to Defendants, Plaintiffs' reliance on public comments criticizing the 2024 Rule is not enough to show that Plaintiffs themselves have suffered an injury because of the 2024 Rule. (*Id.* at 11.) This is particularly so considering that the DOL disagreed with those "unsworn, uncorroborated" comments and considering that the 2024 Rule "does nothing more than explain how the [DOL] will interpret the FLSA in its enforcement efforts." (*Id.* at 11–12.) Defendants also argue that the 2024 Rule's return to the status quo of the pre-2021 Rule period "belies" Plaintiffs' arguments of harm because Plaintiffs have not alleged that they were harmed before the 2021 Rule went into effect. (*Id.* at 11.)

In addition, Defendants contend that Plaintiffs' allegations regarding the injuries that Plaintiff Chesak sustained are more possible than plausible. (*Id.* at 12 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).) Plaintiffs argue that there is "nothing implausible" about their allegation that companies have taken measures that have harmed Plaintiff Chesak because of the 2024 Rule (Docket No. 25-1 at 8), but Defendants contend that it is equally possible that companies have taken the referenced measures that have allegedly harmed Plaintiff Chesak for reasons that have nothing to do with the 2024 Rule. (Docket No. 27 at 12.)

## C.    The Court's Analysis of Plaintiffs' Standing

The Court largely agrees with Defendants and finds that Plaintiffs have failed to demonstrate, for the purposes of their motion for preliminary injunction and motion for summary judgment, that they will suffer an "actual or imminent" injury related to the 2024 Rule. Most of Plaintiffs' alleged injuries are ones of future harm that stem from increased risks, confusion, and uncertainty. (Docket No. 1 at ¶¶ 41–42, 46–47.) The Supreme Court has explained that alleged future harms, like the ones that Plaintiffs have made, cannot be "too speculative … but rather must be *certainly* impending." *Kanuszewski v. Michigan Dep't of Health & Hum. Svcs.*, 927 F.3d 396, 409–10 (quoting *Clapper*, 568 U.S. at 409) (internal brackets omitted). The Supreme Court clarified that this does not require "literal certainty" but at least a "substantial risk" that the harm will occur. *Id.* (quoting *Clapper*, 568 U.S. at 414) (internal brackets omitted).

Plaintiffs claim that the 2024 Rule injures them because it provides no guidance on how to "classify and structure economic relationships," which "will lead to increased confusion, litigation, and costs" and will make it more difficult for businesses and workers to distinguish between employees and independent contractors. (Docket No. 1 at ¶ 35.) According to Plaintiffs, it is this uncertainty about how a worker is classified that "increases the risk" that companies will face

16

liability over how they classify workers and "increases the risk" that those companies will cease working with Plaintiffs. (*Id.* at ¶¶ 41, 46.) Plaintiffs also maintain that this uncertainty that "will chill" their "future business practices." (*Id.* at ¶¶ 42, 47.) All these allegations are ones of potential and future harm.

The Court finds that Plaintiffs have not plausibly alleged, much less demonstrated, that their injuries are "certainly impending." *Clapper*, 568 U.S. at 402. Plaintiffs' fatal problem is that they do not provide enough of a concrete link between the 2024 Rule and their alleged harms. In other words, they have not demonstrated a substantial risk that companies will cease to work with them or that their future business practices will be chilled because of the implementation of the 2024 Rule.

Instead, Plaintiffs' complaints of harm are premised on many assumptions.[5] Plaintiffs assume that the unidentified companies with which they work will behave in a certain way in response to the 2024 Rule. They also assume that this behavior from the companies will impact them in negative ways. For example, for Plaintiffs' alleged future injuries to occur, these companies would have to face liability from the DOL (or be certain enough that they would face liability from the DOL) because of their decision to classify Plaintiffs as either employees or independent contractors under the 2024 Rule. The companies would then have to stop working

---

[5] Plaintiffs' claims rest on the assumption that they are independent contractors and not employees. For purposes of summary judgment, the parties generally do not dispute that each Plaintiff "wishes to continue her work as an independent contractor" and not be classified as an employee. (Docket No. 27-1 at ¶¶ 28–29.) This assumption, however, does not necessarily establish, for purposes of analyzing standing in connection with summary judgment, that both Plaintiffs will always be considered "independent contractors" under the FLSA pursuant to the 2024 Rule. Nevertheless, the Court finds it unnecessary to wade deeper into this issue because of the other considerations that support the outcome recommended here.

17

with Plaintiffs because of their concerns stemming from the 2024 Rule, and not because of any other factors.

The analysis undertaken by the Sixth Circuit Court of Appeals in *Shelby Advocates for Valid Elections v. Hargett*, 947 F.3d 977 (6th Cir. 2020) [*Shelby Advocates*], is instructive. In that case, four individual plaintiffs and one organization filed suit against several election officials and entities claiming that "in future elections, the defendants will burden [the plaintiffs'] right to vote, dilute their votes, and disenfranchise them in violation of the Fourteenth Amendment's Equal Protection and Due Process clauses." *Id.* at 979. The district court dismissed the lawsuit because it found that the plaintiffs lacked a "concrete injury" and therefore lacked standing. *Id.* at 980. The Sixth Circuit agreed with the district court.

The Sixth Circuit found that the plaintiffs had an "imminence problem" when it came to their injuries, all of which were based on future harms. *Id.* at 981. The individual plaintiffs alleged that they planned to vote in future elections, but feared their votes would be denied or substantially burdened. *Id.* at 979–80. They pointed to a variety of election administration problems and to issues with digital voting machines, including that the machines sometimes "flipped" votes. *Id.* at 980. The Sixth Circuit summarized the individual plaintiffs' theory of injury as an "alleged future risk of vote dilution or vote denial stemming from maladministration and technology problems." *Id.* at 981. In other words, the plaintiffs relied on past harms (i.e. vote flipping) to demonstrate that future harms (i.e. a burden on their right to vote) were impending.

However, the Sixth Circuit held that the individual plaintiffs failed to demonstrate "imminent harm." *Id.* at 982. Importantly, the court held that "past occurrences of unlawful conduct" do not create standing to obtain an injunction against the risk of future unlawful conduct. *Id.* at 981 (citing *O'Shea v. Littleton*, 414 U.S. 488, 495–98 (1974) (allegation, based on past

18

examples, of discriminatory prosecution); *City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06 (1983) (allegation, based on plaintiff's past experience, that policy of using constitutionally excessive chokeholds increased risk of experiencing another)). Further, a plaintiff's fear that individual mistakes will recur is not enough to create a "cognizable imminent risk of harm." *Id.*

The Sixth Circuit explained this principle by summarizing *Lyons*, 461 U.S. 95, a decision of the Supreme Court of the United States:

> Think about how the Court addressed this point in *Lyons*, a case in which the plaintiffs sought to enjoin members of a police department, who had violated the constitutional rights of arrestees in the past, from engaging in similar misconduct in the future. The Court concluded that the plaintiff could establish standing only if he pleaded "(1) that all police officers in Los Angeles always" take the challenged action, using unnecessary chokeholds, when interacting with "any citizen with whom they happen to have an encounter," or (2) "that the City ordered or authorized police officers to act in such manner." *Lyons*, 461 U.S. at 105–06, 103 S.Ct. 1660. Today's plaintiffs face a similar plight. They do not allege – they cannot plausibly allege – that Shelby County election officials always make these mistakes, and they do not allege that the government entities ordered the election workers to make any such mistakes.

*Id.*

Using *Lyons*, the Sixth Circuit found that the individual plaintiffs' allegations of past harm (i.e. the past vote flipping) did not establish "imminent" future harm. *Id.* This was because the plaintiffs did not assert that the past vote flipping actually happened *to* them. *Id.* In other words, it would be too much of a logical leap to rely on a prior harm that occurred to an unknown person or group and extrapolate that prior harm to result in a future harm to the individual plaintiff.

However, even if the individual plaintiffs had adequately alleged past harm (i.e., had shown that the vote flipping did occur to them), they did not plausibly allege, much less show, that the future harm was "certainly impending." *Id.* at 981–82 (quoting *Clapper*, 568 U.S. at 402). Put another way, the individual plaintiffs did not show that there was a "substantial risk" that they

19

would be impacted in the future by vote flipping. *Id.* (citing *Clapper*, 568 U.S. at 414 n.5; *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)).

Here, Plaintiffs have failed to established a past harm or that a future harm is "certainly impending," just as the plaintiffs in *Shelby Advocates* and *Lyons* failed to do. Importantly, Plaintiffs do not allege, much less establish, any prior harm as a result of the 2024 Rule.[6] For example, they do not assert that companies have penalized them previously because of the 2024 Rule. Instead, they merely allege that the 2024 Rule will harm them in the future, but they offer no substantive evidence to show that this harm is imminent or certain. Mere allegations of future harm are not sufficient to establish standing. Accordingly, Plaintiffs have not established a "substantial risk" that either (1) the companies with which they work will face liability for classifying them as independent contractors and will cease to work with them, or (2) they will face confusion and uncertainty which will chill their future business practices. In the absence of imminent harm, the individual plaintiffs have no standing to sue and therefore no basis for moving forward with their claims. *See Shelby Advocates*, 947 F.3d at 982; *Kanuszewski*, 927 F.3d at 410.

Similarly, a "plaintiff cannot manufacture standing based on an overreaction to speculative fears of potential enforcement." *Grumpy's Bail Bonds, LLC v. Rutherford County, Tennessee*, No. 3:20-cv-00923, 2022 WL 3051004, at *6 (M.D. Tenn. Aug. 2, 2022) (quoting *Yatooma v. Birch Run Twp.*, No. 1:22-CV-10870, 2022 WL 1913601, at *2 (E.D. Mich. June 3, 2022) (citing *Clapper*, 568 U.S. at 414). This is precisely what has occurred here. Plaintiffs allege that the 2024 Rule creates "confusion and uncertainty." According to them, it necessarily follows that there is an increased risk that companies will face liability if they continue to classify Plaintiffs as

---

[6] The Court separately addresses below Plaintiff Chesak's individualized allegations of prior harm as a result of the 2024 Rule.

20

independent contractors and will pass on those associated costs to Plaintiffs. However, without Plaintiffs alleging particularized facts that would give the Court any reason to believe that the DOL *will* classify Plaintiffs as employees, the Court can only speculate over whether this would happen. Further, the Court can only speculate as to whether those companies are likely to face liability or pass costs on to Plaintiffs, let alone if such an outcome is "certainly impending."

Importantly and fatally, there is no evidence in the record – for example, no affidavits, declarations, statements of undisputed material fact – to show that the DOL or any other entity has classified or will classify Plaintiffs in a particular way because of the 2024 Rule; that companies have faced or will face liability because of the 2024 Rule; or that companies have passed or will pass costs on to Plaintiffs because of the 2024 Rule. The Court is, therefore, left with no way to determine whether these alleged injuries are actual or imminent. Accordingly, Plaintiffs have failed to establish, for purposes of their motion for preliminary injunction and their motion for summary judgment, that they have standing to pursue their claims in this Court.

Finally, with respect to Plaintiff Chesak's individual allegations of past injury, those come closer to establishing standing. However, Plaintiffs fail to demonstrate that the claimed injuries are traceable to any actual or possible conduct on the part of Defendants. Plaintiffs allege that Plaintiff Chesak "works with companies that, to comply with the 2024 Rule, have taken measures that harm Ms. Chesak." (Docket No. 1 at ¶ 45.) These harms include requiring her to spend unpaid hours documenting tasks she performs as a freelancer, limiting the number of hours she can work as a freelancer, and requiring her to sign an agreement to indemnify the company if it were found liable for misclassifying her. (*Id.*) In other words, Plaintiff Chesak has allegedly been injured by unnamed third-party companies that she claims took actions to comply with the 2024 Rule.

However, it is the actions of these unnamed third-party companies, and not Defendants, that have directly harmed Plaintiff Chesak.

"[P]laintiffs bear the burden of pleading and proving concrete facts showing that the defendant's actual action has caused the substantial risk of harm. Plaintiffs cannot rely on speculation about 'the unfettered choices made by independent actors not before the court.'" *Clapper*, 568 U.S. at 414 n.5 (citing *Defs. of Wildlife*, 504 U.S. at 562). "[W]here a causal relation between injury and challenged action depends upon the decision of an independent third party …, standing is not precluded, but it is ordinarily substantially more difficult to establish." *California v. Texas*, 593 U.S. 659, 675 (2021) (quoting *Defs. of Wildlife*, 504 U.S. at 562) (internal quotations omitted). *See also Clapper*, 568 U.S. at 414 (expressing "reluctance to endorse standing theories that rest on speculation about the decisions of independent actors"). To satisfy that burden, the plaintiff must show at the least "that third parties will likely react in predictable ways." *Id.* (quoting *Dept. of Commerce v. New York*, 588 U.S. 752, 768 (2019)).

Here, Plaintiffs have not demonstrated "concrete facts" to show that Defendants' actions caused Plaintiff Chesak's injuries. The only evidence in the record related to Plaintiff Chesak's injuries are the allegations in her verified complaint (Docket No. 1 at ¶ 45) and a statement of fact that repeats the allegations in her verified complaint but that is disputed by Defendants (Docket No. 27-1 at 14, ¶ 33). The Court has not been presented with any evidence from the unnamed third-party companies to demonstrate that they took the referenced measures "to comply with the 2024 Rule" or that they are likely to react in predictable ways. Instead, the Court is left to merely speculate on why these unnamed third-party companies required Plaintiff Chesak to spend unpaid hours documenting tasks or to sign an indemnity agreement. They may have done so because they incurred costs or thought themselves likely to incur costs because of the 2024 Rule and decided to

22

pass those costs on to Plaintiff Chesak. However, they may have done so for any number of other reasons unrelated to the 2024 Rule. The Court can only guess, which is not enough to establish standing. Accordingly, Plaintiffs have not met their burden to demonstrate that Plaintiff Chesak's injuries are traceable to the actions of Defendants.[7]

For these reasons, the Court finds that Plaintiffs lack standing to pursue their claims for injunctive relief and a declaratory judgment. Because Plaintiffs lack standing, the Court lacks subject matter jurisdiction and has no authority to adjudicate Plaintiffs' claims. Accordingly, the Court will not address the merits of Plaintiffs' claims under the APA and the U.S. Constitution.

## V.    RECOMMENDATION

Based on the foregoing, it is respectfully **RECOMMENDED** that Plaintiffs' motion for preliminary injunction (Docket No. 7) be **DENIED**; Defendants' motion to dismiss or, in the alternative, for summary judgment (Docket No. 11) be **GRANTED**; and Plaintiffs' motion for summary judgment (Docket No. 25) be **DENIED**.

**ANY OBJECTIONS** to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Rule 72(b)(2) of the Federal Rules of Civil Procedure and Local Rule 72.02(a). Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140

---

[7] Plaintiffs also argue that they have standing to challenge the 2024 Rule because they are objects of the 2024 Rule. (Docket No. 25-1 at 3–4.) Because the Court finds that Plaintiffs do not meet all of the injury, traceability, and redressability requirements of the standing doctrine, the Court will not address whether Plaintiffs are, indeed, the objects of the 2024 Rule.

23

(1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Any response to the objections must be filed within fourteen (14) days after service of objections. *See* Federal Rule 72(b)(2) and Local Rule 72.02(b).

Respectfully submitted,

_____
BARBARA D. HOLMES
United States Magistrate Judge

24