# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

_____

COLT & JOE TRUCKING, LLC.

      Plaintiff,

    v.                             Case No. 24-cv-00391-KWR-GBW

U.S. DEPARTMENT OF LABOR ET AL.,

      Defendant.

## MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court upon Plaintiff's Motion for Summary Judgment (**Doc. 22**) and Defendant's Cross-Motion to Dismiss, or in the Alternative, for Summary Judgment (**Doc. 30**). Plaintiff requests that the Court enjoin and set aside as unlawful a 2024 Department of Labor Rule. Having reviewed the parties' briefings, the administrative record, and the relevant law, the Court **DENIES** Plaintiff's Motion for Summary Judgment and **GRANTS** Defendants' Cross-Motion to Dismiss, or in the alternative, for Summary Judgment.

## LEGAL BACKGROUND

### I.    Fair Labor Standards Act ("FLSA")

Congress enacted the Fair Labor Standards Act ("FLSA") in 1938 to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). The FLSA requires employers to provide certain benefits to their employees, including the payment of a minimum wage and overtime wages. 29 U.S.C. §§ 201–19. The FLSA applies only to employees, which it defines as

"any individual employed by an employer." 29 U.S.C. § 203(e)(1)). The FLSA does not apply to, nor does it define, "independent contractors."

To resolve the debate around independent contractors, courts have applied what has come to be known as the "economic realities test." In a series of cases, the Supreme Court developed a series of factors as "important" for distinguishing employees and independent contractors. *U.S. v. Silk*, 331 U.S. 704 (1947); *Rutherford Food Corp. v. McComb*, 331 U.S. 722 (1947); *Bartels v. Birmingham*, 332 U.S. 126 (1947). The Court's inquiry was whether, as a matter of economic reality, the worker was economically dependent on the employer for work (thus rendering them an employee) or is in business for themselves (thus rendering them an independent contractor).

The *Silk* factors include "degrees of control, opportunities for profit or loss, investment in facilities, permanency of relation[,] and skill required in the claimed independent operation are important for decision." *Silk*, 331 U.S. at 716. The Court emphasized repeatedly that no one factor should receive more consideration than the next, but rather, courts should consider the totality of the circumstances. *Id.* ("No one [factor] is controlling nor is the list complete."); *Rutherford*, 331 U.S. at 730 ("We think, however, that the determination of the relationship does not depend on such isolated factors but rather upon the circumstances of the whole activity."); *Bartels*, 332 U.S. at 130 ("It is the total stiuation that controls." (error in original)).

The Tenth Circuit's version of the economic realities test includes six factors:

(1) the degree of control exerted by the alleged employer over the worker;
(2) the worker's opportunity for profit or loss;
(3) the worker's investment in the business;
(4) the permanence of the working relationship;
(5) the degree of skill required to perform the work; and
(6) the extent to which the work is an integral part of the alleged employer's business.

*Baker v. Flint Eng'g & Const. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998). As with *Silk* and its progeny, courts applying the economic realities test do not give one factor more weight than the others, instead favoring a totality-of-the-circumstances consideration. *Id.* at 1441. Plaintiff alleges that this has led to confusion about proper classification of independent contractors. **Doc. 22 at 5.**

## II.     The Department of Labor's 2021 and 2024 Rules

In January 2021, the DOL issued a rule attempting to clarify the differences in a worker's status as an employee or independent contractor under the FLSA (the "2021 Rule"). 86 Fed. Reg. 1168. The Rule aimed to "promote certainty for stakeholders, reduce litigation, and encourage innovation in the economy." *Id.* at 1168. The 2021 Rule created a five-factor analysis, designating two of the five factors as "core factors." 89 Fed. Reg. at 1638. The two core factors were: (1) the nature and degree of control over the work and (2) the worker's opportunity for profit or loss (which included the worker's initiative and investments). *Id.* at 1644. The three remaining factors were (3) the amount of skill required for the work, (4) the degree of permanence of the working relationship, and (5) whether the work is part of an integrated unit of production. Id. at 1645; 86 Fed. Reg. at 1171. Non-core factors were "less probative and, in some cases, may not be probative at all" of economic dependence and were "highly unlikely, either individually or collectively, to outweigh the combined probative value of the two core factors." 89 Fed. Reg. at 1645.

In October 2022, the DOL announced rulemaking to rescind and replace the 2021 Rule. After considering over 55,000 comments, the DOL promulgated the new rule on January 10, 2024 ("2024 Rule"), and it became effective on March 11, 2024. 89 Fed. Reg. 1638-01. The 2024 Rule again "addresses how to determine whether a worker is properly classified as an employee or independent contractor." *Id.* at 1638. The 2024 Rule aimed to "replace" the analysis for

determining a worker's status with one that "is more consistent with judicial precedent and the [FLSA's] text and purpose." *Id*. at 1638.

The 2024 Rule eliminated the two "core factors" set forth in the 2021 Rule in favor of an "economic reality test" focusing on "whether the worker is either economically dependent on the potential employer for work or in business for themself." 89 Fed. Reg. 1638, 1742. The test involves six factors meant to "guide an assessment of the economic realities of the working relationship and the question of economic dependence." *Id*.

Those six factors are: (1) "opportunity for profit or loss depending on managerial skill"; (2) "investments by the worker and the potential employer"; (3) "degree of permanence of the work relationship"; (4) "nature and degree of control"; (5) "extent to which the work performed is an integral part of the potential employer's business"; and (6) "skill and initiative." *Id*. Additional factors may be relevant if they "indicate whether the worker is in business for themself, as opposed to being economically dependent on the potential employer for work." *Id*. Unlike the 2021 Rule, no one factor should receive any predetermined weight. *Id.* at 1645. The preamble to the 2024 Rule also provides a detailed analysis about the application of each factor to serve as a guide for determining whether a worker is an employee. See 89 Fed. Reg. at 1671-1725.

## FACTUAL BACKGROUND

Plaintiff is a family-run trucking business with twelve employees and regulated by the FLSA. **Doc. 22 at ¶¶22–23**. Plaintiff routinely hires drivers as independent contractors. *Id.* **at ¶22.** Plaintiff alleges that, because of the changes in the 2024 Rule, they "must spend more time and resources analyzing whether drivers with whom it contracts are properly classified as independent contractors or employees." *Id.* **at ¶25**. Because of this, the "working relationship between Plaintiff and one of its four independent drivers ended in April 2024." *Id.* Plaintiff further alleges

that they have been unable to hire a replacement driver "in part due to greater uncertainty and regulatory burdens created by the 2024 Rule." *Id.* Plaintiff asserts that the 2024 Rule "upends Plaintiff's business operations, increasing costs, increasing potential liability, depriving truckers of the opportunity to operate independently within their own business, and potentially driving many of the contractors Plaintiff relies on out of business, or into different lines of business than Plaintiff's, depriving Plaintiff of needed manpower to deliver cargo." **Doc. 1 at ¶55.** In short, Plaintiff asserts that the 2024 Rule "has and will continue to cause [Plaintiff] harm." *Id.*

On April 25, 2024, Plaintiff filed a complaint seeking declaratory, injunctive, and other relief, asking the Court to set aside the 2024 Rule as unlawful for several reasons. **Doc. 1**. However, as discussed in both Defendants' Answer (**Doc. 14**) and the parties' Joint Motion for Order *for Schedule for Administrative Record Production and Briefing, and for Page Limits* (**Doc. 15**), a Complaint was not the proper method for requesting review of a final APA action. **Doc. 14 at 3**; *see also Forest Guardians v. U.S. Fish & Wildlife Serv.*, 611 F.3d 692, 702 n.12 (10th Cir. 2010) ("Even though this action was originally filed in the form of a complaint, the parties later agreed to proceed as if it properly had been filed as a petition for review of agency action.").

Plaintiff subsequently filed a Motion for Summary Judgment, styled as an appellate brief, per Tenth Circuit precedent (**Doc. 22**). In the brief, Plaintiff asserts the following:

I.      The 2024 Rule is based on the DOL's Erroneous Legal Interpretations

II.     The DOL's Test is Arbitrary and Capricious and Violates Due Process

III.    The 2024 Rule Violates the APA and Regulatory Flexibility Act ("RFA") Because the DOL Ignores Costs

IV.     Defendant SU Lacked the Authority to Promulgate the 2024 Rule.

Plaintiff requested that the Court vacate the 2024 Rule in its entirety. **Doc. 22 at 33**.

Defendants subsequently filed a Cross-Motion to Dismiss, or, in the Alternative, For Summary Judgment. **Doc. 30**. In their motion, Defendants assert the following:

I.      Plaintiff lacks standing to challenge the 2024 Rule and the Court should therefore dismiss for lack of subject-matter jurisdiction.

II.      Plaintiff has failed to show that the 2024 Rule is arbitrary, capricious, contrary to law, or in excess of the Department's authority under the FLSA.

III.      Plaintiff has failed to show that the 2024 Rule is unconstitutionally vague.

IV.      Plaintiff has failed to show that any purported defect in Acting Secretary Su's appointment affected the 2024 Rule.

V.      Vacatur is an inappropriate remedy.

Having reviewed the parties' briefing and applicable law, the Court now addresses both motions together below.[1]

## LEGAL STANDARD

"Under 5 U.S.C. § 702, the United States waives sovereign immunity as to actions in a court of the United States seeking relief other than money damages…" *Gilmore v. Weatherford*, 694 F.3d 1160, 1166, n.1 (10th Cir. 2012). *See also United States v. Testan*, 424 U.S. 392, 399 (1976) ("[T]he United States, as sovereign, is immune from suit save it consents to be sued."). The Administrative Procedure Act ("APA") allows a trial court to and set aside as unlawful final agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "unsubstantiated by substantial evidence," or "unwarranted by the facts." 5 U.S.C. §702(A), (E), (F). An agency action is arbitrary and capricious if the agency relied on "factors which Congress has not intended it to consider, entirely failed to consider an important

---

[1] The Court considered, but was not bound by, arguments and legal authority set forth in other filings, including several amicus briefs, **Doc. 28, 39, & 43**, and a notice of supplemental authority filed by the Defendants, **Doc. 48**.

aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the produce of agency expertise." *Arizona Public Service Co. v. Environmental Protection Agency*, 562 F.3d 1116, 1122–1123 (10th Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut.*, 463 U.S. 29, 43 (1983)).

Even though the Court's inquiry into the basis of an agency action must be "searching and careful," trial courts are instructed not to set aside an agency action because of a less-than-ideal explanation so long as the agency's decision-making process is reasonably discerned. *Arizona Public Service Co.*, 562 F.3d at 1123; *Maier v. EPA*, 114 F.3d 1032, 1039 (10th Cir. 1997); *Alaska Dep't of Env't Cons.*, 540 U.S. 497. The review is, therefore, "narrow and deferential" to the agency, giving it a presumption of validity, and the Court must uphold the agency's action if it has articulated a rational basis for the decision and has considered relevant factors. *Wolfe v. Barnhart*, 446 F.3d 1096, 1100 (10th Cir. 2006); *Wyoming v. USDA*, 661 F.3d 1209, 1227 (10th Cir. 2011); *Copar Pumice Co., Inc. v. Tidwell*, 603 F.3d 780, 793 (10th Cir. 2010); *Kobach v. U.S. Election Assistance Comm'n*, 772 F.3d 1183, 1197 (10th Cir. 2014) (noting that the agency's action has a presumption of validity and that the burden of proof rests with the party challenging the agency action). Judicial review of agency action is generally restricted to the administrative record unless there is clear evidence that the agency did not properly designate the administrative record. *Citizens for Alternatives to Radioactive Dumping v. Dep't of Energy*, 485 F.3d 1091, 1096 (2007); *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993).

Judicial review is based upon "the whole record or those parts of it cited by a party." 5 U.S.C. § 706. Thus, review of an agency's action under the APA "is to be based on the full administrative record that was before [the agency] at the time [it] made [its] decision." *Citizens to*

*Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 420 (1971). "Even though judicial review rests with a district court, the district court does not act as a factfinder." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).

Review of final agency actions by a district court is conducted according to the Federal Rules of Appellate Procedure. *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1575 (10th Cir. 1994). When determining whether the final agency decision is arbitrary and capricious, the court must focus on the rationality of the agency's decision-making process—rather than the rationality of the actual decision—meaning that the grounds upon which the agency acted must be disclosed and sustained by the record. *Id.* This analysis requires this Court to review the Department's decision-making process and determine whether it had examined all the relevant factual information, articulated a satisfactory explanation for its action, and rationally connected the factual record and the decision. *Id.*; *Ctr. For Biol. Diversity v. Dep't of the Interior*, 72 F.4th 1166, 1178 (10th Cir. 2023); *Kobach*, 772 F.3d at 1197 (the reviewing court must "ascertain whether the agency examined the relevant data and articulated a rational connection between the facts found and the decision made."). "It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *State Farm*, 463 F.3d at 50.

If the reviewing court determines that the agency acted arbitrarily and capriciously, it may set aside the agency's action, findings, and conclusions. *See* 5 U.S.C. § 706(2); *Olenhouse*, 42 F.3d at 1573-74. "Generally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands." *INS v. Orlando Ventura*, 537 U.S. 12, 17 (2002); *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("If the record before the agency does not support the agency action … the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

Although the Tenth Circuit has found that "motions for summary judgment" are generally "conceptually incompatible with the very nature and purpose of an appeal," *Olenhouse*, 42 F.3d at 1580, district courts may use summary judgment motions "to 'decid[e], as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review.'" *N.M. Health Conns. v. HHS*, 946 F.3d 1138, 1161 (10th Cir. 2019) (internal quotations omitted). Agency "actions are entitled to a presumption of regularity, and [plaintiff] bears the burden of persuasion to show [the agency] acted arbitrarily and capriciously." *Id*. at 1162.

## ANALYSIS

Plaintiff makes several assertions in their motion for summary judgment. Chiefly, Plaintiff asserts that the 2024 Rule is arbitrary and capricious for numerous reasons, and that the 2024 Rule is unlawful because Defendant Su lacked the authority to promulgate it. **Doc. 22 at 33**. Defendants' cross-motion to dismiss, or in the alternative, for summary judgment argues that the 2024 Rule is neither arbitrary and capricious nor unconstitutionally vague. **Doc. 30 at 12, 29**. Moreover, Defendants argue that Plaintiff lacks standing to challenge the 2024 Rule and the Court should instead dismiss the action for lack of subject-matter jurisdiction. *Id.* The Court addresses the parties' arguments in turn below.

### I.      Plaintiff does not have Article III standing to challenge the 2024 Rule.

Defendants move to dismiss on several grounds. As a preliminary matter, Defendant asserts that Plaintiff does not have Article III standing, and the Court therefore lacks jurisdiction to even hear the case at issue. **Doc. 30 at 30**. Defendants argue that Plaintiff cannot show any concrete and particularized injury, and that any injury of which Plaintiff complains is merely speculative. *Id.* Plaintiff argues that they have standing as the object of the regulation and that they have incurred concrete injuries traceable to the 2024 Rule and redressable by vacatur. **Doc.**

9

**46 at 3–4.**  The Court finds that Plaintiff has not sufficiently demonstrated that they have Article III standing to challenge the 2024 Rule.

Article III of the Constitution limits the jurisdiction of federal courts to cases and controversies. U.S. Const. art. III, § 2, cl. 1; *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982). The case or controversy limitation requires that a plaintiff have standing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–61 (1992).  A plaintiff bears the burden of establishing the elements of standing.  *Lujan*, 504 U.S. at 559–61; *Rocky Mountain Peace & Just. Ctr. v. United States Fish & Wildlife Serv.*, 40 F.4th 1133, 1151 (10th Cir. 2022).  Standing must exist throughout the entire action.  *Id.*  A plaintiff has standing when (1) they have suffered an injury in fact, (2) there is a causal connection between the injury and the conduct complained of, and (3) it is likely that the injury will be redressed by a favorable judicial decision.  *Lujan*, 504 U.S. at 559–61.

"An APA plaintiff does not have a complete and present cause of action until she suffers an injury from final agency action. . . ." *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 144 S. Ct. 2440, 2450 (2024).  An "injury in fact" is an invasion of a legally protected interest that is concrete, particularized, and actual or imminent, not conjectural or hypothetical.  *Id.*  These three elements of standing are "an indispensable part of the plaintiff's case," and thus the plaintiff must support each element "with the manner and degree of evidence required at the successive stages of the litigation."  *Id.*  Because injury-in-fact is a constitutional requirement, Congress "cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547–48 (2016) (internal citations omitted) ("Article III standing requires a *concrete injury* even in the context of a statutory violation") (emphasis added).

Standing is a matter of subject matter jurisdiction and therefore generally falls under the purview of Federal Rule of Civil Procedure 12(b)(1). *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). Where a party facially attacks the sufficiency of a complaint, the reviewing court must accept the allegations in the complaint as true. *Id.* When a party challenges the underlying facts establishing subject matter jurisdiction, "a district court may not presume the truthfulness of the complaint's factual allegations." *Id.* at 1003. "A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). *Id.*

Rule 56, on the other hand, governs "when resolution of the jurisdictional question is intertwined with the merits of the case." *Id.* "The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case." *Id.* In evaluating a Rule 56 motion for summary judgment, the moving party must show that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. *Cassara v. DAC Servs., Inc.*, 276 F.3d 1210, 1212 (10th Cir. 2002); Fed. R. Civ. P. 56(c). "In response to a summary judgment motion, however, the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts. . . which for purposes of the summary judgment motion will be taken to be true." *Lujan*, 504 U.S. at 561 (quoting Fed. R. Civ. P. 56(e)) (cleaned up). "A mere scintilla of evidence supporting the nonmovant's position will not create a genuine issue of material fact; the fact issue must make it so that a reasonable jury could find for the nonmovant." *Rocky Mountain Wild, Inc. v. United States Forest Serv.*, 56 F.4th 913, 921 (10th Cir. 2022).

Here, both parties filed motions for summary judgment. Rule 56 therefore governs the court's review of Plaintiff's standing. Defendants argue that Plaintiff has not suffered an injury-

11

in-fact yet, because they have not demonstrated any harm that is not conjectural. **Doc. 30 at 8**; *cf.* *Citizen Ctr. v. Gessler*, 770 F.3d 900, 913 (10th Cir. 2014) (finding that "alleged chill is too conjectural to establish an injury in fact."). Plaintiff argues they have "self-evident standing as a regulated employer to challenge a regulation that expands the definition of FLSA employee." **Doc. 22 at 10.** Because Plaintiff invoked federal jurisdiction in filing this administrative action, "[t]he burden is therefore on Plaintiffs 'clearly to allege facts demonstrating that [they are] a proper party to invoke judicial resolution of the dispute.'" *State of Utah v. Babbitt*, 137 F.3d 1193, 1202 (10th Cir. 1998) (quoting *United States v. Hays,* 515 U.S. 737, 743 (1995) and *Warth v. Seldin,* 422 U.S. 490, 518, (1975)). Plaintiff has failed to carry that burden in alleging the requisite concrete and particularized injury.

Merely alleging that a regulation creates a chilling effect is not sufficient to give rise to standing. *Gessler*, 770 F.3d at 900 (citing *Clapper v. Amnesty Int'l USA*, 133 S.Ct. 1138, 1153 (2013) (stating that the Supreme Court has never held that "plaintiffs can establish standing simply by claiming that they experienced a 'chilling effect' that resulted from a governmental policy that does not regulate, constrain, or compel any action on their part")). Indeed, the "Supreme Court has never upheld standing based solely on a governmental policy lacking compulsion, regulation, or constraints on individual action." *Gessler*, 770 F.3d at 912. "Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Id.* (quoting *Laird v. Tatum,* 408 U.S. 1, 13–14 (1972)).

Concrete efforts to *avoid* litigation, on the other hand, may demonstrate injury sufficient to establish standing. *United States v. Supreme Ct. of New Mexico*, 839 F.3d 888, 900 (10th Cir. 2016) ("Furthermore, prosecutors' efforts to avoid sanctions, and the resulting reduction in available evidence in grand-jury and other criminal proceedings, demonstrate sufficient injuries to

establish federal-court jurisdiction."); *Bronson v. Swensen*, 500 F.3d 1099, 1108 (10th Cir. 2007) ("Standing may still exist even when a plaintiff ends the proscribed behavior, so long as a credible threat remains that such behavior, if taken in the future, would be prosecuted.").  However, there must be a credible threat of enforcement for the avoidance actions to give rise to standing. *Tennessee v. Equal Emp. Opportunity Comm'n*, No. 2:24-CV-84-DPM, 2024 WL 3012823 at *3 (E.D. Ark. June 14, 2024).  Factual dissimilarity "between the plaintiff's intended future conduct and the conduct that triggered any prior prosecutions under the challenged statute" dilutes the credibility of the threat, and therefore the potential for standing.  *Id.*

Plaintiff has not properly alleged concrete efforts to avoid litigation, only that the 2024 Rule *may* have subjectively chilled their business practices.  In the Complaint, **Doc. 1**, the Motion for Summary Judgment, **Doc. 22**, and the accompanying affidavit, **Doc. 22-1**, Plaintiff asserts repeatedly that they have taken concrete steps to avoid litigation incurring significant costs and time spent "analyzing whether owner-operators with whom it contracts are properly classified as independent contractors or employees." **Doc. 22-1 at ¶10.**  Plaintiff additionally apparently "faces the burden of being forced to dedicate resources to preparing for and potentially defending against investigation or litigation regarding worker classification." **Id.**  However, neither of these repeated assertions are sufficient to give rise to Article III standing because they are not specific *facts*, but rather conclusory assumptions about Plaintiff's future.[2]  *See Lujan*, 504 U.S. at 561 (Plaintiff must set forth by affidavit or other evidence specific facts for purposes of summary judgment).

---

[2] For example, Plaintiff's supposed "costs" are speculatory as alleged.  For example, the Small Businesses Administration "concluded that the 2024 Rule *would* impose significant additional compliance and recordkeeping costs on small businesses that hire independent contractors." **Doc. 22 at 11 (emphasis added).**  "Would" does not mean Plaintiff has yet suffered those costs, and without more to demonstrate otherwise, the Court cannot assume that Plaintiff has indeed suffered those costs.

Plaintiff's only evidence is an assertion that it "has not entered into a relationship with a new independent owner-operators in part due to regulatory uncertainty and burdens created by the 2024 Rule." *Id.* at ¶11. However, that is insufficient at the summary judgment stage. While it is true that "[t]o avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case," *Hulsey v. Kmart, Inc.,* 43 F.3d 555, 557 (10th Cir.1994), that motion must be supported by more than a "mere scintilla of evidence." *Rocky Mountain Wild, Inc.*, 56 F.4th at 921. The single factual allegation is insufficient to create a factual situation in which no jury could find for Defendant. *See id.* ("[T]he fact issue must make it so that a reasonable jury could find for the nonmovant.").

The Court therefore finds that Plaintiff does not have Article III standing to challenge the 2024 Rule.

## II.     The 2024 Rule Was Not Arbitrary and Capricious

Additionally, even if Plaintiff did have standing to challenge the 2024 Rule, the 2024 Rule is not arbitrary or capricious. The Court declines to find it unlawful.

The administrative record before the Court is voluminous. Judicial review is based upon "the whole record or those parts of it cited by a party." 5 U.S.C. § 706. Here, the Department of Labor received over 50,000 comments during the notice-and-comment period on the 2024 Rule alone. 89 Fed. Reg. 1638-01. While it is true that the district court must conduct its own review of the factual record before the agency, *Olenhouse*, 42 F.3d at 1576, a complete plenary review of the entire existing administrative record involving both the 2021 Rule and the 2024 is simply not possible. The Court therefore confines its review to the portions of the administrative record cited by the parties. *See* 5 U.S.C. § 706.

14

Plaintiff's main contention is that the DOL acted arbitrarily and capriciously when it promulgated the 2024 Rule. Plaintiff advances several arguments underlying that assertion. First, Plaintiff argues that the DOL operated from a "faulty legal premise" when it promulgated the 2024 Rule. **Doc 22 at 13**. Plaintiff then argues that the DOL failed to properly account for various costs to regulated parties in promulgating the 2024 Rule. *Id.* **at 23**. Next, Plaintiff argues that the DOL acted in excess of its statutory authority. *Id.* **at 26**. Plaintiff also asserts that the 2024 Rule increases regulatory confusion, rather than ameliorating it. *Id.* **at 23**. Finally, Plaintiff argues that the DOL's analysis of several relevant factors was flawed. *Id.* **at 13**. Agency "actions are entitled to a presumption of regularity, and [plaintiff] bears the burden of persuasion to show [the agency] acted arbitrarily and capriciously." *N.M. Health Conns.*, 946 F.3d at 1162. The Court addresses each argument in turn below and finds that Plaintiff has failed to carry its burden of persuasion regarding any of its arbitrary and capricious arguments.

However, the Court must clarify the case law binding its arbitrary and capricious review. Petitioner appears to assert that the Supreme Court's decision to overturn *Chevron's* deference for agency actions[3] in *Loper Bright Enterprises v. Raimondo* extends to the Court's arbitrary and capricious review. 144 S. Ct. 2244, 2257-2273 (2024); *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). While *Loper Bright* did overturn judicial deference to an agency's reasonable interpretation of an ambiguous statute, it did not overturn the APA's "mandate that judicial review of agency policymaking and factfinding be deferential." 144 S. Ct. at 2261 (citing 5 U.S.C. § 706(2)(A) and (E)). *See COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d

---

[3] *Chevron* deference refers to a now overturned two-step framework to interpret statutes administered by federal agencies. Under the framework, the reviewing court must first determine whether Congress has spoken directly on the issue at hand; if Congressional intent is clear, then the court must rule in favor of the interpretation that is in line with that intent. If the statute is silent or ambiguous or silent with respect to the specific issue, however, the court must defer to the agency's interpretation if it is based on a permissible construction of the statute. *See Loper Bright*, 144 S. Ct. at 2254; *Chevron*, 467 U.S. at 842.

269, 274 (4th Cir. 1999) ("When an agency is not a party to an action, its choice of whether or not to comply with a third-party subpoena is essentially a policy decision about the best use of the agency's resources."). The Court declines to extend *Loper Bright*'s standard to arbitrary and capricious review until the Tenth Circuit or Supreme Court speaks directly on the issue.

Moreover, while Petitioner invokes *Loper Bright*, Petitioner does not argue that the Department's interpretation of the FLSA is *ambiguous*. Rather, Petitioner argues that the Department's decision to rescind the 2021 Rule and promulgate the 2024 Rule was arbitrary and capricious. **Doc. 22 at 20.** *Loper Bright*, therefore, has no bearing on this case. *See* 144 S. Ct. at 2261. The Court's arbitrary and capricious review proceeds under the original standard for deference to agency action laid out in *Motor Vehicle Mfrs. Ass'n v. State Farm Mut.*, 463 U.S. 29, 43 (1983) and followed by federal courts since its issuance.

### a. The Department of Labor did not act from a "faulty legal premise" in promulgating the 2024 Rule.

Plaintiff's first contention is that the Department of Labor acted from a faulty legal premise that the 2021 Rule was unlawful and therefore acted unlawfully in rescinding the 2021 Rule and promulgating the 2024 Rule. However, Plaintiff's arguments misunderstand basic premises of administrative law and when and why agencies may promulgate a rule.

Plaintiff asserts that Defendants operated from a faulty legal premise in rescinding the 2021 Rule and promulgating the 2024 Rule. **Doc. 22 at 21**. In the 2021 Rule, the DOL concluded control over work and opportunity to work for profit and investment were the two "most probative" factors in distinguishing employees from independent contractors. 86 Fed. Reg. at 1246–47. In the 2024 Rule, the DOL changed its position and found that a test that focuses on two factors, rather than the totality of the circumstances, "did not fully comport with the FLSA's text and purpose." 89 Fed. Reg. at 1647. Instead, Defendants maintain that they promulgated the 2024

16

Rule "based upon the correct reading of the FLSA's text, as that text has been interpreted *by courts* for over fifty years." **Doc. 30 at 13 (emphasis in original)**.  Unlike the 2021 Rule, the 2024 Rule does not allow regulated parties to emphasize any one factor as more probative than the other.  89 Fed. Reg. at 1647.  Defendants argue that this is more consistent with the text of the FLSA and precedent, and that they had been mistaken in promulgating a rule that allowed for the emphasis of two factors.  **Doc 30 at 12**.

Plaintiff argues that there is nothing in the text of the FLSA that does not permit a test that emphasizes two factors, and that therefore the DOL acted erroneously when it issued the 2024 Rule supposedly to correct mistakes from the 2021 Rule.  **Doc. 22 at 14.**  Plaintiff also characterizes FLSA's definitions of "employ" and "employee" as "circular and unhelpful."  *Id*. This, Plaintiff argues, supports a test that emphasizes control and opportunity to work for wages as the most probative factors based on common law and a common understanding of the already "unhelpful" FLSA.  *Id.*

It is true that an agency that relies *solely* on faulty grounds may act arbitrarily or capriciously in rescinding a regulation and promulgating a new one.  *Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 88 (1943).  However, where the agency acts on legitimate grounds and still elects to change a policy, it need not demonstrate "that the reasons for the new policy are better than the reasons for the old one."  *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009); *Chenery*, 318 U.S. at 95.  Rather, the agency need only show that "the new policy is permissible under the statute, that there are good reasons for it, and that the agency believes it to be better."  *FCC*, 556 U.S. at 515.  The Supreme Court has "made clear . . . that a court is not to substitute its judgment for that of the agency."  *Vermont Yankee*, 556 U.S. at 514.

As a preliminary matter, it is not clear that the FLSA even permits a test that emphasizes two factors. The Supreme Court routinely emphasized that "no one factor is controlling" in creating the economic realities test in *Silk* and *Rutherford*. *Silk*, 331 U.S. at 716; *Rutherford*, 331 U.S. at 730 ("We think, however, that the determination of the relationship does not depend on such isolated factors but rather upon the circumstances of the whole activity."); *Bartels*, 332 U.S. at 130 ("It is the total stiuation that controls." (error in original)). The Tenth Circuit similarly has favored a 'totality of the circumstances' test and do not give one factor more weight than the others. *Baker*, 137 F.3d 1440. While it is true that most tests list control and opportunity to work for profit first in the list of factors, that does not itself mean that the FLSA allows for a decisionmaker to consider those to be the most probative. There could be several reasons for listing them first, not least of which would be simply following the example set by the Supreme Court in *Silk*, *Rutherford*, and *Bartels*. *Silk*, 331 U.S. at 716; *Rutherford*, 331 U.S. at 730; *Bartels*, 332 U.S. at 130. If the FLSA does prohibit a test that emphasizes two factors, that would mean that Plaintiff's assertion that the DOL operated from a "faulty legal premise" fails, because the 2024 Rule would be correcting the potentially unlawful 2021 Rule.

However, Plaintiff is still correct that the Supreme Court never overtly prescribed a specific test. **Doc. 22 at 15**. But contrary to what Plaintiff asserts, that does not mean that a two-factor test is the *only* option available. Even if the FLSA does allow for a test that emphasizes two factors, it also allows for a multi-factor 'totality of the circumstances' test. Indeed, both the Supreme Court and Tenth Circuit have routinely affirmed that a 'totality of the circumstances' test is preferable, if not proper. *Rutherford*, 331 U.S. at 730 (citing *Silk*, 331 U.S. at 716, 719 (denying the existence of a "rule of thumb to define the limits of the employer-employee relationship" and determining employment status based on "the total situation")); *Baker*, 137 F.3d at 1441 (Finding

that "[n]one of the factors alone is dispositive; instead, the court must employ a totality-of-the-circumstances approach.").

When promulgating a rule that changes agency policy, the DOL did *not* need to demonstrate that the 2024 Rule was better than the 2021 Rule, only that it acted on legitimate grounds and had reason to do so. *FCC*, 556 U.S. at 515; *Chenery*, 318 U.S. at 95. All that the Supreme Court mandates is that that the DOL show that the 2024 Rule is "permissible under the [FLSA], that there are good reasons for it, and that the agency believes it to be better." *Id.* The 2024 Rule more than satisfies those requirements. It clearly lays out its reasons for believing that the 2021 Rule created regulatory confusion and departed from established precedent, as well as its reasons for creating the 2024 Rule's test. 89 Fed. Reg. at 1651. Where an agency acted within a zone of reasonableness, the court cannot supplant the agency's decision simply because the previous rule may have pleased certain regulated parties more. *Vermont Yankee*, 556 U.S. at 514.

Moreover, the DOL does not automatically act arbitrarily or capriciously by using 'ameliorating regulatory confusion' created by the agency's departure from established policy in 2021 or 'consistency with established precedent' as justifications for rescinding the 2021 Rule or promulgating the 2024 Rule. Indeed, the Supreme Court *requires* that agencies remain "cognizant [of] longstanding policies [that] may have engendered serious reliance interests. . . ." *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1913 (2020) (internal quotations omitted). Changing policy for the sake of consistency or to ensure a "settled rule" is similarly valid. *State Farm*, 463 U.S. at 42.

Because Defendants did not act from an erroneous legal premise in promulgating the 2024 Rule, the Court cannot find that its departure from the probative factors test in the 2021 Rule was arbitrary or capricious.

**b.   The Department of Labor properly accounted for costs to regulated parties.**

Plaintiff also asserts that Defendant failed to properly account for the costs to regulated parties the 2024 Rule might impose because it did not discuss them at length in the final 2024 Rule.   Plaintiff asserts that this is sufficient to strike the 2024 Rule down as arbitrary and capricious.   Plaintiff is incorrect—Defendant properly considered concerns raised during the notice-and-comment period, and therefore did not arbitrarily or capriciously disregard those concerns from commenters.

An agency's decision is arbitrary and capricious if the agency "entirely failed to consider an important aspect of the problem" or otherwise totally ignored evidence before it.  *Utah Envtl. Cong. v. Troyer*, 479 F.3d 1269, 1280 (10th Cir. 2007) (quotations omitted).  However, an agency's decision is "entitled to a presumption of regularity," and the reviewing court may not substitute its judgment for that of the agency. *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415-416 (1971).  The Court must uphold the agency's decision if the agency "articulated a rational connection between the facts found and the decision made." *Payton v. U.S. Dep't of Agric.*, 337 F.3d 1163, 1168 (10th Cir. 2003).  However, the agency need not promulgate a final rule that fully incorporates every piece of evidence before it.  Rather, the agency must examine all the relevant factual information, articulate a satisfactory explanation for its action, and rationally connect the factual record and the decision. *Ctr. For Biol. Diversity v. Dep't of the Interior*, 72 F.4th 1166, 1178 (10th Cir. 2023); *Kobach*, 772 F.3d at 1197 (the reviewing court must "ascertain whether the agency examined the relevant data and articulated a rational connection between the facts found and the decision made.").  "It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *State Farm*, 463 F.3d at 50.

20

Plaintiff contends that Defendant wholly ignored comments about potential increases in compliance costs to regulated businesses and independent contractors because the 2024 Rule does not include the changes proposed in comments. Defendant does maintain that they properly considered costs to regulated parties, but more importantly, that the 2024 Rule is guidance for regulated parties, and therefore does not bind any regulated party like the FLSA would.

However, Defendants' contention that the 2024 Rule does not bear the force of law is irrelevant to dismissing Plaintiff's original arguments. Assuming the 2024 Rule does bind regulated parties, and is not mere guidance, Defendants still did not need to promulgate a rule that satisfied every commenter or included every piece of evidence presented during the notice-and-comment period. Rather, Defendants only had to consider all the comments before them, promulgate a rule rationally connected to the factual record and articulate the reasoning for including or disregarding comments. Defendants have more than satisfied their burden to elucidate a rational connection between the facts presented and the conclusion reached.

First, Defendants clearly considered and addressed issues raised by regulated small businesses in the notice-and-comment period. In its factor analysis, for example, Defendants discussed the "challenge of setting forth a regulation that would capture all of the facts relevant to the nature and degree of a potential employer's control while balancing the practical considerations of the way businesses . . . must simultaneously comply with a host of legal, regulatory, and business-related demands." 89 Fed. Reg. at 1694. Indeed, Defendants acknowledged that "comments have persuaded [them] that the provision as proposed may lead to unintended consequences. . . ." *Id.* However, Defendants went on to clearly demonstrate its rationale for not finding these concerns persuasive. The 2024 Rule provided clear counterexamples and arguments for dismissing commenters' concerns and indeed spent several pages outlining its reasoning. *Id.*

21

Regardless of whether one agrees with the decision, it is certainly possible to see how Defendants *made* that decision, which is all the law requires. *See Olenhouse*, 42 F.3d at 1575 ("If the agency has failed to provide a reasoned explanation for its action, or if limitations in the administrative record make it impossible to conclude the action was the product of reasoned decisionmaking, the reviewing court may supplement the record or remand the case to the agency for further proceedings.").

In its factor analysis, Defendants also clearly considered the impacts on independent contractors discussed during notice-and-comment. For example, Defendants clearly discussed the hypothetical "disruptive economic consequences" that could arise from the 2024 Rule's potential to chill small businesses engaging independent contractors. 89 Fed. Reg. at 1648. In doing so, it both discussed the comments it found particularly illuminating, and laid out its reasons for dismissing the concerns: the 2024 Rule's new factor test would, in Defendants' opinion, "offer[] a better framework for understanding and applying" classification parameters. *Id.*

Moreover, Defendants also discussed at length the potential compliance costs to both regulated businesses and independent contractors. 89 Fed. Reg. at 1733. Defendants clearly laid out its parameters for determining compliance costs, which included "(1) the number of establishments and government entities using independent contractors, and the current number of independent contractors; (2) the wage rates for the employees and for the independent contractors reviewing the rule; and contractors reviewing the rule; and (3) the number of hours that it estimates employers and independent contractors will spend reviewing the rule." *Id.* It went on to say that the Department believes that it would take one hour to familiarize oneself with the 2024 Rule. *Id.*[4]

---

[4] In doing so, the DOL also clearly divided up how it expected parties to spend that hour. It expects independent contractors to spend roughly thirty minutes on regulation familiarization. 89 Fed. Reg. at 1733. It expects businesses and governments to spend roughly one hour of regulation familiarization. *Id.*

The DOL received several comments suggesting that the "rule familiarization cost was too low." 89 Fed. Reg. at 1734. It discussed the most persuasive comments from the Heritage Foundation, the U.S. Chamber of Commerce, and the Modern Economy Project. *Id.* "In response to all the comments received on this topic, the Department reconsidered the time for rule familiarization and doubled its original estimates, increasing them to 1 hour for potentially affected firms and 30 minutes for independent contractors." *Id.* This is because Defendants believe "a longer time estimate would not be appropriate because this estimate represents an average of the firms who may spend more time for review, and those who will not spend any time reviewing the rule." *Id.* In other words, Defendants chose to account for parties who may not read the regulation at all and parties who may spend too much time on the regulation in order to understand it.

This is more than sufficient to demonstrate that Defendants considered the concerns which commenters raised about compliance costs. Neither regulated parties nor commenters are entitled to a Rule that fully addresses every concern they raise. *See Olenhouse*, 42 F.3d at 1575. Rather, it is the duty of the agency to demonstrate that it acted within a "zone of reasonableness" in *considering* all the evidence before it before making its decision. *Fed. Commc'ns Comm'n v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). An agency is still entitled to disregard pieces of evidence presented during notice-and-comment if they clearly elucidate their reasoning and do not ignore major problems in their entirety. *Id*. However, the DOL did properly demonstrate that it considered the concerns about costs to regulated parties and independent contractors that commenters raised during the notice-and-comment period, even if it did not promulgate a final rule that fully addressed or ameliorated all of those concerns.

As such, the Court cannot disturb the DOL's findings because there is a clearly discernible rational connection between the comments received and the final 2024 Rule. The Court cannot

mandate that agencies satisfy every single commenter—such a mandate would be wholly impossible. Nor can the Court set aside a rule because it is *possible* to have come to a different conclusion. If possible, the Court must uphold an agency's action "on the basis articulated by the agency itself." *State Farm*, 463 F.3d at 50. The Court will not disturb the DOL's rationale where that rationale is easily followed.

Because Defendants have carried their burden, the Court rejects Plaintiff's argument that the 2024 Rule is arbitrary and capricious for failure to properly consider compliance costs.

### c. The Department of Labor's factor analysis was proper and within the agency's statutory authority.

Finally, Defendant's analysis of the relevant judicially created factors in promulgating the 2024 Rule was proper under the APA.

It is true that a Court's inquiry into the basis of an agency action must be "searching and careful." *Arizona Public Service Co.*, 562 F.3d at 1123; *Maier v. EPA*, 114 F.3d 1032, 1039 (10th Cir. 1997); *Alaska Dep't of Env't Cons.*, 540 U.S. 497. However, as discussed at length *supra*, trial courts may not set aside an agency action because of a less-than-ideal explanation if the Court can reasonably discern the agency's decision-making process. *Id.* The review is, therefore, "narrow and deferential" to the agency, giving it a presumption of validity, and the Court must uphold the agency's action if it has articulated a rational basis for the decision and has considered all relevant factors. *Wolfe v. Barnhart*, 446 F.3d 1096, 1100 (10th Cir. 2006); *Wyoming v. USDA*, 661 F.3d 1209, 1227 (10th Cir. 2011); *Copar Pumice Co., Inc. v. Tidwell*, 603 F.3d 780, 793 (10th Cir. 2010); *Kobach v. U.S. Election Assistance Comm'n*, 772 F.3d 1183, 1197 (10th Cir. 2014) (noting that the agency's action has a presumption of validity and that the burden of proof rests with the party challenging the agency action). An agency may seek to create consistency with established precedent or remedy confusion created by inconsistent policy without acting arbitrarily

24

or capriciously.  *Regents of the Univ. of California*, 140 S. Ct. at 1913.   Agencies must remain

"cognizant [of] longstanding policies [that] may have engendered serious reliance interests. . . ."

*Id.* (internal quotations omitted); *State Farm*, 463 U.S. at 42.

Plaintiff argues that Defendants improperly relied on the FLSA's remedial purpose to

broaden the statute's coverage by misconstruing several economic reality factors.  **Doc. 22 at 26**.

Moreover, Plaintiff argues that the DOL failed to "explain its departure from the 2021 Rule's

treatment of the same factors."  ***Id.***  Defendants assert that they acted within the bounds of their

statutory authority and clearly articulated their reasoning for rebalancing each factor.  **Doc. 30 at**

**13**.  Defendants also maintain that their purpose was twofold: ameliorating regulatory confusion

and ensuring DOL regulations complied with "the most faithful interpretation of the FLSA's text,

as articulated by courts for over seventy years."  ***Id.* at 15**

Regarding the 2024 Rule's new test, the parties argue over four of the economic reality

factors.  Plaintiff asserts that Defendants have impermissibly expanded their regulatory control by

broadening the reach of each factor beyond what the FLSA covers.  **Doc. 22 at 26**.

    **i.**  ***Control***

Plaintiff raises several objections to the 2024 Rule's classification of the control factor.  First,

Plaintiff asserts that "the 2024 Rule improperly elevates "reserved right or authority to [] control

worker[s]" under a contract to the same importance as "actual practice." **Doc. 22 at 19** (edits in

original) (*quoting* 89 Fed. Reg. 1638, 1639, 1653.).  In other words, Plaintiff argues "that the 2024

Rule's recognition that reserved control can be indicative of an employment relationship is

somehow in tension with the Supreme Court's emphasis on 'economic reality.'"  **Doc. 30 at 19**.

This, Plaintiff asserts, is contrary to the "Supreme Court['s] command[] that economic reality

rather than technical concepts is to be the test for employment under the FLSA." **Doc. 22 at 19** (quoting *Goldberg*, 366 U.S. at 33 (citing *Silk*, 331 U.S. at 713; *Rutherford*, 331 U.S. at 726)).

However, the Court agrees with Defendants' assertion that "precedent does not support 'the adoption of a generally applicable rule that in all circumstances reserved or unexercised rights, such as the right to control, are in every instance less indicative of the economic reality than the actual practices of the parties.'" **Doc. 30 at 19** (quoting 89 Fed. Reg. at 1720).

Second, Plaintiff asserts that the "DOL inappropriately expands the object of an employer's control." **Doc. 22 at 20.** The 2021 Rule focused its analysis on control over "key aspects of the performance of the work," 86 Fed. Reg. at 1246–47. Conversely, the 2024 Rule redefines control to include control over "the performance of the work and the economic aspects of the working relationship." 89 Fed. Reg. at 1743. Plaintiff asserts that this is inconsistent with *Silk* and does not appear in any case applying the economic reality test. **Doc. 22 at 20.**

However, *Silk* offers little guidance as to this part of the control element. Indeed, neither *Silk* nor *Rutherford* offer any insight. *Silk*, 331 U.S. 714; *Rutherford*, 331 U.S. 722. However, several circuit courts *have* considered the "economic aspects of the working relationship" in evaluating the control factor, which the DOL includes in its justification. 89 Fed. Reg. at 1693 (collecting cases); *see e.g.*, *Hopkins v. Cornerstone Am.*, 545 F.3d 338 (5th Cir. 2008); *Verma v. 3001 Castor, Inc.*, 937 F.3d 221 (3d Cir. 2019). The DOL explained clearly that it chose to follow those cases in expanding the control factor to include the "economic aspects of the working relationship," which is not arbitrary or capricious to do. *FCC*, 592 U.S. at 423 ("A court simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision.").

26

Finally, Plaintiff argues that "the 2024 Rule . . . states that a business requiring workers to follow legal and safety obligations may indicate employee classification." **Doc. 22 at 20.** In doing so, Plaintiff argues that "these types of requirements are generally imposed by employers on both employees and independent contractors," so "insisting on adherence to certain rules to which the worker is already legally bound would not make the worker more or less likely to be an employee." *Id.* (quoting 86 Fed. Reg. at 1182–83). Defendants counter that this is a misrepresentation, and that "the 2024 Rule explains that actions taken by the potential employer for the sole purpose of complying with legal requirements are not indicative of control." **Doc. 30 at 20** (internal quotations omitted); 89 Fed. Reg. at 1694, 1743; 29 C.F.R. § 795.110(b)(4).

Plaintiff's argument lacks merit. The DOL specifically identified cases to support their position and clearly addressed concerns raised by commenters. *See* 89 Fed. Reg. at 1693- 94 & n.370 (*citing Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1316 (11th Cir. 2013); *Shultz v. Mistletoe Exp. Serv., Inc.,* 434 F.2d 1267, 1271 (10th Cir. 1970)). That is sufficient to satisfy a deferential arbitrary and capricious inquiry. *FCC*, 592 U.S. at 423.

Moreover, the additional work that may be created by this interpretation of the control factor does not "go an inch beyond the minimum legal requirement," which would be unlawful. **Doc. 47 at 17**; *c.f. Vermont Yankee*, 435 U.S. 545–549 (establishing the floor and ceiling of requirements for agency process). Indeed, in a totality of circumstances inquiry, which this Court has already found that the DOL is allowed to impose, one would need to conduct a facts-intensive inquiry. *See Rutherford*, 331 U.S. at 730 (citing *Silk*, 331 U.S. at 716, 719 (denying the existence of a "rule of thumb to define the limits of the employer-employee relationship" and determining employment status based on "the total situation")); *Baker*, 137 F.3d at 1441 (Finding that "[n]one

of the factors alone is dispositive; instead, the court must employ a totality-of-the-circumstances approach.").

The Court cannot find that the DOL's interpretation of the control factor is arbitrary and capricious where the interpretation is reasonable, in line with appellate precedent, and clearly discernible in the final text of the 2024 Rule.

### ii. *Integral part*

Next, Plaintiff objects to the DOL's decision to replace the 2021 Rule's "integrated unit of production" factor with asking whether the person is an "integral part" of the business such that "the work they perform is critical, necessary, or central to the potential employer's principal business." 29 C.F.R. § 795.110(b)(5); *see also* 89 Fed. Reg. at 1707-11.

However, the departure is neither inconsistent with law nor otherwise arbitrary and capricious. *Silk* concluded that coal "unloaders" were employees of a retail coal company in part because they were 'an integral part of the business[] of retailing coal." 331 U.S. at 716. Nor does the Tenth Circuit allow for the term "integrated unit." *Baker*, 137 F.3d at 1440, 1443. Rather, courts use the term "integral," focusing on the worker's work and its integrality to the business, not just the worker's integration into the business itself. *Id.*

Moreover, all of this is clearly discernible in the 2024 Rule. 89 Fed. Reg. at 1707-11. The DOL may promulgate a rule with the goal of creating consistency in policy and precedent if they provide a reasoned explanation for doing so. *State Farm*, 463 U.S. at 42; *Regents*, 140 S. Ct. 1913 (Requiring that agencies remain "cognizant [of] longstanding policies [that] may have engendered serious reliance interests. . . ."). The Court cannot upend the DOL's decision where it clearly complied with these requirements. *FCC*, 592 U.S. at 423.

### iii.    *Investment*

Plaintiff next objects to the DOL's decision to break "investments" and "opportunity for profit or loss" into separate factors and to consider a worker's investments "on a relative basis with the potential employer's investments in its overall business." **Doc. 22 at 22**; 29 C.F.R. § 795.110(b)(2); *see also* 89 Fed. Reg. at 1676-85.  Plaintiff argues that *Silk* analyzed these factors together, but that the 2024 Rule separates them improperly.  **Doc. 22 at 22**.  Moreover, Plaintiff categorizes any decision to separate the two by an appellate court as "dicta." *Id.*

Plaintiff is incorrect.  *Silk* did not clearly analyze the two together, but rather listed them successively as factors in the economic realities test.  *Silk*, 331 U.S. at 716 (The *Silk* factors include "degrees of control, opportunities for profit or loss, investment in facilities, permanency of relation[,] and skill required in the claimed independent operation are important for decision.").  Moreover, the Tenth Circuit *does* analyze the two separately.  The relevant factors from *Baker* are "the worker's opportunity for profit or loss," *as well as* "the worker's investment in the business." *Baker*, 137 F.3d at 1440.  It was not improper for the DOL to separate the two where the Supreme Court has not expressly required that they be analyzed together and where federal appellate courts analyze them separately.

### iv.    *Permanence*

Finally, Plaintiff objects to the DOL's decision to conclude that that a worker is more likely to be an employee "when the work relationship is indefinite in duration, continuous, or exclusive of work for other employers," but that impermanence "is not necessarily indicative of independent contractor status" where "a lack of permanence is due to operational characteristics that are unique or intrinsic to particular businesses or industries and the workers they employ." 29 C.F.R. §

795.110(b)(3); *see also* 89 Fed. Reg. at 1685-90. Plaintiff categorizes this approach as "logically flawed." **Doc. 22 at 22.**

However, it is not for this Court to determined whether or not the DOL's analysis of the permanence factor to be the best or most logically sound analysis available. *Olenhouse*, 42 F.3d at 1575. Rather, the Court must only ascertain whether the DOL acted reasonably, and their rationale is easily determinable and connected to the record. *FCC*, 592 U.S. at 423. The DOL's analysis is both clearly discernible and at least consistent with Tenth Circuit case law. See 89 Fed. Reg. at 1686-88; *Baker*, 137 F.3d at 1442. That is all that the Court needs to find that this analysis was not arbitrary or capricious. *Olenhouse*, 42 F.3d at 1575 (an agency must provide a reasonable explanation for its action).

Plaintiff's objections to the four specific factors thus necessarily fail. The 2024 Rule was not arbitrary and capricious, and the Court will not find it unlawful.

### III.    Defendant Su had authority to lawfully promulgate the 2024 Rule.

Finally, Plaintiff argues that the 2024 Rule is unlawful because Defendant Su lacked the authority to promulgate it. **Doc. 22 at 38.** For the reasons below, the Court disagrees.

Article II vests the power to nominate executive officers to the President. U.S. Const. art. II. However, *appointment* of executive officers generally requires the advice and consent of the Senate. *Id.* The Federal Vacancies Reform Act ("FVRA" or "Vacancies Act") provides an exception to that general constitutional rule. Where an officer of an executive agency "whose appointment to office is required to be made by the President, by and with the advice and consent of the Senate, dies, resigns, or is otherwise unable to perform the functions and duties of the office," the President may temporarily authorize the first assistant to that office to perform the functions and duties of the office. 5 U.S.C. §3345(a)(1). The acting officer must have served in

the position of first assistant for more than 90 days and they may only act subject to the time limits of the FVRA. *Id.* at (b)(1)(A)(i) & (ii). If an appointment does not comply with the FVRA, regulations promulgated by the acting officer "shall have no force or effect." 5 U.S.C. §3348(d).

Under the FVRA, an acting executive officer may not serve for more than 210 days beginning on the day the vacancy occurs. 5 U.S.C. §3346(a)(1). If the President nominates the acting officer to fill the vacancy permanently, the 210-day period begins on the date of the nomination. *Id.* at (a)(2). If the nomination fails and the President submits a second nomination, the acting officer may serve until confirmed or for 210 days after the Senate rejects the second nomination or it is otherwise returned to the President. *Id.* at (b)(2)(A) & (B).

Plaintiff argues that Defendant Su's time as acting Secretary of Labor has long exceeded the time limits laid out in the FVRA. **Doc. 22 at 33.** Defendants argue that Defendant Su serves lawfully pursuant to 52 U.S.C. § 552, which authorizes the properly confirmed Deputy Secretary of Labor to temporarily fill the role of Secretary of Labor.

It is not clear whether the FVRA's time limits apply to Defendant Su's service. 29 U.S.C. §556 does not speak to any time limits, a fact Defendants were quick to point out. **Doc. 22 at 33.** Indeed, the Government Accountability Office ("GAO") conducted a review of Defendant Su's service as Acting Secretary and concluded both that it was lawful and that time limits did not apply to the service. U.S. Department of Labor—Legality of Service of Acting Secretary of Labor, B-335451 at 4–5 (Sept. 21, 2023), https://www.gao.gov/assets/870/861240.pdf (*hereinafter* "GAO Letter"). The office concluded that "when an officer is serving under a position-specific authority," the FVRA's time limits do not apply "to their acting service." *Id.* at 5. It is possible that Defendant Su's service could be lawful regardless of any time limitations. This is especially

persuasive when considering the language of 29 U.S.C. §552, which authorizes the Deputy Secretary to fill the role of Secretary "*until a successor is appointed.*" (emphasis added).

However, it is also true that the GAO review took place in 2023, over a year ago at this point. And the GAO noted that Defendant Su "may continue to serve in that position *until a successor is appointed.*" GAO Letter at 5 (emphasis added). This, it would appear, implies that even the GAO assumed that Defendant Su's service would likely end, and that her nomination to permanently fill the position would be successful. Moreover, federal courts have routinely emphasized the exclusivity provision of the FVRA—the FVRA is the *only* method to authorize an acting official to perform the functions of an executive officer. 5 U.S.C. §3347(a); *see also Guedes v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 356 F. Supp. 3d 109, 125 (D.D.C.), *aff'd,* 920 F.3d 1 (D.C. Cir. 2019), *judgment entered,* 762 F. App'x 7 (D.C. Cir. 2019); *Pub. Emps. for Env't Resp. v. Nat'l Park Serv.*, 605 F. Supp. 3d 28, 46 (D.D.C. 2022), *appeal dismissed,* No. 22-5205, 2022 WL 4086993 (D.C. Cir. Sept. 2, 2022); *Bullock v. United States Bureau of Land Mgmt.*, 489 F. Supp. 3d 1112, 1125 (D. Mont. 2020). While it may be true that the FVRA implicitly authorizes service without a statute of limitations for certain role-specific acts, the Court will treat the GAO's decision as persuasive, not a mandate.

However, the GAO's decision is not the only authority before this Court. Defendant Su still served lawfully at the time of the 2024 Rule's promulgation, even within the confines of the FVRA. The FVRA tolls its 210-day time limit where the President resubmits a nomination to the Senate. 5 U.S.C. §3346(b)(2)(B). The 2024 Rule's issuance fell outside of the 210-day period for Defendant Su's *original* March 14, 2023, nomination, PN388 - Nomination of Julie A. Su for Department of Labor, 118th Congress (2023-2024), PN388, 118th Cong. (2024), https://www.congress.gov/nomination/118th-congress/388., which would have rendered the rule

unlawful had that been the *only* action on Defendant Su's nomination. 5 U.S.C. § 3348(d); *see also United States v. Santos-Caporal*, No. 118CR171AGFACL, 2019 WL 468795 at *3 (E.D. Mo. Jan. 9, 2019), *report and recommendation adopted,* No. 1:18CR00171 JAR, 2019 WL 460563 (E.D. Mo. Feb. 6, 2019) ("If an appointment is not in compliance with the FVRA, § 3348(d) provides that 'any function or duty of a vacant office' performed by a person not properly serving under the statute 'shall have no force or effect.'").

President Biden resubmitted Defendant Su's nomination on January 8, 2024. 170 Cong. Rec. S1011 (daily ed. Feb. 27, 2024). According to the text of the FVRA, that restarted the clock on the 210-day time limit, allowing Defendant Su to serve at least through August of 2024. 5 U.S.C. §3346(b)(2)(B). The 2024 Rule came out two days later, which is well within the new 210-day time-period. *See id*; 89 Fed. Reg. 1638-01. While the Court makes no judgement on whether Defendant Su is *currently* serving lawfully, she *was* plainly serving lawfully at the time of the 2024 Rule's promulgation.

Plaintiff also argues that Defendant Su is not serving "temporarily" because the President "refuse[s] to make a good-faith effort to fill the position on a permanent basis." **Doc. 22 at 39**. It is true that there comes a time where "courts can and must play a role in policing 'acting' appointments that are effectively permanent." *Pub. Emps. for Env't Resp. v. Nat'l Park Serv.*, 605 F. Supp. 3d 28, 47 (D.D.C. 2022) (citing *Guedes v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 356 F. Supp. 3d 109, 153 (D.D.C. 2019)). However, Plaintiff points to no authority requiring such a 'good-faith effort,' to support their assertion. *Id.* The FVRA does not speak to such a 'good-faith effort' requirement for a first officer to serve as an acting secretary and the Court will not impose one where it is not required. Defendant Su's service complies with the time limits laid out by the FVRA.

33

The Court therefore concludes that Defendant Su's service is lawful under the Appointments Clause and the FVRA. As such, the Court cannot find that the 2024 Rule is unlawful because of supposed deficiencies in Defendant Su's authority.

**IV.    Plaintiff has waived any Due Process or Regulatory Flexibility Act claim.**

Defendant argues that Plaintiff improperly briefed arguments about potential violations of due process or the Regulatory Flexibility Act and has thus waived them. **Doc. 47 at 24.** The Court finds that Plaintiff has waived the remaining due process and Regulatory Flexibility Act arguments and therefore declines to address the merits of either argument.

Parties waive arguments if they do not raise them in responses to motions for summary judgment. *Hinsdale v. City of Liberal, Kan.*, 19 F. App'x 749, 768–69 (10th Cir. 2001); *Lewis v. XL Catlin*, 542 F. Supp. 3d 1159, 1168 n.6 (D.N.M. 2021), *appeal dismissed*, No. 21-2077, 2021 WL 6197126 (10th Cir. Sept. 27, 2021) ("Implicit in [D.N.M. LR-Civ. 7.1(b)] is that the failure to respond to an argument raised in a motion constitutes consent to grant the motion to the extent associated with that particular argument."); *Ortega v. Edgman*, No. CIV 21-0728 RB/JHR, 2022 WL 796374, at *9 (D.N.M. Mar. 16, 2022) (same). Once a party files a motion for summary judgment, the party resisting that motion cannot rest solely on their initial pleadings. *Coffey v. Healthtrust, Inc.*, 955 F.2d 1388, 1393 (10th Cir. 1992). Rather, a party that fails to address or rebut arguments raised in an opposing party's motion for summary judgment loses the opportunity to do so later on. *Id.*; *Tran v. Trustees of State Colleges in Colo.*, 355 F.3d 1263, 1266 (10th Cir.2004) ("Issues not raised in the opening brief are deemed abandoned or waived." (quoting *Coleman v. B–G Maint. Mgmt. of Colo., Inc.*, 108 F.3d 1199, 1205 (10th Cir.1997)) (internal quotation marks omitted)).

Parties also waive arguments where they fail to properly brief them, even if they mention the arguments in a perfunctory fashion. *Iweha v. State of Kansas*, 121 F.4th 1208, 1236 (10th Cir. 2024). This includes arguments that parties improperly categorize or conflate. *N. New Mexicans Protecting Land, Water & Rts. v. United States*, 704 F. App'x 723, 727–28 (10th Cir. 2017); *see also Conroy v. Vilsack*, 707 F.3d 1163, 1170–71 (10th Cir. 2013) ("[The party] has not briefed any arguments pertaining to that claim, so we consider it abandoned.").

Plaintiff alleged that the 2024 Rule violated both the Regulatory Flexibility Act ("RFA") and its due process rights in its initial complaint. **Doc. 1**. Subsequently, the parties agreed that this was the improper vehicle in which to advance arguments and Plaintiff filed its opening brief, styled as a motion for summary judgment. **Doc. 22.** In that initial briefing, Plaintiff does briefly touch on the RFA and due process claims it initially discussed in its Complaint. *Id.* Defendant filed a Cross-Motion to Dismiss, or in the alternative, for Summary Judgment. **Doc. 30.** It is with response to this Cross-Motion that Plaintiff waives its due process and RFA arguments because Plaintiff fails to properly advance arguments *in response* to a motion for summary judgment. **Doc. 46**; *Hinsdale*, 19 F. App'x at 768.

Defendant addresses both the RFA and due process issues in its cross-motion. **Doc. 30 at 25, 29**. However, Plaintiff's Reply mentions the RFA only once and does not mention due process at all. **Doc. 46.** Because Defendant filed a motion for summary judgment, Plaintiff was obligated to raise any arguments in response that it did not wish to waive. *Iweha*, 121 F.4th at 1236 (A "[non-movant's] failure to rebut the arguments raised by defendants in their motion for summary judgment is fatal to his attempt to raise and rebut such arguments on . . . appeal." (quoting *Coffey*, 955 F.2d at 1393)). This includes Defendant's arguments that it did not violate the RFA or Plaintiff's due process rights. *Id.* Based on Plaintiff's failure to properly and specifically respond

35

to arguments in Defendant's Motion means that Plaintiff has waived them. *Ortega v. Edgman*, No. CIV 21-0728 RB/JHR, 2022 WL 796374, at *9 (D.N.M. Mar. 16, 2022) (Failing to "specifically respond to Defendants' arguments regarding the claim" means that Plaintiff "has waived this claim.").

However, because Plaintiff also filed a motion for summary judgment, the Court feels obligated to address the arguments as they were raised in Plaintiff's initial motion. Plaintiff's arguments are improperly briefed even absent its failure to renew. Plaintiff's RFA and Due Process arguments in its initial Motion for Summary Judgment are briefed in only a perfunctory fashion. In its Motion, Plaintiff's due process argument is less than a page, and raises insufficiently specific or persuasive arguments necessary to surmount the procedural barrier already discussed *supra*. Its argument rests on the continued assertion that the 2024 Rule is lacking in clarity, which is a branch of its arbitrary and capricious analysis. Regardless, Plaintiff waived the argument by failing to raise it in its Reply, so any cursory analysis—either in the Complaint or in its Motion— is without the force of procedure.

Moreover, even in its opening Motion, Plaintiff references the RFA only in its argument that the 2024 Rule is arbitrary and capricious. **Doc. 22 at 26**. It uses the RFA as additional support for its argument that the 2024 Rule is somehow arbitrary or capricious and appears to be an offshoot of its "faulty legal premise" argument that the Court discusses above. This is precisely the kind of improper argument classification and confusion that the Tenth Circuit has already prohibited. *See N. New Mexicans Protecting Land, Water & Rts.*, 704 F. App'x at 727–28. Plaintiff's RFA argument has been improperly briefed from the beginning.

The Court therefore finds that Plaintiff has waived its remaining arguments and declines to address the merits of either.

## CONCLUSION

Plaintiff lacks the Article III standing necessary to challenge the 2024 Rule, and its arguments are therefore not properly before the Court.  If they were, Plaintiff's arguments either fail or have been improperly briefed and therefore waived.  For these reasons, the Court **DENIES** Plaintiff's Motion for Summary Judgment (**doc. 22**) and **GRANTS** Defendant's Cross-Motion to Dismiss, or in the alternative, for Summary Judgment (**doc. 30**).

**IT IS SO ORDERED.**

_____/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE